# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 520-2022-00543 |

and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| Mrs. Lorraine Masciarelli | (631) 235-4192 | 1970 |

Street Address
956 Spur Drive South
BAY SHORE, NY 11706

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| NYC DOE | Unknown Number Of Employees | (718) 278-1915 |

Street Address
22-45 41st Street
ASTORIA, NY 11105

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| Religion | Earliest: 09/19/2021    Latest: 02/15/2022 |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

MICHAEL J TANZI
Notary Public State of NY
No. 01TA6337252
Qualified in Suffolk County
Commission Expires:
2/22/24

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| June 25, 2022    Lorraine Y Masciarelli
Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)    6/25/22 |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 520-2022-00543 |

and EEOC

_____
State or local Agency, if any

I began my employment on or about September 2000. My current position is Physical Education Teacher. On or about August 2021, I was notified by my employer that it would be requiring all employees to be fully vaccinated by September 27. I sincerely hold a religious belief that conflicts with my employers vaccination requirement. During my employment, I notified my employer of my religious belief and requested a religious accommodation to Respondents Covid-19 vaccination mandate, which was denied. On October 4 I was placed on unpaid leave. I was informed that if I do not get the shot by September 5, I will be discharged. I believe I have been discriminated against because of my religion, Roman Catholic in violation of Title VII of the Civil Rights Act of 1964, as amended.. ✱

✱ Charge of Discrimination Attachment A

MICHAEL J TANZI
Notary Public State of NY
No. 01TA6337252
Qualified in Suffolk County
Commission Expires: 2/22/26

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

June 25, 2022     [signature]
Date                Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

[signature]

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

6/25/22

# CHARGE OF DISCIMINATION

## The Particulars

## ATTACHMENT A

Lorraine Masciarelli
Charging Party
956 Spur Drive South
Bay Shore, NY 11706
631-235-4192

### PRELIMINARY STATEMENT

I began my employment on or about September 2000. My current position is Physical Education teacher. On or about August 2021, I was notified by my employer ("Defendant") that it would be requiring all employees to be full vaccinated by September 27, 2021. I hold a sincere religious belief that I cannot get the vaccine. I notified my employer of my religious belief and requested a reasonable accommodation of a workplace remote from students, similar to the location at which I worked during the pandemic. I was denied.

On October 4, 2021 I was placed on an unpaid leave without my consent and without anyone at the Department of Education ("NYC DOE") reaching out to me to find out the reasonableness of my request. I was told that if I do not get the shot by September 5, I will be terminated. My employer did not seek any participation in an interactive process.

I have been discriminated against solely because of my religious beliefs in violation of Title VII of the Civil Rights Act of 1964, as amended. My faith is Roman Catholic, and my religious beliefs and exhibits attached to this Charge show that I have been discriminated against because of my religious beliefs, and I have never been given any reason for my separation from my job, but for my religious beliefs. The NYC DOE has violated my fundamental religious and constitutional rights, and I now seek declaratory and injunctive relief as well as reinstatement, nominal, compensatory, actual and punitive damages and other remedies for harms arising from the New York City's discriminatory practices and policies adopted by the Defendant in the implementation of the mandate.

### THE COVID VACCINE MANDATE IS BEING IMPLEMENTED IN A DISCRIMINATORY MANNER

Collectively and individually, the Vaccine Mandate ("Mandate") violates fundamental constitutional rights, both facially and as applied through general practice and to individuals, arbitrarily and capriciously discriminates against individuals with sincere religious objections to vaccination– even though the individuals pose no direct threat to others because of their religious or medical needs– and places unconstitutional conditions on employment.

1

In implementing the Mandate, state actors working on behalf of the City of New York adopted facially unconstitutional standards and policies subjecting me and thousands of other individuals to per se unconstitutional heresy inquisitions and other religious harassment.

The leaders of New York City sanctioned and encouraged this discrimination. In press briefings, former Mayor Bill de Blasio made statements clarifying that the City adopted a preference for the Pope's viewpoint about what "scripture" requires on the topic of vaccines, expressed hostility towards religious opposition to vaccination as largely "invalid," stated that the City would be openly giving preference to Christian Scientists and Jehovah's Witnesses, and said that to get an exemption, applicants would have to be a "standing member of a faith that has a very, very specific long-standing objection" to vaccination according to the Mayor's religious viewpoint. Mayor de Blasio further stated that the City would discriminate against anyone with beliefs that fall under the definition of heresy—that is, less widely recognized, unorthodox or personally held religious beliefs.

Under the ex-Mayor's openly discriminatory standard, people with personally held religious beliefs or unorthodox religious beliefs were expressly supposed to be (and were) singled out for discriminatory treatment by the defendants even though their beliefs are sincere.

In addition to being discriminatory, the Mandate is irrational and replete with discretion and discretionary and arbitrary carve-outs. The COVID-19 vaccine mandate cannot stop the spread of SARS-CoV-2. The great weight of available evidence does not support an assumption that the vaccine stops infection with and transmission of SARS-CoV-2 to others. The data is clear and widely accepted – vaccinated people can catch and spread COVID at substantially the same rate as unvaccinated. The NYC DOE data mirrors the data from multiple reputable studies, showing that high vaccine uptake does not slow the spread of the virus or reduce infection rates.

Moreover, there are far less invasive measures available to ensure public safety than forcing individuals to violate their deeply held religious beliefs or lose their jobs. Indeed, short-staffed schools are asking staff with mild COVID symptoms to return to the classroom.. (Business Insider, https://www.businessinsider.com/teacherscan-return-to-classroom-after-positive-covid-test-mild-symptoms-2022-1.)

The Mandate is overbroad. There is no option to get tested in lieu of vaccination in the Mandate. Nor is natural immunity recognized, even though the data overwhelmingly shows that natural immunity is more robust and durable than vaccine immunity. Moreover, remote employees are not allowed an exemption or accommodation, even those who can easily work outside of an office due to the nature of their work.

By the same token, the Mandate is under-inclusive. In limiting its scope to the covered entity, group or individuals, the Mandate fails to include all other people, groups or organizations in New York City who fall within the declared statutory purpose of resolving the Covid-19 pandemic. And, many have carve-outs for various secular categories of persons. The Mandate is an outlier. No other city in the state requires vaccination as a condition of employment for all workers. In New York City, the Mayor has allowed baseball players and Broadway performers to be exempted from getting the vaccine. He says this will help the NY City economy, and he likes baseball. On March 24, 2022, in response to lobbying efforts from lobbyists and large donors to

2

the Mayor's election campaign, Mayor Adams issued Emergency Executive Order ("EEO") 62, which exempts entertainers (including strippers and other adult entertainers), athletes and their entourages, assistants and make-up artists, from the vaccine requirements imposed on all other workers. The Mayor admitted in press conferences and in the order itself that the carve out was expressly done for economic reasons, not health reasons.

There is no public health justification for treating these employees differently than me, the Charging Party in this matter, or other similarly situated employees whose religious beliefs preclude them from getting vaccinated, but who are nevertheless being denied the same exemption afforded to the exempted workers in EEO 62. Strippers and basketball players and make-up artists pose as much or more of a threat to those around them if infected with COVID as do sanitation workers and other employees in New York City.

It is obvious that zero policies like the Mandate with its' sacrifice of individual liberties and fundamental rights does not stop the virus. The discriminatory manner in which the Mandate was implemented has left my life and career in shreds.

## THE NYC DEPARTMENT OF EDUCATION IGNORED CHARGING PARTY'S CONSTITUTIONAL RIGHT TO A RELIGIOUS EXEMPTION

The employer's implementation of a Mandate which omitted any relief for those employees with valid medical issues or sincere religious beliefs was Constitutionally unsound, and legally prohibited by the employer's own non-discrimination policy. The NYC DOE's Non-Discrimination Policy on their website says:

*"It is the policy of the New York City Department of Education (DOE) to provide equal employment opportunities in accordance with applicable laws and regulations and without regard to actual or perceived race, color, religion, creed, ethnicity, national origin, alienage, citizenship status, age, marital status, partnership status, disability, sexual orientation, gender (including actual or perceived gender identity, gender expression, pregnancy/conditions related to pregnancy or childbirth), military status, unemployment status, prior record of arrest or conviction, caregiver status, consumer credit history, predisposing genetic characteristics, salary history, sexual and reproductive health decisions, or status as a victim of domestic violence, sexual offenses, or stalking, and to maintain an environment free of harassment on any of the above protected classifications, including sexual harassment and retaliation."*

The employer openly and deliberately violated their own public policy in denying employment to anyone who asked for any exemption based upon a Constitutionally protected right (including NYC DOE Non-Discrimination policy; TITLE VII and NYC and State Human Rights) to a medical or religious exemption. Yet the employer's false claim/narrative was accepted and used to deny Charging Party her job, without a pretense of any other reason. The standard of review placed a compelling government interest in vaccination or termination above any statutory rights protected by the Constitution.

Indeed, the Supreme Court has made it clear that it is not a court's role to determine the reasonableness of an individual's religious beliefs, and that "religious beliefs need

3

not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." They must be sincerely held. Charging Party's religious beliefs are sincerely held (see EXHIBITS).

The US Supreme Court held in Frazee V. Illinois Dept. of Security, 489 US 829, that a religious belief is subject to protection even though no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not advocate or require such belief. This ruling is also reflected in the Title VII of the Civil Rights Act of 1964 as amended November 1,1980; Part 1605.1- Guidelines of Discrimination Because of Religion. As the Supreme Court has repeatedly counseled "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Church of Lukumi Babalu Aye V. Hialeah, 508U.S. 520,531 (1993). They must be "sincerely held." Frazee, 489 U.S. at 834. Similarly: "[c]ourts are not arbiters of scriptural interpretation." Thomas v. Review Bd. of Indiana Employment Security Div., 450 U. S. 707, 716 (1981).

As per U.S. Equal Employment Opportunity Commission, Section 12: Religious Discrimination, "The statute defines 'religion' as including "all aspects of religious observance and practice, as well as belief… Religion includes not only traditional, organized religions such as Christianity, Judaism, Islam, Hinduism, Sikhism, and Buddhism, but also religious beliefs that are new, uncommon, not part of a formal church or sect, only subscribed to by a small number of people, or that seem illogical or unreasonable to others…" Thomas v. Rev. Bd., 450 U.S. 707, 714 (1981). (Religion is broadly defined and does not require one to be part of a formal church or sect.). A belief is 'religious' for Title VII purposes if it is 'religious' in the person's 'own scheme of things,' i.e., it is a 'sincere and meaningful' belief that 'occupies a place in the life of its possessor parallel to that filled by God". Patrick v. LeFevre, 745 F.2d 153, 158 (2d Cir. 1984).

## CHARGING PARTY WAS RETALIATED AGAINST AFTER REQUESTING A RELIGIOUS EXEMPTION FROM THE VACCINE

On November 15, 2021, the United States Court of Appeals for the Second Circuit ordered fresh consideration of people's request for religious accommodation: "Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs."

On November, 28, 2021, United States Court of Appeals for the Second Circuit merit panel concluded "It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings." It also reaffirmed that a fresh consideration of people's request for religious accommodation. In addition to the First Amendment, such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. The United States Court of Appeals have conceded that the process and standards that was used to consider religious exemption applications and appeals were "constitutionally suspect" and proposed an

alternative process using the Citywide Panel.

Mr. Eric Eisenholtz is a member of the City-wide Panel, and as such, made decisions on whether or not an individual who requested an exemption from getting the vaccine due to a sincere religious belief actually received an exemption. In his deposition, he stated that the final decisions almost never approved anyone's request for an exemption, and the criteria was random and arbitrary for making the decision in the first place.(See his Affirmation).

Title VII provides, "It shall be an unlawful employment practice for an employer . . . (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To state a claim for retaliation under Title VII, a plaintiff must plead that "(1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there is some causal relation between the two events." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). Charging Party states that she has shown a causal relation between her announcing her religious belief against getting the vaccine, and being separated from her employment.

To state a prima facie claim for discrimination under Title VII, a plaintiff must allege that (1) she is a member of a protected class, (2) she was qualified for the job, (3) she was subjected to an adverse employment action, and (4) similarly situated employees outside the protected class received more favorable treatment than she did. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). "The ultimate question in a disparate treatment case is not whether the plaintiff established a prima facie case or demonstrated pretext, but whether the defendant intentionally discriminated against the plaintiff." Nix v. WLCY Radio/Rahall Comm'cns., 738 F.3d 1181, 1184 (11th Cir. 1984) (citations and quotations omitted). Charging Party has identified herself as a member of a protected class for purposes of a Title VII claim, and has identified the basis for the discrimination. She also sufficiently pleads that she was qualified for the job as a school teacher and that other employees outside of the protected class were treated differently from herself. Charging Party has stated a claim for discrimination under Title VII.

A causal link may be established by direct or circumstantial evidence. The Ninth Circuit has held that a causal link between protected activity and an adverse employment action "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987), quoted in Casumpang v. International Longshoremen's Warehousemen's Union, Local 142, 269 F.3d 1042, 1059 (9th Cir. 2001).

To establish a causal link in a Title VII retaliation claim, an employee must establish that the employer was aware of the employee's protected action. "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982). See also Raad v. Fairbanks N. Star Borough

5

Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003); Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004) ("[A]n employer cannot retaliate when it is unaware of any complaints" of illegal employment practices); Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) ("At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action."); Holbrook v. Reno, 196 F.3d 255, 263 (D.C. Cir. 1999).

If the plaintiff establishes her prima facie case of retaliation, then the defendant must present evidence of a legitimate, non-retaliatory reason for their adverse action. To satisfy this burden, the defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 257, 101 S. Ct. 1089, 1096 (1981);Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731 (9th Cir. 1986). In this matter, the NYC DOE has never produced any evidence to show that the denial of an accommodation was nothing more than motivated by discriminatory intent.

Charging Party alleges she was punished for requesting a religious exemption from getting vaccinated, and her fingerprints being placed into a "problem code" database is proof. Charging Party has presented sufficient evidence to create a disputed issue of material fact with regard to the NYC DOE's proffered non-discriminatory reason for taking an adverse employment action against her.

## CONCLUSION

Charging Party has raised a material issue of fact with regard to her prima facie case of retaliation and discrimination because of her religious beliefs.

Lorraine Masciarelli