**EXHIBIT G**

**GIULIA MILLER, ESQ.**
*Attorney at Law*
2675 Richmond Road
Staten Island, NY 10306
718-809-3834
*Giuliamiller3638@gmail.com*

December 1, 2021

I represent Ms. Lorraine Masciarelli in her application for a religious exemption to the requirement for the COVID 19 vaccine.

Ms. Masciarelli bases her request on the protections of the US constitution, Title VII of the Civil Rights Act as well as New York State and New York City's Human Rights Laws.

https://www.eeoc.gov/statutes/title-vii-civil-rights-act-1964

https://ag.ny.gov/sites/default/files/religious_rights_in_the_workplace.pdf

As per U.S. Equal Employment Opportunity Commission, Section 12: Religious Discrimination, "The statute defines 'religion' as including "all aspects of religious observance and practice, as well as belief… Religion includes not only traditional, organized religions such as Christianity, Judaism, Islam, Hinduism, Sikhism, and Buddhism, but also religious beliefs that are new, uncommon, not part of a formal church or sect, only subscribed to by a small number of people, or that seem illogical or unreasonable to others…" *Thomas v. Rev. Bd.,* 450 U.S. 707, 714 (1981). (Religion is broadly defined and does not require one to be part of a formal church or sect.). A belief is 'religious' for Title VII purposes if it is 'religious' in the person's 'own scheme of things,' i.e., it is a 'sincere and meaningful' belief that 'occupies a place in the life of its possessor parallel to that filled by God". *Patrick v. LeFevre*, 745 F.2d 153, 158 (2d Cir. 1984)

As my client has detailed in her extensive and comprehensive letter, she holds bona fide sincere and genuine Christian based *religious* beliefs that prohibit her from submitting to and receiving any vaccines and is entitled to a reasonable religious accommodation under federal and state law.

**Summary of the Facts**

Ms. Masciarelli submitted her notice for a religious accommodation on September 19, 2021. On September 21, 2021, a mere 2 days later, she received a perfunctory boilerplate denial and a notice to appeal via Scheinman Arbitration Services (SAMS). On October 4, 2021, Ms.Masciarelli attended said hearing represented by

1

undersigned counsel. She subsequently received another perfunctory denial with no explanation at all, simply an "X" marked "denial". Said denial was dated the very same day as the hearing.

Ms. Masciarelli's religious objections to the COVID-19 vaccines are rooted in her long standing dedication and commitment to the Catholic Church. She is a devout Catholic who opposes vaccines on the basis that they defile her sacred blood with foreign components including aborted fetal tissue. In fact, the mere connection to any abortion disturbs her conscience so much that she simply cannot take any vaccine that has any connection however remote, to an aborted fetus. Moreover, Ms. Masciarelli stated that all vaccines betray her faith in God since she firmly believes that "God is the sole arbiter of life".

At the SAMS hearing, the attorney for the DOE, Ms. Briskowski, referred to a letter written to SAMS, provided by Dave Chopski, the Commissioner for the Department of Mental Health and Hygiene. She stated that according to this letter, the Moderna and the Pfizer do not contain aborted fetal tissue or cells, that they were only used in the "early research phase", and that they were "grown in a laboratory". Ms. Masciarelli did in fact state in her letter that her opposition was to the Moderna and Pfizer's *attenuation* to the aborted fetal lines as they are *tested for efficacy POST production*. My client never alleged that her opposition to the Moderna and Pfizer vaccines was to aborted fetal cells in the manufacturing or production phase. The undersigned also added that my client's concern was valid because had it not been for those abortions, we would not have these vaccines. The DOE attorney then stated that "Catholic leadership has come out in public support of receiving the vaccine". Ms. Masciarelli immediately interrupted, stating "My Pope. I disagree with the Pope and the Vatican's decision and the Catholic Church. My Pope said to follow my conscience and discern God's will for me. And I have followed my conscience and I have used my discernment for God's will for me. And after consulting with my conscience and praying on this, I cannot violate my almighty God by putting this-the mark of the beast, in my body".

Ms. Masciarelli testified that her sincere religious beliefs also extend to her children who have also received religious exemptions at their schools. She believes that receiving the COVID-19 vaccines or any other vaccine is a sin against God. It is her sincere and genuine religious beliefs that prohibit her and her children from being able to receive these vaccines.

It is well settled that in order to qualify for a religious exemption, one does not have to be a member of an organized religious group or a member of a religious group at all. Nor is it required that any religion one follows have a specific tenet or directive regarding vaccinations. *Thomas v. Rev. Bd.,* 450 U.S. at 714.

2

A person's own personal belief and religious practices that amount to an interpretation to oppose vaccination on religious grounds do not have to be tenets of any organization whose directive it is to not vaccinate. If this were to occur, it would create a preferential restriction on one set of beliefs over another, which would result in only a certain class of adherents enjoying the exemption, while others who hold the same beliefs but are not part of an organized religion, fail. This ultimately results in blatant inequity. To restrict my client to the directives of any church, is an illegal, pre-textual maneuver to simply deny the exemption.

## Summary of the Law

The Equal Employment Opportunity Commission ("EEOC") has consistently applied the standard that a belief is "religious" for Title VII purposes if it is "religious" in the person's "own scheme of things," i.e., it is a sincere and meaningful "belief" that occupies a place in the life of its possessor parallel to that filled by God. *United States v. Seeger*, 380 U.S. 163, 166 (1965).

**Sincerity is generally presumed and easily established**. *Moussazadeh v. Tx. Dep't of Criminal Just.,* 703 F.3d 781, 790 (5th Cir. 2012).  (Emphasis added)

**The inquiry is whether the belief is sincere, not whether it is "correct".**  Courts are not arbiters of Scripture and religious held beliefs.  *Thomas v. Rev. Bd. Of Ind. Emp. Sec. Div.,* 450 U.S. 707, 716 (1981).  "The commission and courts "are not and should not be in the business of deciding whether a person holds religious beliefs for the "proper" reasons.  We thus restrict our inquiry to whether or not the religious belief is sincerely held and we don't review the motives or reasons for holding the belief in the first place." *Adeyeye v. Heartland Sweeteners, LLC,* 721 F.3d 444 (7th Cir. 2012).

In determining whether an appellant has a "bona fide religious belief," the court's analysis is restricted to "whether the beliefs professed by the appellant are sincerely held and whether they are, in his own scheme of things, religious. *Eatman v. United Parcel Serv.,* 194 F. Supp.  2d 256, 268 (S.D.N.Y. 2002) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)) (internal quotations omitted); cf. Philbrook, 757 F.2d at 481 ("[I]t is entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity—as opposed, of course, to the verity—of someone's religious beliefs in…the Title VII context.")

Title VII's definition of religion is broad and includes "all aspects of religious observance and practice, as well as belief," 42 U.S.C. 2000e(j); thus, the statute protects "impulses prompted by dictates of conscience as well as those engendered by divine commands…so long as the appellant conceives of the beliefs as religious in nature," *LeFevre,* 745 F.2d at 158.

3

**An organized religion is NOT required.** Religion is broadly defined and does not require one to be part of a formal church or sect. *Thomas v. Rev. Bd.,* 450 U.S. 707, 714 (1981). Thus, what a pope or any other religious leader says is irrelevant when it comes to religious beliefs that the government must respect: *"the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect." Id* at 715-16. *Nor are appellants required to make their religious beliefs "acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection. Id* at 714; see also *Church of Lukuni Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520, 531 (1993). The protections of Title VII apply whether the "religious beliefs or practices in question are common or non-traditional, and regardless of whether they are recognized by any organized religion." EEOC Compliance Manual § - 12(A)(1).

The Compliance Manual on Religious Discrimination issued by the EEOC states that:
> *Because the definition of religion is broad and protects beliefs, observances, and practices with which the employer may be unfamiliar, the employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief. If however, an employee requests religious accommodation, and an employer has an objective basis for questioning either the religious nature or the sincerity of a particular belief, observance, or practice, the employer would be justified in seeking additional supporting information. EEOC Compliance Manual §-12(A)(1).*

A sincere religious believer does not forfeit his/her religious rights merely because he is not scrupulous in his/her observance. *Grayson v. Schuler,* 666 F.3d 450, 454-55 (7th Cir. 2012).

A person's religious beliefs "need not be confined in either source or content to traditional or parochial concepts of religion. *Welsh v. United States,* 398 U.S. 333, 339 (1970) holding that "it is not within the judicial function and judicial competence to inquire whether Appellant …more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretations." *Id.*

The Supreme Court has made it clear that it is not an arbitrator or court's job to determine the reasonableness of an individual's religious beliefs, and that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection. *Thomas,* 450 U.S. at 714.

To establish a prima facie case, Appellant must show that (1) "has a bona fide religious belief that conflicts with an employment requirement," (2) "informed the employer of this belief," and (3) was disciplined for failure to

4

comply with the conflicting employment requirement." *Philbrook v. Ansonia Bd. of Educ.,* 757 F.2d 476, 481 (2d Cir. 1985); accord *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d. Cir. 2001).

In this case, Ms. Masciarelli meets all the necessary elements entitling her to a reasonable religious accommodation under federal and state law.

Courts have consistently held that membership in a formal recognized religion is not a requirement to oppose vaccination. *Sherr v Northport-East Northport U Free School District,* 672 F. Supp. 81 (E.D.N.Y.) (1987). In this case, the court struck down New York's vaccination exemption statute which limited religious exemptions to only those individuals who were members of a recognized religious group. The Court stated that the United States Constitution mandates that the exemption must be offered to all persons who hold sincerely held religious beliefs that prohibit inoculation, not just those who were members of a specific religious group.

Religious beliefs or practices cannot be 'authorized' by another person as they are directed by an inner impetus, not necessarily a religious leader. No religious organization or institution can pretend to know the entirety of the specific purpose and truth of an individual's faith framework. No entity, including the DOE, has the authorization to determine the validity of a person's religious convictions, beliefs, or tenets.

To force or coerce a person to administer a substance into their body against their will is a violation of who they are in front of their god. Such mandates and coercions are also a violation of the dignity of the human person, because freedom of religion and freedom of conscience are fundamental to human dignity.

## Analysis

**I. Ms. Masciarelli gave proper requisite notice of conflict.**

Ms. Masciarelli has met all the requirements under Federal and state law for a religious accommodation to the Covid -19 vaccine mandate.

There is no dispute that Ms. Masciarelli gave proper notice to DOE of her religious beliefs that conflict with the mandate as evidenced by her original submission of her request for religious accommodation. *Brown v. Polk Cnty.,* 61 F.3d 650, 654 (8th Cir. 1995).

**II. The DOE improperly denied Ms. Masciarelli's religious accommodation as she properly stated her bona fide religious beliefs and conflicts.**

Here, the DOE as Ms. Masciarelli's government employer, has the legal duty and is bound by law to accommodate Ms. Masciarelli's religious beliefs that conflict with their mandate to take the Covid-19 vaccine. *Ansonia Bd. Of Educ. V. Philbrook,* 479 U.S. 60, 68 (1980); *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

By her submission, Ms. Masciarelli detailed her religious beliefs explaining how they conflict with the mandate. She is not required by law to belong to any formal sect or religion. Ms. Masciarelli is not bound by any particular church or church leader. She happens to be Catholic and has asserted that she remains a Catholic despite the Catholic Church's sanctioning of the vaccines. She stated that she disagrees with the Church on this issue and that moreover, she has examined her conscience which has instructed her to decline this vaccine. Notwithstanding the Catholic Church' position on vaccines detailed here, https://www.vatican.va/roman_curia/congregations/cfaith/documents/rc_con_cfaith_doc_20201221_nota-vaccini-anticovid_en.html, Ms. Masciarelli believes that the sin of murder cannot be attenuated from the vaccines they are derived from and disagrees with the Catholic Church. She can most certainly continue to be a practicing Catholic and disagree with the Church, much like these Catholic figures who similarly oppose the vaccines do:

https://catholiccitizens.org/issues/church-state-relations/93628/bishop-schneider-on-covid-vaccines-the-ends-cannot-justify-the-means/

https://www.nbcnews.com/news/us-news/new-orleans-catholics-urged-archdiocese-avoid-johnson-johnson-vaccine-n1259286

https://www.catholicnewsagency.com/news/249039/massachusetts-bishop-clergy-can-support-individuals-own-vaccine-exemption-requests

https://www.baltimoresun.com/maryland/baltimore-county/bs-md-co-priest-vaccine-homily-20211130-px4uu2sw3zf5rmmc2oo6u7ygtq-story.html

Specifically, the Vatican says "*practical reason makes evident that vaccination is not, as a rule, a moral obligation and that, therefore, it* **must be voluntary**.... *Those who, however***, for reasons of conscience, refuse vaccines produced with cell lines from aborted fetuses***, must do their utmost to avoid, by other prophylactic means and appropriate behavior, becoming vehicles for the transmission of the infectious agent.*

Ms. Masciarelli has done exactly what the Catholic Church has asked her followers to do. She has examined her conscience and it has told her to decline the vaccines.

6

Ms. Masciarelli is very dedicated to her faith. She believes that vaccines are made from ingredients that she must reject introducing into her blood. In her extensive written submission, Ms. Masciarelli states that her duty is to God and that she must abide by His teachings which tell her she cannot contaminate her blood, nor the blood of her children with the blood of another. In her detailed statement, Ms. Masciarelli objected to the vaccines' connection to aborted fetal tissue.

Ms. Masciarelli cannot receive vaccines because she objects to the use of aborted fetal cell lines in the production or testing of any vaccines, but specifically the Moderna and Pfizer's use of the HEK293 cell line in post production testing for the presence of the spike protein to assure effectiveness:

https://s27589.pcdn.co/wp-content/uploads/2020/12/COVID-19-Vaccine-Candidates-and-Abortion-Derived-Cell-Lines.pdf
https://www.nature.com/articles/s41586-020-2622-0
http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCellLines.pdf
https://www.biorxiv.org/content/10.1101/2020.09.08.280818v1.full

The Johnson and Johnson vaccine is actually manufactured and produced with an aborted fetal cell line, PER.C6, which is derived from the retinal tissue of a fetus that was aborted in 1986.

https://www.gmp-creativebiolabs.com/per-c6-cell-lines_74.htm
https://www.janssen.com/emea/emea/janssen-vaccine-technologies

Ms. Masciarelli objects to injecting a vaccine that was developed from aborted fetal cell lines into her body. She objects to taking any part in a medical product that exploits an innocent life, and cannot receive a product that is complicit with the abortion industry.

Ms. Masciarelli rejects all vaccines because she believes that God is the sole arbiter of life and that He is the Healer. She has stated that her trust lies in God and not in manmade immunizations.

### The DOE arbiter's denial at the hearing violates federal and state law.

Ms. Masciarelli has properly expressed and detailed her bona fide sincere religious beliefs in her letter and at the hearing. The arbiter's denial at the hearing violates federal and state law. It is well settled law that the arbiter's purpose as the SAMS hearing is not to determine the accuracy or verity of Ms. Masciarelli's religious beliefs. See *Thomas v. Rev. Bd. Of Ind. Emp. Sec. Div.,* 450 U.S. at 716.

In this case, the DOE attorney incorrectly made a determination on whether Ms. Masciarelli's beliefs were incorrect or wrong when she stated attempted to debunk Ms. Masciarelli's assertion of the attenuation of aborted fetal cells to the Moderna and the Pfizer vaccines. Ms. Briskowski's purpose was not to determine whether Ms. Masciarelli's religious beliefs were correct or wrong. Whether a person's religious belief is true or false is irrelevant to judicial determination as long as the belief is sincerely held. *US v Ballard, 322 U.S. 78 (1944)*. Ms. Briskowski's <u>only</u> purpose was to determine the sincerity of Ms. Masciarelli's beliefs, which here, among other things, are whether she sincerely believed that vaccines contain fetal cells. Under federal law, Ms. Masciarelli's sincerity is presumed. *Moussazadeh v. Tx. Dep't of Criminal Just.,* 703 F.3d 781, 790 (5th Cir. 2012). Ms. Briskowski's attempt to "correct" Ms. Masciarelli's religious beliefs is in violation of federal and state law and her denial must be overturned.

The DOE attorney also violated federal law when she gave deference to the Roman Catholic Church's position on the morality of the COVID-19 vaccines in determining whether Ms. Masciarelli's sincerely held her religious beliefs. Specifically, Ms. Briskowski stated that "Catholic leadership has come out in public support of receiving the vaccine". It is important to note here, that Ms. Masciarelli is not only entitled to her own interpretation of Scripture, but that she has in fact complied with the Church's directive to examine her conscience and discern what God's will for her is. Nonetheless, under federal and state law, what a pope or any other religious leader says is irrelevant when it comes to religious beliefs that the government must respect: "*the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect.*" *Thomas v. Rev. Bd.,* 450 U.S. at 715-16. *Nor are appellants required to make their religious beliefs "acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection. Id* at 714; see also *Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. at 531*.

Accordingly, the denial of Ms. Masciarelli's request for reasonable religious accommodation violates federal and state law and must be overturned.

## **Conclusion**

Ms. Masciarelli's religious beliefs are sincere. She explained that as a Catholic, her personal interpretation of the Bible forbids her to expose her blood to the ingredients in the vaccines which include aborted fetal cells and that she also opposes the vaccines on the premise that they betray her faith in God since all vaccines seek to displace her trust in God.

The legal standard for protection from religious discrimination under Title VII of the Civil Rights Act of 1964 is a sincere and genuine religious belief. *United States v. Seeger,* 380 U.S. 163, 185 (1965). *See also*, *Rivera v. Choice Courier Sys.*, 2004 U.S. Dist. LEXIS 11758, at *15 (S.D.N.Y. 2004) ("A Court's limited role in determining whether a belief is 'religious' is the same under Title VII as it is under the Free Exercise Clause of the First Amendment"). The Supreme Court of the United States instructs that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. at 531.

Whether the DOE or anyone else for that matter agrees with Ms. Masciarelli on her religious beliefs cannot be taken into account, it is irrelevant. She has taken the time and commitment to educate herself on not only the COVID-19 vaccines, but all vaccines. In fact, both of Ms. Masciarelli's daughters were granted religious exemptions at their schools. She believes that receiving any vaccine including the COVID-19 vaccine is a sin against God. It is her sincere and genuine religious beliefs that prohibit her from being able to receive these vaccines. "The validity of what [s]he believes cannot be questioned." *See Seeger*.

Please accept this notice of our intention to pursue all legal remedies on behalf of Ms. Masciarelli for the discrimination against her based on her religious beliefs. Ms. Masciarelli's religious beliefs are protected under Section 291 of New York Human Rights Law, and federal protection under Title VII of the Civil Rights Act of 1964 and the First Amendment of the United States Constitution. The continued denial of my client's religious exemption is a willful deprivation of her civil rights and *per se* discrimination against her on the basis of her religious beliefs. Ms. Masciarelli's religious exemption request must be granted to preserve her federal and state rights and to ensure the DOE's compliance with the law.

Very truly yours,
/s/
Giulia Miller, Esq

9