UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LORRAINE MASCIARELLI,

                    Plaintiff,        **INDEX NO. 22-cv-7553**

           -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                    Defendant.
-------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S
MOTION TO DISMISS**

THE SCHER LAW FIRM, LLP
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................. i

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................. 1

POINT I.    STANDARD OF REVIEW FOR A MOTION TO DISMISS
..................................................................................................... 3

POINT II.    PLAINTIFF'S TITLE VII CAUSE OF ACTION
SURVIVES THE DEFENDANT'S MOTION TO DISMISS
..................................................................................................... 5

A.   Plaintiff's *Prima Facie* Case ................................................................... 7

B.   Defendant's Undue Burden Explanation Does Not Survive *Groff* .................... 8

C.   Blanket And Unsupported Statement Of Undue Burden Was
Pretext For Religious Discrimination ........................................................ 14

POINT III.    PLAINTIFF'S FIRST AMENDMENT CLAIM FOR
VIOLATION OF THE PLAINTIFF'S RIGHT TO FREELY
EXERCISE HER RELIGION SURVIVES THE
DEFENDANT'S MOTION TO DISMISS ........................................... 18

POINT IV.    THE COURT SHOULD GRANT LEAVE FOR THE
PLAINTIFF TO FILE AN AMENDED COMPLAINT TO
CORRECT ANY DEFICIENCIES IN THE COMPLAINT ................ 21

CONCLUSION ..................................................................................................... 22

<h1 style="text-align: center">TABLE OF AUTHORITIES</h1>

**Cases**

*Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986) ..................................... 12

*Estate of Anglade v. Am. Airlines Group Inc.*, 2021 US Dist LEXIS 256919, at *7-8 (E.D.N.Y. 2021) (Amon, J.) ......................................................................... 4

*Groff v. DeJoy*, 2023 U.S. LEXIS 2790, at *28-31 (2023) .............................. 10, 11, 13

*Johnson v. New York City,* 2023 NYLJ LEXIS 1470, *3 (Sup. Ct. N.Y. County 2023) ............................................................................................ 14, 18

*Kane v. DeBlasio*, 19 F.4th 152 (2d Cir. 2021) ........................................................... 19

*Kennedy v. Bremerton Sch. Dist.*, __ U.S. __, 142 S Ct 2407, 2421 (2022) ............... 20

*Labarbera v. New York City Department of Education*, New York State Supreme Court, Richmond County, Index Number 85001/2023 ................................. 15

*Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir 2006) ........................ 1, 2, 3, 14

*Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo,* 49 PERB P4560 (2016); *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.,* 75 N.Y.2d 660, 671 (1990) ......................................................................................................................... 2

*Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999) .................................................. 2

*Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978) ......................................... 19, 21

*New Yorkers for Religious Liberty, Inc., et al. v. The City of New York, et al.,* Eastern District of New York, Docket Number 2022-cv-00752 ......................... 3, 19, 22

*NY City Mun. Labor Comm. v. City of NY*, 2021 NY Slip Op 32051[U]. * 3 (Sup. Ct., NY County 2021) .................................................................................... 1

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir 1998) ........... 1, 2, 3, 14

*Philbrook v Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir 1985) ........................... 9

*Siddiqi v. NY City Health & Hosps. Corp.*, 572 F.Supp.2d 353, 369 (S.D.N.Y. 2008) ........................................................................................................ 8

*Thevenin v. Cooper*, 2020 US Dist LEXIS 267098, at \*5 (E.D.N.Y. 2020) (Amon, J.) ................................................................................................................. 4

*Vega v Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir 2015) ..................................................................................................................... 5

*Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019) ................................................................................................................ 23

**Statutes**

N.Y. Civil Service Law § 209.3.f ................................................................................ 2

**Other Authorities**

https://www.ca2.uscourts.gov/decisions/isysquery/a49f5526-3c0e-4874-a8df-7921ec8eb6b7/510/doc/21-3043%2C%2021-3047-.mp3, at the 55-minute mark of the audio recording .............................................................. 8

https://www.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (visited June 29, 2023) ............................... 14

**Regulations**

NYC Administrative Code § 8-107.28(a)(1) ............................................................ 17

NYC Administrative Code § 8-107.3.(b) ................................................................. 15

This Memorandum of Law is submitted by the Plaintiff LORRAINE MASCIARELLI ("Plaintiff") in opposition to the Motion to Dismiss filed by the Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("Defendant").

The Defendant has a well-documented history of religious intolerance towards employees who sought a religious accommodation for the COVID-19 Vaccine Mandate. The Plaintiff did not stand a chance of receiving a reasonable accommodation based upon her religion in violation of Title VII and the Free Exercise clause of the First Amendment.

First, the original incarnation of the Vaccine Mandate Order issued by the Commissioner of the New York City Department of Health and Mental Hygiene ("Commissioner of NYC DOHMH") did not contain any exemptions or accommodations for religious objectors. *See,* **Exhibit A**, a copy of the August 24, 2021 Order of the Commissioner of NYC DOHMH.[1] It took a lawsuit by New York City's public employees' unions to force the NYC DOHMH to revise the Vaccine Mandate Order to include exceptions for religious accommodations. *See, NY City Mun. Labor Comm. v. City of NY*, 2021 NY Slip Op 32051[U]. * 3 (Sup. Ct., NY County 2021) (stating that "The day following the issuing of the TRO, September 15, 2021, the Commissioner of Health and Mental Hygiene rescinded and restated the DOHMH's prior orders dated August 24, 2021, and September 12, 2021, to include the following clarifying language: "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."").

Second, while the second incarnation of the Vaccine Mandate Order had an exemption for religious objections to the vaccine, the Defendant made it clear to the Plaintiff's union, the United

---

[1] The Plaintiff asks the Court to take judicial notice of this document filed in *Broecker, et al. v. New York City Department of Education, et al.*, E.D.N.Y. Docket Number 21-cv-06387, Docket Entry No. 21.1, at pages 42-45. *See, Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir 2006) (holding "we nevertheless find no error in the district court's reliance on the *Ziemba* docket sheet because … docket sheets are public records of which the court could take judicial notice…."). *See also, Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir 1998) (holding "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.").

Federation of Teachers ("UFT") during negotiations over the impasse in the implementation of the Vaccine Mandate Order that

> there can be no exceptions to the mandate – medical, religious or otherwise. In the latest bargaining session held on August 30, 2021, the City detailed how far the new policy goes in punishing teachers who may, through no fault of their own, be unable to take the vaccine.
>
> … Educators who have a legitimate religious exemption will also not be accommodated and will not even be permitted to use accrued sick time. They will be limited to other accrued time (according to the BOE, because they are not sick) and then also stripped of pay and benefits. Those who choose not to vaccinate for other sincerely held reasons will be placed on immediate unpaid leave without health insurance for an indeterminate period of time.

**Exhibit B**, a copy of the Declaration of Impasse issued by the UFT, at page 6.[2]

The Defendant's bargaining position that those employees with religious objections to the COVID-19 vaccine will be punished, placed on immediate leave without health insurance and without pay was actually the manner in which the COVID-19 vaccine mandate was implemented even after the illegal arbitration award issued by Martin Scheinman allegedly resolved the impasse in negotiations between the Defendant and the UFT.[3]

The Defendant practiced what it preached!

In *New Yorkers for Religious Liberty, Inc., et al. v. The City of New York, et al.,* Eastern District of New York, Docket Number 2022-cv-00752, New York City's ("NYC") witness testified

---

[2] The Plaintiff asks the Court to take judicial notice of this document filed in *Broecker, et al. v. New York City Department of Education, et al.*, E.D.N.Y. Docket Number 21-cv-06387, Docket Entry No. 21.1. *See, Mangiafico v. Blumenthal*, 471 F.3d at 398; *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d at 75.

[3] N.Y. Civil Service Law § 209.3.f. does not permit a school district (Defendant) to resolve an impasse in negotiations with its public employees' union through arbitration. Only through negotiations at the bargaining table can a school district resolve an impasse in negotiations. *See, Matter of Greenburgh No. 11 Federation of Teachers v. Greenburgh No. 11 Union Free School District*, 32 PERB P3024 (1999); *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016); *Board of Education of City School Dist. v. New York State Public Employment Relations Bd.*, 75 N.Y.2d 660, 671 (1990).

that out of roughly 3,200 accommodation requests that were processed by the Citywide Panel that reviewed accommodation requests to the City, roughly 100 were granted, with 80 to 85 percent of the appeals being religious reasonable accommodation requests. *See,* **Exhibit C**, deposition transcript of Eric Eichenholtz, dated May 24, 2022, at page 32, line 8 through page 33, line 5.[4]

From the very beginning of the COVID-19 Vaccine Mandate process, the Defendant and NYC has had a bias, prejudice against, and intolerance towards religious people who sought, requested, and required an exemption from the COVID-19 vaccine.

The Plaintiff was harmed by the deliberate, discriminatory, and prejudicial pre-determined decision not to grant the Plaintiff a religious accommodation for the COVID-19 vaccine, which ultimately led to the Plaintiff's termination from her employment with the Defendant.

As discussed at length in this Memorandum of Law and as fully pled in the Plaintiff's Complaint (**Docket Entry No. 1**), the Plaintiff has stated a plausible claim for religious discrimination pursuant to Title VII and stated a plausible claim for a violation of her First Amendment right to exercise her religion freely.

As a result, the Defendant's Motion to Dismiss should be denied.

## POINT I.     STANDARD OF REVIEW FOR A MOTION TO DISMISS

In *Estate of Anglade v. Am. Airlines Group Inc.*, 2021 US Dist LEXIS 256919, at *7-8 (E.D.N.Y. 2021) (Amon, J.), this Court held:

> To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comm'ns*, 493 F.3d at 98 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see*

---

[4] The Plaintiff asks the Court to take judicial notice of this document. *See, Mangiafico v. Blumenthal*, 471 F.3d at 398; *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d at 75.

*also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns,* 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

In *Thevenin v. Cooper*, 2020 US Dist LEXIS 267098, at *5 (E.D.N.Y. 2020) (Amon, J.), this Court stated:

> To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Thevenin must have alleged "sufficient factual matter" to "nudge[]" her claims "across the line from the conceivable to plausible." Ashcroft v. Iqbal, 556 U.S. 662, 680, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Court must dismiss the complaint if its "well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct . . . ." Id. at 679. The Court also is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678. Although the Court must adopt all factual allegations, even the "doubtful" ones, Twombly, 550 U.S. at 555, it does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action," Iqbal, 556 U.S. at 678. "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Wilson v. Kellogg Co., 628 F. App'x 59, 60 (2d Cir. 2016) (summary order) (quoting Allen v. WestPoint—Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991)).

The Plaintiff has alleged sufficient facts that on the face of the Complaint sets forth plausible claims against the Defendant. Accordingly, the Defendant's Motions to Dismiss should be denied.

**POINT II.** **PLAINTIFF'S TITLE VII CAUSE OF ACTION SURVIVES THE DEFENDANT'S MOTION TO DISMISS**

In *Vega v Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir 2015), the Court opined:

> Under *Iqbal* and *Twombly*, then, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.
>
> The question remains as to what "plausibility" means in the context of employment discrimination claims....
>
> Because discrimination claims implicate an employer's usually unstated intent and state of mind, *see Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), rarely is there "direct, smoking gun, evidence of discrimination," *Richards v. N.Y.C. Bd. of Educ.*, 668 F. Supp. 259, 265 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 1288 (2d Cir. 1988). Instead, plaintiffs usually must rely on "bits and pieces" of information to support an inference of discrimination, *i.e.*, a "mosaic" of intentional discrimination. *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998), *abrogated in part on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1988). Again, as we made clear in *Littlejohn*, at the initial stage of a litigation, the plaintiff's burden is "minimal" -- he need only plausibly allege facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." 2015 U.S. App. LEXIS 13475, 2015 WL 4604250, at *8.
>
> Finally, courts must remember that "[t]he plausibility standard is not akin to a "probability requirement."'" *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage . . . ."). *Littlejohn*, 2015 U.S. App. LEXIS 13475, 2015 WL 4604250, at *7. On a motion to dismiss, the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of

unlawful discrimination, *i.e.*, whether plaintiffs allege enough to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 678-80.

Accordingly, to defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision. As we have long recognized, the ""ultimate issue" in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," *i.e.*, a discriminatory reason." *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997) (quoting *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997)). A plaintiff can meet that burden through direct evidence of intent to discriminate, *see, e.g., Stratton*, 132 F.3d at 878 & n.4, or by indirectly showing circumstances giving rise to an inference of discrimination, *see, e.g. Tolbert v. Smith*, 790 F.3d 427, 436-37 (2d Cir. 2015). A plaintiff may prove discrimination indirectly either by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was pretext to cover" up discrimination, *see, e.g., Fisher v. Vassar Coll.*, 114 F.3d 1332, 1334 (2d Cir. 1997) (en banc), *cert. denied*, 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998), or by otherwise creating a "mosaic" of intentional discrimination by identifying "bits and pieces of evidence" that together give rise to an inference of discrimination, *Gallagher*, 139 F.3d at 342. At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination. *See Littlejohn*, 2015 U.S. App. LEXIS 13475, 2015 WL 4604250, at *7 (requiring facts "suggesting an inference of discriminatory motivation").

The Plaintiff has met her burden to state a plausible claim for religious discrimination pursuant to Title VII (42 U.S.C. § 2000e).

There can be no dispute that but-for the Plaintiff's bona fide religious belief that conflicted with the COVID-19 vaccine mandate, the Plaintiff would not have been suspended without pay and/or terminated. There is a direct causal connection between the Plaintiff's bona fide religious

belief and the Defendant's refusal to grant any accommodation to the Plaintiff for that bona fide religious belief. As a result of the Defendant's refusal to grant the accommodation, the Plaintiff was suspended without pay and the Defendant terminated her employment.

The fact that the Defendant: (1) originally did not have any accommodations for religious objections to the COVID-19 vaccine (**Exhibit A**); (2) when it negotiated with the UFT, it told the UFT that there would be no accommodations or exemptions for religious objections (**Exhibit B**, at page 6); and (3) in practice, out of 3,200 accommodation requests that were processed by the Citywide Panel that reviewed accommodation requests to the City, roughly 100 were granted, with 80 to 85 percent of the appeals being religious reasonable accommodation requests (*see,* **Exhibit C**, at page 32, line 8 through page 33, line 5),[5] is either direct evidence of discrimination against the Plaintiff based upon her religious objection to the COVID-19 vaccine or reflects indirect evidence of discrimination. In any event, these three indisputable facts give rise to a plausible inference of discrimination against the Plaintiff.

Accordingly, the Defendant's Motion to Dismiss must be denied.

### A.    Plaintiff's *Prima Facie* Case

> In order to make a prima facie case of discrimination, a plaintiff must show that (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement.

*Siddiqi v. NY City Health & Hosps. Corp.*, 572 F.Supp.2d 353, 369 (S.D.N.Y. 2008).

---

[5] In arguments before the Second Circuit Court of Appeals on February 24, 2022 in *Keill v. The City of New York*, Docket Number 21-3043, it was discussed that the NYCDOE has 147,000 employees, 99.3% of the employees were vaccinated, leaving 0.7% unvaccinated or 1,029 employees. Judge Walker questioned why accommodating employees' religious accommodations was an undue burden when there may be an ability to accommodate the 1,029 employees. *See,* https://www.ca2.uscourts.gov/decisions/isysquery/a49f5526-3c0e-4874-a8df-7921ec8eb6b7/510/doc/21-3043%2C%2021-3047-.mp3, at the 55-minute mark of the audio recording.

The Plaintiff has pled that she has a bona fide religious belief that conflicts with the COVID-19 vaccine. *See,* **Docket Entry No. 1,** at ¶¶ 13 and 21; *see also,* **Docket Entry No. 1-3;** **Docket Entry No. 1-6.** The Defendant does not challenge the Plaintiff's allegation that she has a bona fide religious belief that conflicts with the COVID-19 vaccine.

The Plaintiff informed the Defendant of her bona fide religious belief. *See,* **Docket Entry No. 1,** at ¶ 22. *See also,* **Docket Entry No. 1-3.** The Defendant does not dispute that it had actual knowledge of the Plaintiff's bona fide religious belief.

The Plaintiff was suspended without pay and ultimately terminated from her employment for not complying with the COVID-19 vaccine, a conflicting employment requirement. *See,* **Docket Entry No. 1,** at ¶¶ 23 and 24. The Defendant does not deny that she was suspended and ultimately terminated from her employment because she did not take a COVID-19 vaccine.

Accordingly, the Plaintiff has set forth a *prima facie* case for religious discrimination under Title VII.

**B.    Defendant's Undue Burden Explanation Does Not Survive *Groff***

In *Philbrook v Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir 1985), the Court opined:

> The parties assume and we agree that Title VII requires the plaintiff to make out a prima facie case of discrimination, after which the burden shifts onto the employer to show that it cannot reasonably accommodate the plaintiff without undue hardship on the conduct of the employer's business.

The Defendant never tried to accommodate the Plaintiff, arguing that any accommodation would be an "undue hardship (i.e. more than minimal burden)." **Docket Entry No. 1-4.**

The Defendant denied the Plaintiff's request for an accommodation by stating

[p]er the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

**Docket Entry No. 1-4.**

In addition, the City of New York Reasonable Accommodation Appeals Panel rejected the Plaintiff's appeal of her denial of a religious accommodation by stating:

> [t]he decision classification for your appeal is as follows: DOE has demonstrated that it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in-person learning.

**Docket Entry No. 1-8.**

However, in examining the Plaintiff's reasonable accommodation request, the Defendant failed to meet the burden set forth in the recent United States Supreme Court decision in *Groff v. DeJoy*, __ U.S. __ (June 29, 2023), which held:

> 'undue hardship' is shown when a burden is substantial in the overall context of an employer's business. See Tr. Of Oral Arg. 61-62 (argument of Solicitor General). This fact-specific inquiry comports with both *Hardison* and the meaning of 'undue hardship' in ordinary speech.
>
> … [undue hardship] means something more than *de minims, i.e.,* something that is "very small or trifling." Black's Law Dictionary, at 388. So considering ordinary meaning while taking *Hardison* as a given, we are pointed something closer to *Hardison*'s references to "substantial additional costs" or "substantial expenditures." 432 U.S., at 83, n. 14.
>
> …[A]n employer must show that the burden of granting an accommodation would result in substantial increased costs in

relation to the conduct of its particular business. *Hardison*, 432 U.S., at 83, n. 14.

… [C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, "size and operating cost of [an] employer." Brief for United States 40 (internal quotation marks omitted).

*Groff v. DeJoy*, 2023 U.S. LEXIS 2790, at *28-31 (2023).

The Defendant's decision to deny the Plaintiff's request for a reasonable accommodation for her bona fide religious belief was not based upon an examination of the additional costs or substantial expenditures the Defendant would have incurred if the Defendant granted the Plaintiff's reasonable accommodation.[6] It was based solely on "a direct threat to health and safety." **Docket Entry No. 1-4**.

In fact, the Defendant stated that the undue burden was "more than a minimal burden" (**Docket Entry No. 1-4**), which after *Groff*, is the wrong standard.

The Defendant cannot now supplement its reasons for denying the Plaintiff's request for a reasonable accommodation because it would be mere speculation as to what the other reasons were for the denial of the accommodation. Using hindsight to explain the denial of the accommodation would reflect the weakness in the undue burden determination.

The Defendant's counsel, however, without offering any evidence (documentary or testimonial) to support what the undue burden would have been on the Defendant as a result of the Plaintiff's reasonable accommodation request, using hindsight, seeks to supplement the reasons that nowhere exist in the determinations made by the Defendant and the City. *See,* **Docket Entry**

---

[6] When examining the costs to the Defendant, the Defendant should be required to explain why the Defendant's employees facing disciplinary charges in "rubber rooms" can be paid in full for long, extended periods of time, but the Plaintiff was immediately suspended without pay when the employees in the "rubber room" were permitted to sign in remotely, some from foreign countries. The cost of the "rubber rooms" versus allowing the Plaintiff to stay on paid leave must be part of any analysis of undue burden. *See,* **Exhibit G**, a copy of the N.Y. Post article entitled "Idled NYC Educators Do Nothing But Sign In Remotely, Even From Europe", January 14, 2023.

**No. 1-4; Docket Entry No. 1-8**. The Defendant's counsel is merely speculating outside the four corners of the Defendant's contemporaneous reason for denying the Plaintiff's reasonable accommodation request. The Court should reject the new reasons for denying the requested reasonable accommodation raised for the first time in the Defendant's Motion to Dismiss.

The Defendant argues that

> [t]he accommodation that defendant considered but was unable to provide due to an undue hardship was another worksite where plaintiff would not have contact with students, employees and families. See id. Defendant had over 3,300 DOE staff who requested religious accommodations and DOE school programs are conducted in person (except for a small program for medically fragile students), therefore creating alternative assignments outside of school buildings would cause the defendant to bear significant and unreasonable costs and ultimately an undue hardship.

Yet, this is speculation and supposition because, unless the Defendant's counsel participated in the denial of the Plaintiff's reasonable accommodation request, the Defendant's counsel does not have personal knowledge as to why the Plaintiff's request for an accommodation was denied.

In *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986), the Court held:

> We find no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation. By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation. The employer violates the statute unless it "demonstrates that [it] is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U. S. C. § 2000e(j). Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship. As *Hardison* illustrates, the extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship. Once the Court of Appeals assumed that the school board

had offered to Philbrook a reasonable alternative, it erred by requiring the Board to nonetheless demonstrate the hardship of Philbrook's alternatives.

In this case, the Defendant did not offer any accommodation to the Plaintiff for her bona fide religious beliefs. The failure to offer any accommodation places the Defendant's alleged undue hardship at issue. Since the Defendant's explanation that the undue hardship was "the need for a safe environment for in-person learning" (**Docket Entry No. 1-4**) the alternative of testing (which system existed before the COVID vaccine mandate was implemented (*see*, **Exhibit B**, at pages 4-5) could have been a reasonable accommodation that would have maintained a safe environment for in-person learning. **Docket Entry No. 1-8**; *see also*, **Exhibit D**. But the Defendant did not offer that option to the Plaintiff.

The Defendant, in its denials of the Plaintiff's reasonable accommodation request (**Docket Entry No. 1-4** and **Docket Entry No. 1-8**) does not meet the *Groff* standard of undue burden, which required the Defendant to establish that the Plaintiff's request accommodation, namely not to be vaccinated, "would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 2023 U.S. LEXIS 2790, at *32.

Since the Defendant's determination that it would have been an undue burden for the Defendant to grant the Plaintiff an accommodation of not taking the COVID-19 vaccine contains no reasoning or basis for the denial sufficient for the Court to make the "fact-specific inquiry" into whether the accommodation would have created an undue hardship by becoming a burden that was "substantial in the overall context of an employer's business", the Plaintiff has pled a plausible claim for a violation of Title VII when the Defendant denied the Plaintiff a reasonable accommodation based upon the undue burden standard. *Groff v. DeJoy*, 2023 U.S. LEXIS 2790.

Finally, the Defendant may argue in reply that granting the Plaintiff an accommodation of not taking the COVID-19 vaccine was not an option because it risked the health and safety of the students, employees, and families of the Defendant. The Plaintiff strenuously disagrees with the argument for two reasons.

First, the employees of the New York Police Department who applied for religious accommodations were permitted to work and stay on payroll until the accommodation request was determined and could "submit to weekly testing while their applications were pending." *Johnson v. New York City,* 2023 NYLJ LEXIS 1470, *3 (Sup. Ct. N.Y. County 2023). The Defendant does not explain or argue why a weekly testing regiment, like the one deployed for the employees of the New York Police Department, could not be granted to the Plaintiff.

The Plaintiff also does not explain the fact that NYC stated, on October 28, 2021, that a testing regiment was a reasonable accommodation, yet the Plaintiff was not granted a testing option as a reasonable accommodation. The City told its employees on October 28, 2021:

> The determination of what accommodation, if any, is appropriate must be evaluated given the needs of the job, the level of contact with the public, etc. Mindful that the City has determined that it is important at this time to have as many staff as possible returning to work in the office, accommodations other than telework must be considered. The primary accommodation from the vaccination mandate that will not cause undue hardship and/or disruption is weekly testing and submission of negative PCR results. While this accommodation is available for most positions, there will be a few positions, particularly those with significant close and prolonged public contact where even weekly testing may cause an undue hardship and/or direct threat and leave may be the only available reasonable accommodation.

**Exhibit D**, a copy of the City's statement entitled "Applying for a Reasonable Accomodation from the COVID-19 Vaccine Mandate (Revised 10/28/2021) (found at https://www.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (visited June 29, 2023).[7]

The City's own statement makes clear that the testing protocol was both reasonable and not an undue burden. There is no reason why the Plaintiff could not have been offered testing as an accommodation, except for an intentional policy set forth by the Defendant to discriminate against the Plaintiff based upon religious beliefs. *See,* **Exhibit A**; **Exhibit B**, at page 6; **Exhibit C**, at page 32, line 8 through page 33, line 5.

---

[7] The Plaintiff asks the Court to take judicial notice of this document. *See, Mangiafico v. Blumenthal*, 471 F.3d at 398; *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d at 75.

Second, on February 10, 2023, the City ended the COVID-19 Vaccine Mandate for all of the City's employees, including the employees of the Defendant. *See,* **Exhibit E**, a copy of the Mayor's February 6, 2023 Press Release.[8]

If current employees of the Defendant who do not have a COVID-19 vaccine can "have contact with students, employees and families" (Defendant's Memorandum of Law In Support, at page 10), why could the Plaintiff not have contact with the same people while testing for COVID during the 2021-2022 school year? The fact that the vaccine is no longer a condition of employment for Defendant's employees reflects that there was an accommodation that could have been granted to the Plaintiff, but the Defendant did not provide the accommodation because of religious discrimination.

Accordingly, the Plaintiff has set forth sufficient allegations to state a plausible claim for a violation of Title VII. The Defendant's Motion to Dismiss must be denied.

## C.    Blanket And Unsupported Statement Of Undue Burden Was Pretext For Religious Discrimination

In *Labarbera v. New York City Department of Education*, New York State Supreme Court, Richmond County, Index Number 85001/2023 (**Exhibit F**)[9] the Court, examining the Defendant's denial of a religious exemption to the COVID-19 vaccine based upon "undue hardship" stated:

> The DOE's denial of the Petitioner's religious reasonable accommodation request only stated that they "[could not] offer another worksite as an accommodation as that would impose an undue hardship (i.e., more than a minimal burden) on the DOE and its operations." The DOE also directly violated the New York City Human Rights Law by failing to engage in a cooperative dialogue with the Petitioner at any point regarding an accommodation to satisfy the essential requisites of his job. At no point from the Fall of 2021 until the Petitioner was terminated in the Fall of 2022 did the DOE attempt to discuss, explain, or negotiate this undue

---

[8] The Plaintiff asks the Court to take judicial notice of this document. *See, Mangiafico v. Blumenthal*, 471 F.3d at 398; *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d at 75.

[9] The Plaintiff requests the Court take judicial notice of this Court decision. *See, Mangiafico v. Blumenthal*, 471 F.3d at 398; *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d at 75.

hardship with the Petitioner. The Petitioner had to be informed by a union representative that she was unable to even appeal her denial.

Citing an "undue hardship" is not a sufficient explanation for the denial of a reasonable accommodation. This generic denial continues to appear in various cases across the City regarding reasonable accommodation requests, with no explanations or reasoning being provided by City agencies to the Petitioners in these cases, including this Petitioner, as to what the potential undue burden or undue hardship is that their individual reasonable accommodations would present. *See DePaola v New York City Fire Dept,* Index No. 85265/2022, decision dated March 27, 2023; *Rivicci v New York City Fire Dept.,* 2022 NY Slip Op 34070[U] (Sup Ct, Richmond County 2022, Index No. 85131/2022). In their papers, the DOE points specifically to NYC Administrative Code 8-107(ii) to support their position that granting this Petitioner a reasonable accommodation would create an undue hardship. This section highlights "the number of individuals who will need the particular accommodation to a sincerely held religious observance or practice" as a factor to be considered in determining whether an accommodation constitutes an undue economic hardship. The DOE's argument here is that the cumulative effect that granting this type of religious exemption would create the undue hardship on their operations. However, none of this was communicated to the Petitioner by the DOE at the time she made her request. The Petitioner was told two pieces of information in her denial. The first was that pursuant to the vaccine mandate she could not work in a DOE school setting or site where she would be in contact with students, families, or members of the public. The second was that another worksite could not be offered because it would impose an undue hardship, explained as "more than a minimal burden," on the DOE. Therefore, this Court cannot, and will not, speculate as to whether NYC Administrative Code 8-107(ii) was even considered by the DOE when making their decision on the Petitioner's request. See *Schiefer v Bd. Of Educ. of the City of New York, et al,* Index no. 155983/2022 decision dated October 4, 2022.

The Plaintiff in this Action seemingly received the same denial of her request for religious accommodation as did the plaintiff in *Labarbera. See,* **Docket Entry No. 1-4; Docket Entry No. 1-8**.

The Plaintiff's denial, similarly, does not state that the Defendant took into consideration NYC Administrative Code § 8-107.3.(b) which states:

"Reasonable accommodation", as used in this subdivision, shall mean such accommodation to an employee's or prospective employee's religious observance or practice as shall not cause undue hardship in the conduct of the employer's business. The employer shall have the burden of proof to show such hardship. "Undue hardship" as used in this subdivision shall mean an accommodation requiring significant expense or difficulty (including a significant interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system). Factors to be considered in determining whether the accommodation constitutes an undue economic hardship shall include, but not be limited to:

(i)   The identifiable cost of the accommodation, including the costs of loss of productivity and of retaining or hiring employees or transferring employees from one facility to another, in relation to the size and operating cost of the employer;

(ii)   The number of individuals who will need the particular accommodation to a sincerely held religious observance or practice; and

(iii)   For an employer with multiple facilities, the degree to which the geographic separateness or administrative or fiscal relationship of the facilities will make the accommodation more difficult or expensive.

Provided, however, an accommodation shall be considered to constitute an undue hardship, for purposes of this subdivision, if it will result in the inability of an employee who is seeking a religious accommodation to perform the essential functions of the position in which the employee is employed.

The Defendant denied the Plaintiff an opportunity of working from home instead of taking the COVID-19 vaccine, but did not address the reasonable accommodation of weekly testing for COVID-19 that was part of the Defendant's original mandate for City employees. *See,* **Exhibit B,** at page 6. In addition, the City recognized that testing was a reasonable accommodation that did not create an undue hardship. *See,* **Exhibit D.**

The Defendant does not explain how weekly testing would have been an economic undue hardship as defined by the New York City Administrative Code as applied to the Plaintiff, but for other City employees, testing was a reasonable accommodation that did not create an undue hardship. *See,* **Exhibit D.** *See, Johnson v. New York City,* 2023 NYLJ LEXIS 1470, *3.

It can be inferred from the Defendant's arbitrary and capricious denial of the Plaintiff's request for an accommodation that religious discrimination was at the heart of the denial and not an undue hardship.

In addition, NYC Administrative Code § 8-107.28(a)(1) required the Defendant to "engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation … [f]or religious needs …."

The Defendant did not engage in any cooperative dialogue with the Plaintiff in violation of the New York City Human Rights Law.

Accordingly, while the Defendant relies upon the "undue burden" standard, the Defendant failed to comply with the New York City Human Rights Law with respect to the undue burden standard – first by not properly and thoroughly explaining how the Plaintiff's request was an undue burden; and second, by not participating in the cooperative dialogue to find a reasonable accommodation.

Finally, in practice, the Defendant did not accommodate religious objectors to the COVID-19 vaccine.

In testimony in the *New Yorkers for Religious Liberty, Inc., et al. v. The City of New York, et al.*, Eastern District of New York, Docket Number 2022-cv-00752, the City's witness testified that out of roughly 3,200 accommodation requests that were processed by the Citywide Panel that reviewed accommodation requests to the City, roughly 100 were granted, with 80 to 85 percent of the appeals being religious reasonable accommodation requests. *See,* **Exhibit C,** at page 32, line 8 through page 33, line 5.

This testimony reflects a policy and practice of not granting accommodations for religious objections to the COVID-19 vaccine mandate. *See, Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978).

Therefore, the Plaintiff has pled a plausible claim for religious discrimination based upon the weakness in the Defendant's explanation of undue burden as the basis for denying the Plaintiff a religious accommodation, which resulted in the Plaintiff's suspension without pay and termination.

**************

The Defendant's Motion to Dismiss should be denied.

**POINT III.  PLAINTIFF'S FIRST AMENDMENT CLAIM FOR VIOLATION OF THE PLAINTIFF'S RIGHT TO FREELY EXERCISE HER RELIGION SURVIVES THE DEFENDANT'S MOTION TO DISMISS**

The Defendant's whole defense to the Plaintiff's First Amendment claim is the holding *Kane v. DeBlasio*, 19 F.4th 152 (2d Cir. 2021).

However, in 2022, after the *Kane* decision, the United States Supreme Court held in *Kennedy v. Bremerton Sch. Dist.*, __ U.S. __, 142 S Ct 2407, 2421 (2022) that

> Under this Court's precedents, a plaintiff bears certain burdens to demonstrate an infringement of his rights under the Free Exercise and Free Speech Clauses. If the plaintiff carries these burdens, the focus then shifts to the defendant to show that its actions were nonetheless justified and tailored consistent with the demands of our case law.
>
> …The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. Amdt. 1. This Court has held the Clause applicable to the States under the terms of the Fourteenth Amendment. *Cantwell* v. *Connecticut*, 310 U. S. 296, 303, 60 S. Ct. 900, 84 L. Ed. 1213 (1940). The Clause protects not only the right to harbor religious beliefs inwardly and secretly. It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through "the performance of (or abstention from) physical acts." *Employment Div., Dept. of Human Resources of Ore.* v. *Smith*, 494 U. S. 872, 877, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990).

*Kennedy* stands for the proposition that the Free Exercise clause protects the Plaintiff from abstaining from taking the COVID-19 vaccine (a physical act) based upon her religious beliefs. *Kane* pre-dates *Kennedy*. *Kennedy*, not *Kane* is the proper standard by which this Court should examine the Plaintiff's claims.

When the Defendant suspended without pay and ultimately terminated the Plaintiff for abstaining from taking the COVID-19 vaccine based upon her long-held and bona fide religious beliefs, the Defendant violated the Plaintiff's constitutional rights under the Free Exercise clause.

The Defendant essentially told the Plaintiff if you want to exercise your religious beliefs and not take the COVID-19 vaccine, you do so at your peril, namely you will be suspended without pay and terminated from your employment. This Hobbesian choice is a violation of the Free Exercise clause of the United States Constitution as interpreted after the *Kennedy* decision.

The Plaintiff chose the exercise of her religion over her job with the public entity, the Defendant, which she had every right to do. The fact that she was suspended without pay and terminated for her choice of picking her religious beliefs over her job was a deprivation of her First Amendment right to freely exercise her religion.

Finally, the Defendant argues that the Plaintiff's First Amendment claim asserted pursuant to 42 U.S.C. § 1983 must be dismissed because the Plaintiff does not allege a plausible claim under *Monell v. Dept. of Social Servs.*, 436 U.S. 658. The Defendant is wrong.

The Defendant had a public policy that was discriminatory against, and intolerant towards, religious objectors to the COVID-19 vaccine and this policy can be reflected in three particular instances.

First, the original incarnation of the Vaccine Mandate Order did not contain any exemptions or accommodations for religious objectors. *See,* **Exhibit A**. This document reflects a hostile policy against those City employees, like the Plaintiff, who objected to the COVID-19 vaccine based upon religious grounds. The absence of an exception reveals the policy decision by the City to be

intolerant to the free exercise of religion in an effort to compel compliance with the vaccine mandate.

Second, the Plaintiff's own union, the UFT in negotiations with the Defendant stated that the Defendant had a policy of not granting religious exemptions for the COVID-19 vaccine. As the Defendant told the UFT during negotiations

> there can be no exceptions to the mandate – medical, religious or otherwise. In the latest bargaining session held on August 30, 2021, the City detailed how far the new policy goes in punishing teachers who may, through no fault of their own, be unable to take the vaccine.
>
> … Educators who have a legitimate religious exemption will also not be accommodated and will not even be permitted to use accrued sick time. They will be limited to other accrued time (according to the BOE, because they are not sick) and then also stripped of pay and benefits. Those who choose not to vaccinate for other sincerely held reasons will be placed on immediate unpaid leave without health insurance for an indeterminate period of time.

**Exhibit B**, at page 6.

The Defendant's bargaining position against the UFT showed the Defendant's stated policy was intolerant to the free exercise of religion and the Defendant had the stated intent of denying religious exemptions all in an effort to compel compliance with the COVID-19 vaccine mandate, even though employees, like the Plaintiff, had religious objections to the vaccine. The Defendant made it clear that it did not intend to permit the free exercise of religion as a matter of policy.

Third, in practice the Defendant failed to provide accommodations to most of the employees who objected to the vaccine. In *New Yorkers for Religious Liberty, Inc., et al. v. The City of New York, et al.,* Eastern District of New York, Docket Number 2022-cv-00752, the NYC's witness testified that out of roughly 3,200 accommodation requests that were processed by the Citywide Panel that reviewed accommodation requests to the City, roughly 100 were granted, with

80 to 85 percent of the appeals being religious reasonable accommodation requests. *See,* **Exhibit C**, at page 32, line 8 through page 33, line 5.

This pitiful statistic reflected not only a policy of intolerance towards the free exercise of religion but a practice of intolerance. The Plaintiff did not stand a chance to obtain a religious accommodation because it was the policy and practice of the City and the Defendant not to grant religious accommodations.

As a result, the Plaintiff has plausibly pled a 42 U.S.C. § 1983 claim against the Defendant for a violation of the Plaintiff's First Amendment right to freely exercise her religion. Accordingly, the Defendant's Motion to Dismiss should be denied.

## POINT IV. THE COURT SHOULD GRANT LEAVE FOR THE PLAINTIFF TO FILE AN AMENDED COMPLAINT TO CORRECT ANY DEFICIENCIES IN THE COMPLAINT

The Plaintiff requests that, if the Court is inclined to dismiss any of the Plaintiff's causes of action, the Court grant the Plaintiff an opportunity to amend her Complaint to cure any defects in the pleading that the Court believes that the Plaintiff can make such that a Complaint would survive dismissal. *See, Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019).

## CONCLUSION

For the reasons argued in this Memorandum of Law and in the Plaintiff's Complaint, the Defendant's Motion to Dismiss should be denied.

Dated:        Garden City, New York
                July 14, 2023

                                      Respectfully submitted,

                                        THE SCHER LAW FIRM, LLP

                                        Austin Graff
                                        *Attorneys for Plaintiff*
                                        600 Old Country Road, Suite 440
                                        Garden City, New York 11530
                                        (516) 746-5040