UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------x
                                        22-CV-7553(CBA)
LORRAINE MASCIARELLI,
                                        United States Courthouse
          Plaintiff,                    Brooklyn, New York

          -versus-                      September 06, 2023
                                        2:00 p.m.
NEW YORK CITY DEPARTMENT OF
EDUCATION,

          Defendant.

------------------------------x

          TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
             BEFORE THE HONORABLE CAROL B. AMON
             UNITED STATES SENIOR DISTRICT JUDGE


APPEARANCES


For the Plaintiff:      BY:  AUSTIN GRAFF, ESQ.


For the Defendant:      BY:  DONALD SULLIVAN, ESQ.
                             MATHEW JOHN, ESQ.
                             ANDREA MARTIN, ESQ.



Court Reporter:         Rivka Teich, CSR, RPR, RMR, FCRR
                        Phone:  718-613-2268
                        Email:  RivkaTeich@gmail.com

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

ORAL ARGUMENT

```
 1              (In open court.)

 2              THE COURTROOM DEPUTY:  All Rise.  This is

 3    Masciarelli vs. New York City Department of Education, docket

 4    22-CV-7553, on for an oral argument on defendant's motion to

 5    dismiss.

 6              Can I ask the parties to please state their

 7    appearances starting with counsel for the defendant, please.

 8              MR. SULLIVAN:  Good afternoon, your Honor.  From the

 9    Office of the Corporation Counsel, Donald C. Sullivan.  Your

10    Honor, may I introduce my colleagues.  They are experienced

11    but not yet admitted to this Court.

12              THE COURT:  Sure.

13              MR. JOHN:  Good afternoon, your Honor.  Matthew

14    John, assistant corporation counsel.

15              MS. MARTIN:  Good afternoon, your Honor.  Andrea

16    Martin, assistant corporation counsel.

17              THE COURT:  When are your gentleman and lady going

18    to be admitted to our Court?

19              MR. JOHN:  Unsure, your Honor.

20              MR. SULLIVAN:  I understand they started the

21    paperwork, your Honor.  It's a bureaucratic thing --

22              THE COURT:  I just wanted to make sure that the corp

23    counsel wasn't discriminating against the Eastern Districts.

24              MR. SULLIVAN:  Understood, your Honor.  Thank you.

25              THE COURT:  Okay.  And for plaintiff?
```

ORAL ARGUMENT

1        MR. GRAFF:  Good afternoon, your Honor.  Austin

2   Graff from the Scher Law Firm.  I also have with me Lorraine

3   Masciarelli, the plaintiff herself.

4        THE COURT:  All right.  Everyone can be seated.

5        This is a motion to dismiss.  Defendant want to be

6   heard?

7        MR. SULLIVAN:  Thank you, your Honor.  Our basic

8   argument, your Honor, is that the mandate has been upheld by

9   numerous courts including the Second Circuit, including an

10  Article 78 Court that resolved the case brought by this

11  plaintiff, then petitioner.

12        THE COURT:  What effect does that have?  You said it

13  was -- there was an Article 78 proceeding that decided the

14  issue against the plaintiff here?

15        MR. SULLIVAN:  Yes, your Honor.  That Court -- it

16  was not dispositive of the issue currently before your Honor.

17  Ms. Masciarelli had not pled religious discrimination there.

18  However, the Court did uphold a vaccine mandate as a condition

19  of employment.

20        THE COURT:  Okay.  Go ahead.

21        MR. SULLIVAN:  Thank you.  Courts including the

22  Second Circuit have upheld the mandate as neutral and

23  generally applicable.

24        THE COURT:  That's *Kane*, correct?

25        MR. SULLIVAN:  Yes, your Honor.

1          THE COURT:  All right.  So that is -- you say *Kane*

2    is dispositive of the free exercise claim?

3          MR. SULLIVAN:  Yes, your Honor.

4          THE COURT:  All right.  But that's not the only

5    claim, correct?

6          MR. SULLIVAN:  Correct, your Honor.  Plaintiff is

7    also seeking -- she's got a claim of religious discrimination

8    and failure to accommodate.  We believe both claims have been

9    addressed by the Courts prior to this.  And the mandate has

10   been upheld consistently, your Honor.

11         THE COURT:  Well, in terms of the failure to

12   accommodate, which case dealt with that?

13         MR. SULLIVAN:  I would point to *Kane* also on that,

14   your Honor.

15         THE COURT:  Go ahead.

16         MR. SULLIVAN:  I have a note.  *Kane* said that an

17   accommodation would cause -- could cause undue hardship or

18   results in a more than a de minimis cost.

19         THE COURT:  Well, that's not the standard any longer

20   though, correct?

21         MR. SULLIVAN:  Correct, your Honor.

22         THE COURT:  Substantial, since *DeGroff*, is the

23   higher standard.  So that case doesn't really govern, right?

24         MR. SULLIVAN:  *Correct, your Honor.  I started to*

25   *say -- and I know plaintiff's opposition raised the DeGroff*

1  case.  And our reply papers pointed out that *DeGroff* -- even

2  applying *DeGroff*, there is evidence in the record that shows

3  we meet that standard, your Honor.

4          THE COURT:  With respect to which accommodation

5  though?  The working from home accommodation or --

6          MR. SULLIVAN:  I would submit both, your Honor.

7  We've explained that there were so many teachers who wanted to

8  work from home, that was not a realistic alternative available

9  to us.

10         And then with respect to the vaccine mandate, at the

11 time, your Honor, testing was -- prior to the mandate, testing

12 was an option.  But once testing became available, then the

13 mandate required it because, again, in plaintiff's particular

14 position, she was a teacher, and she would be teaching young

15 students, many of whom would not be eligible for the vaccine

16 and would -- transmission to family would be --

17         THE COURT:  What about testing and masking?  Why

18 wouldn't that have been a reasonable accommodation?

19         MR. SULLIVAN:  Well, again, your Honor, given the

20 situation of her teaching young students, we felt that the

21 risk is too great and courts have --

22         THE COURT:  Was that requested or actually ruled

23 upon though?  Was there a request made?  Were there

24 accommodation of testing and masking?

25         MR. SULLIVAN:  I'll have to search my memory, your

1    Honor.  I don't recall at the moment the standard.  But I

2    would -- but I would say again that, you know, had it been

3    made, would have been well appropriate for us to deny it,

4    given the situation at the time.

5            THE COURT:  Is that something that can be decided on

6    the face of the complaints, that that would have been too

7    great a hardship?  I mean, it wasn't requested here, and they

8    actually didn't rule on it, right?

9            Did they have the -- did you have the responsibility

10   to consider it and rule on it in terms of that interactive

11   process?

12           MR. SULLIVAN:  It wasn't requested, your Honor.  I

13   would not put that responsibility on us.  But, again, I keep

14   bringing it back to it still was not a realistic alternative,

15   given the plaintiff's position.

16           THE COURT:  What position was that?

17           MR. SULLIVAN:  As a teacher of young students.

18           THE COURT:  What was her -- what are you contending

19   was her specific subject?

20           MR. SULLIVAN:  She was just an elementary school

21   teacher.  I'm not saying a particular subject.  I'm saying --

22           THE COURT:  She was an elementary school teacher.

23           MR. SULLIVAN:  The students that she was teaching

24   were not yet eligible for vaccines.

25           THE COURT:  Okay.  Let me hear from plaintiff's

1  counsel.

2        MR. GRAFF:  Thank you, your Honor.  The plaintiff

3  was denied a religious accommodation for the COVID-19 vaccine

4  mandate because of anti-religious animus and that can be shown

5  in three ways.

6        First, the original --

7        THE COURT:  Is this the free exercise claim you're

8  making?  When you say animus, which claim are you talking

9  about?

10        MR. GRAFF:  I'm sorry.  It's both the discrimination

11  claim and the First Amendment because it goes to the pretext

12  for the undue burden and also goes --

13        THE COURT:  I mean, in terms of the 1983 action, the

14  free exercise, why isn't *Kane* dispositive of your case?

15        MR. GRAFF:  I think *Kane* actually helps in the

16  Second Circuit.

17        THE COURT:  How is that?

18        MR. GRAFF:  The Second Circuit's decision says that

19  the arbitration ward and accommodation standards were, and I

20  quote on page 22, "We have great doubts about whether the

21  accommodation standards are consistent with the bedrock First

22  Amendment principle.  They provide that extension requests for

23  recognized and establish religious organizations, and that

24  request shall be denied when the leader of a religious

25  organization has spoken publicly in favor of the vaccine with

1  the documentations readily available, e.g. from an online

2  source, or where the objections of a personal, political, or

3  philosophical nature."

4          The Court went on to say that in denying an

5  individual a religious accommodation based on someone else's

6  publicly expressed religious views, even the leader of her

7  faith, runs afoul to the Supreme Court's teaching that it is

8  not within the judicial ken to question the centrality of

9  particular beliefs or practices to a faith or the validity of

10  particular litigants.

11          THE COURT:  Well, no, but that just means that you

12  shouldn't go behind someone's expression that -- their reason

13  for doing it, that it's religious.  You shouldn't go behind

14  that and determine whether it is a valid or not valid

15  religious question.

16          But *Kane* says that they still have to prove.

17  Doesn't relieve the individual of the obligation to comply

18  with the valid and neutral law of general applicability.  And

19  *Kane* found that the vaccine mandate was a valid and neutral

20  law of general applicability.

21          MR. GRAFF:  But your Honor --

22          THE COURT:  That seems dispositive of your first

23  amendment -- of your first free exercise claim.

24          MR. GRAFF:  Your Honor, but the issue is not the

25  vaccine mandate.  The issue is how it was applied.  And in

1    *Kane*, the second department, says that as applied to

2    plaintiffs --

3              THE COURT:  *Kane* is Second Circuit, not second

4    department.

5              MR. GRAFF:  Oh, I'm sorry.  Second Circuit.

6              As applied to the plaintiffs, it was not neutral.

7    And that's on page 23 of -- I'm sorry -- 167.  It also says it

8    was not generally applicable to all those seeking religious

9    accommodation.  It also says that the plaintiffs have thus

10   shown that they are likely to succeed on their claim that the

11   arbitration award procedures, as applied to them, were not

12   generally applicable.  That's the Second Circuit.

13             So the vaccine mandate itself is separate and apart

14   from the procedures applied to the plaintiff when she made her

15   request for accommodation.  And the request for accommodation

16   only looked at one request, which wasn't even made by the

17   plaintiff.  The plaintiff asked not to be vaccinated.  All

18   they looked at is whether she could work from home.  There was

19   no interactive process.  There was no consultation.

20             THE COURT:  Well, what she had -- they indicated

21   that her working -- did she request to work from home?

22             MR. GRAFF:  No.  She requested no vaccine.  Every --

23   my understanding is every accommodation request only looked at

24   whether the employee can stay home and work.  It did not

25   consider testing and masking.  And the reason is, is because

1   when --

2           THE COURT:  Did she request testing and masking?

3           MR. GRAFF:  She requested not to take the vaccine.

4   But there was no opportunity for her to make a request and

5   interact with the people making the decision regarding her

6   accommodation request.  It was all on paper.

7           THE COURT:  Her accommodation request was simply, "I

8   don't want to take the vaccine, then"?

9           MR. GRAFF:  Correct.

10          THE COURT:  That's not an accommodation request.

11  That's just, "I don't want to comply."

12          MR. GRAFF:  That begins the process.  That should

13  have begun a process that would have led to determining what

14  was an accommodation that was reasonable under the

15  circumstances.

16          Under the New York City Human Rights Law, they had

17  an obligation to do the interactive process, and they did not

18  do that.

19          THE COURT:  What about under Title VII?

20          MR. GRAFF:  With respect to Title VII, she had a

21  bona fide religious belief, which was known to the city, and

22  conflicted with an employment requirement, the vaccine.  She

23  informed the defendant, her employer, of her belief.  She was

24  disciplined, which was placed on leave without pay, and then

25  ultimately terminated from her employment for failing to

1   comply with the conflicting employment requirement.

2          THE COURT:  What grade did she teach?

3          THE PLAINTIFF:  At the time, Judge, I taught

4   physical education preK through five.  However, I am

5   permanently certified in New York state to teach kindergarten,

6   first grade, second grade, third grade, fourth grade, fifth

7   grade, sixth grade, seventh grade, eighth grade, ninth grade,

8   tenth grade, eleventh grade, twelfth grade physical education

9   as well as special education.  I'm also certified --

10         THE COURT:  Let me just indicate at the time that

11  you were working and you refused to take the vaccine, what

12  were you teaching then?

13         THE PLAINTIFF:  At that time I was teaching preK

14  through five physical education.

15         THE COURT:  So preK through fifth grade physical

16  education.

17         THE PLAINTIFF:  Yes.

18         THE COURT:  Okay.

19         THE PLAINTIFF:  But I'm certified to teach all these

20  other grades.

21         THE COURT:  Okay.

22         MR. GRAFF:  So the plaintiff can meet the prima

23  facie case for a Title VII.  The burden then shifts to the

24  defendant to say undue burden.  The testing request for an

25  accommodation, the defendants say, cannot be fulfilled because

1  the vaccine mandate actually said that teachers --

2  unvaccinated teachers could not be in the classroom with their

3  students.  That shows their animus towards religious --

4  towards religion.

5          THE COURT:  Why?

6          MR. GRAFF:  Because the same entity that created the

7  first mandate that had no religious exemption is the same

8  entity that said you have to -- you can't be in the classroom

9  if you're unvaccinated.  They said that the public employer --

10          THE COURT:  What does the statement that she can't

11  be in the classroom if you're not vaccinated, what does that

12  have to do with religion one way or the other?

13          MR. GRAFF:  Because it's set up for there could

14  never be an accommodation.  The first vaccine mandate said no

15  exemption.  Then the public employer union said, We're going

16  to take you to court.  And they backed down.  They had the

17  exemption.  But the exemption was just in words only because

18  the accommodation that they only examined was to work from

19  home, which they said was an undue burden.  It's circular

20  logic.  You can never get an accommodation.

21          Out of 3,200 people who applied, only 100 people

22  were given the accommodation.  80 to 85 percent of those

23  requests were for religious emptions.  And we don't have to

24  stand here and prove our case.  It's a plausibility standard.

25  And I think, based upon the allegations in the complaint, that

1   we've met that standard.

2           THE COURT:  Tell me what you believe -- the causes

3   of action that you believe your complaint sets forth because

4   it's not real clear reading your complaint.  What are the

5   causes of -- just stick with the federal causes of action.

6           MR. GRAFF:  Title VII religious discrimination and

7   First Amendment, free exercise cause of action.

8           THE COURT:  Okay.  And there's no diversity here,

9   correct?  So assuming that there are no federal claims, then

10  the state claims -- you do have state claims?

11          MR. GRAFF:  We have not pled any state claims.

12          THE COURT:  Oh.  I thought you were talking a minute

13  ago about what the New York human rights law said.

14          MR. GRAFF:  That's the standard that they should

15  have applied as when they were determining whether there

16  should have been a reasonable accommodation.  It's their own

17  standard set forth in their own city code.

18          THE COURT:  And what is that?

19          MR. GRAFF:  That they had to perform an interactive

20  process to determine what a reasonable accommodation could

21  have been for her requested accommodation.

22          THE COURT:  And there was no interactive process.

23          MR. GRAFF:  There was no interactive process.

24          THE COURT:  She never requested any specific

25  accommodation?  Is that what you're saying?  She never

1    requested to work from home?

2            MR. GRAFF:  No.  She requested that she not be

3    vaccinated.

4            THE COURT:  That's not an accommodation.

5            MR. GRAFF:  But that would have started an

6    interactive process.  And the only thing that they looked at

7    the defendant was could she stay home, and she couldn't

8    because they say it was an undue burden because too many

9    people made the request.

10            THE COURT:  Well, why is that problem?  I mean, why

11    isn't that a valid undue burden?  In other words, if everybody

12    stayed home, you don't have a school system.  So why is

13    staying home, particularly when you're a gym teacher, not a

14    problem?  Why wouldn't that be an undue burden on the system?

15            MR. GRAFF:  It may have, but there were other forms

16    of accommodation like masking and testing that could have been

17    granted to her.  They did not examine that as an undue burden.

18            THE COURT:  It was their responsibility to raise it

19    and examine it?

20            MR. GRAFF:  If they had the interactive process, it

21    may have been raised by the plaintiff, and then they could

22    have determined whether that accommodation was an undue

23    burden.

24            THE COURT:  Thank you.

25            MR. GRAFF:  Thank you, your Honor.

1    MR. SULLIVAN:  Your Honor, just to address that, my

2    understanding is the plaintiff appealed the denial and then

3    appealed the citywide panel.  Certainly had an opportunity to

4    present any other options that she wanted us to consider,

5    but --

6    THE COURT:  Well, did you engage -- do you agree

7    that you have to engage in an interactive process, and did you

8    do that?

9    MR. SULLIVAN:  Well, we did, your Honor.  We

10   considered the possibility of placing plaintiff in a work from

11   home setting or alternate setting.  We explained to her that

12   would be undue burden.

13   THE COURT:  Well, what about -- did you ever

14   consider the testing and masking?

15   MR. SULLIVAN:  Well, if I may, I was going to point,

16   your Honor, to where we, in our reply papers, discuss the

17   testing and masking and why that wouldn't work.  And I can --

18   THE COURT:  No, but was it ever -- forget about your

19   reply papers.  Was it ever discussed at the time?

20   MR. SULLIVAN:  I would have to get back to you on

21   that, your Honor.  I apologize.

22   THE COURT:  Why wouldn't that at least have the

23   potential to work?  Testing and masking.  She wore a mask in

24   class, she was tested every day.

25   MR. SULLIVAN:  And that's where I would point to our

1  reply papers.  There's a lengthy quotation from a Court on

2  page 7 of our reply papers.  I can read it as much as your

3  Honor wants me to into the record now.

4        Case is Maniscalco vs. Department of Education, 563

5  F. Supp. 3d 33.  I'm reading from pages 39 to 40.

6        The Court said, "Ultimately, even if plaintiffs

7  disagree with it, the order at issue represents a rational

8  policy decision surrounding how best to protect children

9  during a global pandemic.  Although the plaintiffs argue that

10  there are other proven methods of preventing the spread of

11  COVID-19 in schools, among them frequent testing and mask

12  wearing, it is not shocking for the city to conclude that

13  vaccination is the best way to do so, particularly at a time

14  when viral transmission rates are so high."

15        THE COURT:  Well, that was a different -- that

16  statement was in a different context.  Wasn't there an equal

17  protection claim?  And that was whether there was a rational

18  basis for that -- that's different from an interactive process

19  and whether that would have been accommodation.  They weren't

20  talking about whether that was a reasonable accommodation in

21  that case, correct?

22        MR. SULLIVAN:  Understood, your Honor.  But I was

23  just pointing to what your Honor -- I was having difficulty

24  trying to explain to you the concerns we had about masking.

25  And it ties into what plaintiff was saying now about the

1    interactive process.  I think this sums up what the issues

2    were with masking and testing.

3           If I may, your Honor, the same quotation goes on to

4    say:  The CDC recommended vaccination of school teachers and

5    staff as soon as possible because vaccination is -- and

6    quoting from the CDC's decision -- "most critical strategy to

7    help schools safely resume full operation.  It is the leading

8    public health prevention strategy to end the COVID-19

9    pandemic."

10          THE COURT:  So testing and masking doesn't work in

11   your view, you would argue, because children under 12 at the

12   time were not vaccinated?

13          MR. SULLIVAN:  Yes, your Honor.

14          THE COURT:  And it wasn't sufficient to stop the

15   spread to those children?

16          MR. SULLIVAN:  Yes, your Honor.  And obviously the

17   children would potentially spread it to their families.

18          THE COURT:  Let me ask plaintiff's counsel, why

19   wouldn't that, then, not be a reasonable accommodation?

20          MR. GRAFF:  No other school district in the state

21   had a vaccine mandate.  All other schools that I'm aware of --

22   and I represent school --

23          THE COURT:  We're not talking about the vaccine

24   mandate now.  We're past the vaccine mandate.  The vaccine

25   mandate has been upheld.  The question is why isn't it -- why

1  haven't they shown it would be a substantial burden to do the

2  testing and masking, because at preschool, masking and testing

3  doesn't protect the -- wouldn't adequately protect the

4  children, who were unvaccinated.

5       MR. GRAFF:  That's hindsight.  At the time when the

6  plaintiff made her application, that wasn't considered.  Right

7  now we're standing in 2023.  An undue burden looking backwards

8  is different than what happened at the time.  The only thing

9  we should be looking at is what happened at the time.

10      And the fact that the commissioner of health said

11  that vaccine is the best method and that unvaccinated cannot

12  be in schools shows that there was never a chance for a

13  religious person to get an accommodation because there was no

14  way to accommodation that person.

15      THE COURT:  Well, if the religious person had been a

16  teacher of history in 12th grade, and that could have been

17  done by Zoom as opposed to a phys. ed. teacher when the

18  children were old enough to be vaccinated, why wouldn't that

19  have worked?

20      MR. GRAFF:  Because they did not consider what she

21  what they taught in determining the accommodation.  Nowhere in

22  the papers does it say she's a gym teacher and that's why

23  we're not granting it to her.  It's a general denial because

24  of undue burden.

25      THE COURT:  There is no finding in the record one

1    way or the other with respect to the plaintiff that testing

2    and masking wouldn't work, right?

3            MR. SULLIVAN:  Not pertaining to the individual

4    plaintiff no, your Honor.

5            THE COURT:  So it wasn't -- no one suggested that

6    they didn't address that, correct?

7            MR. SULLIVAN:  I didn't follow your question.  I

8    apologize.

9            THE COURT:  It just didn't come up in plaintiff's

10   case.  It wasn't suggested or analyzed as a reasonable

11   accommodation.

12           MR. SULLIVAN:  I don't want to go that far, your

13   Honor.  I know that plaintiff never presented it to us --

14           THE COURT:  Let me ask you the next question.  In

15   this interactive process, does plaintiff have to request it

16   before you consider it?  Or are you supposed to consider other

17   options yourself in terms of --

18           MR. SULLIVAN:  Again, we considered another option,

19   and the other option was to work from home.  The plaintiff is

20   now asking us to consider additional options.

21           THE COURT:  No.  But back in the time, were you

22   required to sua sponte, if you will, consider other options

23   such as testing and masking?

24           MR. SULLIVAN:  I did not understand that to be

25   defendant's burden, your Honor.  And I would point out that

1    plaintiff's counsel talked about what he referred to as the

2    after-the-fact evidence, and the decision that I just read

3    from is from 2021, your Honor.

4              THE COURT:  Counsel, when you were reading from the

5    *Kane* decision, what -- there were a number of *Kane* decisions.

6    What was the site from the case you were reading from?

7              MR. GRAFF:  19 F.4th 152, Second Circuit,

8    November 22, 2021.

9              THE COURT:  All right.  Thank you, ladies and

10   gentlemen.  I'll reserve decision.

11             MR. GRAFF:  Thank you, your Honor.

12             MR. SULLIVAN:  Thank you, your Honor.

13             (Whereupon, the matter was concluded.)

14                      *    *    *    *    *

15   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

16

17   */s/ Rivka Teich*
     Rivka Teich, CSR RPR RMR FCRR
18   Official Court Reporter
     Eastern District of New York

19

20

21

22

23

24

25