UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LORRAINE MASCIARELLI,

               Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

               Defendant.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
22-CV-7553 (CBA)

**AMON, United States District Judge:**

        Plaintiff Lorraine Masciarelli ("Masciarelli" or "Plaintiff") is a former Physical Education Teacher who was employed by the New York City Department of Education ("NYCDOE" or "Defendant") from September 2000 to September 5, 2022, when she was dismissed for failing to become vaccinated against COVID-19, pursuant to a NYCDOE mandate. Following her termination, Masciarelli filed this action against the NYCDOE, seeking relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1983 alleging violations of her right to Free Exercise under the First Amendment of the United States Constitution.[1] Masciarelli alleges that her termination for refusing to receive a COVID-19 vaccine constituted religious discrimination by the NYCDOE against her Roman Catholic beliefs. Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

---

[1] Masciarelli's Complaint is not a model of clarity. Assisted by the parties' briefs and statements at oral argument, I have extracted what I believe to be the claims she is bringing. Although as Defendant points out it is true that 42 U.S.C. § 1983 is not an independent cause of action (ECF Docket Entry ("D.E.") # 21-1 ("Def. Mot.") 17), see, e.g., Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999), granting Masciarelli's Complaint the deference that it is due, I infer that she intended to bring a section 1983 claim alleging a violation of her Free Exercise rights. Masciarelli also purports to request punitive damages, but it is well-established that municipalities are immune from punitive damages under section 1983, see City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), and they are also immune from punitive damages under Title VII, see 42 U.S.C. § 1981a(b)(1). Finally, at oral argument, counsel for Plaintiff Masciarelli stated that Plaintiff had "not pled any state claims," despite the references to the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") that appear in her Complaint. (Oral Argument Transcript 13:2-13.) Based on counsel's clear statement at oral argument, I deem any state-law claims Masciarelli purported to bring waived and do not address them herein.

1

For the reasons set forth below, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are taken from Masciarelli's Complaint and the accompanying exhibits and are assumed true for purposes of this motion. I draw all reasonable inferences in Masciarelli's favor. <u>Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.</u>, 517 F.3d 104, 115 (2d Cir. 2008).

On August 24, 2021, then-Commissioner of the New York City Department of Health and Mental Hygiene David A. Chokshi issued an order (the "vaccine mandate") requiring that NYCDOE employees be vaccinated against the COVID-19 virus. (D.E. # 1 ("Complaint" or "Compl.") Ex. I ("Arbitration Award" or "Award") 4.[2]) The order stated that NYCDOE employees would need to show by September 27, 2021 that they had begun the vaccination protocol. If they failed to do so, they would not be permitted to access NYCDOE premises, not be compensated by the NYCDOE, and be at risk of job loss and loss of benefits. (<u>Id.</u>) The original order did not expressly provide for religious accommodations for individuals with sincerely held religious objections to vaccination. (<u>Id.</u>)

In response, on September 1, 2021, the United Federation of Teachers ("UFT") filed a formal objection to the vaccine mandate, and the UFT entered into mediation with New York City. (<u>Id.</u> 5.) The process then moved to arbitration. (<u>Id.</u>) On September 10, 2021, an independent arbitrator issued the Arbitration Award, which set forth standards for determining and appealing religious accommodations for the vaccine mandate. (<u>See generally</u> Arbitration Award.) The Arbitration Award provided that NYCDOE employees could request a religious accommodation

---

[2] Hereinafter, all documents cited as "Ex. __" refer to exhibits to the Complaint and page number citations are to the ECF pagination.

by submitting a request that is "documented in writing by a religious official." (Id. 11.) The Award stated that "[e]xemption requests shall be considered for recognized and established religious organizations." (Id.) Employees seeking accommodations would receive an "initial determination of eligibility" from the NYCDOE, and could then appeal that determination to a panel of arbitrators. (Id. 11-12.) Any unvaccinated employees who had their accommodation request denied could be placed on leave without pay ("LWOP") status effective September 28, 2021, and could be "unilaterally separate[d]" by the NYCDOE beginning December 1, 2021. (Id. 15, 19.)[3]

Masciarelli, a former Physical Education Teacher, was hired by the NYCDOE in September 2000. (Compl. ¶ 9.) She declined to become vaccinated against COVID-19, despite the NYCDOE mandate. (Id. ¶ 11.) In a letter, Masciarelli requested a religious accommodation exempting her from the vaccine mandate. (Id. ¶ 13; Ex. C ("Accommodation Letter").) She requested an exemption because she, as a practicing Catholic, "firmly believe[s] that God is the sole arbiter of life" and that "[i]f He wants to heal, he will." (Accommodation Letter 3.) She also expressed a belief that the COVID-19 vaccines were developed using "aborted fetal cells" and that "[Roman Catholics] are not supposed to mix our blood with anything whatsoever, not chemicals, not animals and certainly not aborted fetal tissue." (Id. 4.) She wrote in her letter that she would "never take another vaccination in [her] life." (Id. 3.)

On September 21, 2021, the NYCDOE denied Masciarelli's accommodation request because she could not "work in a . . . DOE building or other site with contact with DOE students,

---

[3] I note that the Second Circuit held that certain elements of the Arbitration Award "likely violated the First Amendment" as applied to a set of plaintiffs on narrow grounds and after the City conceded that the original Accommodation Standards were "constitutionally suspect." Kane v. de Blasio, 19 F.4th 152, 162, 167 (2d Cir. 2021). But these practices were corrected after the Second Circuit ordered religious accommodations requests to be considered by a citywide panel adhering to the standards set out in Title VII of the Civil Rights Act of 1964. Id. at 162. To the extent Masciarelli's counsel relied on this decision during Oral Argument, these procedures were revised by the time Masciarelli was terminated.

3

employees, or families without posing a direct threat to health and safety." (Ex. D ("Accommodation Denial") 2.) The NYCDOE said it could not offer "another worksite as an accommodation" because that would impose "an undue hardship" (defined by the NYCDOE at that time as "more than a minimal burden") on the NYCDOE and its operations. (Id.)

Masciarelli appealed this determination, supplementing her appeal with a letter from an attorney outlining her objection to the COVID-19 vaccines and the allegedly "perfunctory" denials she had received in response to her religious accommodation requests. (See Ex. G ("Attorney Letter") 2-3.) The Reasonable Accommodation Appeals Panel (the "Citywide Panel") denied Masciarelli's appeal on February 15, 2022, having determined that "DOE has demonstrated that it would be an undue hardship to grant this accommodation to appellant given the need for a safe environment for in-person learning." (Ex. H ("Appeal Determination") 2.) Masciarelli subsequently submitted a Charge of Discrimination to the United States Equal Employment Opportunity Commission ("EEOC") in which she claimed she was denied "a reasonable accommodation of a workplace remote from students, similar to the location at which [she] worked during the pandemic." (Ex. A ("EEOC Charge") 4.)[4] The EEOC closed her charge and issued a right to sue letter on September 25, 2022 because the NYCDOE "ha[d] successfully illustrated that the granting of your requested accommodation would have been more than a minimal hardship under the circumstances." (Ex. B ("EEOC Denial") 4.) In the interim, Masciarelli was terminated by the NYCDOE on September 5, 2022 for failing to become vaccinated against COVID-19. (Compl. ¶ 24.) Masciarelli then filed the instant action on December 13, 2022.[5]

---

[4] As far as can be gleaned from the filings, this is the first instance, at least in writing, of Masciarelli referencing a specific accommodation she apparently sought from the NYCDOE, apart from a blanket exemption to becoming vaccinated against COVID-19. Masciarelli apparently did not specifically request an accommodation of mask-wearing and frequent testing for the COVID-19 virus at the time, although she references the potential accommodation of a testing regime in her briefing. (See D.E. # 22-8 ("Pl. Opp'n") 16-17, 20.)

[5] Defendant points out that Masciarelli filed a parallel claim in state court alongside an Article 78 petition, which was dismissed. (Def. Mot. 9-10.)

4

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A complaint will be dismissed unless the plaintiff states a claim that is "plausible on its face" by alleging sufficient facts for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must dismiss a claim if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id. at 679. Although courts will not credit "conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action," id. at 678, I must accept as true all material factual allegations and draw all reasonable inferences in the plaintiff's favor. Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013).

**DISCUSSION**

For the reasons set forth below, Defendant's motion to dismiss is GRANTED IN PART with prejudice and DENIED IN PART.

**I.  Free Exercise**

Masciarelli first brings a claim under 42 U.S.C. § 1983 alleging a violation of the Free Exercise Clause of the First Amendment.[6] She argues that when the NYCDOE suspended her

---

[6] Defendant is correct that, in order to hold the NYCDOE, a municipal department, liable under section 1983, Masciarelli must plead that the alleged deprivation of her Free Exercise right was "caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). Defendant is incorrect that Masciarelli's claim fails because she has "identified only one person—herself—and [] therefore cannot credibly contend that she has identified a municipal custom." (Def. Mot. 18.) Viewing Masciarelli's Complaint in the light most favorable to her, as I am required to do, shows that Masciarelli has pled that a municipal policy—the vaccine mandate—rather than an unwritten custom, was the alleged source of the deprivation of her Free Exercise rights. (See Compl. ¶ 24 ("[T]he NYCDOE terminated the Plaintiff's employment for not becoming vaccinated with a COVID-19 vaccine, which would have conflicted with her sincerely held religious beliefs.").) Masciarelli argues that there was a "policy and practice of not granting accommodations for religious objections to the COVID-19 vaccine mandate" to satisfy her obligation under Monell (Pl. Opp'n 21), but for the sake of simplicity, and deferring to the allegations present on the face of Masciarelli's Complaint, I proceed on the assumption that Masciarelli challenges the vaccine mandate itself as the policy that allegedly violated her Free Exercise rights.

without pay and ultimately terminated her for abstaining from becoming vaccinated, "the Defendant violated [her] constitutional rights under the Free Exercise Clause." (Pl. Opp'n 23.) The Free Exercise Clause protects an individual's private right to religious belief, as well as "the performance of (or abstention from) physical acts that constitute the free exercise of religion." Kane, 19 F.4th at 163-64 (internal quotation marks omitted). But this protection "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." Id. at 164 (citing Emp. Div., Dep't of Hum. Res. Of Oregon v. Smith, 494 U.S. 872, 879 (1990)). If a law is found to be both neutral and generally applicable, it is analyzed under the deferential rational basis review standard, "even if enforcement of the law incidentally burdens religious practices." Kane v. de Blasio, 623 F. Supp. 3d 339, 354 (S.D.N.Y. 2022) (internal quotation marks omitted) (quoting Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d Cir. 2002)).

Masciarelli does not grapple with neutrality or general applicability in her Opposition, and Defendant is correct that the Second Circuit in Kane effectively decided this issue when examining the very same vaccine mandate applied to NYCDOE employees, finding that the mandate, "in all its iterations, is neutral and generally applicable." 19 F.4th at 164. The policy is therefore subject to rational basis review.

"Rational basis review requires the [NYCDOE] to have chosen a means for addressing a legitimate goal that is rationally related to achieving that goal." Kane, 19 F.4th at 166. As the Second Circuit held in Kane, the vaccine mandate clearly satisfies this deferential standard because it was a reasonable exercise of the power to protect the public health during the COVID-19 pandemic. Id.

6

Relying on the Supreme Court's decision in Kennedy v. Bremerton School District, 597 U.S. 507 (2022), Masciarelli argues that "Kennedy stands for the proposition that the Free Exercise clause protects the Plaintiff from abstaining from taking the COVID-19 vaccine (a physical act) based upon her religious beliefs." (Pl. Opp'n 23.)  The Free Exercise does clause "protect the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'"  Kennedy, 597 U.S. at 524 (quoting Employment Division, 494 U.S. at 877).  But as the Second Circuit wrote in Kane, "[t]he City is not threatening to vaccinate Plaintiffs against their will and despite their religious beliefs" and "Plaintiffs are not required to perform or abstain from any action that violates their religious beliefs."  19 F.4th at 171-72.  Accordingly, Defendant did not violate her Free Exercise rights by imposing the vaccine mandate.[7]

## II.   Religious Discrimination for Failure to Accommodate

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., prohibits discrimination in employment on the basis of religion.  Specifically, employers may not "fail or refuse to hire or [] discharge any individual, or otherwise [] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  The statute provides that "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  Defendant argues that it is unclear whether Masciarelli intended

---

[7] To the extent Masciarelli attempts to argue that the NYCDOE's failure to provide her with an accommodation or exemption violated the Free Exercise clause, I note that "the First Amendment likely does not require any religious accommodations whatsoever to neutral and generally applicable laws."  Kane, 19 F. 4th at 175.  I analyze Masciarelli's separate failure-to-accommodate claim in Section II below.

7

to bring a separate cause of action for disparate treatment under Title VII, in addition to her failure-to-accommodate claim.  (Def. Mot. 6.)  A failure-to-accommodate claim is a type of disparate-treatment claim.  See E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 771 (2015) (noting that disparate treatment and disparate impact "are the only causes of action under Title VII" and analyzing a disparate-treatment claim based on a failure to accommodate a religious practice). Masciarelli argues that "[i]t can be inferred from the Defendant's arbitrary and capricious denial of the Plaintiff's request for an accommodation that religious discrimination was at the heart of the denial and not an undue hardship."  (Pl. Opp'n 21.)  I take Masciarelli to mean that she is bringing a Title VII claim for religious discrimination premised on Defendant's alleged failure to accommodate her religious practices.

To make out a prima facie case for religious discrimination for failure to accommodate, a plaintiff must show that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement."  Baker v. The Home Depot, 445 F.3d 541, 546 (2d Cir. 2006) (internal quotation marks omitted) (quoting Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001)).

I find that Masciarelli has sufficiently pled a prima facie case for religious discrimination for failure to accommodate.  Masciarelli applied for a "religious exemption to immunizations" in a letter dated September 19, 2021.  (Accommodation Letter 2.)  In that letter, Masciarelli detailed her commitment to the Catholic faith and explained that taking the COVID-19 vaccine would conflict with her religion for a host of reasons, including her religious belief that "God is the sole arbiter of life" and that "we are not supposed to mix our blood with anything whatsoever."  (Id. 4.) The letter both outlined Masciarelli's bona fide religious belief that conflicted with the NYCDOE's

8

vaccine requirement and served to inform her employer of this belief and the conflict it caused. Masciarelli was ultimately terminated for failure to become vaccinated against COVID-19. These facts are sufficient to plead a prima facie case for religious discrimination under Title VII. I note that it is immaterial to the inquiry regarding the sincerity of Masciarelli's religious beliefs whether those beliefs are shared by other Roman Catholics. Neither is Masciarelli required to make her beliefs "acceptable, logical, consistent, or comprehensible to others" in order to merit protection under Title VII. Thomas v. Rev. Bd. of Indiana Emp. Sec. Div., 450 U.S. 707, 714-16 (1981).

Once an employee establishes a prima facie case, the employer "must offer [him or her] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." Baker, 445 F.3d at 546 (alteration in original) (internal quotation marks omitted) (quoting Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002)). The Supreme Court clarified in Groff v. DeJoy that showing "more than de minimis cost . . . does not suffice to establish 'undue hardship' under Title VII." Groff v. DeJoy, 600 U.S. 447, 468 (2023) (internal quotation marks omitted). Instead, to show undue hardship, employers must demonstrate that the "burden is substantial in the overall context of an employer's business." Id. Whether a burden is sufficiently "substantial" is an inherently fact-specific inquiry. See id. at 469-71. The Supreme Court cautioned that courts should "take[] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." Id. at 470-71 (internal quotation marks omitted). When it comes to determining "the particular accommodations at issue," the Court noted that "Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." Id. at 473. "Consideration of other options" is also "necessary." Id.; see also Hebrew v. Texas Dep't of Crim.

9

Just., 80 F.4th 717, 722 (5th Cir. 2023) ("If a requested accommodation poses an undue hardship, the employer must sua sponte consider other possible accommodations. Only after thorough consideration of other options may the employer deny the employee's request for accommodation.") (internal citation omitted).

With that background, I now turn to the issue of whether Defendant could have accommodated Masciarelli without suffering an undue hardship. The precise nature of Masciarelli's requested accommodation is unclear from the face of her Complaint. She merely asserts that "[t]here were reasonable accommodations that would not have caused the NYCDOE an undue hardship." (Compl. ¶ 33.) What that accommodation would be appears to have shifted throughout her interactions with the NYCDOE and EEOC. Masciarelli's original request for an accommodation was for a "religious exemption to immunizations." (Accommodation Letter 2.) Masciarelli's counsel reiterated at oral argument that Masciarelli "requested that she not be vaccinated." (Oral Argument Transcript 14:2-3.) In response to her request, Defendant said it could not "offer another worksite as an accommodation as that would impose an undue hardship (i.e., more than a minimal burden) on the DOE and its operations." (Accommodation Denial 2.) In her EEOC Charge, Masciarelli appears to agree that she requested an alternative worksite "remote from students, similar to the location at which [she] worked during the pandemic." (EEOC Charge 4.)[8] This requested accommodation—to be permitted to work remotely—was the one that the EEOC determined presented "more than a minimal hardship under the circumstances" (EEOC Denial 4), and "that defendant considered but was unable to provide" (Def. Mot. 14).

---

[8] Masciarelli does argue in her EEOC Charge that "[t]he Mandate is overbroad" because "[t]here is no option to get tested in lieu of vaccination in the Mandate," but she does not characterize testing as the accommodation that she herself sought from the NYCDOE. (Id. 5.)

10

In opposing Defendant's motion to dismiss, Masciarelli appears to argue, for the first time, that "the alternative of testing . . . could have been a reasonable accommodation that would have maintained a safe environment for in-person learning." (Pl. Opp'n 16.)[9] Despite the lack of clarity in Masciarelli's submissions to the Court, I will consider the range of potential accommodations that Masciarelli mentions—including remote work or testing and wearing personal protective equipment—per the Supreme Court's guidance that courts "not merely . . . assess the reasonableness of a particular possible accommodation or accommodations" in making the undue hardship inquiry. Groff, 600 U.S. at 473. Defendant bears the burden to show that each of these potential accommodations would have posed a "substantial" hardship "in the overall context of [the NYCDOE's] business." Id. at 468.

As an initial matter, I agree with Defendant that a remote working arrangement would have imposed an undue hardship. Defendant persuasively argues that "DOE school programs are conducted in person" and that it had "over 3,300 DOE staff who requested religious accommodations"; I am thus persuaded that allowing Masciarelli to be given a remote teaching post while her students returned to school grounds would have caused Defendant "to bear significant and unreasonable costs." (Def. Mot. 14.) It is also worth noting that Masciarelli's position as a physical education teacher seems particularly incompatible with remote instruction.

Although it is a close question, I hold that at this stage Defendant has failed to show that an accommodation like masking and frequent testing would have imposed an undue hardship as the term is defined in Groff.[10] I emphasize that my holding is narrow and is based solely on the

---

[9] Masciarelli's counsel also stated at oral argument that "there were other forms of accommodation like masking and testing that could have been granted to her," and that Defendant "did not examine that as an undue burden." (Oral Argument Transcript 14:15-17.)

[10] I note that this holding is consistent with certain out-of-circuit post-Groff cases to have considered whether accommodations like masking and testing in the context of a vaccine mandate pose an undue hardship to employers. See Johnson v. St. Charles Health Sys., Inc., No. 6:23-CV-00070-MK, 2023 WL 5155591, at *3 (D. Or. July 21, 2023), report and recommendation adopted, 2023 WL 5139962 (Aug. 10, 2023); Payne v. St. Charles Health Sys.,

11

fact that Defendant's limited motion-to-dismiss briefing has not provided me with sufficient facts or context to find the existence of a "substantial" hardship in allowing Masciarelli to, for example, test for COVID and wear personal protective equipment, as an alternative to vaccination.

Defendant largely fails to engage with the alternative accommodation of masking and frequent testing. Instead, it argues in a largely conclusory fashion that "defendant determined the vaccine was necessary," that "the vaccine mandate in place at the relevant time stated that unvaccinated teachers . . . could not work in DOE sites . . . for health and safety reasons," and that "opt-out testing was not a viable accommodation," citing mainly to pre-Groff caselaw that relies upon the prior "de minimis" standard for finding the existence of an undue hardship. (D.E. # 23 ("Reply") 11-13 (citing, e.g., Kane, 623 F. Supp. 3d at 363).) Defendant does argue that Masciarelli, as a teacher, was "continually exposed to not only other staff, but also students (many of whom were not eligible for vaccination), who, in turn, could transmit the virus to their families." (Id. 6.) But this is not the context-specific analysis that Groff now requires in conducting the undue hardship analysis. Defendant at this juncture has not shed light on the "practical impact" of a masking and testing regime "in light of the nature, size and operating cost" of the NYCDOE. Groff, 600 U.S. at 470-71. As such, on the record to date, Defendant has failed to show the

---

No. 6:22-CV-01998-MK, 2023 WL 4711431, at *3 (D. Or. July 6, 2023), report and recommendation adopted, 2023 WL 4711095 (July 24, 2023) ("[T]here is nothing in the record thus far to show that allowing Plaintiff to adhere to his proposed accommodations—wearing an N-95 mask and antibody testing—while continuing to work as a facilities supervisor would constitute an undue hardship by resulting in substantial increased costs in relation to the conduct of Defendant's business."). One court in this Circuit, in a closely analogous case, has held that NYCDOE teachers wearing protective equipment while remaining unvaccinated presented an undue hardship because of safety concerns. Beickert v. New York City Dep't of Educ., No. 22-CV-5265 (DLI) (VMS), 2023 WL 6214236, at *5 (E.D.N.Y. Sept. 25, 2023). I do not hold today that allowing Masciarelli to mask and test definitively would not have posed an undue hardship, only that Defendant has failed to meet its burden on this point at the motion-to-dismiss stage absent a more robust showing, per Groff's requirements.

12

existence of an undue hardship, and Masciarelli's reasonable accommodations claim may proceed.[11]

Finally, I note that Masciarelli writes in her Opposition that "[t]he Defendant did not engage in any cooperative dialogue with Plaintiff in violation of the New York City Human Rights Law" (Pl. Opp'n 21; see also Compl. ¶ 34), but as discussed above (see footnote 1 supra), she has waived her state-law claims based on counsel's statement at oral argument, and failure to engage in an interactive process is not an independent cause of action under Title VII. See Shahid-Ikhlas v. New York And Presbyterian Hosp., Inc., No. 22-cv-10643 (GHW) (SDA), 2023 WL 3628151, at *6 (S.D.N.Y. May 5, 2023), report and recommendation adopted, 2023 WL 3626435 (S.D.N.Y. May 24, 2023) (finding no independent cause of action under Title VII for failure to engage in an interactive process by analogizing to the Americans with Disabilities Act, which does not supply a valid independent claim for failure to engage in an interactive process under Second Circuit precedent). In sum, Masciarelli's failure-to-accommodate claim may proceed, but not on any purported claim of failure to engage in an interactive process.

## III. Leave to Amend

It is well-established that a district court may deny leave to amend on the grounds of futility. Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008). To the extent Plaintiff seeks leave to amend her free-exercise claim, such amendment would be futile because the very

---

[11] Defendant does point out that a mask-and-test regime might be more appropriate for certain municipal employees than for others, and gestures at the specific challenges associated with opt-out testing in the context of NYCDOE employees by citing to another case from this district that considered the NYCDOE vaccine mandate. (Reply 12 (citing Maniscalco v. New York City Department of Education, 563 F. Supp. 3d 33, 41 (E.D.N.Y. 2021)).) However, this case is inapposite because it deals with, inter alia, substantive due process and equal protection challenges to the vaccine mandate, not requests for religious accommodations under Title VII. See Maniscalco, 563 F. Supp. 3d at 41. The court in Maniscalco held only that the vaccine mandate survived deferential rational basis review, not that opt-out testing presented an undue hardship.

same vaccine mandate she challenges has been upheld as a neutral law of general applicability. Kane, 623 F. Supp. 3d at 354.

## CONCLUSION

For these reasons, Defendant's motion to dismiss is GRANTED IN PART with prejudice, and DENIED IN PART, and the Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Dated: January 19, 2024
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge