UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LORRAINE MASCIARELLI,

                              Plaintiff,           **INDEX NO. 22-CV-07553**

               -against-

                                              **AMENDED COMPLAINT**

NEW YORK CITY DEPARTMENT OF
EDUCATION,                                      **JURY TRIAL DEMANDED**

                              Defendant.
----------------------------------------------------------------X

       The Petitioner LORRRAINE MASCIARELLI ("Plaintiff") by her attorneys, The Scher Law Firm, LLP, alleges the following as her Amended Complaint:

### I.     PARTIES, JURISDICTION AND VENUE

1. The Plaintiff LORRAINE MASCIARELLI ("Plaintiff") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and was formerly employed as a tenured teacher with the New York City Department of Education.

2. The Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE" or "Defendant") was and still is a municipal corporation duly organized under the laws of New York State, acting under color of State law, with its principal place of business is located in the County of Kings, State of New York.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

4. This Court has further supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a), over related claims for relief for New York State statutory violations.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because the events giving rise to the Plaintiff's claims occurred in the Eastern District of New York.

6. The Plaintiff filed a claim with the United States Equal Employment Opportunity Commissioner ("EEOC"). *See,* **Exhibit A,** a copy of the Plaintiff's filing with the EEOC.

7. The EEOC issued a Right to Sue Letter on September 25, 2022. *See,* **Exhibit B,** a copy of the EEOC's Right To Sue Letter.

8. This Action was commenced prior to the expiration of the ninety (90) day window to file a claim pursuant to the Right to Sue Letter.

## II.     FACTUAL BACKGROUND

9. The Plaintiff was hired by the NYCDOE as a teacher in September 2000.

10. The Plaintiff earned tenure pursuant to N.Y. Education Law.

11. The Plaintiff has not become vaccinated with a COVID-19 vaccine.

12. The Petitioner was suspended without pay for not becoming vaccinated with a COVID-19 vaccine.

13. The Plaintiff is a practicing Roman Catholic. *See,* **Exhibit C,** a copy of the Plaintiff's request for religious accommodation from the COVID-19 vaccine mandate.

14. The Plaintiff requested a reasonable accommodation based upon her sincerely held religious beliefs that stand in opposition to the COVID-19 vaccine. *See,* **Exhibit C.**

15. On September 21, 2021, the NYCDOE denied the Plaintiff any accommodation for her sincerely held religious beliefs. *See,* **Exhibit D,** a copy of the NYCDOE's denial of the Plaintiff's requested accommodation.

16. The Plaintiff appealed the NYCDOE's denial of an accommodation for her sincerely held religious beliefs.

17. On October 4, 2021, the Plaintiff's appeal of the denial of an accommodation was rejected. *See,* **Exhibit E,** a copy of the decision from the Plaintiff's appeal.

18. On November 19, 2021, the Plaintiff applied to the City of New York Reasonable Accommodation Appeals Panel. *See,* **Exhibit F**, a copy of the Plaintiff's appeal to the City of New York Reasonable Accommodation Appeals Panel.

19. On December 1, 2021, I had an attorney write a letter to the City of New York Reasonable Accommodation Appeals Panel. *See,* **Exhibit G**, a copy of the attorneys' letter.

20. On February 15, 2022, the Plaintiff's appeal to the City of New York Reasonable Accommodation Appeals Panel was denied. *See,* **Exhibit H,** a copy of the decision of the City of New York Reasonable Accommodation Appeals Panel.

21. At no point did the NYCDOE participate in an interactive process to determine what reasonable accommodation may be provided to the Plaintiff for her sincerely held religious belief.

### III. CAUSES OF ACTION

**AS AND FOR A FIRST CAUSE OF ACTION FOR RELIGIOUS DISCRIMINATION**

19. The Plaintiff repeats, reiterates, and realleges each and every allegation contained in ¶¶ 1 through 18 as if the same were fully set forth at length herein.

20. The Plaintiff has been a live-long practicing Roman Catholic. *See,* **Exhibit C.**

21. The Plaintiff's Roman Catholic beliefs conflicts with the COVID-19 vaccine such that, based upon the Plaintiff's religious beliefs. *See,* **Exhibit C.**

22. The NYCDOE, the Plaintiff's employer had actual knowledge of the Plaintiff's sincerely held religious beliefs. *See,* **Exhibit D.**

3

23. The NYCDOE initially suspended the Plaintiff, without pay, for not becoming vaccinated with a COVID-19 vaccine, which would have conflicted with her sincerely held religious beliefs.

24. On September 5, 2022, the NYCDOE terminated the Plaintiff's employment for not becoming vaccinated with a COVID-19 vaccine, which would have conflicted with her sincerely held religious beliefs.

25. Based on the foregoing, the NYCDOE subjected the Plaintiff to discrimination on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1983; N.Y. Executive Law § 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

**AS AND FOR A SECOND CAUSE OF ACTION FOR FAILURE TO REASONABLY ACCOMMODATE THE PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS**

26. The Plaintiff repeats, reiterates, and realleges each and every allegation contained in ¶¶ 1 through 25 as if the same were fully set forth at length herein.

27. The Plaintiff has been a live-long practicing Roman Catholic. *See,* **Exhibit C**.

28. The Plaintiff's Roman Catholic beliefs conflicts with the COVID-19 vaccine such that, based upon the Plaintiff's religious beliefs. *See,* **Exhibit C**.

29. The NYCDOE, the Plaintiff's employer had actual knowledge of the Plaintiff's sincerely held religious beliefs. *See,* **Exhibit D**.

30. The NYCDOE initially suspended the Plaintiff, without pay, for not becoming vaccinated with a COVID-19 vaccine, which would have conflicted with her sincerely held religious beliefs.

4

31. On September 5, 2022, the NYCDOE terminated the Plaintiff's employment for not becoming vaccinated with a COVID-19 vaccine, which would have conflicted with her sincerely held religious beliefs.

32. No reasonable accommodation was offered to the Plaintiff.

33. There were reasonable accommodations that would not have caused the NYCDOE an undue hardship, but none were offered to the Plaintiff to accommodate her sincerely held religious beliefs.

34. The NYCDOE did not participate in an interactive process to find a reasonable accommodation for the Plaintiff's sincerely held religious belief.

35. Instead, the NYCDOE terminated the Plaintiff from her employment with the NYCDOE. *See,* **Exhibit I**, a copy of the UFT Arbitration Award, at III.B.

36. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1983; N.Y. Executive Law § 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A THIRD CAUSE OF ACTION FOR DECLARATORY JUDGMENT

37. The Plaintiff repeats, reiterates, and realleges each and every allegation contained in ¶¶ 1 through 36 as if the same were fully set forth at length herein.

38. The UFT Arbitration Award granted UFT members, like the Plaintiff, the option to choose, by November 30, 2021, to be placed on leave without pay due to vaccination status and if they do so. *See,* **Exhibit I**, at Section III.B.

39. "In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the [NYC] DOE which includes

a waiver of the employee's rights to challenge the employee's resignation, including, but not limited to, through a contractual or statutory disciplinary process." **Exhibit I**, at Section III.B.

40. The form created by the NYCDOE not only included the "waiver of the employee's rights to challenge the employee's resignation, including, but not limited to, through a contractual or statutory disciplinary process", but also included a general release of "the [NYC]DOE and any of its present or former employees or agents (collectively the "Release Parties"), from any and all claims, liabilities, or causes of action which were or could have been asserted by me against any of the Release Parties based upon anything that has happened up to now and including the date of the execution of this Attestation, including, but not limited to, any right or claim that may exist or arise up to and including the date that this Attestation is signed." **Exhibit J**, a copy of the waiver executed by the Plaintiff ("Release").

41. In addition, the form created by the NYCDOE included language regarding the Older Workers Benefit Protection Act ("OWBPA"). *See,* **Exhibit J**.

42. Despite stating that the Plaintiff had twenty-one (21) days to review the Release (**Exhibit J**), the first and only time the Plaintiff could review the Release was when she clicked on the choice to extend their leave of absence without pay to September 2022.

43. The Plaintiff was not afforded the twenty-one (21) days to review the Release as required by the OWBPA.

44. The Release that the NYCDOE required the Plaintiff to extend her leave without pay conflicts with the UFT Arbitration Award because the UFT Arbitration Award did not require UFT members, like the Plaintiff, to execute a general release of the NYCDOE in order to extend their leave without pay.

45. The Plaintiff repudiated the Release.

46. The Plaintiff executed the Release under economic duress.

47. The Plaintiff executed the Release under duress.

6

48. The Plaintiff did not execute the Release on her own free will.

49. The NYCDOE made a wrongful threat to the Plaintiff in procuring the Release.

50. The Defendant's wrongful threat was that if she did not execute the Release, she could not participate in the UFT Arbitration Award provision that extended her leave without pay.

51. The UFT Arbitration Award never required members of the UFT, like the Plaintiff, to execute a general release of their legal rights in order to extend her suspension without pay through September 2022.

52. The wrongful threat by the NYCDOE emanates from the improper demand for a general release in return for the benefits the Plaintiff was entitled to receive pursuant to the UFT Arbitration Award.

53. At the time the Plaintiff executed the Release, the Plaintiff had no free will to risk the loss of her pension.

54. On the document that is her Release, she communicated with the NYCDOE and stated that she is "continuing my leave under duress. I am 51 years old and need my pension that I worked for my whole life." **Exhibit J**.

55. Further, the Plaintiff emailed Beth Norton, Esq. an attorney for the UFT that "[t]oday I notified the revokevaccinationprovision@schools.nyc.edu to extend my forced unpaid leave **UNDER DURESS!** I am notifying you as well." **Exhibit K**, a copy of the email to Ms. Norton (emphasis in original).

56. The Plaintiff also emailed her Principal that she "[u]nder duress, I have extended my forced Leave Without Pay for Vaccine Reasons until September 5, 2022." **Exhibit L**, a copy of the email to the Plaintiff's Principal.

57. The Plaintiff executed the purported Release at a time when she was suspended without pay, just lost her final appeal of her religious accommodation request, and, if she did not sign the document created by the NYCDOE, she would lose her pension.

58. The NYCDOE used economic pressure to obtain the Release from the Plaintiff that was unconscionable.

59. The NYCDOE made the Plaintiff choose either sign the Release or lose her valuable pension.

60. This was an impossible situation for the Plaintiff to choose.

61. The Plaintiff's choice to protect her pension was made under economic duress.

62. Accordingly, the Plaintiff requests an Order declaring that the Release:

    (a) in the form created by the NYCDOE violated the UFT Arbitration Award and is therefore void and unenforceable; and

    (b) it was obtained through economic duress and therefore is void and unenforceable.

63. The Plaintiff has no adequate remedy at law.

**WHEREFORE,** the Plaintiff demands judgement against the Defendant for all compensatory, injunctive relief and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which he is entitled, including but not limited to:

1. Awarding a declaratory judgment order declaring that:

    (a) in the form created by the NYCDOE violated the UFT Arbitration Award and is therefore voidable; and

    (b) it was obtained through economic duress and therefore is void and unenforceable.

2. Awarding reasonable attorney's fees and costs and disbursements of this action; and

3. Granting such other and further relief that the Court seems just and proper.

Dated: Carle Place, New York
January 30, 2024

                                          Respectfully submitted,
                                          THE SCHER LAW FIRM, LLP

                                          _____
                                          Austin Graff, Esq.
                                          600 Old Country Road, Suite 440
                                          Garden City, New York 11530
                                          (516) 746-5040