```
 1                  UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF NEW YORK

 3   LORRAINE MASCIARELLI,        .   Docket No.
                                  .   1:22-CV-07553-CBA-SJB
 4        Plaintiff,              .
                                  .
 5        v.                      .   Brooklyn, New York
                                  .   Tuesday, August 6, 2024
 6   NEW YORK CITY DEPARTMENT     .   11:10 a.m.
     OF EDUCATION,                .
 7                                .
          Defendant.              .
 8   . . . . . . . . . . . . . .  .

 9
                    TRANSCRIPT OF STATUS CONFERENCE
10            BEFORE THE HONORABLE SANKET J. BULSARA
                  UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For the Plaintiff:         The Scher Law Firm, LLP
13                              AUSTIN R. GRAFF, ESQ.
                                600 Old Country Road, Suite 440
14                              Garden City, New York  11530
                                516-746-5040
15
     For the Defendant:         ANDREA MARTIN, ESQ.
16                              222 East 34th Street
                                New York, New York  10016
17                              201-321-7401

18                              New York City Law Department
                                KATHLEEN LINNANE, ESQ.
19                              100 Church Street, Suite 2-196
                                New York, New York  10007
20                              212-356-2467

21
     Transcription Service:     Superior Reporting Services LLC
22                              P.O. Box 5032
                                Maryville, TN 37802
23                              865-344-3150

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

P R O C E E D I N G S

    THE COURT: Good morning. Please be seated. Okay. We're here for a status conference on 22-CV-7553. Who's here for the plaintiff?

    MR. GRAFF: Good morning, Your Honor. Austin Graff from The Scher Law Firm.

    THE COURT: Good morning. And for the defendants?

    MS. MARTIN: Good morning, Your Honor. Andrea Martin, Corporation Counsel for New York City Department of Education.

    MS. LINNANE: Good morning, Your Honor. Kathleen Linnane, Corp. Counsel for the Department of Education.

    THE COURT: Okay. Good morning. The real purpose of this status conference was to address the motion to compel that's been filed with respect to the subpoena directed at the arbitrator or non-party, Mr. Scheinman. I see that counsel for Mr. Scheinman is not here. That's not going to, I think, prevent me from ruling on the motion. The real question I did have, though, is the Department of Education taking a position in this? I was surprised that you didn't file anything.

    MS. MARTIN: Your Honor, it's our understanding that because Martin Scheinman is represented by private counsel, that we were not going to respond to the motion to compel.

1  THE COURT: You're not required to respond. I was
2  asking a different question. Do you have a position on it?
3  I mean, the subpoena seeks from a third party your client's
4  documents, communication. If you were to grant it, it would
5  be testimony about your client, your client interactions at
6  the mediation and arbitration. Frankly, the person was
7  appointed pursuant to the DOE's and the union's collective
8  bargaining procedures. For example, confidentiality
9  procedures that directly affect your client. So you're not
10 required to respond, but I was wondering what your position
11 was.
12       MS. MARTIN: I think our position remains the same,
13 in that a lot or most of those communications are both
14 confidential and not relevant. I think that we had already
15 discussed some of those issues in Plaintiff's prior motion to
16 compel certain discovery requests, and they were denied.
17       THE COURT: Okay. Do you join the opposition of
18 Mr. Scheinman?
19       MS. MARTIN: Yes.
20       THE COURT: Okay. I would think in the future on
21 an issue as important as this one you'd file something. Mr.
22 Graff, I just want to confirm one thing, or maybe it really
23 is two. Your client was one of the people whose claim was
24 mediated and arbitrated?
25       MR. GRAFF: It went through the SAMS appeal. She

applied to New York City Department of Education for an accommodation. It was denied. She appealed it to the Scheinman Arbitration Mediation Service. Yes.

THE COURT: In your papers, where you talk about the UFT arbitration award, okay -- I guess I should've asked my question more precisely. That is the award related to your client, right?

MR. GRAFF: No. The UFT arbitration award was -- there was an impasse in negotiations between the City and UFT regarding the implementation of the COVID vaccine mandate. When they reached an impasse, they couldn't resolve it amongst themselves. They appointed as arbitrator Martin Scheinman, who established the implementation process which included a manner in which NYCDOE employees could seek medical accommodations and just accommodations for the vaccine mandate. So it was an arbitration awarded with all the members of the UFT, not specifically my client.

THE COURT: Well, your client is affected by that award.

MR. GRAFF: Absolutely.

THE COURT: Okay. And you're seeking a declaratory judgment about what?

MR. GRAFF: The UFT arbitration award had included in it an authorization to grant the City a limited release related to extensions of the suspensions without pay, and the

1  arbitration award said you can get a release based upon not
2  challenging your termination after that suspension without
3  pay ended.
4         THE COURT:  And that's the same award that we just
5  discussed, that covers all employees?
6         MR. GRAFF:  Correct.
7         THE COURT:  Okay.
8         MR. GRAFF:  But the release that actually was
9  drafted and executed by my client was a general release, not
10 a specific release, so we're saying it was outside the scope
11 of the arbitration award.
12        THE COURT:  But that's an argument about the scope
13 of the award, but you're seeking a declaratory judgment about
14 release that one side says was executed pursuant to that
15 award?
16        MR. GRAFF:  Correct.
17        THE COURT:  Okay.  I'm stunned the Department of
18 Education didn't weigh in on this.  I mean, just even this
19 discussion shows exactly why a subpoena directed at the
20 mediator and arbitrator who's deciding issues pivotal to you
21 and your client, for you to sit silent about it is stunning,
22 frankly.
23        Okay.  The motion to compel is denied.  I'm noting
24 at the outset that the plaintiff does not cite a single case
25 in the papers on the relevance standard for such a motion,

6

1  but most significantly, that a subpoena in these unusual
2  circumstances has ever been granted, and that's a subpoena
3  directed at a mediator or an arbitrator.  That's, perhaps,
4  telling that you don't cite a single case in your motion
5  papers.
6         Now, the motion itself fails for three different
7  reasons.  First, it's an improper collateral attack on the
8  decision of an arbitrator or a mediator.  Plaintiff was at
9  least represented by or affected by the arbitration award,
10 and if a party seeks to question the decision of an
11 arbitrator, its reasoning, any bias, wants clarification, an
12 appeal has to be brought either before the arbitration panel
13 itself or as a separate action under the FAA to vacate or set
14 aside such an award.
15         That procedure was not filed in this case.  Maybe
16 you have to intervene in that action.  Maybe you have to try
17 and remove it to federal court.  But you can't bring a
18 collateral attack and seek discovery on arbitration to which
19 you either were affected or a party to in the original
20 instance.
21         You cannot collaterally attack, which is
22 effectively what the subpoena attempts to do, conduct an
23 investigation through the propriety of the arbitration in
24 collateral litigation.  That's plain from the documents that
25 are being sought.  Plaintiff seeks documents about the

financial circumstances and the financial payments under which mediator arbitrator showing them was paid. The nature of the engagement lever and the process by which he came to be the mediator. All of those are questions that attempt to undermine. They are real, but, for example, point potential bias, but that can't be done collaterally.

But even if you could seek collateral relief here, the requests flunk the standards set forth by the Second Circuit for obtaining discovery from a mediator or an arbitrator, as this subpoena seeks to do. In Marc Rich and Co., A.G. 579 F.2d 691 702 1978 Second Circuit, the circuit held that, "In the special court in the special context of what are in effect post hoc efforts to reduce arbitrators to undermine the finality of their own awards, we agree that any question of arbitration be handled pursuant to judicial supervision and limited to situations where clear evidence of impropriety has been presented," unquote.

The circuit reaffirmed that in a case, Lyeth v. Chrysler Corp., 929 F.2nd 891 899 Second Circuit 1991, which said that you have to find, quote, "some basis to prosecute a claim of bias," unquote. And Lyeth is instructed in another, which is to say that if there are questions about bias or if there are requests for notes made by the adverse party in arbitration or materials provided to the arbitrator, it is incumbent upon the party affected by the arbitration to seek

1  those documents in the arbitration itself.
2        By the time you come to federal court, you fail to
3  appropriately seek those documents in the first instance.
4  But Lyeth is instructed in another way.  Reaffirms the
5  decision in Marc Rich, that you've got to show some evidence
6  of impropriety.  And there hasn't been.  There's just simply
7  what amounts to a fishing expedition based upon the hope that
8  the evidence either in the form of testimony or documents or
9  exhibits.  Would be helpful to prosecute the plaintiff's case
10 here.
11       Indeed, quote, "post-decision depositions of
12 arbitrators have been repeatedly condemned by Courts where
13 there's no evidence of bias or impropriety."  And that's not
14 Mauna Kea Resort 2009 Westlaw 578529, March 4th, 2009 Eastern
15 District of New York.
16       But there's a clearly separate and independent
17 problem, which is that the documents here -- and again, this
18 is where the City should have weighed in.  At least some of
19 them being sought are confidential.  In other words, either
20 the mediation or the arbitration or both were conducted
21 pursuant to a confidentiality agreement.  And, you know, at
22 least that's what the arbitrator says.
23       And when you're seeking documents that have been
24 made confidential and you are a third party, there's a
25 separate and more exacting standard in order to get discovery

Superior Reporting Services LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com

of those documents. The Second Circuit articulated this in In re Teligent 640 F.3d 53 Second Circuit 2011 at page 58. Quote, "A party seeking disclosures confidential mediation communications must demonstrate one, a special need for the confidential material; two, resulting in fairness from a lack of discovery; and three, the need for the evidence outweighs the interest in maintaining confidentiality. And all three factors are necessary to warrant disclosure of otherwise non-discoverable documents," unquote.

Those standards aren't even articulated in the motion, let alone met, and that's an independent basis to deny the motion to compel. The motion to compel and the motion for contempt are denied for those reasons. Okay. Mr. Graff, where are we from completing discovery by the September deadline?

MR. GRAFF: We were on track until there was a dispute over the list that was received from the City that the Court ordered. There was an appeal to the district court judge of this court's June 4th electronic order. And we're waiting a decision from the district court judge, so we've been in a stall situation. The plaintiff has been deposed, so if the district court agrees with this Court, would get the document and then we would quickly schedule depositions. But we can't do the deposition of the City until we get the document or the ruling from the district court.

1  THE COURT: And are there any depositions of the
2  defendant that you would take or able to take without that
3  list?
4  MR. GRAFF: The problem is, there's some confusion
5  over the nomenclature being used in the case, and I don't
6  know how to resolve it. So the list that was provided to us,
7  pursuant to the Court's original order, listed 100 and --
8  THE COURT: Sorry. I don't mean to cut you off. I
9  understand the nature of the dispute and the request for
10 clarification. I guess I'm asking a sort of more
11 100,000-foot level question, which was is there anyone you
12 would depose who you could depose without having to re-depose
13 that person once you got the list?
14 MR. GRAFF: I don't think so.
15 THE COURT: Okay. Ms. Martin, do you agree with
16 that?
17 MS. MARTIN: Yes. I do agree with that. And we do
18 not have any outstanding discovery requests on our end, Your
19 Honor.
20 THE COURT: And who did you list as witnesses with
21 knowledge in your 26(a) disclosures?
22 MS. MARTIN: Eric Eichenholtz of the New York City
23 Law Department and I believe there were three individuals
24 from the New York City Department of Education. I will have
25 to double-check their names.

1  THE COURT: Mr. Graff, do you intend to depose all
2  four of those individuals?
3  MR. GRAFF: No. Mr. Eichenholtz and probably one
4  from the Department of Education.
5  THE COURT: Okay. Would that be in the form of a
6  30(b)(6) witness or 30(b)(6) witness and as a fact witness?
7  MR. GRAFF: I think it would be both.
8  THE COURT: Okay. And that would satisfy the
9  depositions you would be taking?
10 MR. GRAFF: Yes.
11 THE COURT: Okay. And Ms. Martin, would you be
12 taking any third-party depositions?
13 MS. MARTIN: No, Your Honor.
14 THE COURT: And do you have any experts?
15 MR. GRAFF: No.
16 THE COURT: Okay. Any experts for the City?
17 MS. MARTIN: No.
18 THE COURT: Okay. All right. So we're in
19 relatively good shape in the sense of we would have two
20 depositions to take whenever Judge Amon decides. So I'll
21 obviously extend the deadline as needed based on when Judge
22 Amon makes the decision, but I would think that you wouldn't
23 need more than 45 days from the date of her decision.
24 MR. GRAFF: Your Honor, the only thing is, if her
25 decision is compelling new disclosure, it's going to take

some time for the City to disclose and then me take the depositions.

THE COURT: Fair point. All I'll just say here is whatever it is that Judge Amon decides within a week, why don't you meet and confer on a schedule for an extension of discovery? So if there is more additional production that's required, you'll go down one route. If additional production is required, you'll obviously go down another. And depending on when that decision is entered, you know, if it's entered tomorrow, you know, perhaps you don't need an extension on this tendered deadline. If it's entered after September, you know, we'll need an extension of the deadline. So you can factor all of that in. And I take it that at least the defendants are moving for summary judgment?

MS. MARTIN: Yes.

THE COURT: Okay. And Mr. Graff, would you be as well?

MR. GRAFF: I believe so. Yes.

THE COURT: Okay. All right. So whenever it is, I would set a deadline for taking the first step in dispositive motion practice as 30 days from whenever you all propose that discovery close. I know we discussed this I think last time or the time before. What is the prospect of trying to resolve this case?

MR. GRAFF: We would love to. We haven't had very

1 fruitful discussions.

2 THE COURT: Can you just remind me, did you make a
3 demand?

4 MR. GRAFF: I think we've made a demand in the
5 past. Right now, because we're coming up on another school
6 year, so it's an extra year of salary, so it's essentially
7 four years of salary. It should be three years of salary
8 because it's 2021 through 2024.

9 THE COURT: And without getting into numbers,
10 what's your client doing in terms of mitigation?

11 MR. GRAFF: She's currently working at a private
12 Catholic school.

13 THE COURT: Okay. So it would be the delta between
14 the current salary. I understand.

15 MR. GRAFF: Correct.

16 THE COURT: Okay. What's DOE's interest in trying
17 to resolve?

18 MS. MARTIN: We are open to having settlement
19 discussions. The last demand that we received was not
20 something that we could realistically come back to. If we
21 received another demand, I would be open to having the
22 conversation and starting up settlement discussions once
23 again.

24 THE COURT: Remind me. I may have raised this
25 before. What was the DOE's position on a rehire? Does the

1   plaintiff even want to go back to the DOE?
2            MR. GRAFF:  She does.  But not -- so there's a
3   difference between reinstatement and rehire.  Reinstatement
4   would put her back where she was.  Rehire, she'd start at the
5   bottom, so she wants reinstatement, not rehire.
6            THE COURT:  Does the DOE have a view on this?
7            MS. MARTIN:  I did check in with my client after
8   our last conference and Plaintiff is free to look for
9   employment at the DOE once again.  I don't believe
10  reinstatement is an option, but she is free to apply for
11  employment with the Department of Education.
12           THE COURT:  So here's what I would say about the
13  settlement.  I don't know if there's a number the DOE think
14  is a reasonable number based on whatever it thinks the risks
15  are.  It should just offer that, right?  The plaintiff could
16  be at a billion dollars, frankly.  I'm not saying make your
17  last and final or exhaust your authority, but whatever it is
18  that the plaintiff has demanded, put it to the side for a
19  moment you should offer whatever you think a reasonable offer
20  would be if only because of, look, the plaintiff could reject
21  it, right?  Or have sort of like a "Okay.  I'm not going to
22  bargain based on that number."  But at least you've given it
23  a shot based upon what you and your client think a reasonable
24  resolution number would be, right?  And so I would encourage
25  that.

15

1           As for the, you know, reinstatement, rehire, you
2  know, that's often hard to resolve in a settlement
3  negotiation because it's an all or nothing kind of
4  proposition.  I mean, all I can say is you should talk to
5  your client about the fact that whether or not that's a
6  sticking point for a requirement, right, in the fallen way,
7  which is that at trial it's an all or nothing proposition,
8  right?
9           Because if the plaintiff loses, there is no
10 reinstatement.  If the defendant loses, there is
11 reinstatement.  Period.  Back to as if she had not been let
12 go or had not left three or four years ago.  So it ends up
13 being over the defendant's objection.  Obviously, if it goes
14 to trial and your client loses or it's summary judgment, then
15 there's no possibility of it and you're in this kind of --
16          Now, that may lead to some flex on the monetary
17 amount, perhaps, but that's what you should talk about with
18 each of your clients.  I'm not in a position to get you a
19 settlement conference on my calendar because this case is
20 being transferred away from me in late November or if not
21 before then when I become a district judge, and I'm taking
22 only my consent docket with me, which is this is not.
23          But I can get a different magistrate judge to have
24 a settlement conference if the parties would like.  But I
25 think the agreement between both of you that that would be a

1  fruitful use of time.  I mean, I'm not casting aspersions.
2  I'm just saying I get the sense that both of you don't know
3  if it would be fruitful yet.
4          MR. GRAFF:  Your Honor, I think on our side it'd be
5  fruitful as long as it's good faith on both sides, and I
6  don't believe there would not be.  I believe the City would
7  come with good faith.  So, you know, we would like to try.
8          THE COURT:  Ms. Martin, there are two of you.
9          MS. MARTIN:  I would like to confer with my client
10 first.
11         THE COURT:  Okay.  How about this?  Is two weeks
12 sufficient?  In other words, can you both jointly write to me
13 in two weeks if you'd like a settlement conference and I'll
14 find another magistrate judge to conduct it?
15         MS. MARTIN:  Yes.
16         THE COURT:  I mean, look, there are cancellations,
17 but realistically, I'm unable to guarantee you a date before
18 the end of October.  Although I typically don't require, when
19 we have, you know, the law department present to require a
20 client representative, but sometimes it can be helpful if
21 there's nonmonetary relief on the table, like a reinstatement
22 or rehire.  I mean, it depends.
23         I mean, in this situation it really depends on
24 whether you thought it would be helpful to have that person,
25 but if I'm not doing the settlement conference it'd be really

who the -- which other MJ decides what they want to do. But I have found it helpful, personally, to have a DOE person who can talk about the nonmonetary relief. I think it also depends on whether or not that is something that your client is actually interested in or would rather just sort of, you know, like to negotiate on the monetary side. So you can write to me in two weeks.

MS. MARTIN: Okay.

THE COURT: Is that sufficient? Okay. Anything else we should talk about today?

MR. GRAFF: No, Your Honor.

THE COURT: Okay. I'm going to mark down that there is no expert. The parties do not contemplate any expert discovery. Put that on the docket sheet. Any reason I shouldn't do that at this point?

MR. GRAFF: No. I don't think so.

MS. MARTIN: No, Your Honor.

THE COURT: Okay. All right. I wish you all good health. Have a nice day.

MR. GRAFF: Thank you.

MS. MARTIN: Thank you.

MS. LINNANE: Thank you.

(Proceedings adjourned at 11:39 a.m.)

TRANSCRIBER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Laura Hunt                                August 8, 2024

*Laura Hunt*

_____        _____
Laura Hunt                            DATE
Legal Transcriber