UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LORRAINE MASCIARELLI,

                            Plaintiff,        **INDEX NO. 22-cv-7553**

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,
                            Defendant.
-------------------------------------------------------------------X

**PLAINTIFF'S FRCP RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE
BULSARA'S ORDER DATED AUGUST 6, 2024**

THE SCHER LAW FIRM, LLP
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

POINT I.     STANDARD OF REVIEW FOR A MOTION PURSUANT TO FRCP RULE 72(a) .................................................................................... 2

POINT II.    SCHEINMAN'S AND SAMS'S REQUEST TO QUASH THE SUBPOENAS WAS UNTIMELY ........................................................ 4

POINT III.   MAGISTRATE JUDGE'S AUGUST 6, 2024 DECISION TO DENY THE MOTION TO COMPEL WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW ............................................. 7

   A.   Subpoena Was Not A Collateral Attack On The Mediation Or Arbitration ............................................................................................... 7

   B.   Discovery From this Arbitrator Was Warranted ....................................... 9

   C.   There Was No Confidentiality Agreement ............................................. 12

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Andros Cia. Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691 (2d Cir 1978) ............ 10

*Arias-Zeballos v. Tan*, 2007 US Dist LEXIS 5068, at *3 (S.D.N.Y. 2007) ............ 13

*Ashkinazi v. Sapir*, 2004 US Dist LEXIS 14523, at *7 (S.D.N.Y. 2004) ............ 13

*Espiritu v. Hartman*, 2020 US Dist LEXIS 3054, at *8-9 (E.D.N.Y. 2020) (Amon, J.) ............ 2

*Est. of Tillman v. City of NY*, 345 F.R.D. 379, 385 (EDNY 2024) ............ 3, 5

*Estate of Ungar v. Palestinian Auth.*, 451 F.Supp.2d 607, 610 (S.D.N.Y. 2006) ............ 3, 5

*Hickman v. Taylor*, 329 U.S. 495, 507-508 (1947) ............ 11

*In re Lloyds Banking Group PLC*, 2021 US Dist LEXIS 134046, at *6 (S.D.N.Y. 2021) ............ 13

*In re Sur. Asso. of Am.*, 388 F.2d 412, 416 (2d Cir 1967) ............ 5

*Lyeth v. Chrysler Corp.*, 929 F.2d 891, 899 (2d Cir 1991) ............ 10

*Mauna Kea Resort v. Affiliated FM Ins. Co.*, 2009 US Dist LEXIS 18485, at * 4 (E.D.N.Y. 2009) ............ 10

*Olszewski v. Bloomberg L.P.*, 2000 US Dist LEXIS 17951, at *14 (S.D.N.Y. 2000) ............ 5

*Savage & Assocs. P.C. v. K&L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53 (2d Cir 2011) ............ 12

**Rules**

FRCP Rule 26(b)(1) ............ 1, 6, 8, 10

FRCP Rule 72(a) ............ 3

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Plaintiff LORRAINE MASCIARELLI ("Plaintiff") in support of her Motion pursuant to FRCP Rule 72(a) raising objections to Magistrate Judge Bulsara's Order dated August 6, 2024.

The Magistrate Judge denied the Plaintiff's Motion to Compel the Subpoena Duces Tecum (**Docket Entry No. 53-1**) and Subpoena Ad Testificandum (**Docket Entry No. 53-3**) served by the Plaintiff upon the non-party Martin Scheinman ("Scheinman") and Scheinman Arbitration Services ("SAMS") the person who issued the UFT Arbitration Award (**Docket Entry No. 39-9**) that served as the basis for the Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") to implement the COVID-19 Vaccine Mandate ("Vaccine Mandate"). Based upon the UFT Arbitration Award and the NYCDOE's implementation of the Vaccine Mandate the Plaintiff was suspended without pay and later terminated for not taking the vaccine. **Docket Entry No. 39**, at ¶¶ 33 and 34.

The Plaintiff was suspended without pay and fired by the NYCDOE based upon her sincerely held religious beliefs as a practicing Catholic, which conflicted with the Vaccine Mandate that required the Plaintiff to take the COVID-19 vaccine. **Docket Entry No. 39**, at ¶¶ 33 and 34.

This Court denied the NYCDOE's Motion to Dismiss the Plaintiff's Title VII religious discrimination claim and now the parties are conducting discovery. **Docket Entry No. 33**.

As part of the discovery process, the Plaintiff served a Subpoena Duces Tecum (**Docket Entry No. 53-1**) and a Subpoena Ad Testificandum (**Docket Entry No. 53-3**) upon Scheinman and SAMS in an effort to discover "nonprivileged matter that is relevant to [the Plaintiff's] claim … and proportional to the needs of the case." FRCP Rule 26(b)(1).

Scheinman and SAMS did not fully respond to the Plaintiff's Subpoena Duces Tecum (**Docket Entry No. 53**, at pages 2-3) and utterly refused to sit for a deposition pursuant to the

Subpoena Ad Testificandum (**Docket Entry No. 53**, at page 4). As a result, the Plaintiff was required to move to compel compliance with the Subpoenas. *See,* **Docket Entry No. 53.**

The Magistrate Judge denied the Motion to Compel and quashed the Subpoenas despite the fact: (1) the time for Scheinman and SAMS to move to quash had long expired; and (2) the Magistrate Judge denied the Motion to Compel based upon erroneous facts and based upon arguments not made by Scheinman or SAMS in opposition to the Motion to Compel.

This Court should reverse the Magistrate Judge's denial of the Plaintiff's Motion to Compel and require Scheinman and SAMS: (1) to disclose documents, including invoicing and payments relating to their work; and (2) to sit for a deposition pursuant to the Subpoena Ad Testificandum.

For the reasons argued in this Memorandum of Law, this Court should grant the Plaintiff's Motion to Compel.

**POINT I.    STANDARD OF REVIEW FOR A MOTION PURSUANT TO FRCP RULE 72(a)**

In *Espiritu v. Hartman*, 2020 US Dist LEXIS 3054, at *8-9 (E.D.N.Y. 2020) (Amon, J.), this Court held:

> Under Federal Rule of Civil Procedure 72(a), a district judge must set aside a portion of a magistrate judge's order concerning a non-dispositive matter if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also, e.g., 287 Franklin Ave. Residents' Ass'n v. Meisels,* No. 11-CV-976(KAM)(JO), 2013 WL 12403049, at *1—*2 (E.D.N.Y. Nov. 5, 2013) (affirming magistrate judge's discovery rulings and denial of reconsideration of those rulings as not clearly erroneous or contrary to law), *aff'd sub nom. Sasmor v. Meisels,* 708 F. App'x 728 (2d Cir. 2017). An order is clearly erroneous if "'on the entire evidence' the Court is 'left with the definite and firm conviction that a mistake has been committed.'" *Mental Disability Law Clinic v. Hogan,* 739 F. Supp. 2d 201, 203 (E.D.N.Y. 2010) (quoting *Easley v. Cromartie,* 532 U.S. 234, 235, 121 S. Ct. 1452, 149 L. Ed. 2d 430 (2001)). An order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Weiss v. La Suisse,* 161 F. Supp. 2d 305, 321

(S.D.N.Y. 2001) (internal quotation marks omitted). Under the "highly deferential standard" governing Rule 72(a), "magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (internal quotation marks omitted).

In reviewing the magistrate's ruling, "[c]ourts generally do not entertain new legal arguments not presented to the magistrate judge." *Anderson v. Phoenix Bev., Inc.*, No. 12-CV-1055 DLI RML, 2015 U.S. Dist. LEXIS 20897, 2015 WL 737102, at *3 (E.D.N.Y. Feb. 20, 2015) (collecting cases). Courts are similarly confined to the factual record presented to the magistrate judge when reviewing a magistrate's non-dispositive rulings to determine whether they were clearly erroneous or contrary to law. *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) ("Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge."); *see also NIKE, Inc. v. Wu*, 349 F. Supp. 3d 346, 353 (S.D.N.Y. 2018) (citing Thai Lao Lignite for same). Moreover, a court sitting in appellate review of a denial of reconsideration generally "will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d Cir. 2003) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos., Inc.*, 265 F.3d 97, 115-16 (2d Cir. 2001)) (reviewing a district judge's denial of reconsideration below).

The Magistrate Judge's August 6, 2024 was clearly erroneous or is contrary to law. *See,* FRCP Rule 72(a).

The factual basis for the Magistrate Judge's ruling is not the facts in this case.

Additionally, the Magistrate Judge quashed the Subpoenas despite no Motion to Quash having been timely served, namely before the return dates of the Subpoenas. The Magistrate Judge's decision to quash the Subpoenas is clearly erroneous and contrary to law. *See, Estate of Ungar v. Palestinian Auth.*, 451 F.Supp.2d 607, 610 (S.D.N.Y. 2006) (holding "It is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena."); *Est. of Tillman v. City of NY*, 345 F.R.D. 379, 385 (EDNY 2024) (holding "this Court

3

finds no need to look to other circuits when the Second Circuit's view is clear and established. A motion to quash a subpoena must be made prior to the return date of the subpoena—that is, prior to the time specified in the subpoena for compliance."). Scheinman's and SAMS' request to quash the Subpoenas in response to the Motion to Compel was untimely. *See,* **Docket Entry No. 59**. *See also,* **Docket Entry No. 33-1**; **Docket Entry No. 33-3**.

Finally, with respect to the legal basis for the Magistrate Judge's decision to deny the Motion to Compel, the cases cited by the Magistrate Judge were disputes between the parties to the arbitration and one party objected to the Subpoena upon the Arbitrator, not, like in this case, the arbitrator objecting. The procedural differences raise the issue of standing by the arbitrator to raise confidentiality and other objections when the NYCDOE, the party to the arbitration, did not object to the Motion to Compel.

The Plaintiff has identified how the Magistrate Judge's decision to deny the Motion to Compel was clearly erroneous and contrary to law. The Plaintiff's Motion should be granted.

**POINT II.    SCHEINMAN'S AND SAMS'S REQUEST TO QUASH THE SUBPOENAS WAS UNTIMELY**

In opposition to the Plaintiff's Motion to Compel, Scheinman and SAMS requested the Court to quash the Subpoenas. *See,* **Docket Entry No. 59**. However, Scheinman's and SAM's request was untimely.

The deadline for Scheinman and SAMS to respond to the Subpoena Duces Tecum was May 17, 2024. *See,* **Docket Entry No. 53-1**. The Plaintiff granted an extension to the deadline for a week. *See,* **Docket Entry No. 53-5**. The final deadline was May 24, 2024. *See,* **Docket Entry No. 53-5**.

The Subpoena Ad Testificandum set Scheinman's deposition for June 19, 2024. *See,* **Docket Entry No. 53-3**. Scheinman's attorney, Barry Peek, Esq., communicated with the Plaintiff's counsel and rejected any deposition of Scheinman. *See,* **Docket Entry No. 53**, at page 4.

4

It was not until August 2, 2024 that Scheinman and SAMS requested the Court quash the Subpoenas. This was long after the deadlines to comply had expired.

In *Estate of Ungar v. Palestinian Auth.*, 451 F.Supp.2d at 610, the Court held "[i]t is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena."

In *Est. of Tillman v. City of NY*, 345 F.R.D. at 385, the Court opined "this Court finds no need to look to other circuits when the Second Circuit's view is clear and established. A motion to quash a subpoena must be made prior to the return date of the subpoena—that is, prior to the time specified in the subpoena for compliance."

"Rule 45 (b), Fed.R.Civ.Pro., provides that objections to a subpoena must be made prior to its return date." *In re Sur. Asso. of Am.*, 388 F.2d 412, 416 (2d Cir 1967).

While "[t]he decision of whether to quash or modify a subpoena is within the district court's discretion" (*Olszewski v. Bloomberg L.P.*, 2000 US Dist LEXIS 17951, at *14 (S.D.N.Y. 2000)), in this case, the decision to quash the Subpoenas was done clearly erroneously and contrary to law.

In opposition to the Plaintiff's Motion to Compel, Scheinman and SAMS represent to the Court that they are not in possession of any documents responsive to the Subpoena Duces Tecum, except the invoices and payments received by SAMS from the NYCDOE. *See*, **Docket Entry 59**, at page 4.

The Magistrate Judge did not explain how Scheinman's and SAMS's invoices to the NYCDOE and payments from the NYCDOE are not discoverable by the Plaintiff. The documents are "nonprivileged matter that is relevant to [the Plaintiff's] claim … and proportional to the needs of the case." FRCP Rule 26(b)(1).

First, it is important to understand SAMS's and Scheinman's role in the implementation of the Vaccine Mandate, the same implementation process relied upon by the NYCDOE to terminate

the Plaintiff. Scheinman was not only the person who wrote the arbitration award that established the implementation process and procedure for a NYCDOE employee, like the Plaintiff to apply for a religious accommodation/religious exemption from the Vaccine Mandate. *See,* **Docket Entry No. 39-9,** at pages 9-13. SAMS was also the appellate panel that reviewed and considered NYCDOE's initial denials of religious accommodation/religious exemption requests by NYCDOE employees, including the Plaintiff. *See,* **Docket Entry No. 39-9,** at page 10. Scheinman and SAMS were part of the decision-making regime regarding the Plaintiff's request for a religious accommodation/exemption from the Vaccine Mandate. *See,* **Docket Entry No. 39-5**.

It is the Plaintiff's argument and claim that SAMS had a financial incentive to deny religious accommodations/exemptions and it was not based upon documents submitted or the religious beliefs of the NYCDOE employees. The Plaintiff submitted significant and sufficient evidence of her long-standing religious beliefs, yet SAMS denied her appeal. *See,* **Docket Entry No. 39-3; Docket Entry No. 39-5**. The documents relating to invoicing and payments received by SAMS is "nonprivileged matter that is relevant to [the Plaintiff's] claim ... and proportional to the needs of the case." FRCP Rule 26(b)(1).

Second, the Plaintiff specifically asked for billing and invoicing relating to her specific appeal. The Plaintiff sought the billing and payment records relating to Julie Torrey ("Torrey"), the SAMS Arbitrator who denied the Plaintiff's appeal of the denial of her request for a reasonable accommodation. *See,* **Docket Entry No. 39-5.** *See,* **Docket Entry No. 53-1,** at Demands Numbered 39 through 42. There is no basis in law or fact to deny the Plaintiff the invoice relating to the Plaintiff's appeal and the payment received by Torrey from the NYCDOE for that appeal. These documents are "nonprivileged matter that is relevant to [the Plaintiff's] claim ... and proportional to the needs of the case." FRCP Rule 26(b)(1).

While the Magistrate Judge had the discretion to quash or modify the Subpoena Duces Tecum, the Magistrate Judge abused his discretion by denying the Plaintiff the billing records and payments received by SAMS relating to the appeals of denials of religious accommodation/exemption requests and more particular, the Plaintiff's denial of her religious accommodation/exemption request. There is nothing confidential about the invoicing and billing.

6

The Magistrate Judge's decision was clearly erroneous and contrary to law.

**POINT III.   MAGISTRATE JUDGE'S AUGUST 6, 2024 DECISION TO DENY THE MOTION TO COMPEL WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW**

The Magistrate Judge denied the Plaintiff's Motion to Compel for three reasons: (1) the Subpoenas were an improper collateral attack on a mediation and an arbitration (**Exhibit A**, a copy of the August 6, 2024 transcript, at page 6, line 7 though page 7, line 6); (2) the demands in the Subpoena Duces Tecum "flunk" the Second Circuit's standard regarding discovery from an arbitrator or mediator (**Exhibit A**, at page 7, line 7 through page 8, line 15); and (3) there was a confidentiality agreement between the parties that protects against the disclosure by the arbitrator of information governed by the confidentiality agreement. *See*, **Exhibit A**, at page 8, line 16 through page 9, line 9.

The Magistrate Judge's reasoning was flawed and erroneous. As discussed at length in this Memorandum, the underlying basis for the Magistrate Judge's reasoning suffered from a misunderstanding of the underlying facts.

Accordingly, the Plaintiff's Motion should be granted.

**A.      Subpoena Was Not A Collateral Attack On The Mediation Or Arbitration**

The Magistrate Judge denied the Motion to Compel the Subpoenas because the Magistrate Judge stated that the Subpoenas are a collateral attack on the mediation and arbitration proceedings. *See,* **Exhibit A**, at page 6, line 7 through page 7, line 6.

Neither Scheinman nor SAMS argued that the Subpoenas were a collateral attack on the arbitration and/or mediation. *See,* **Docket Entry No. 59**. The Plaintiff denies the Subpoenas are a collateral attack on any mediation or arbitration.

In this Action, the Plaintiff is not seeking to attack, challenge, or disrupt in any way, the UFT Arbitration Award issued by Scheinman. *See,* **Docket Entry No. 39**. The UFT Arbitration

7

Award serves as the basis for the NYCDOE's defense to the NYCDOE's discrimination of the Plaintiff based upon her religious beliefs.

There are three examples of how the Plaintiffs' Subpoenas are not a collateral attack on the arbitration/mediation.

First, the documents that Scheinman and SAMS state are in their possession are the invoices and payments received by SAMS for its work on the Vaccine Mandate mediation, arbitration, and as the appeal panel for denials of accommodations. *See,* **Docket Entry No. 59**, at page 4. The disclosure of the invoices and payments in no way collaterally attacks the mediation or arbitration.

Second, the Plaintiff's Third Cause of Action seeks a declaratory judgment seeking to void the purported release that the Plaintiff was forced to execute to extend her suspension with pay. *See,* **Docket Entry No. 39**, at ¶¶ 40 through 66. The NYCDOE has an affirmative defense based upon the same release. *See,* **Docket Entry No. 46**, at ¶ 68. One of the arguments made by the Plaintiff in support of the cause of action is that the release was above and beyond what the UFT Arbitration Award entitled the NYCDOE to receive as a release. *See,* **Docket Entry No. 39**, at ¶¶ 54-55. The Plaintiff is looking to depose Scheinman to obtain his opinion as to whether the general release was within the scope of the UFT Arbitration Award or was the NYCDOE entitled to a limited release, like what the Plaintiff argues. Scheinman's deposition will be used for interpretation purposes, not as a collateral attack.

Third, the Plaintiff seeks to depose Scheinman to question him about the appeal process of NYCDOE's denials of religious accommodations/exemptions relating to Catholic applicants, like the Plaintiff. The question is whether the NYCDOE influenced or provided any guidance regarding Catholic employees' appeals to SAMS. This is not a collateral attack on the arbitration/mediation, but "nonprivileged matter that is relevant to [the Plaintiff's] claim … and proportional to the needs of the case." FRCP Rule 26(b)(1).

8

The Plaintiff is seeking to uncover facts relating to the process by which the NYCDOE ultimately terminated the Plaintiff's employment based upon religious discrimination.

The Magistrate Judge's reasoning that the Subpoenas were a collateral attack on the arbitration/mediation is clearly erroneous and this Court should compel compliance with the Subpoenas.

**B.     Discovery From this Arbitrator Was Warranted**

The Magistrate Judge misunderstood the underlying facts. Scheinman was not just an arbitrator who made a decision and now the Plaintiff is looking to attack the decision based upon impropriety or other bases in the law.

Instead, Scheinman and SAMS were part of the process that led to the Plaintiff's suspension without pay and termination based upon religious discrimination.

The Plaintiff filed a request for an accommodation/exemption from the Vaccine Mandate based upon her religious beliefs. *See,* **Docket Entry No. 39-3**. The NYCDOE denied the Plaintiff's request for an accommodation/exemption from the Vaccine Mandate. *See,* **Docket Entry No. 39-4**. The Plaintiff then appealed to SAMS pursuant to the terms of UFT Arbitration Award. *See,* **Docket Entry No. 39-5**; **Docket Entry No. 39-9**, at pages 10-11.

SAMS, in the person of Torrey, denied the Plaintiff's appeal of the NYCDOE's denial of the Plaintiff's request for accommodation/exemption. *See,* **Docket Entry No. 39-5**.

The Plaintiff is not seeking information in an effort to void, reverse, or modify either the UFT Arbitration Award or Torrey's denial of the Plaintiff's appeal. What the Plaintiff is seeking is information that served as the basis for SAMS's denial of the Plaintiff's appeal since the denial lacks any basis or reasoning. *See,* **Docket Entry No. 39-5**.

It is Plaintiff's argument that SAMS was provided information and told not to reverse appeals from the NYCDOE. It is the Plaintiff's belief that SAMS did independent research about Catholics and the Pope relating to the Church's position on the COVID vaccine and did not rely upon the Plaintiff's and other Catholics' appellate filings. Only SAMS and Scheinman can confirm or contradict the Plaintiff's arguments.

The Magistrate Judge's decision and reliance upon several cases were clearly erroneous because the underlying facts in those cases are factually and procedural different from this Action.

For example, in *Andros Cia. Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691 (2d Cir 1978), the plaintiff sought to vacate an arbitration award based upon bias.

The Magistrate Judge cited to and quoted the portion of the decision that states: "any questioning of arbitrators should be handled pursuant to judicial supervision and limited to situations where clear evidence of impropriety has been presented." *Andros Cia. Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d at 702.

In addition, the Magistrate Judge relied upon *Lyeth v. Chrysler Corp.*, 929 F.2d 891, 899 (2d Cir 1991) in which the parties were challenging the Lemon Law mandatory arbitration procedure and arbitration award. The Court in *Lyeth* denied the defendant's request to depose the arbitrator in a Lemon Law arbitration and denied the defendant's discovery requests served upon the arbitrator because there was no evidence of any impropriety.

The Magistrate Judge cited to and quoted from *Mauna Kea Resort v. Affiliated FM Ins. Co.*, 2009 US Dist LEXIS 18485, at * 4 (E.D.N.Y. 2009) for the Court's statement that "post-decision depositions of arbitrators have been 'repeatedly condemned' by courts where there is no evidence of bias or impropriety."

But in this case, the Plaintiff is not alleging any impropriety by Scheinman or SAMS, but is seeking to obtain "nonprivileged matter that is relevant to [the Plaintiff's] claim ... and proportional to the needs of the case." FRCP Rule 26(b)(1).

10

What SAMS used to deny appeals from the NYCDOE's denial of religious accommodations/exemptions by Catholics, like the Plaintiff, is a major issue in this Action. If the NYCDOE communicated with SAMS relating to religious accommodations/exemptions and those communications influenced SAMS in denying the Plaintiff an accommodation/exemption, then the Plaintiff should be able to know those underlying facts.

The cases cited by the Magistrate Judge are inapposite to the underlying facts, allegations, and claims in this Action. The Magistrate Judge's reliance upon these cases was clearly erroneous and contrary to law.

The Plaintiff is entitled to obtain all information from whatever source that served as the basis for the decision to deny the Plaintiff a reasonable accommodation/exemption from the Vaccine Mandate.

> We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. But discovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30 (b) and (d) and 31 (d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26 (b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege.

*Hickman v. Taylor*, 329 U.S. 495, 507-508 (1947).

The denial by the Magistrate Judge of the Plaintiff's Motion to Compel the Subpoenas upon Scheinman and SAMS, was contrary to law because the Plaintiff is entitled to inquire into

11

the facts underlying the NYCDOE's denial of the Plaintiff's request for accommodation/exemption from the Vaccine Mandate. SAMS was part of the denial process **(Docket Entry No. 39-5)** and the Plaintiff should be able to obtain the information from SAMS she seeks to prosecute her claim of religious discrimination.

This Court should grant the Plaintiff's Motion and compel compliance with the Subpoenas.

C. **There Was No Confidentiality Agreement**

The Magistrate Judge stated that the basis for his decision was a "confidentiality agreement" between the parties. *See,* **Exhibit A**, at page 8, lines 18-21. The Magistrate Judge held that Scheinman cannot be compelled to disclose information because of confidentiality in the arbitration and mediation process. *See,* **Exhibit A**, at page 8, line 23 through page 9, line 9.

The Magistrate Judge just got it wrong and the decision to deny the Motion to Compel was clearly erroneous and contrary to law.

The Magistrate Judge relied upon *Savage & Assocs. P.C. v. K&L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53 (2d Cir 2011) for the standard relating to discovery of confidential material. Only Scheinman and SAMS asserted confidentiality. *See,* **Docket Entry 59**. Yet, there is no evidence that the arbitration or mediation were intended to be confidential in light of the NYCDOE's failure to object to the Motion to Compel. *See,* **Exhibit A**, at page 5, lines 17-22.

First, there was no "confidentiality agreement". Neither Scheinman, SAMS, nor the NYCDOE produce or even argue that there was a confidentiality agreement between the parties. *See,* **Docket Entry No. 59**. The Magistrate Judge's reliance upon a "confidentiality agreement" was clearly erroneous.

Second, the Magistrate Judge was "stunned" that the NYCDOE did not "weigh in" on the Motion to Compel. **Exhibit A**, at page 5, lines 17-22. The NYCDOE, the party to the mediation

12

and arbitration did not object to the Subpoenas, the disclosure sought in the Subpoenas, or even the deposition of Scheinman, whether based upon confidentiality or any other reason.

Only the NYCDOE and not Scheinman nor SAMS has standing to challenge the Subpoenas upon confidentiality.

"[A] party with that confidentiality interest has standing to challenge whether the information sought by the subpoena is tailored to the dispute's needs." *In re Lloyds Banking Group PLC*, 2021 US Dist LEXIS 134046, at *6 (S.D.N.Y. 2021).

"A party to a suit does not have standing to contest subpoenas issued to third parties unless the party claims that the documents subpoenaed are privileged or confidential in some way." *Ashkinazi v. Sapir*, 2004 US Dist LEXIS 14523, at *7 (S.D.N.Y. 2004).

"[I]ndividuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." *Arias-Zeballos v. Tan*, 2007 US Dist LEXIS 5068, at *3 (S.D.N.Y. 2007).

To the extent there was any confidentiality in the proceedings before Scheinman, the NYCDOE had standing to challenge the Subpoenas but failed to do so. *See,* **Exhibit A**, at page 5, lines 17-22. When the NYCDOE did not challenge the Subpoenas based upon confidentiality, the issue was waived.

Accordingly, when the Magistrate Judge denied the Plaintiff's Motion to Quash based upon confidentiality, the Magistrate Judge's decision was clearly erroneous and contrary to law.

To the extent the Magistrate Judge denied the Plaintiff's Motion to Quash based upon a general concept of confidentiality in arbitrations and mediations, the Magistrate Judge's ruling was contrary to law.

If the Magistrate Judge was concerned about the confidentiality of arbitration and mediation process, the Subpoenas could have been limited by the Magistrate Judge to exclude questioning at the deposition regarding the mediation that led to the arbitration that led to the UFT Arbitration Award. The remaining issues, like the appellate process for religious accommodation/exemptions, the invoicing and payments for SAMS's services, and information used by SAMS to determine religious accommodation appeals, including the Plaintiff's appeal should have been permitted by the Magistrate Judge.

Instead, the Magistrate Judge erroneously and contrary to law denied the Motion to Compel, essentially quashing the Subpoenas despite the fact that the Plaintiff is entitled to inquiring into the facts underlying the NCYDOE's case. *See, Hickman v. Taylor,* 329 U.S. at 507-508.

The Plaintiff's Motion should be granted and the Subpoenas should be enforced.

## CONCLUSION

The Court should grant the Plaintiff's Motion, pursuant to FRCP Rule 72(a) and direct Scheinman and SAMS to comply with the Subpoenas.

Dated:   Garden City, New York
         August 13, 2024

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff
*Attorneys for the Plaintiff*
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040

14