# EXHIBIT A

```
 1                   UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF NEW YORK

 3    LORRAINE MASCIARELLI,        .  Docket No.
                                   .  1:22-CV-07553-CBA-SJB
 4         Plaintiff,              .
                                   .
 5          v.                     .  Brooklyn, New York
                                   .  Tuesday, August 6, 2024
 6    NEW YORK CITY DEPARTMENT     .  11:10 a.m.
      OF EDUCATION,                .
 7                                 .
           Defendant.              .
 8     . . . . . . . . . . . . . . .

 9
                  TRANSCRIPT OF STATUS CONFERENCE
10            BEFORE THE HONORABLE SANKET J. BULSARA
                 UNITED STATES MAGISTRATE JUDGE
11
      APPEARANCES:
12
      For the Plaintiff:         The Scher Law Firm, LLP
13                               AUSTIN R. GRAFF, ESQ.
                                 600 Old Country Road, Suite 440
14                               Garden City, New York  11530
                                 516-746-5040
15
      For the Defendant:         ANDREA MARTIN, ESQ.
16                               222 East 34th Street
                                 New York, New York  10016
17                               201-321-7401

18                               New York City Law Department
                                 KATHLEEN LINNANE, ESQ.
19                               100 Church Street, Suite 2-196
                                 New York, New York  10007
20                               212-356-2467

21
      Transcription Service:     Superior Reporting Services LLC
22                               P.O. Box 5032
                                 Maryville, TN 37802
23                               865-344-3150

24
      Proceedings recorded by electronic sound recording;
25    transcript produced by transcription service.
```

Superior Reporting Services LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com

```
1                     P R O C E E D I N G S
2              THE COURT:  Good morning.  Please be seated.  Okay.
3   We're here for a status conference on 22-CV-7553.  Who's here
4   for the plaintiff?
5              MR. GRAFF:  Good morning, Your Honor.  Austin Graff
6   from The Scher Law Firm.
7              THE COURT:  Good morning.  And for the defendants?
8              MS. MARTIN:  Good morning, Your Honor.  Andrea
9   Martin, Corporation Counsel for New York City Department of
10  Education.
11             MS. LINNANE:  Good morning, Your Honor.  Kathleen
12  Linnane, Corp. Counsel for the Department of Education.
13             THE COURT:  Okay.  Good morning.  The real purpose
14  of this status conference was to address the motion to compel
15  that's been filed with respect to the subpoena directed at
16  the arbitrator or non-party, Mr. Scheinman.  I see that
17  counsel for Mr. Scheinman is not here.  That's not going to,
18  I think, prevent me from ruling on the motion.  The real
19  question I did have, though, is the Department of Education
20  taking a position in this?  I was surprised that you didn't
21  file anything.
22             MS. MARTIN:  Your Honor, it's our understanding
23  that because Martin Scheinman is represented by private
24  counsel, that we were not going to respond to the motion to
25  compel.
```

```
 1                THE COURT:  You're not required to respond.  I was
 2   asking a different question.  Do you have a position on it?
 3   I mean, the subpoena seeks from a third party your client's
 4   documents, communication.  If you were to grant it, it would
 5   be testimony about your client, your client interactions at
 6   the mediation and arbitration.  Frankly, the person was
 7   appointed pursuant to the DOE's and the union's collective
 8   bargaining procedures.  For example, confidentiality
 9   procedures that directly affect your client.  So you're not
10   required to respond, but I was wondering what your position
11   was.
12                MS. MARTIN:  I think our position remains the same,
13   in that a lot or most of those communications are both
14   confidential and not relevant.  I think that we had already
15   discussed some of those issues in Plaintiff's prior motion to
16   compel certain discovery requests, and they were denied.
17                THE COURT:  Okay.  Do you join the opposition of
18   Mr. Scheinman?
19                MS. MARTIN:  Yes.
20                THE COURT:  Okay.  I would think in the future on
21   an issue as important as this one you'd file something.  Mr.
22   Graff, I just want to confirm one thing, or maybe it really
23   is two.  Your client was one of the people whose claim was
24   mediated and arbitrated?
25                MR. GRAFF:  It went through the SAMS appeal.  She
```

1  applied to New York City Department of Education for an
2  accommodation.  It was denied.  She appealed it to the
3  Scheinman Arbitration Mediation Service.  Yes.
4           THE COURT:  In your papers, where you talk about
5  the UFT arbitration award, okay -- I guess I should've asked
6  my question more precisely.  That is the award related to
7  your client, right?
8           MR. GRAFF:  No.  The UFT arbitration award
9  was -- there was an impasse in negotiations between the City
10 and UFT regarding the implementation of the COVID vaccine
11 mandate.  When they reached an impasse, they couldn't resolve
12 it amongst themselves.  They appointed as arbitrator Martin
13 Scheinman, who established the implementation process which
14 included a manner in which NYCDOE employees could seek
15 medical accommodations and just accommodations for the
16 vaccine mandate.  So it was an arbitration awarded with all
17 the members of the UFT, not specifically my client.
18          THE COURT:  Well, your client is affected by that
19 award.
20          MR. GRAFF:  Absolutely.
21          THE COURT:  Okay.  And you're seeking a declaratory
22 judgment about what?
23          MR. GRAFF:  The UFT arbitration award had included
24 in it an authorization to grant the City a limited release
25 related to extensions of the suspensions without pay, and the

1    arbitration award said you can get a release based upon not

2    challenging your termination after that suspension without

3    pay ended.

4              THE COURT:  And that's the same award that we just

5    discussed, that covers all employees?

6              MR. GRAFF:  Correct.

7              THE COURT:  Okay.

8              MR. GRAFF:  But the release that actually was

9    drafted and executed by my client was a general release, not

10   a specific release, so we're saying it was outside the scope

11   of the arbitration award.

12             THE COURT:  But that's an argument about the scope

13   of the award, but you're seeking a declaratory judgment about

14   release that one side says was executed pursuant to that

15   award?

16             MR. GRAFF:  Correct.

17             THE COURT:  Okay.  I'm stunned the Department of

18   Education didn't weigh in on this.  I mean, just even this

19   discussion shows exactly why a subpoena directed at the

20   mediator and arbitrator who's deciding issues pivotal to you

21   and your client, for you to sit silent about it is stunning,

22   frankly.

23             Okay.  The motion to compel is denied.  I'm noting

24   at the outset that the plaintiff does not cite a single case

25   in the papers on the relevance standard for such a motion,

1    but most significantly, that a subpoena in these unusual
2    circumstances has ever been granted, and that's a subpoena
3    directed at a mediator or an arbitrator.  That's, perhaps,
4    telling that you don't cite a single case in your motion
5    papers.
6              Now, the motion itself fails for three different
7    reasons.  First, it's an improper collateral attack on the
8    decision of an arbitrator or a mediator.  Plaintiff was at
9    least represented by or affected by the arbitration award,
10   and if a party seeks to question the decision of an
11   arbitrator, its reasoning, any bias, wants clarification, an
12   appeal has to be brought either before the arbitration panel
13   itself or as a separate action under the FAA to vacate or set
14   aside such an award.
15             That procedure was not filed in this case.  Maybe
16   you have to intervene in that action.  Maybe you have to try
17   and remove it to federal court.  But you can't bring a
18   collateral attack and seek discovery on arbitration to which
19   you either were affected or a party to in the original
20   instance.
21             You cannot collaterally attack, which is
22   effectively what the subpoena attempts to do, conduct an
23   investigation through the propriety of the arbitration in
24   collateral litigation.  That's plain from the documents that
25   are being sought.  Plaintiff seeks documents about the

1  financial circumstances and the financial payments under
2  which mediator arbitrator showing them was paid.  The nature
3  of the engagement lever and the process by which he came to
4  be the mediator.  All of those are questions that attempt to
5  undermine.  They are real, but, for example, point potential
6  bias, but that can't be done collaterally.

7  But even if you could seek collateral relief here,
8  the requests flunk the standards set forth by the Second
9  Circuit for obtaining discovery from a mediator or an
10 arbitrator, as this subpoena seeks to do.  In Marc Rich and
11 Co., A.G. 579 F.2d 691 702 1978 Second Circuit, the circuit
12 held that, "In the special court in the special context of
13 what are in effect post hoc efforts to reduce arbitrators to
14 undermine the finality of their own awards, we agree that any
15 question of arbitration be handled pursuant to judicial
16 supervision and limited to situations where clear evidence of
17 impropriety has been presented," unquote.

18 The circuit reaffirmed that in a case, Lyeth v.
19 Chrysler Corp., 929 F.2nd 891 899 Second Circuit 1991, which
20 said that you have to find, quote, "some basis to prosecute a
21 claim of bias," unquote.  And Lyeth is instructed in another,
22 which is to say that if there are questions about bias or if
23 there are requests for notes made by the adverse party in
24 arbitration or materials provided to the arbitrator, it is
25 incumbent upon the party affected by the arbitration to seek

1   those documents in the arbitration itself.

2           By the time you come to federal court, you fail to
3   appropriately seek those documents in the first instance.
4   But Lyeth is instructed in another way.  Reaffirms the
5   decision in Marc Rich, that you've got to show some evidence
6   of impropriety.  And there hasn't been.  There's just simply
7   what amounts to a fishing expedition based upon the hope that
8   the evidence either in the form of testimony or documents or
9   exhibits.  Would be helpful to prosecute the plaintiff's case
10  here.

11          Indeed, quote, "post-decision depositions of
12  arbitrators have been repeatedly condemned by Courts where
13  there's no evidence of bias or impropriety."  And that's not
14  Mauna Kea Resort 2009 Westlaw 578529, March 4th, 2009 Eastern
15  District of New York.

16          But there's a clearly separate and independent
17  problem, which is that the documents here -- and again, this
18  is where the City should have weighed in.  At least some of
19  them being sought are confidential.  In other words, either
20  the mediation or the arbitration or both were conducted
21  pursuant to a confidentiality agreement.  And, you know, at
22  least that's what the arbitrator says.

23          And when you're seeking documents that have been
24  made confidential and you are a third party, there's a
25  separate and more exacting standard in order to get discovery

1   of those documents.  The Second Circuit articulated this in
2   In re Teligent 640 F.3d 53 Second Circuit 2011 at page 58.
3   Quote, "A party seeking disclosures confidential mediation
4   communications must demonstrate one, a special need for the
5   confidential material; two, resulting in fairness from a lack
6   of discovery; and three, the need for the evidence outweighs
7   the interest in maintaining confidentiality.  And all three
8   factors are necessary to warrant disclosure of otherwise
9   non-discoverable documents," unquote.
10          Those standards aren't even articulated in the
11  motion, let alone met, and that's an independent basis to
12  deny the motion to compel.  The motion to compel and the
13  motion for contempt are denied for those reasons.  Okay.  Mr.
14  Graff, where are we from completing discovery by the
15  September deadline?
16          MR. GRAFF:  We were on track until there was a
17  dispute over the list that was received from the City that
18  the Court ordered.  There was an appeal to the district court
19  judge of this court's June 4th electronic order.  And we're
20  waiting a decision from the district court judge, so we've
21  been in a stall situation.  The plaintiff has been deposed,
22  so if the district court agrees with this Court, would get
23  the document and then we would quickly schedule depositions.
24  But we can't do the deposition of the City until we get the
25  document or the ruling from the district court.

| | |
|---|---|
| 1 | THE COURT: And are there any depositions of the |
| 2 | defendant that you would take or able to take without that |
| 3 | list? |
| 4 | MR. GRAFF: The problem is, there's some confusion |
| 5 | over the nomenclature being used in the case, and I don't |
| 6 | know how to resolve it. So the list that was provided to us, |
| 7 | pursuant to the Court's original order, listed 100 and -- |
| 8 | THE COURT: Sorry. I don't mean to cut you off. I |
| 9 | understand the nature of the dispute and the request for |
| 10 | clarification. I guess I'm asking a sort of more |
| 11 | 100,000-foot level question, which was is there anyone you |
| 12 | would depose who you could depose without having to re-depose |
| 13 | that person once you got the list? |
| 14 | MR. GRAFF: I don't think so. |
| 15 | THE COURT: Okay. Ms. Martin, do you agree with |
| 16 | that? |
| 17 | MS. MARTIN: Yes. I do agree with that. And we do |
| 18 | not have any outstanding discovery requests on our end, Your |
| 19 | Honor. |
| 20 | THE COURT: And who did you list as witnesses with |
| 21 | knowledge in your 26(a) disclosures? |
| 22 | MS. MARTIN: Eric Eichenholtz of the New York City |
| 23 | Law Department and I believe there were three individuals |
| 24 | from the New York City Department of Education. I will have |
| 25 | to double-check their names. |

```
 1                THE COURT:  Mr. Graff, do you intend to depose all
 2   four of those individuals?
 3                MR. GRAFF:  No.  Mr. Eichenholtz and probably one
 4   from the Department of Education.
 5                THE COURT:  Okay.  Would that be in the form of a
 6   30(b)(6) witness or 30(b)(6) witness and as a fact witness?
 7                MR. GRAFF:  I think it would be both.
 8                THE COURT:  Okay.  And that would satisfy the
 9   depositions you would be taking?
10                MR. GRAFF:  Yes.
11                THE COURT:  Okay.  And Ms. Martin, would you be
12   taking any third-party depositions?
13                MS. MARTIN:  No, Your Honor.
14                THE COURT:  And do you have any experts?
15                MR. GRAFF:  No.
16                THE COURT:  Okay.  Any experts for the City?
17                MS. MARTIN:  No.
18                THE COURT:  Okay.  All right.  So we're in
19   relatively good shape in the sense of we would have two
20   depositions to take whenever Judge Amon decides.  So I'll
21   obviously extend the deadline as needed based on when Judge
22   Amon makes the decision, but I would think that you wouldn't
23   need more than 45 days from the date of her decision.
24                MR. GRAFF:  Your Honor, the only thing is, if her
25   decision is compelling new disclosure, it's going to take
```

1 some time for the City to disclose and then me take the
2 depositions.
3        THE COURT:  Fair point.  All I'll just say here is
4 whatever it is that Judge Amon decides within a week, why
5 don't you meet and confer on a schedule for an extension of
6 discovery?  So if there is more additional production that's
7 required, you'll go down one route.  If additional production
8 is required, you'll obviously go down another.  And depending
9 on when that decision is entered, you know, if it's entered
10 tomorrow, you know, perhaps you don't need an extension on
11 this tendered deadline.  If it's entered after September, you
12 know, we'll need an extension of the deadline.  So you can
13 factor all of that in.  And I take it that at least the
14 defendants are moving for summary judgment?
15        MS. MARTIN:  Yes.
16        THE COURT:  Okay.  And Mr. Graff, would you be as
17 well?
18        MR. GRAFF:  I believe so.  Yes.
19        THE COURT:  Okay.  All right.  So whenever it is, I
20 would set a deadline for taking the first step in dispositive
21 motion practice as 30 days from whenever you all propose that
22 discovery close.  I know we discussed this I think last time
23 or the time before.  What is the prospect of trying to
24 resolve this case?
25        MR. GRAFF:  We would love to.  We haven't had very

1   fruitful discussions.
2              THE COURT:  Can you just remind me, did you make a
3   demand?
4              MR. GRAFF:  I think we've made a demand in the
5   past.  Right now, because we're coming up on another school
6   year, so it's an extra year of salary, so it's essentially
7   four years of salary.  It should be three years of salary
8   because it's 2021 through 2024.
9              THE COURT:  And without getting into numbers,
10  what's your client doing in terms of mitigation?
11             MR. GRAFF:  She's currently working at a private
12  Catholic school.
13             THE COURT:  Okay.  So it would be the delta between
14  the current salary.  I understand.
15             MR. GRAFF:  Correct.
16             THE COURT:  Okay.  What's DOE's interest in trying
17  to resolve?
18             MS. MARTIN:  We are open to having settlement
19  discussions.  The last demand that we received was not
20  something that we could realistically come back to.  If we
21  received another demand, I would be open to having the
22  conversation and starting up settlement discussions once
23  again.
24             THE COURT:  Remind me.  I may have raised this
25  before.  What was the DOE's position on a rehire?  Does the

1   plaintiff even want to go back to the DOE?

2          MR. GRAFF:  She does.  But not -- so there's a

3   difference between reinstatement and rehire.  Reinstatement

4   would put her back where she was.  Rehire, she'd start at the

5   bottom, so she wants reinstatement, not rehire.

6          THE COURT:  Does the DOE have a view on this?

7          MS. MARTIN:  I did check in with my client after

8   our last conference and Plaintiff is free to look for

9   employment at the DOE once again.  I don't believe

10  reinstatement is an option, but she is free to apply for

11  employment with the Department of Education.

12         THE COURT:  So here's what I would say about the

13  settlement.  I don't know if there's a number the DOE think

14  is a reasonable number based on whatever it thinks the risks

15  are.  It should just offer that, right?  The plaintiff could

16  be at a billion dollars, frankly.  I'm not saying make your

17  last and final or exhaust your authority, but whatever it is

18  that the plaintiff has demanded, put it to the side for a

19  moment you should offer whatever you think a reasonable offer

20  would be if only because of, look, the plaintiff could reject

21  it, right?  Or have sort of like a "Okay.  I'm not going to

22  bargain based on that number."  But at least you've given it

23  a shot based upon what you and your client think a reasonable

24  resolution number would be, right?  And so I would encourage

25  that.

```
 1              As for the, you know, reinstatement, rehire, you
 2   know, that's often hard to resolve in a settlement
 3   negotiation because it's an all or nothing kind of
 4   proposition.  I mean, all I can say is you should talk to
 5   your client about the fact that whether or not that's a
 6   sticking point for a requirement, right, in the fallen way,
 7   which is that at trial it's an all or nothing proposition,
 8   right?
 9              Because if the plaintiff loses, there is no
10   reinstatement.  If the defendant loses, there is
11   reinstatement.  Period.  Back to as if she had not been let
12   go or had not left three or four years ago.  So it ends up
13   being over the defendant's objection.  Obviously, if it goes
14   to trial and your client loses or it's summary judgment, then
15   there's no possibility of it and you're in this kind of --
16              Now, that may lead to some flex on the monetary
17   amount, perhaps, but that's what you should talk about with
18   each of your clients.  I'm not in a position to get you a
19   settlement conference on my calendar because this case is
20   being transferred away from me in late November or if not
21   before then when I become a district judge, and I'm taking
22   only my consent docket with me, which is this is not.
23              But I can get a different magistrate judge to have
24   a settlement conference if the parties would like.  But I
25   think the agreement between both of you that that would be a
```

1  fruitful use of time.  I mean, I'm not casting aspersions.
2  I'm just saying I get the sense that both of you don't know
3  if it would be fruitful yet.
4        MR. GRAFF:  Your Honor, I think on our side it'd be
5  fruitful as long as it's good faith on both sides, and I
6  don't believe there would not be.  I believe the City would
7  come with good faith.  So, you know, we would like to try.
8        THE COURT:  Ms. Martin, there are two of you.
9        MS. MARTIN:  I would like to confer with my client
10 first.
11       THE COURT:  Okay.  How about this?  Is two weeks
12 sufficient?  In other words, can you both jointly write to me
13 in two weeks if you'd like a settlement conference and I'll
14 find another magistrate judge to conduct it?
15       MS. MARTIN:  Yes.
16       THE COURT:  I mean, look, there are cancellations,
17 but realistically, I'm unable to guarantee you a date before
18 the end of October.  Although I typically don't require, when
19 we have, you know, the law department present to require a
20 client representative, but sometimes it can be helpful if
21 there's nonmonetary relief on the table, like a reinstatement
22 or rehire.  I mean, it depends.
23       I mean, in this situation it really depends on
24 whether you thought it would be helpful to have that person,
25 but if I'm not doing the settlement conference it'd be really

1  who the -- which other MJ decides what they want to do.  But
2  I have found it helpful, personally, to have a DOE person who
3  can talk about the nonmonetary relief.  I think it also
4  depends on whether or not that is something that your client
5  is actually interested in or would rather just sort of, you
6  know, like to negotiate on the monetary side.  So you can
7  write to me in two weeks.
8              MS. MARTIN:  Okay.
9              THE COURT:  Is that sufficient?  Okay. Anything
10 else we should talk about today?
11             MR. GRAFF:  No, Your Honor.
12             THE COURT:  Okay.  I'm going to mark down that
13 there is no expert.  The parties do not contemplate any
14 expert discovery.  Put that on the docket sheet.  Any reason
15 I shouldn't do that at this point?
16             MR. GRAFF:  No.  I don't think so.
17             MS. MARTIN:  No, Your Honor.
18             THE COURT:  Okay.  All right.  I wish you all good
19 health.  Have a nice day.
20             MR. GRAFF:  Thank you.
21             MS. MARTIN:  Thank you.
22             MS. LINNANE:  Thank you.
23        (Proceedings adjourned at 11:39 a.m.)
24
25

```
 1                   TRANSCRIBER'S CERTIFICATE

 2          I certify that the foregoing is a correct

 3   transcript from the electronic sound recording of the

 4   proceedings in the above-entitled matter.

 5

 6   Laura Hunt                             August 8, 2024

 7
            Laura Hunt
 8     _____     _____

 9   Laura Hunt                             DATE

10   Legal Transcriber
```

Superior Reporting Services LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com