# THE SCHER LAW FIRM, LLP

600 OLD COUNTRY ROAD, SUITE 440
GARDEN CITY, NY 11530

MARTIN H. SCHER*
JONATHAN L. SCHER**

AUSTIN R. GRAFF*

TEL: 516-746-5040

FAX: 516-746-5043

W. SCOTT KERSHAW
COUNSEL
MICHAEL SCHILLINGER
COUNSEL
ROLAND P. BRINT
COUNSEL
ADAM GANG
COUNSEL

*Also Admitted in District of Columbia
* Also Admitted in New Jersey

ROBERT S. NAYBERG
(1959-2012)

May 14, 2025

**BY ECF**

Hon. Vera M. Scanlon, U.S.M.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: Masciarelli v. New York City Department of Education
         E.D.N.Y. Docket No. 22-cv-7553

Dear Magistrate Judge Scanlon:

  This law firm represents the Plaintiff in the above-referenced Action. This letter shall serve as the Plaintiff's reply to the opposition submitted by the Defendant New York City Department of Education ("NYCDOE") to the Plaintiff's Motion to Compel.

  The NYCDOE is purposefully confusing and conflating two arbitration processes in an attempt to hide and conceal the truth from the Plaintiff. The arbitration awards and the Appeals Panel awards sought by the Plaintiff are relevant to the Plaintiff's claim that she was the subject of religious discrimination because the NYCDOE had, as a matter of policy, refused to grant any religious exemptions to the COVID-19 Vaccine Mandate and there were in fact some NYCDOE employees who were granted exemptions. The documents sought are the documents relating to every person (approximately 145) who were granted religious exemptions.

  It is important to take a step back from the Plaintiff's particular case to understand the context of the Plaintiff's case. In August 2021, the City of New York imposed a vaccine mandate requiring all employees of the NYCDOE to become vaccinated with the COVID-19 vaccine. In order to impose such a mandate, the NYCDOE had to negotiate with the Plaintiff's union, the UFT, to change the conditions of employment. When the UFT and the NYCDOE reached an impasse over the implementation of the vaccine mandate, an arbitrator, Martin Scheinman imposed a resolution that created a procedure by which UFT members could apply for religious exemptions to the vaccine mandate. *See,* Docket Entry No. 1-9, at pages 6-13 ("UFT Arbitration Award")

  The Plaintiff applied to the NYCDOE for a religious exemption, which was denied.

  Unbeknownst to anyone outside of the NYCDOE and after years of litigation in State and federal courts, during the deposition of Katherine Rodi ("Rodi"), it was disclosed for the first time that regardless of what religious belief an applicant for a religious exemption had, the NYCDOE denied each and every application after a "general committee" of the NYCDOE decided that no

one was going to be granted a religious exemption from the vaccine mandate. *See*, **Exhibit 1**, a copy of the deposition transcript of Katherine Rodi, at page 16, line 6 through page 22, line 15.

According to the UFT Arbitration Award, if the NYCDOE denied a request for a religious exemption, the next procedure was to appeal a denial of a religious exemption to Scheinman's selected arbitrators at the Scheinman Arbitration and Mediation Service ("SAMS").

According to Rodi "if any applicant received an exemption, it was from the [SAMS] arbitrator." **Exhibit 1**, at page 25, line 21 through page 26, line 5.

It is these SAMS arbitration awards that the Plaintiff is seeking in discovery. The Plaintiff has requested a copy of each award in which a SAMS arbitrator granted an exemption. The Plaintiff is not seeking personal identifiable information concerning the individual that was granted the exemption, only the award, which identifies the arbitrator and the reasoning (to the extent any were provided[1]). *See,* Docket Entry No. 73-1, at Demand No. 1.

As the District Court stated in its decision in which the NYCDOE appealed the disclosure of an anonymous list of those who applied for an exemption, whether the exemption was granted or denied, and if granted, what accommodation was received, "[a]though the identities of other employees who were granted a religious accommodation are minimally relevant (if relevant at all), the Department's denial of other religious accommodation requests would be relevant to understanding whether NYCDOE had a bona fide undue hardship reason to deny Masciarelli's request." Docket Entry No. 65, at page 10 (emphasis in original).

Contrariwise, the Plaintiff is seeking the actual determination by the SAMS arbitrators granting the religious accommodation. Certainly, if the District Court found denials relevant, the granting of accommodation requests is relevant as well. The NYCDOE does not address this issue at all in its opposition. Accordingly, the Court should compel the NYCDOE to disclose the SAMS arbitration awards, redacting personal identifiable information concerning any individual granted an accommodation.

The next step in the process for the Plaintiff to obtain a religious exemption was an appeal to the NYCDOE's City of New York Reasonable Accommodation Appeals Panel ("Appeals Panel"). The Plaintiff's appeal was denied by the Appeals Panel.

However, Eric Eichenholtz ("Eichenholtz"), the Managing Attorney for the New York City Law Department (**Exhibit 2**, a copy of Eichenholtz's deposition transcript, at page 11, lines 10-20) testified that "at least some" of the NYCDOE employees who appealed to the Appeals Panel were granted exemptions. *See,* **Exhibit 2**, at page 32, lines 5-17.

---

[1] While the NYCDOE's counsel represented to the Plaintiff's counsel that the individual SAMS awards do not contain the reasoning behind a grant of a religious exemption, the Plaintiff is not required to accept the NYCDOE's representation of the contents of the documents. The Plaintiff should be entitled to the awards redacted as to personal identifiable information.

Similar to the SAMS arbitration awards, the Appeals Panel decisions (redacted of all personal identifiable information (Docket Entry No. 73-1, at Demand Number 2)) are relevant, since the District Court determined that "the Department's denial of other religious accommodation requests would be relevant to understanding whether NYCDOE had a bona fide undue hardship reason to deny Masciarelli's request" (Docket Entry No. 65, at page 10 (emphasis in original)) and thus grants of accommodations are just as relevant. The Court should therefore compel the NYCDOE to disclose the Appeals Panel decisions with redactions.

The NYCDOE does not argue that the demands are overly broad or that compliance will be unduly burdensome to the NYCDOE. The NYCDOE does not offer any explanation why the documents are not relevant.

Instead, the NYCDOE makes three arguments – timeliness of the application, the request for the same documents have been denied once by the Cout, and the Appeals Panel decisions are confidential. The Court should reject each argument.

First, the Motion could not have been made any sooner. Rodi's deposition, which triggered the request for the SAMS arbitration awards and Appeals Panel awards, was on March 25, 2025. The Plaintiff's Third Request for Production Pursuant to FRCP 34 Upon Defendant (Docket Entry No. 73-1) was served on March 27, 2025, just two days later. The original deadline to respond to the Plaintiff's Demands was April 21, 2025, but the NYCDOE requested an eight-day extension to respond and responded on April 29, 2025. *See,* Docket Entry No. 73-2. The Plaintiff requested a meet and confer with the NYCDOE's counsel on April 29, 2025 and the meet and confer was held on April 30, 2025. When the parties could not resolve the dispute on April 30, 2025, the Plaintiff filed and served the Plaintiff's Motion on May 1, 2025, 21 days before the end of disclosure, 27 days after the original demands were propounded, and 29 days after the deposition that triggered the demand. *See,* Docket Entry No. 70. There was no undue delay. This is not bad faith and the Plaintiff is not requesting any additional discovery other than the relevant awards reflecting grants of religious exemptions to NYCDOE employees. Once this issue is resolved, discovery will be complete.

Second, the NYCDOE conflates two different arbitration procedures – the impasse in negotiations between the UFT and NYCDOE with the appeals to SAMS of NYCDOE's universal denial of all religious exemptions regardless of religious beliefs. The documents sought from SAMS pursuant to a Subpoena Duces Tecum, which were denied by Magistrate Judge Bulsara, related to the impasse in negotiations and arbitration of the impasse, not the appeals from the NYCDOE denial of all religious exemptions (except the Plaintiff did seek information about the money paid to SAMS arbitrators for their services, which was denied). The NYCDOE is purposely trying to confuse the Court. The Court previously rejected the Plaintiff's attempt to obtain communications relating to the mediation and arbitration over the impasse in negotiations to implement the vaccine mandate, not the arbitration awards regarding the post-NYCDOE denial of all religious exemptions. The Plaintiff is not seeking to collaterally attack the arbitration awards,

Hon. Vera M. Scanlon, U.S.M.J.
United States District Court, Eastern District of New York
May 14, 2025
Page 4 of 4

only to obtain copies of the awards, which the NYCDOE's FRCP Rule 30(b)(6) witness testified is the only evidence of religious exemptions having been granted to NYCDOE employees. *See,* **Exhibit 1**, at page 25, line 21 through page 26, line 5.

Third, with respect to the Appeals Panel decisions, the Plaintiff is specifically not requesting personal identifiable information about the person granted the exemption. The Plaintiff requested that the NYCDOE redact any personal identifiable information. *See,* Docket Entry No. 73-1, at Demand Numbered 2. Once redacted, there will be no confidential information contained on the Appeals Panel awards. The NYCDOE's description of the Plaintiff's request as a fishing expedition is simply incorrect. The NYCDOE's FRCP Rule 30(b)(6) witness testified that some of the NYCDOE employees who appealed to the Appeals Panel were granted religious exemptions. *See,* **Exhibit 2**, at page 32, lines 5-17. As the District Court held: "the Department's denial of other religious accommodation requests would be relevant to understanding whether NYCDOE had a bona fide undue hardship reason to deny Masciarelli's request." Docket Entry No. 65, at page 10 (emphasis in original). As a result, the reasoning behind the Appeals Panel decisions to grant religious exemptions is relevant and should be disclosed to the Plaintiff.

Thank you for your courtesies.

Respectfully submitted,

THE SCHER LAW FIRM, LLP
*Attorneys for Plaintiff*

Austin Graff

ARG;ms
Encs.
cc:   Attorneys of Record (by ECF)