# EXHIBIT 2

1     UNITED SATES DISTRICT COURT

2     EASTERN DISTRICT OF NEW YORK

3     - - - - - - - - - - - - - - - - - x

4     LORRAINE MASCIARELLI,

5                      Plaintiff,

6        -against-              INDEX NO. 22-cv-7553

7     NEW YORK CITY DEPARTMENT OF
      EDUCATION,
8
                     Defendant.
9
      - - - - - - - - - - - - - - - - - x
10

11                   April 4, 2025

12                   10:05 a.m.

13

14

15        VIRTUAL DEPOSITION of ERIC J. EICHENHOLTZ, on

16     behalf of the Defendant herein, pursuant to Notice,

17     taken before Ceita Lazar, a Stenographic Reporter

18     and Notary Public within and for the State of

19     New York.

20

21

22

23            SANDY SAUNDERS REPORTING
          254 South Main Street, Suite 216
24           New City, New York 10956
                 (845) 634-7561
25

1                    A P P E A R A N C E S:

2

         THE SCHER LAW FIRM, LLP
3                Attorneys for Plaintiff
                 600 Old Country Road
4                Garden City, New York 11530
         BY:  AUSTIN GRAFF, ESQ.
5
         NEW YORK CITY LAW DEPARTMENT
6                Attorneys for Defendant
                 100 Church Street, New York
7                New York 10007
         BY:  KATHLEEN LINNANE, ESQ.
8                   - and -
                 ANDREA MARTIN, ESQ.
9

10

11

12

13

14

15

16

17              ALSO PRESENT:

18       LORRAINE MASCIARELLI

19

20

21

22

23

24

25

1      F E D E R A L   S T I P U L A T I O N S

2

3      IT IS HEREBY STIPULATED AND AGREED by and between

4      the attorneys for the respective parties herein,

5      that filing and sealing be and the same are hereby

6      waived.

7

8      IT IS FURTHER STIPULATED AND AGREED that all

9      objections, except as to the form of the question,

10     shall be reserved to the time of the trial.

11

12     IT IS FURTHER STIPULATED AND AGREED that the within

13     deposition may be signed and sworn to before any

14     officer authorized to administer an oath, with the

15     same force and effect as if signed and sworn to

16     before the Court.

17

18

19

20

21

22

23

24

25

```
 1                 E. J. EICHENHOLTZ
 2              THE REPORTER:  Usual stips?
 3              MS. LINNANE:  I would like
 4         the stips read in, please.
 5              THE REPORTER:  IT IS HEREBY
 6         STIPULATED AND AGREED by and
 7         between the attorneys for the
 8         respective parties herein, that
 9         filing and sealing be and the
10         same are hereby waived.
11
12              IT IS FURTHER STIPULATED AND
13         AGREED that all objections,
14         except as to the form of the
15         question, shall be reserved to
16         the time of the trial.
17
18              IT IS FURTHER STIPULATED AND
19         AGREED that the within deposition
20         may be signed and sworn to before
21         any officer authorized to
22         administer an oath, with the same
23         force and effect as if signed and
24         sworn to before the Court.
25              MS. LINNANE:  Agreed.
```

```
 1              E. J. EICHENHOLTZ
 2         MR. GRAFF:  I'm fine with
 3    them too.
 4         THE REPORTER:  Pursuant to
 5    Order, Notice, or something else?
 6         MR. GRAFF:  Notice.
 7         THE REPORTER:  Ms. Linnane,
 8    would you like to purchase a
 9    copy?
10         MR. GRAFF:  I'll provide.
11         MS. LINNANE:  Thank you,
12    Mr. Graff.
13         THE REPORTER:  My name is
14    Ceita Lazar, court reporter.  The
15    parties are present remotely to
16    take the deposition of Eric J.
17    Eichenholtz In the Matter of
18    Lorraine Masciarelli versus New
19    York City Department of
20    Education.
21         I ask that everyone please
22    stay close to the microphone so
23    that I can provide the best
24    transcript possible and also so
25    my interruptions will be minimal.
```

1          E. J. EICHENHOLTZ

2              Will counsel please state

3       their name, who they represent,

4       and then I will swear in the

5       witness.

6              MR. GRAFF:  Austin Graff

7       from The Scher Law Firm

8       representing the plaintiff,

9       Lorraine Masciarelli.

10             MS. LINNANE:  Kathleen

11      Linnane, Corporation Counsel for

12      the defendants.

13             MS. MARTIN:  Andrea Martin,

14      Corporation Counsel for

15      defendant.

16

17  ERIC J. EICHENHOLTZ,

18  Having been first duly sworn by the

19  Notary Public (CEITA LAZAR), and stating

20  his address as 100 Church Street, New

21  York, New York 10007, was examined and

22  testified as follows:

23

24  EXAMINATION

25  BY MR. GRAFF:

```
 1                  E. J. EICHENHOLTZ
 2        Q. Good morning, Mr. Eichenholtz.
 3    My name is Austin Graff.  I am the
 4    attorney for the plaintiff, Lorraine
 5    Masciarelli, in this action.  I'm going
 6    to ask you a series of questions today.
 7    Please make your responses verbal.
 8    Hand gestures and head nods cannot be
 9    taken down by the court reporter.  Do
10    you understand that?
11        A. Yes.
12        Q. If you need to take a break at
13    any point, please let me know.  As long
14    as there's no pending question, we can
15    take a break.  Do you understand that?
16        A. Yes.
17        Q. If you answer a question, I'll
18    assume that you understood what I'm
19    asking.  But if you don't understand
20    the question, please stop me and either
21    ask me to repeat it, rephrase it, or
22    we'll have the court reporter read it
23    back to you.  Do you understand that?
24        A. Yes.
25        Q. Do you have anything in front of
```

```
1                E. J. EICHENHOLTZ
2    you regarding this case, any paperwork,
3    any documents, anything related to this
4    case in front of you?
5        A. No.
6        Q. And where are you currently
7    located?
8        A. I'm located at the New York City
9    Law Department, 100 Church Street, New
10   York, New York.
11       Q. Is there anyone in the room with
12   you right now?
13       A. Yes.  Kathleen Linnane, who is
14   counsel for the defendant in this case.
15       Q. How did you prepare for today's
16   deposition?
17       A. I reviewed Ms. Masciarelli's
18   appeal of her -- the Department of
19   Education's denial of her religious
20   reasonable accommodation request.  I
21   reviewed the complaint and some other
22   litigation papers in this action.  And
23   I also reviewed some portions of the
24   EEOC guidance that was in place in 2021
25   and 2022 regarding COVID-19 and the EEO
```

```
 1              E. J. EICHENHOLTZ
 2    laws.  I also reviewed -- I should also
 3    say I also reviewed provisions of the
 4    New York State -- sorry, New York City
 5    Human Rights Law located at
 6    Administrative Code 8107.
 7        Q. And you're appearing today
 8    pursuant to a notice of deposition?
 9        A. Correct.
10        Q. I'm just going to -- tell me
11    when you see it on the screen.
12        A. I don't.
13             MS. LINNANE:  Yeah, we just
14        see black here.
15             THE WITNESS:  Oh, there it
16        is.
17             MS. LINNANE:  I'm going to
18        make this bigger, Austin.  Just
19        give me one second here.
20             MR. GRAFF:  I can make it
21        larger on my side too.  Just let
22        me know.
23             MS. LINNANE:  Is that big
24        enough?  That's fine.
25             MR. GRAFF:  I'll mark this
```

```
 1                  E. J. EICHENHOLTZ
 2          as Exhibit A.
 3
 4               (Plaintiff's Exhibit A,
 5                 Notice of Deposition, was
 6          marked for identification.)
 7
 8   BY MR. GRAFF:
 9          Q. Is this the notice of deposition
10   that you're appearing pursuant to here
11   today?
12          A. Yes, that is my understanding by
13   counsel.
14          Q. And there were a list of
15   subjects of testimony.  You're prepared
16   to answer some or all of the topics?
17          A. Some, not all.  And I would be
18   happy to, you know, if we reach a point
19   where one of the topics is not within
20   the scope of my knowledge, well, I'm
21   sure we'll be -- I will point it out.
22   I'm sure my counsel will, you know,
23   advise us to anything that the
24   defendant believes is not appropriate
25   to discuss.
```

E. J. EICHENHOLTZ

1

2      Q. Okay.  Are you currently

3  employed?

4      A. Yes.

5      Q. Who is your employer?

6      A. The City of New York.

7      Q. How long have you worked for the

8  City of New York?

9      A. Since September of 2002.

10      Q. Is there a particular agency or

11  department within the City of New York

12  that you're employed by?

13      A. Yes, the New York City Law

14  Department.

15      Q. And have you been working for

16  the city law department since

17  September, 2002?

18      A. Yes.

19      Q. What is your current title?

20      A. Managing attorney.

21      Q. Did you say "managing attorney"?

22      A. Yes.

23      Q. And as managing attorney, what

24  are your duties and responsibilities?

25      A. I oversee, at an executive

E. J. EICHENHOLTZ

1

2  level, the labor and employment law

3  division, which is the division of the

4  law department that handles all labor

5  and employment related legal issues,

6  litigation.

7      I advise, at a high level,

8  unemployment law issues.  And,

9  internally, I oversee, at an executive

10  level, all of the law department's

11  internal operations and operational

12  divisions, which include

13  administration, litigation support,

14  operations, information technology, as

15  well as things like budget, fiscal,

16  personnel, human resources benefits,

17  things like that.

18      Q. That's it?

19      A. Just that, yes.

20      Q. And how long have you been in

21  the title of managing attorney?

22      A. Since -- I started in an acting

23  capacity in late November of 2022.  I

24  was formally appointed in December of

25  2022, and I've been serving in that

```
 1              E. J. EICHENHOLTZ
 2    capacity since.
 3         Q. Before you were managing
 4    attorney, what was your job title?
 5         A. I was chief assistant
 6    corporation counsel for employment,
 7    policy, and litigation.
 8         Q. And when were you appointed to
 9    that position?
10         A. October, 2021.
11         Q. And before you were chief
12    assistant corporation counsel, what was
13    your job title?
14         A. Division chief of the labor and
15    employment law division.
16         Q. And when were you appointed to
17    that position?
18         A. February of 2013.
19         Q. As chief assistant corporation
20    counsel appointed in October of 2021,
21    what were your job duties?
22         A. So I was much like I am now,
23    providing legal advice, see counsel on
24    employment law matters to the city
25    agencies and elected officials.  I
```

```
 1              E. J. EICHENHOLTZ
 2   oversaw -- oversaw, like I do now, the
 3   labor and employment law division in an
 4   executive capacity.  At the time, in
 5   addition, I also oversaw affirmative
 6   litigation, e-discovery, and Workers'
 7   Compensation.
 8       Q. What is the difference between
 9   your position as managing attorney and
10   chief assistant corporation counsel?
11           MS. LINNANE:  I'm just going
12       to caution the witness not to
13       disclose anything that could be
14       considered privileged pursuant to
15       the doctrine of attorney-client
16       privilege.
17           THE WITNESS:  Of course.
18       A. The difference is, essentially,
19   the scope of my responsibilities.
20   Managing attorney is considered higher
21   level position because it has
22   office-wide responsibility.  I'm
23   essentially considered third in line
24   corporation counsel and the first
25   assistant corporation counselor ahead
```

```
 1                E. J. EICHENHOLTZ
 2    of me.
 3           And, obviously, is you saw from
 4    the division allotment, my portfolio is
 5    slightly different.  I still have the
 6    same employment law portfolio, but
 7    instead of overseeing other divisions
 8    and subject areas, my focus is more on
 9    the overall management and operations
10    of the New York City Law Department
11    itself.
12        Q. Is the position from chief
13    assistant corporation counsel to
14    managing attorney a promotion?
15        A. Yes.
16        Q. Are you a licensed attorney in
17    New York?
18        A. I am.
19        Q. When were you admitted to
20    practice?
21        A. January 2003.
22        Q. Do you have any training in
23    Title 7 issues regarding religious
24    discrimination?
25        A. Yes.
```

```
1                  E. J. EICHENHOLTZ
2        Q. What type of training do you
3    have?
4        A. Many types of training.  So I
5    have, obviously, over a roughly 22-
6    plus year career.  I have taken dozens
7    of CLE courses on this and other
8    employment related law topics.
9            The City of New York requires
10   employees to be trained regularly on
11   the antidiscrimination laws, including
12   Title 7 trained on reasonable
13   accommodations.  I have, in addition to
14   being trained myself, I have presented
15   CLEs both internally within the law
16   department, as well as at the
17   Practicing Law Institute on issues
18   regarding Title 7, issues regarding
19   reasonable accommodations, issues
20   regarding retaliation, EDA, and all the
21   state and local law as well.  Because,
22   as you know, in New York City, we have
23   a City Human Rights Law which is -- has
24   a broader reach, generally, than the
25   federal counterparts.  So we focus on
```

```
 1              E. J. EICHENHOLTZ
 2   those laws as well when we do training
 3   and when I am being trained, as well as
 4   when I'm presenting training.
 5        Q. When you discussed how you
 6   prepared today, you reviewed New York
 7   City Human Rights Law Section 8-107?
 8        A. Uh-hum.
 9        Q. Why did you review that specific
10   section?
11        A. I wanted to make sure, because I
12   understood this case to be involving a
13   decision on an RA, reasonable
14   accommodation.  I just wanted to make
15   sure that I had, fresh in my mind, the
16   particular provisions in the City Human
17   Rights Law regarding religious
18   reasonable accommodations.  So that's
19   why I did it.
20        Q. How did that law impact the
21   COVID vaccine mandate reasonable
22   accommodation requests?
23              MS. LINNANE:  Objection.
24              You can answer.
25        A. Other than it obviously provided
```

E. J. EICHENHOLTZ

1

2    legal parameters for which we would

3    analyze, grant, or deny requests.  In

4    other words, the positive, the

5    proscriptive parts of that law, would

6    compel a grant, and the prescriptive

7    parts are the parts that allowed

8    employer discretions to deny a grant,

9    would be a basis for denying the grant

10   of a reasonable accommodation.

11        So it was part of what governed

12   the city's analysis and the city's

13   discretion of whether to grant or deny

14   a reasonable accommodation request.

15        Q. When you discussed the city's

16   decision, does that include the New

17   York City Department of Education?

18        A. Yes.  Yes.  I'm being general as

19   to when I say "the city" in that

20   context, I should say.  And I will be

21   more precise, because you are right.

22   There are times where the city is not

23   necessarily the Department of Education

24   and vice versa.

25        Q. Did the New York City Department

```
1                    E. J. EICHENHOLTZ

2       of Education have to comply with the

3       New York Human Rights Law Section 8-107

4       when it was making determinations

5       regarding religious accommodations for

6       the vaccine mandate?

7                    MS. LINNANE:  Objection.

8                    You can answer.

9            A. Yes.

10      (The Reporter requested clarification.)

11                   MS. LINNANE:  I had lodged

12          an objection.

13                   THE WITNESS:  And I said

14          yes.

15      BY MR. GRAFF:

16          Q. Did you have any role to play in

17       the implementation of the vaccine

18       mandate in the New York City Department

19       of Education?

20                   MS. LINNANE:  Objection.

21                   You can answer.

22          A. I was, from time to time,

23       consulted as that mandate was being

24       promulgated and implemented.

25      BY MR.  GRAFF:
```

```
                    E. J. EICHENHOLTZ
 1
 2       Q. Did you have a role to play in
 3    the first iteration of the vaccine
 4    mandate issued by the Department of
 5    Health?
 6            MS. LINNANE:  Objection.
 7            You can answer.
 8       A. Same role.
 9   BY MR. GRAFF:
10       Q. I'm not trying to impede the
11    attorney-client privilege, but I'm just
12    trying to ask, did you have a role to
13    play -- were you consulted with respect
14    to the implementation -- with the
15    implementation of the vaccine mandate
16    in its first iteration?
17       A. Yes.
18       Q. And that was the iteration where
19    there was no accommodations for
20    religious and health issues, correct?
21            MS. LINNANE:  Objection.
22       A. No.  There was no iteration of
23    the vaccine mandate that did not
24    provide for reasonable accommodation
25    for religious or medical issues.
```

```
 1                   E. J. EICHENHOLTZ
 2    BY MR. GRAFF:
 3         Q. The first time the vaccine
 4    mandate was promulgated, are you saying
 5    that there was always an accommodation
 6    for religious and medical issues?
 7         A. That is correct.
 8              MS. LINNANE:  Objection.
 9    BY MR. GRAFF:
10         Q. Was there a second iteration of
11    the vaccine mandate?
12              MS. LINNANE:  Objection.
13              You can answer.
14         A. No. There was a revision of the
15    original vaccine mandate --
16         Q. What was --
17         A. -- issued as to the DOE
18    employees.  I want to make sure we're
19    both being clear on what we're talking
20    about.
21         Q. What was the amendment or
22    revision?
23         A. The revision was to add a
24    statement that explicitly stated that
25    the accommodations that were required
```

E. J. EICHENHOLTZ

1
2    by law were -- were allowable, I guess
3    you can say, under the accommodation --
4    under the religious accommodation
5    policy, which was always the case.
6    That language made it explicit in that
7    physical document.
8        Q. So you're saying it was implicit
9    in the first version, and then it was
10   explicit in the second version,
11   correct?
12            MS. LINNANE:  Objection.
13            You can answer.
14       A. I'm not just saying that.  That
15   is correct.
16       Q. Okay.  Did you have any role to
17   play in negotiating with the UFT over
18   the implementation of the vaccine
19   mandate with the New York City
20   Department of Education?
21            MS. LINNANE:  Objection.
22            I'm going to caution the witness
23            not to disclose any information
24            that would be considered
25            privileged pursuant to the

```
1              E. J. EICHENHOLTZ
2         doctrine of attorney-client
3         privilege.
4         A. Then I won't, but I will say
5    that I was consulted from time to time
6    as that process, that negotiating and
7    arbitration process, was ongoing.
8    BY MR. GRAFF:
9         Q. Were you at the bargaining table
10   when the UFT and the Department of
11   Education were negotiating the
12   implementation of the vaccine mandate?
13              THE WITNESS:  Objection.
14        A. I was not at the bargaining
15   table.  I was at a discussion that was
16   held between -- very preliminary
17   discussion before bargaining between
18   the UFT and the New York City Office of
19   Labor relations.
20   BY MR. GRAFF:
21        Q. Do you know when that meeting
22   was that you attended?
23        A. As I sit here -- years later,
24   no, I could not tell you.
25        Q. Do you know the identities of
```

```
 1                E. J. EICHENHOLTZ
 2     the individuals who represented the
 3     Department of Education in negotiations
 4     with the UFT?
 5               MS. LINNANE:  Objection.
 6         A. I -- well, I know that two
 7     people who were regularly involved from
 8     the New York City Office of Labor
 9     Relations was Steven Banks, and from
10     the Department of Education -- although
11     I don't know her specific role -- but
12     the head of labor relations who was
13     Karen Solimando.  They were both
14     involved at a certain level.
15     BY MR. GRAFF:
16         Q. Were you involved in formulating
17     the New York City Department of
18     Education's bargaining position
19     relating to the implementation of the
20     vaccine mandate?
21               MS. LINNANE:  Objection.
22               You can answer.
23         A. No, I was not.
24     BY MR. GRAFF:
25         Q. Okay.  I'm going to show you
```

```
 1              E. J. EICHENHOLTZ
 2    what I'm going to mark as Exhibit B.
 3
 4              (Plaintiff's Exhibit B,
 5                Declaration of Impasse, was
 6        marked for identification.)
 7
 8        Q. Let me know when you see it on
 9    the screen.
10        A. I will.
11              MS. LINNANE:  Are there
12        Bates stamps on these documents,
13        Austin?
14              MR. GRAFF:  This is actually
15        from the docket, and it is Docket
16        No. 22-2 of the court's docket.
17              MS. LINNANE:  For the
18        record, I would just like to
19        record for the record that it
20        says in capital, bold letters at
21        the top that this page that we're
22        seeing on the screen, Declaration
23        of Impasse.  I'm stating this
24        because all of the stamps from
25        the docket are very mixed up and
```

```
 1                  E. J. EICHENHOLTZ
 2         very difficult to see.
 3    BY MR. GRAFF:
 4         Q. Mr. Eichenholtz, have you ever
 5      seen this document before?
 6         A. Not that I can recall.
 7         Q. Are you aware that the UFT
 8    declared an impasse in the negotiations
 9    over the implementation of the vaccine
10    mandate?
11         A. I'm not -- I have no independent
12    recollection of that happening.  I'm
13    obviously looking at the document
14    you're showing me.  That's what it
15    appears to indicate.
16         Q. On page 9 of this document, it
17    addresses what the city's position was
18    regarding accommodations.
19              MS. LINNANE:  What are
20         you -- please direct us to what
21         you're looking at, because you're
22         making a statement about the
23         document without my client having
24         read what's in the document.  If
25         we're going to talk about this
```

                        E. J. EICHENHOLTZ

1

2          document, my client has already

3          stated he does not know what this

4          document is.  He's never seen it,

5          and he needs the opportunity to

6          review it in its entirety if

7          we're going to talk about it.

8     BY MR. GRAFF:

9          Q. At the first paragraph of one,

10    two, three, fourth line of the

11    document, it begins, "Yet, the City has

12    refused insisting that there can be no

13    exceptions to the mandate medical,

14    religious, or otherwise."  Do you see

15    where I'm reading from?

16         A. I see that.  I can tell you that

17    statement is inconsistent with my

18    understanding of -- certainly of the

19    mandate that was issued and my

20    understanding of the ultimate outcome

21    of this negotiation.  And that's the

22    extent of my knowledge.  I'm unaware of

23    any time where the City had refused

24    insisting there can be no exceptions to

25    the mandate, medical, religious, or

```
 1                    E. J. EICHENHOLTZ
 2    otherwise.
 3         Q. Is it possible that the City
 4    took that position at the bargaining
 5    table without your knowledge?
 6              MS. LINNANE:  Objection.
 7         A. Based on -- based on the
 8    timeline of this document, I cannot say
 9    yes or no. It would be pure speculation
10    whether or not that was the case.  I
11    can just tell you that at no time did I
12    understand the City was going to have a
13    mandate that had no exceptions.
14    BY MR. GRAFF:
15         Q. What role did you play in
16    determining whether to grant or deny
17    teachers religious exemptions from the
18    vaccine mandate?
19              MS. LINNANE:  Objection.
20              You can answer.
21         A. In the initial process, I played
22    no role.  After a decision of the
23    United States Court of Appeals of the
24    Second Circuit that found
25    constitutional infirmities, statutory
```

```
1                    E. J. EICHENHOLTZ
2    infirmities or perhaps both, of the
3    process that had been created by the
4    arbitration award between the UFT and
5    the Department of Education, the City
6    agreed to remediate those concerns by
7    giving teachers a chance to have a
8    review of denials by a panel that I had
9    had a primary role in setting up, the
10   New York City Citywide Vaccine Mandate
11   Appeals Panel.  And just to give you
12   context, the Citywide Appeals Panel had
13   been set up prior to that decision,
14   prior to that case, for the vaccine
15   mandate that had subsequently after DOE
16   employees that had been promulgated
17   with respect to all city employees.
18          And so, ultimately, teachers, as
19   I understand, were given the
20   opportunity to be reviewed by the
21   Citywide Appeals Panel.  The Second
22   Circuit Court of Appeals affirmed that
23   was an appropriate way to remediate.
24   And so, at that point, we received
25   something over 500 -- at some point 500
```

```
 1              E. J. EICHENHOLTZ
 2     plus appeals from various pedagogical
 3     DOE employees in addition to the work
 4     we were already doing for city
 5     employees.
 6   BY MR. GRAFF:
 7          Q. Are you aware of what has been
 8     called a general committee that decided
 9     to deny every religious exemption
10     submitted to the New York City
11     Department of Education?
12              MS. LINNANE:  Objection.
13              You can answer.
14          A. No.
15   BY MR. GRAFF:
16          Q. Are you aware that there was a
17     decision to deny every religious
18     exception submitted to the New York
19     City Department of Education?
20              MS. LINNANE:  Objection.
21              You can answer.
22          A. Absolutely not.
23   BY MR. GRAFF:
24          Q. Are you aware that only -- the
25     only people received exemptions were
```

E. J. EICHENHOLTZ

through the Scheinman Arbitration

Mediation Service appeal process?

       MS. LINNANE:  Objection.

       You can answer.

  A. I don't know the specific

details of how that process worked.  My

understanding was that there was a

negotiation that -- that there was --

essentially, part of that process was

that an independent labor arbitrator

make the decision.  But I don't know

the particular ins and outs of how that

process works.  I was not involved in

it, and I was never working on the

specifics of the process that was

ultimately implemented through that

arbitration award.

BY MR. GRAFF:

  Q. Are you aware of any group of

New York City Department of Education

employees who met and determined that

every religious exemption was going to

be denied?

       MS. LINNANE:  Objection.

```
 1              E. J. EICHENHOLTZ

 2              You can answer.

 3        A. Absolutely not.

 4   BY MR. GRAFF:

 5        Q. Do you know how many New York

 6   City Department of Education employees

 7   received religious exemptions?

 8        A. I know at least some did,

 9   because I know from my work on the

10   Citywide Panel that the panel granted

11   several.  I don't have the exact

12   number, but -- so I know that some did.

13   I also -- at least it was my

14   understanding -- and, again, that there

15   were some that received a religious

16   reasonable accommodations through the

17   arbitration award process.  So I know

18   there were some.  I don't know how

19   many.  I don't know who or what or

20   where or why or anything like that.

21        Q. Do you have any knowledge of any

22   individual employees from the New York

23   City Department of Education who

24   received an exemption from the vaccine

25   mandate without either the arbitration
```

```
 1                E. J. EICHENHOLTZ

 2    appeal or to the appeal panel?

 3                MS. LINNANE:  Objection.

 4                You can answer.

 5        A. I would have no way of knowing

 6    that.

 7   BY MR. GRAFF:

 8        Q. Were you aware of the fact that

 9    the New York City Department of

10    Education granted zero religious

11    exemptions to 3,396 people who applied

12    for religious exemptions?

13                MS. LINNANE:  Objection.

14                You can answer.

15        A. Again, that question doesn't

16    square with my understanding of how the

17    process works.  My understanding was

18    that those requests pursuant to the

19    arbitration award were going to outside

20    of the Department of Education and to a

21    mutual arbitrator.  So when you say

22    "the Department of Education granted,"

23    at least that was not my understanding

24    of how it worked.  I could be wrong,

25    but I just say that because I cannot
```

E. J. EICHENHOLTZ

1

2    answer that question because that's not

3    my understanding of how it works.

4    BY MR. GRAFF:

5        Q. Is it your understanding that

6    the Department of Education made no

7    initial determination whether to grant

8    or deny an exemption?

9            MS. LINNANE:  Objection.

10           You can answer.

11       A. My understanding is precisely

12   what I said to you, which is I

13   understood that the arbitration award

14   that was issued regarding how our

15   requests were to be processed for DOE

16   employees from the DOE mandate --

17   employee mandate was that they were to

18   be adjudicated by a mutual labor

19   arbitrator and not by what we would say

20    in the labor relations context was

21    management.

22   BY MR. GRAFF:

23       Q. And if there was a decision by

24    the New York City Department of

25    Education to deny every exemption

                    E. J. EICHENHOLTZ

1

2   request from DOE employees, would that

3   have complied with New York City Human

4   Rights Law Section 8-107?

5           MS. LINNANE:  Objection.

6       A. I'm not going to speculate on a

7   decision that everything I know

8   suggests did not happen and did not

9   exist.

10  BY MR. GRAFF:

11      Q. Are you aware of the arbitration

12  process for the determination of the

13  appeals of the denial of exemptions

14  through the Scheinman Arbitration

15  Mediation Service?

16           MS. LINNANE:  Objection.

17           You can answer.

18      A. As I said previously, I'm aware

19  of the process.  I don't know the

20  details of the process.

21  BY MR. GRAFF:

22      Q. Do you know if the New York City

23  Department of Education was represented

24  by an attorney at those arbitration

25  hearings?

```
1                    E. J. EICHENHOLTZ
2              MS. LINNANE:  Objection.
3              You can answer.
4         A. I do not know.
5    BY MR. GRAFF:
6         Q. Do you know who Veronica -- I'm
7     going to spell her name, because I
8     don't know how pronounce it --
9     P-R-Z-Y-G-O-C-K-I is?
10        A. Sure.  I do not know who that
11    is.  And, presumably, that name is
12    unique enough that it would ring a bell
13    if I did.
14        Q. Do you know if she's an attorney
15    in the New York City Law Department?
16             MS. LINNANE:  Objection.
17             You can answer.
18        A. Not that I'm aware of.  But,
19    like I said, the fact that I do not
20     know that name suggests likely not.
21    BY MR. GRAFF:
22        Q. And you said you were -- well, I
23     don't want to characterize it.  What
24    was your role with the City of New York
25    Reasonable Accommodation Panel --
```

                    E. J. EICHENHOLTZ

Appeals Panel?

     A. So when the city employee
vaccine mandate was implemented, there
was discussion on how to implement the
legal obligations, the internal city
policy obligations, because we have a
citywide DO policy, a citywide RA
policy on reasonable accommodations and
whether any adjustments needed to be
made due to the unique contours of the
public health emergency.

         And there were two things that,
ultimately, the various policy makers
felt were important.  One was that
there would be uniformity of decision,
and the other that there be, you know,
careful but expeditious decision
making.  So I, as well as some of the
other colleagues in city government,
were tasked with creating a process
that would do that.  And, ultimately,
that's where the Citywide Appeals Panel
comes from.

     Q. Okay.  I'm going to show you the

```
 1                    E. J. EICHENHOLTZ
 2    next exhibit.  Let me know when you see
 3    it.  I'm going to mark this Exhibit C.
 4
 5              (Plaintiff's Exhibit C,
 6                 Appeal to Appeals Panel, was
 7                 marked for identification.)
 8
 9        A. Okay, I see it.
10        Q. Do you recognize this document?
11    It's Document No. 1-7 on the court's
12    docket.
13        A. Could you scroll down so I could
14    see the whole document?
15        Q. Sure.  Let me know if I'm going
16    too fast.
17        A. So this appears to be a letter
18    authored by Ms. Masciarelli's counsel.
19    I believe it looks like to the DOE
20    regarding her denial for religious
21    reasonable accommodation and addressing
22    the decision of the labor arbitrator
23    that denied the accommodation.
24              MS. LINNANE:  To be clear,
25         it's not the counsel that we're
```

```
                    E. J. EICHENHOLTZ
 1
 2      talking to right now.  It's the
 3      counsel -- appears to be Giulia
 4      Miller, M-I-L-L-E-R.
 5  BY MR. GRAFF:
 6      Q. When you said you reviewed
 7   documents in preparation for today's
 8   deposition, was this one of the
 9   documents you reviewed?
10      A. I remember a document that looks
11   something like this.  I can't tell you
12   as I sit here today if it's the precise
13   document.
14      Q. What documents did the appeals
15   panel use to determine whether to grant
16   a religious exemption to a New York
17   City Department of employee --
18   Department of Education employee?
19      A. Are you asking me generally or
20   in Ms. Masciarelli's case?
21      Q. Let's talk generally, and then
22   we'll talk about Ms. Masciarelli.
23      A. Okay.  Generally, we would
24   receive a submission of some sort from
25   the appealing employee.  Just remember,
```

E. J. EICHENHOLTZ

1

2  everything we saw were appeals of

3  denials, so an employee was bringing us

4  an appeal, some sort of submission,

5  some material, whatever material they

6  wanted to provide us.  The DOE could

7  but did not -- was not required to

8  provide us also with material to

9  explain or contextualize their

10  decision.  Sometimes the DOE did so.

11  Sometimes the DOE did not do so.

12      Q. Do you have any recollection of

13  what was presented to the appeals panel

14  regarding the plaintiff?

15      A. Yes.  I remember there was a --

16  a position statement submitted.  And

17  I'm assuming you're talking about the

18  DOE now?  I should ask.  Are you

19  talking about the DOE or

20  Ms. Masciarelli?

21      Q. Regarding Ms. Masciarelli, what

22  the process was with Ms. Masciarelli's

23  appeal to the appeal panel?

24      A. I remember Ms. Masciarelli had a

25  submission of some sort and that the

```
 1                    E. J. EICHENHOLTZ
 2   DOE in Ms. Masciarelli's case submitted
 3   a position statement as well.
 4       Q. Do you -- do you know the name
 5   of the person who ultimately reviewed
 6   Ms. Masciarelli's appeal to the appeal
 7   panel?
 8            MS. LINNANE:  Objection.
 9            You can answer.
10       A. There wouldn't be one person.
11   It would be three.  Because the way the
12   appeal panel worked was there were
13   three voting agencies.
14   BY MR. GRAFF:
15       Q. What were the three voting
16   agencies with respect to
17   Ms. Masciarelli?
18            MS. LINNANE:  Objection.
19            You can answer.
20       A. So I -- specifically with
21   respect to religious reasonable
22   accommodations, the three agencies that
23   had a vote were the law department, the
24   Department of Citywide Administrative
25   Services, as well as the City
```

1                    E. J. EICHENHOLTZ

2      Commission on Human Rights.

3   BY MR. GRAFF:

4         Q. Were these three agencies --

5      were the representatives of these three

6      agencies consistent for all appeals, or

7      did it rotate amongst employees of the

8      different departments?

9         A. Given the workload, each agency

10     designated multiple employees to review

11     the appeals of religious reasonable

12     accommodations that went to the panel.

13     So it was done on a rotational basis.

14     How, specifically, that rotation worked

15     depended on how the panel members in

16     that agency organized themselves

17     internally.

18        Q. Is there any way to know who

19     made the decision regarding

20     Ms. Masciarelli's appeal?

21        A. Again, the "who" is multiple

22     people.  But there is -- with every

23     case, the panel has a vote report that

24     we can generate from the database that

25     was managing our work flow, that would

E. J. EICHENHOLTZ

1    show both the name of the

2    representative, the representative's

3    vote.  And that representative also had

4    notes for their own internal

5    recollection purposes, as well as it

6    would tell us which member -- there

7    were two members of the panel who did a

8    quality assurance review at the end --

9    would also tell us who on the panel did

10   that quality assurance review.

11       Q. Are there any privileges or any

12   objections to releasing those documents

13   through discovery?

14       A. That I'm aware of?  I think I

15   don't -- I need to defer to counsel on

16   that.  I don't know whether there could

17   be, and I don't want to say no when

18   there is or yes when there isn't.  So I

19   would refer you to counsel on that.

20       Q. Do you know how many New York

21   City Department of Education employees

22   received a religious exemption from the

23   appeals panel?

24           MS. LINNANE:  Objection.

```
 1              E. J. EICHENHOLTZ

 2             You can answer.

 3      A. I do not know that number

 4   offhand.

 5   BY MR. GRAFF:

 6      Q. Were there any?

 7      A. Yes.  I know that.

 8      Q. Do you know if any of them were

 9   Catholic?

10             MS. LINNANE:  Objection.

11             You can answer.

12      A. I believe so. It's very tough.

13   And I'll say this, because I'm sure

14   you're going to be asking me this a

15   lot, Mr. Graff.

16             It's very tough to say whether

17   or not someone was Catholic, because

18   there were a lot of Catholic employees

19   who would identify as Christian or

20   would not necessarily label their faith

21   specifically, but would explain to us

22   what their religious belief system was.

23             So, certainly, there were

24   beliefs that were professed by many

25   Catholics that were sincerely held,
```

```
1                    E. J. EICHENHOLTZ
2      that were held by members of other
3      religions.  So I would never conclude
4      from the beliefs that I was presented
5      that someone was a Catholic, and I
6      would have no way of knowing, because I
7      did not -- we did not ask.  I don't
8      believe the DOE asked.  Certainly, we
9      did not receive.  They weren't saying,
10     Hey, before you give us your
11     submission, what's your religion?  So I
12     would have no independent way of saying
13     to you for sure this person is a
14     Catholic, this person's not, unless
15     they affirmatively said in their appeal
16     paperwork, I am a Catholic.
17   BY MR. GRAFF:
18        Q. Are you aware that the -- we're
19     going to mark this first as Exhibit D.
20
21               (Plaintiff's Exhibit D,
22                Reasonable Accommodation
23                Appeal Determination, was
24                marked for identification.)
25
```

```
 1              E. J. EICHENHOLTZ
 2        Q. Let me know when you see it on
 3    the screen.
 4        A. I see it on the screen.
 5        Q. Are you aware that
 6    Ms. Masciarelli's appeal was denied?
 7        A. Based from my review of her
 8    documents, yes.
 9        Q. But you -- did you participate
10    in the decision to deny Ms. Masciarelli
11    her appeal to the appeal's panel?
12              MS. LINNANE:  Objection.
13              You can answer.
14        A. Yeah.  I was not a member of her
15    appeal's panel, no.
16    BY MR. GRAFF:
17        Q. As we sit here, do you know who
18    the members of her appeal panel were?
19              MS. LINNANE:  Objection.
20              You can answer.
21        A. I don't -- I did read the names
22    when I reviewed the documents.  As I
23    sit here today, I would not have an
24    independent recollection.
25    BY MR. GRAFF:
```

                    E. J. EICHENHOLTZ

1

2      Q. The email that's Docket No. 1-4,

3   was this the standard response to the

4   employees who were denied religious

5   exemptions?

6           MS. LINNANE:  Objection.

7           You can answer.

8      A. Yes.  This was the response that

9   was generated by the database that

10  managed the appeal panel's workflow

11  after all review was complete and it

12  was put in the database that the appeal

13  was completely reviewed and ready for,

14  you know -- and was finalized and such.

15  BY MR. GRAFF:

16     Q. Do you know how many appeals

17  came in from the Department of

18  Education?

19          MS. LINNANE:  Objection.

20          You can answer.

21     A. My recollection is roughly, and

22  this is an approximation, 550.

23  BY MR. GRAFF:

24     Q. Out of the 550, do you know how

25  many were granted?

```
 1              E. J. EICHENHOLTZ
 2              MS. LINNANE:  Objection.
 3              You can answer.
 4         A. No.
 5    BY MR. GRAFF:
 6         Q. What was the -- strike that.
 7              On what basis were the appeals
 8    panel members given whether to grant or
 9    deny an exemption?
10              MS. LINNANE:  Objection.
11              You can answer.
12         A. So the way reasonable
13    accommodations work, you're not
14    supposed to say, oh, this is a magic
15    word.  Yes or no.  You're supposed to
16    -- or magic phrase or a magic statement
17    to say.  You're supposed to look at
18    what the individual employee is saying
19    their beliefs are.  You're supposed to
20    determine whether those beliefs have,
21    in this case, when we're dealing with
22    the COVID-19 employee vaccine mandate,
23    you're seeing whether those beliefs
24    have a conflict with that vaccine
25    mandate.  And if it's raised by the
```

```
 1                    E. J. EICHENHOLTZ
 2    agency or evident in the record,
 3    whether or not affirmatively speaking,
 4    the employer has presented an undue
 5    burden in granting that accommodation.
 6              And any of those questions or
 7    any combination of those questions
 8    could be dispositive on any given case.
 9              Similarly, particularly with
10    respect to whether there is a
11    sincerely-held religious belief and
12    whether it conflicts with the vaccine
13    mandate, those were highly dependent on
14    what the employee was saying about
15    their belief system and how they
16    practice their belief system.  And so
17    there was no, you know, oh, if this,
18    then this, because you had to look at
19    every person holistically.  You had to
20    see what they were saying.  You had to
21    understand why they were seeking the
22    accommodation and then for each
23    individual, if there was an undue
24    hardship, issue, or concern at issue
25    that, you know, the agency was raising
```

                        E. J. EICHENHOLTZ

1

2    it as an issue, you had to look at the

3    particular applicant's circumstances,

4    as well as the overall circumstances of

5    whether or not providing that

6    accommodation would, you know, present

7    an undue hardship - - - --

8    BY MR. GRAFF:

9        Q. Is that the same process that

10   the New York City Department of

11   Education should have applied in the

12   initial decision to grant or deny an

13   exemption?

14               MS. LINNANE:  Objection.

15               You can answer.

16       A. I cannot say what they should or

17   shouldn't have done, because, as I

18   said, what they were doing was pursuant

19   to an arbitration award, which is

20   different than, you know, their policy.

21   I know what the law requires, and I

22   know what the Department of Education's

23   DEO policy provides.  And what I

24   described is both what the law requires

25   and what the DOE's EEO policy provides.

1             E. J. EICHENHOLTZ

2    BY MR. GRAFF:

3         Q. Was the New York City Department

4     of Education's EEO policy changed as a

5     result of the vaccine mandate?

6                   MS. LINNANE:  Objection.

7                   You can answer.

8         A. Not that I'm aware of.

9    BY MR. GRAFF:

10        Q. One of the things you said that

11     the appeals panel must look at is the

12     applicant's circumstances.  What is an

13     applicant's circumstances?

14        A. So I believe I was saying that

15     in the context of undue hardship,

16     right?  So not everyone working for the

17     DOE is performing the same job

18     functions.  Not everyone from the DOE

19     is in as much of a front-facing

20     position.  Not everyone from the DOE is

21     in a mission critical position.  So you

22     have to understand what this person's

23     doing, by and large.  You don't need to

24     know every specific detail, but you

25     generally need to understand.  So, you

E. J. EICHENHOLTZ

2    know, whether they were a classroom

3    teacher, whether they were a school

4    administrator who did not work -- or I

5    should say a district administrator

6    that didn't work in a school.  Whether

7    they were paraprofessionals providing

8    support where they were interacting

9    frequently with children, or they were

10   someone providing support who, you

11   know, was generally isolated from

12   children.  All of those in the context

13   of the DOE employee vaccine mandate

14   were factors we would look at or we

15   could look at if they were raised in

16   the context of the appeal.

17        Q. What role did the New York City

18   Human Rights Law standards have in

19   determining whether to grant or deny a

20   religious exemption to the appeal's

21   panel determination?

22             MS. LINNANE:  Objection.

23             You can answer.

24        A. We -- obviously, if -- if -- if

25   the City Human Rights Law required an

```
 1                    E. J. EICHENHOLTZ

 2    appeal, we grant it.  It was granted.

 3    If the agency -- if the employee did

 4    not provide an explanation that would

 5    satisfy the requirements, the City

 6    Human Rights Law, for a reasonable

 7    accommodation, and it was denied on

 8    that basis, it would be denied.  And if

 9    there was undue hardship sufficient to

10    meet the standard of City Human Rights

11    Law, the -- same thing.  Then -- then

12    it would be -- it could be denied on

13    undue hardship grounds if that's what

14    the agency had chosen.

15    BY MR. GRAFF:

16        Q. Does the City Human Rights Law

17    require an interactive process

18    regarding religious exemptions or

19    religious accommodations?

20             MS. LINNANE:  Objection.

21             You can answer.

22        A. They -- the City Commission on

23    Human, Rights, which is the agency that

24    interprets the City Human Rights Law,

25    does not use the term "interactive
```

```
 1                E. J. EICHENHOLTZ

 2    process."  They use the term

 3    "cooperative dialogue" to describe what

 4    the human rights law provides.  But it

 5    does require a cooperative dialogue.

 6   BY MR. GRAFF:

 7        Q. Do you know if cooperative

 8    dialogue was performed between the New

 9    York City Department of Education and

10    people who sought religious

11    accommodations for the vaccine mandate?

12             MS. LINNANE:  Objection.

13             You can answer.

14        A. Certainly, by the time -- I'm

15    speaking for the appeals I reviewed,

16    yes.

17   BY MR. GRAFF:

18        Q. How was the -- how was the

19    dialogue performed?

20        A. So, basically, what would happen

21    is the Department of Education would

22    advise employees of the necessity of an

23    accommodation or the necessity

24    requesting the accommodation if they

25    believed they were entitled to one and
```

```
 1                    E. J. EICHENHOLTZ
 2    the process by which it would be done.
 3    The employees, in turn, would provide
 4    that request along -- and also that
 5    information, as I understand it,
 6    solicited supporting materials.  The
 7    employee then -- would then provide
 8    those supporting materials in that
 9    request to the Department of Education.
10    There was then some kind of review
11    process.  As I said, I cannot tell you
12    the nuts and bolts of it with respect
13    to the arbitration award.
14        But with respect to the cases
15    that we received on the Citywide Panel,
16    they usually involve the Department of
17    Education asking the employee to give
18    the panel particular information, if
19    they hadn't already done so, in the
20    arbitration process.
21        And then it also involved the
22    Department of Education providing
23    information about their reasons that
24    they believe the denial was
25    appropriate, if they chose to do so.
```

E. J. EICHENHOLTZ

1

2          So by the time it got to us,

3     there were multiple layers of back and

4     forth between the two parties.  It was

5     consistent with the requirements of the

6     Human Rights Law.

7          Q. Cooperative dialogue, doesn't it

8     mean more that you try and find a

9     solution to an accommodation, if one

10    could be granted, as opposed to

11    determining whether or not it should be

12    granted?

13             MS. LINNANE:  Objection.

14             You can answer.

15         A. In certain context, that could

16    be the case.  That is not universally

17    true.  These reasonable accommodation

18    requests were for a very specific

19    thing, which was an exemption to a

20    public health mandate.  So that's what

21    was being reviewed.  And I -- you know,

22    I think that, you know, as I understand

23    it, and, you know, courts have since

24    confirmed this, that the cooperative

25    dialogue proceed, you know --

```
1                 E. J. EICHENHOLTZ

2      appropriately proceeds in the manner

3      that I described.

4    BY MR. GRAFF:

5         Q. What role did the New York State

6      Human Rights Law standards have in the

7      appeals panel determinations?

8              MS. LINNANE:  Objection.

9              You can answer.

10        A. New York State Human Rights, did

11     you ask?

12   BY MR. GRAFF:

13        Q. Yes.

14        A. So the New York State Human

15     Rights Law, as I understand it, is

16     either equal to or less or covers less

17     than what the City Human Rights Law

18     does.  So it was essentially covered

19     within the scope of the City Human

20     Rights Law, right?  That there's no --

21     as far as I understand it, there's no

22     directive of the State Human Rights Law

23     that is broader or more expansive than

24     the City Human Rights Law in this

25     context.  In this context.  But -- and
```

```
 1                 E. J. EICHENHOLTZ
 2   the same thing.  The federal is the
 3   same thing.  Title 7 in this case was
 4   actually far less expansive than the
 5   City Human Rights Law in terms of
 6   particularly undue hardship.
 7        Q. Was there any training provided
 8   to the appeals panel members regarding
 9   examining these applications?
10        A. There were -- well, there were
11   two things.  One was all the appeals
12   panel members were provided copies of
13   the EEOC guidance regarding the
14   COVID-19 pandemic, because it was a
15   comprehensive set of guidance on what,
16   obviously, at the time was a very new
17   and emerging issue.  So that was a way
18   the panel members could, in the very
19   tight timeframe we had in the context
20   of a public health emergency, get up to
21   speed on some of the specific COVID
22   considerations.
23            All members of the panel were
24   either EEO or legal professionals who
25   had been extensively trained previously
```

```
 1                  E. J. EICHENHOLTZ

 2       in the City Human Rights Law, the

 3       City's policies and procedures.  Some

 4       had far more training than others,

 5       depending on, particularly, the agency

 6       they came from and their role.  But

 7       everyone had the baseline of training

 8       of understanding the RA process, of

 9       understanding the City's policy, which,

10       again, is equal to or sometimes more

11       expansive even than the City Human

12       Rights Law.  So they all brought that

13       knowledge in, and we were focused more

14       on making sure the panel understood

15       COVID-specific considerations.

16            Q. Were you a member of the panel?

17            A. Yes.

18            Q. Did you grant any application?

19                 MS. LINNANE:  Objection.

20                 You can answer.

21            A. Yes.

22       BY MR. GRAFF:

23            Q. Any -- I'm sorry.  Go ahead.

24            A. I voted -- you know, every case,

25        every application we saw had been
```

```
  1                 E. J. EICHENHOLTZ
  2    denied previously.  And so,
  3    essentially, it was like an appellate
  4    judge voting to reverse, and I did that
  5    on many cases.
  6       Q. Do you remember any New York
  7    City Department of Education employee
  8    cases?
  9       A. Yes.
 10       Q. Ultimately -- so did it have to
 11    take a majority of the panel or a
 12    unanimous of the panel to grant?
 13       A. It was a majority.  So two out
 14    of the three agencies would control in
 15    the event of a disagreement.  And there
 16    were only three votes, so there was
 17    never a tie.
 18      (Reporter requested clarification.)
 19       Q. If a person was granted a
 20    religious exemption from the appeals
 21    panel, did that employee work in a
 22    classroom?
 23            MS. LINNANE:  Objection.
 24            You can answer.
 25       A. I do not know that.  The
```

```
1                   E. J. EICHENHOLTZ
2     Department of Education would know that
3     all.  Again, what we were reviewing on
4     the Citywide Appeals Panel is whether
5     or not they should get an exemption.
6     What happened after that point was up
7     to the Department of Education.
8   BY MR. GRAFF:
9         Q. So the appeals panel would grant
10    the exemption and refer that back to
11    the Department of Education, and then
12    the implementation of that exemption
13    was left to the Department of
14    Education, correct?
15        A. Right.
16             MS. LINNANE:   Objection.
17        A. In this context, we were -- the
18    way to visualize it was we were the
19    appellate body reversing the decision.
20    And then the implementation would be
21    for the agency or entity that made the
22    decision.
23  BY MR. GRAFF:
24        Q. Are you aware of how many people
25    received exemptions from the Department
```

```
 1              E. J. EICHENHOLTZ

 2      of Education, generally?

 3              MS. LINNANE:  Objection.

 4              You can answer.

 5        A. No.

 6   BY MR. GRAFF:

 7        Q. Okay.  Are you aware that only

 8      nine Catholics out of the 455 who

 9      applied were granted exemption?

10              MS. LINNANE:  Objection.

11              You can answer.

12        A. As I said, I do not see how you

13      could have a statistic of how many

14      Catholics did or did not receive an

15      accommodation.  If that's such a

16      statistic, I would not understand how

17      it could be devised without serving all

18      employees who provide an accommodation.

19   BY MR. GRAFF:

20        Q. Can you explain or are you aware

21      of why only a 145 people out of 3,396

22      people were granted religious

23      exceptions?

24        A. I -- again, I don't know if

25      those are the statistics.  I do know
```

E. J. EICHENHOLTZ

1

2    that we were in a public health

3    emergency.  I know from my review of

4    DOE requests that the Department of

5    Education was in a particularly

6    challenging position that allowed for a

7    compelling argument with regard to

8    denial on the ground of undue hardship.

9         So I would imagine, as all of

10    these laws allowed in a situation where

11    a public agency and a public health

12    emergency needed to, under the criteria

13    laid out by a public health authority,

14    safely provide certain services and

15    needed those personnel to do those

16    services, that there would be a great

17    deal of denials on the ground of undue

18    hardship.  And that also matches what I

19    recall from the, you know, dozens if

20    not a hundred plus DOE appeals that I

21    reviewed.

22         Q. Did you examine any requests --

23    requests for religious exemption

24    separate and apart from your role on

25    the appeal panel?

```
1              E. J. EICHENHOLTZ

2              MS. LINNANE:  Objection.

3         I'm going to caution the witness

4         not to disclose any information

5         that could be considered

6         privileged pursuant to the

7         doctrine of attorney-client

8         privilege.

9         A. And I'm going to ask you to do a

10   better job of letting me know the scope

11   you're thinking of.  I obviously

12   reviewed many reasonable accommodation

13   requests.

14   BY MR. GRAFF:

15        Q. I'm sorry.  So you reviewed

16   requests for religious exemptions as an

17   appeals panel member, correct?

18        A. Correct.

19        Q. Separate and apart from that,

20   did you review religious exemption

21   requests regarding the vaccine mandate

22   before the appeals panel was

23   implemented?

24              MS. LINNANE:  I'm going to

25         direct the witness not answer any
```

```
 1              E. J. EICHENHOLTZ

 2        questions with respect to his

 3        role as a managing attorney of

 4        the New York City Law Department

 5        or with his role with the New

 6        York City Law Department before

 7        the implementation of the

 8        Citywide Panel.

 9        A. I would -- and I will say that

10   the only time I was making

11   determinations as to whether an appeal

12   should be granted or denied was in

13   my -- in respect to the COVID-19

14   pandemic and those health orders -- was

15   in my role as a member of the appeals

16   panel.  I may have provided legal

17   advise, but, as you can imagine as a

18   lawyer, you understand, again, without

19   getting into substance of any of that

20   advice, we don't advise the client what

21   the decision should be.  We advise the

22   client as to legal context.

23   BY MR. GRAFF:

24        Q. I'll show you what's going to be

25   marked Exhibit E as in elephant.  Do
```

```
 1                    E. J. EICHENHOLTZ
 2     you recognize this document?
 3          A. Yes.  This appears to be a DOE
 4     position statement submitted to the
 5     Citywide Appeals Panel.
 6
 7               (Plaintiff's Exhibit E,
 8                New York City DOE Position
 9                Statement, was marked for
10                identification.)
11
12          Q. And it's labeled DEF
13     0005532000555.
14          A. Okay.
15          Q. Do you know when this was
16     created?
17          A. I -- I have no idea.
18          Q. And you said this document looks
19     like one that would've been submitted
20     to the appeals panel; is that correct?
21          A. Correct.
22          Q. Did you examine similar ones
23     from the DOE regarding other employees?
24               MS. LINNANE:  Objection.
25               You can answer.
```

```
 1              E. J. EICHENHOLTZ

 2         A. Yes, I did.

 3    BY MR. GRAFF:

 4         Q. Were they all similar except for

 5     the top four lines at the first page?

 6              MS. LINNANE:  Objection.

 7              You can answer.

 8         A. I don't recall.

 9    BY MR. GRAFF:

10         Q. Do you know if the DOE put out a

11     position statement for each employee

12     individual, or was it a general

13     statement regarding all employees?

14              MS. LINNANE:  Objection.

15              You can answer.

16         A. You would need to ask them.  But

17     my understanding when I reviewed them

18     was there was always at least some

19     minimal, as you said, at the top.  At

20     the very least, there were specific --

21     there were specific information

22     provided to us about the role and the

23     location and things like that, because

24     that was, you know, that was important

25     to our review.
```

```
 1                E. J. EICHENHOLTZ
 2    BY MR. GRAFF:
 3         Q. I'm going to show you the second
 4    page.  There are three bullets at the
 5    top.  It's DEF000554.  Do you see that
 6    on your screen?
 7         A. Yes.
 8         Q. And these talk about the undue
 9    hardship to the DOE if a religious
10    exception were to the granted to the
11    plaintiff.  Do you see that?
12         A. Yes, I do.
13         Q. Is there -- it talks about other
14    -- the first bullet says, "Other
15    mitigation measures provide
16    insufficient protection particularly
17    when transmission rates were high."
18    Are you aware of any mitigation
19    measures that were examined by the DOE
20    regarding exemptions?
21              MS. LINNANE:  Objection.
22              You can answer.
23         A. My -- that wouldn't be for the
24    DOE to do necessarily, other than to
25    evaluate whether they could keep
```

```
 1                  E. J. EICHENHOLTZ

 2    employees away from the vulnerable

 3    population at the time, which was the

 4    children in closed spaces.

 5         My understanding of the mandate,

 6    and it was issued by the Board of

 7    Health and the City's Health

 8    Commission, was that based on the

 9    available data and information at the

10    time, the mandate was issued because

11    the -- based on the understanding that

12    where we were in the pandemic when it

13    happened and the availability of

14    vaccines meant that the lesser

15    mitigation measures would not be as

16    effective as having a vaccinated

17    workforce.

18         Those details, of course, are

19    spelled out, I think, primarily in --

20    I believe they were aware as clauses in

21    the mandate.  But that was my

22    understanding.  Those determinations

23    had been made by the City's Department

24    of Health and Board of Health.

25    BY MR. GRAFF:
```

```
 1              E. J. EICHENHOLTZ
 2        Q. The second paragraph, second
 3    bullet says that, "State law and
 4    applicable collective bargaining
 5    agreements including the operation of
 6    seniority systems generally limit DOE's
 7    ability to transfer staff between
 8    schools except in limited circumstances
 9    not applicable here."
10           Are you aware of whether the DOE
11    sought to negotiate with the unions to
12    create the flexibility to transfer
13    staff?
14              MS. LINNANE:  Objection.
15              You can answer.
16        A. No, I'm not.  That would be a
17    question you'd have to ask DOE.
18    BY MR. GRAFF:
19        Q. The third bullet says, "More
20    than 3,300 DOE staff have requested
21    religious exemptions far greater than
22    the number of requests for medical
23    exemptions."  Was one of the undue
24    hardships that there were too many
25    people who sought requests?
```

```
 1                  E. J. EICHENHOLTZ
 2        A. Yes, that there was a large
 3   number of requested exemptions.  And in
 4   particular, at the time we were
 5   reviewing these particular requests,
 6   that there was, as I understood it,
 7   challenges in insuring that we had the
 8   teachers that were necessary in the
 9   City of New York and the DOE to allow
10   for return for in-person instruction
11   without running a foul of the public
12   health mandate.
13        Q. But not all 3,300 DOE staff had
14   bona fide religious objections; isn't
15   that correct?
16             MS. LINNANE:  Objection.
17             You can answer.
18        A. I wouldn't know without
19   reviewing all 3,300.
20   BY MR. GRAFF:
21        Q. Do you know if any students were
22   working -- were learning remotely
23   during the 2021, 2022 school year?
24             MS. LINNANE:  Objection.
25             You can answer.
```

```
 1              E. J. EICHENHOLTZ
 2      A. I cannot recall the specific
 3   timeline of when we went from -- by
 4   "we," I mean the Department of
 5   Education -- but when the Department of
 6   Education went from purely remote to
 7   hybrid to in-person.  I do know that by
 8   the fall of 2021, which was when these
 9   appeals were coming to the appeals
10   panel, the schools were open, and
11   children were returning to school.
12   BY MR. GRAFF:
13      Q. The second paragraph in -- on
14   page 2 of the document talks about
15   allowing such employees to remain in
16   school settings unvaccinated even with
17   other safeguards like masking and
18   testing would present an unacceptable
19   risk to school children, staff, and
20   others.  Do you know if there was
21   science behind that?
22      A. Yes.
23      Q. What was the science?
24           MS. LINNANE:  Objection.
25           You can answer.
```

```
1              E. J. EICHENHOLTZ
2         A. There were federal, state, and
3    local agencies that employed scores of
4    public health experts that were looking
5    at this information, looking at the
6    data, and making this determination.
7    The vaccine -- the DOE employee vaccine
8    mandate was based on this precise thing
9    that there was a particular
10   vulnerability to the younger
11   populations.  There were particular
12   concerns, especially in a place like
13   the City of New York, that had seen an
14   extreme spike in hospitalizations and
15   death amongst unvaccinated populations,
16   that there was a public health risk
17   that vaccines would significantly
18   mitigate.  And my understanding --
19   again, I'm not the Department of Health
20   -- but my understanding through this
21   process was that, in fact, the data
22   bore that out, that when vaccines and
23   mandates were implemented, that we saw
24   -- even when there were -- there was
25   circulation of COVID -- there were less
```

```
1                    E. J. EICHENHOLTZ

2     severe cases, far less severe cases,

3     far less hospitalizations, and far less

4     deaths.  So we did not have the sort of

5     public health crisis we had early in

6     the pandemic, I believe, was April,

7     May 2000 -- 2020.

8   BY MR. GRAFF:

9         Q. Are you aware of any other

10    school district in New York State that

11    had a vaccine mandate?

12        A. So I don't know whether or not

13    they did.  I will say that I believe

14    there is a reason that if you ever look

15    at the New York State Education Law,

16    virtually every rule that applies to

17    school districts seems to carve out or

18    have a different set of rules for the

19    city school district and the City of

20    New York.  And it is a unique district

21    and a unique population.  So I would

22    not use any other school district as a

23    comparative.  Some may have, some may

24    not have.

25        Q. The last paragraph on the second
```

```
 1                 E. J. EICHENHOLTZ

 2    page talks about, "Our experience in

 3    providing exemptions in accordance with

 4    the arbitration award has only

 5    confirmed that creating such

 6    alternative assignments poses an undue

 7    hardship."

 8          Do you have any idea what the

 9    Department of Education's experience

10    was at that time?

11       A. My understanding of this

12    particular statement and paragraph was

13    that through the arbitration award,

14    there was an allowance for essentially

15    offsite, you know -- essentially

16    alternative assignments where

17    pedagogical staff were allowed to work

18    in offices while the public health

19    order remained in place.  And that, you

20    know, both that, you know -- the

21    productivity and the work that could be

22    assigned to those individuals was low

23    and that, you know, and that it

24    essentially was not benefitting the

25    Department of Education, and, in fact,
```

```
 1                      E. J. EICHENHOLTZ

 2     was, you know -- at this point, they

 3     were presenting with as it states here,

 4     a staffing concern, because they needed

 5     staff to be physically present in

 6     indoor spaces with children.

 7              And that's why I think that's

 8     what they're saying.  As I understand

 9     it, that, you know, given the number of

10     people they moved outside of the

11     schools, they were, you know -- there

12     were issues staffing the schools.

13     That's my understanding.

14         Q. Do you have any idea why the

15     plaintiff was denied a religious

16     exemption?

17         A. Yes.

18         Q. Why?

19         A. I think the reasons we received

20     from the Department of Education were

21     in the document you just showed me

22     moments ago, the position statement.

23     And the appeals panel unanimously

24     affirmed on the ground that the

25     Department of Education demonstrated
```

```
 1                    E. J. EICHENHOLTZ
 2   undue hardship if the plaintiff were
 3   granted a reasonable accommodation.
 4       Q. So the decision to deny her a
 5   reasonable accommodation based upon her
 6   religious beliefs had nothing to do
 7   with her religious beliefs?
 8       A. Correct.  I see no indication in
 9   her file that anyone made a finding at
10   any point in this process that her
11   religious beliefs themselves would not
12   qualify her for an accommodation.  The
13   focus was on undue hardship in her
14   case.
15       Q. If, at any point during the
16   process, her religious beliefs were
17   challenged, would that have been
18   appropriate?
19            MS. LINNANE:  Objection.
20            You can answer.
21       A. I'm not going to speculate on
22   what, you know -- I've not read her
23   paperwork in the depth and with the
24   attention I would need to say yes,
25   absent undue hardship, she would get an
```

```
1              E. J. EICHENHOLTZ

2     accommodation or wouldn't in my view.

3     Nor is my view at this stage worth

4     anything other than anything.

5  BY MR. GRAFF:

6        Q. If during the appeal before the

7     arbitration arbitrator, the SAMS

8     arbitrator, there was no argument that

9     an undue hardship would've occurred to

10    grant her an exemption, would that have

11    been an appropriate argument for the

12    DOE to make regarding this plaintiff?

13             MS. LINNANE:  Objection.

14             You can answer.

15       A. So if -- yeah, there was no --

16    the DOE could raise undue hardship at

17    any point.  And I also understand, like

18    I said, the SAMS arbitration, as you

19    referred to them, were under a specific

20    agreement that required certain things

21    and didn't -- that sort of governed it

22    in a different way.  So when it was

23    presented to us, it was presented,

24    obviously, more like the legal --

25    entirely, purely legal and policy-
```

```
 1              E. J. EICHENHOLTZ

 2    based requests that you would see in

 3    the ordinary course of business at the

 4    DOE or in the state.

 5  BY MR. GRAFF:

 6       Q. Were you a part of the decision

 7    process to arbitrate the end of the

 8    impasse and negotiations between the

 9    UFT and the DOE?

10            MS. LINNANE:  Objection.

11       A. No.  No.

12  BY MR. GRAFF:

13       Q. From your experience, are you

14    aware of any arbitrations between the

15    UFT and the DOE relating to ending

16    impasses and negotiation?

17            MS. LINNANE:  Objection.

18            You can answer.

19       A. If there is an impasse,

20    generally, as I understand it, under,

21    you know, the state and local law and

22    DOE governs primarily -- pedagogues are

23    governed by state law -- is that if

24    there is an impasse, there is attempted

25    mediation.  Failing mediation, there is
```

```
 1                    E. J. EICHENHOLTZ

 2     an arbitration proceeding, and the

 3     arbitrator will implement, you know --

 4     an award will be issued that will

 5     implement the agreement.

 6          The reason for that, as I

 7     understand it, is that public

 8     employees, for very compelling policy

 9     reasons, are prohibited from engaging

10     in job actions like strikes.  And we

11     want to keep them on the job.  The

12     legislature -- when I say "we" there,

13     I'm talking about the state.  And that

14     because they don't have that option,

15     the law requires, essentially, that if

16     the two parties can't agree, that a

17     neutral arbitrator resolves that

18     dispute.

19     BY MR. GRAFF:

20          Q. I'm going to take a five-minute

21     break.  I have one exhibit that I just

22     want to show.  I have to pull it up,

23     but I think I'm done otherwise.  Give

24     me five minutes.  Right now, I have

25     11:22.  Can we come back at 11:30?
```

```
 1              E. J. EICHENHOLTZ
 2      Does that work for you guys?
 3              MS. LINNANE:  That's
 4         perfect.  Thank you.
 5              (A recess was taken.)
 6      BY MR. GRAFF:
 7         Q. I just want to show you -- let
 8      me know when you see it on your screen.
 9         A. Okay.  I see it.
10         Q. Okay.  I'm going to mark this
11      Exhibit F.
12
13              (Plaintiff's Exhibit F,
14              COVID-19 Religious Exemption
15         Application Determination, was
16         marked for identification.)
17
18         Q. This is Document 1-4 in the --
19      on the court docket.  Are you aware
20      that the New York City Department of
21      Education made an initial determination
22      regarding the plaintiff's request for
23      religious exemption?
24              MS. LINNANE:  Objection.
25              You can answer.
```

```
                         E. J. EICHENHOLTZ
```

1

2      A. As I said, I'm not aware of the

3   precise mechanics of how the process

4   worked under the arbitration award.

5  BY MR. GRAFF:

6      Q. And you're talking about the

7   arbitration award issued by Marty

8   Scheinman?

9      A. Yeah.  There was an arbitration.

10  I don't know who issued it offhand, but

11  it was an arbitration award that

12  resolved, I believe -- it was impact

13  bargaining over the implementation of

14  the COVID employee vaccine mandate for

15  DOE employees.

16      Q. Okay.  And then I'm going to

17  show you what's marked Exhibit G.

18

19             (Plaintiff's Exhibit G,

20             Torrey Arbitration Award,

21         was marked for identification.)

22

23      A. Uh-hum.

24      Q. Have you ever seen a document

25  like this before?

```
 1              E. J. EICHENHOLTZ

 2         A. Yes.

 3         Q. Where have you seen this

 4    document?

 5              MS. LINNANE:  Objection.

 6         That wasn't the question that you

 7         just asked.

 8         A. So I saw this -- I've seen this

 9    just over time in various records that

10    arose out of the DOE reasonable

11    accommodation, both appeals.  Some

12    people provided this, although, you

13    know, I want to make it clear it was

14    not relevant to us.  But just over the

15    course of time when I understood, you

16    know, various contexts when reviewing

17    -- not reviewing, but, like, I

18    understand this to be the form of the

19    arbitration award the DOE labor

20    arbitrator used.  I've seen this form

21    before.

22    BY MR. GRAFF:

23         Q. So this -- are you aware that

24    this is the type of form that would be

25    used by a Scheinman Arbitration
```

```
 1              E. J. EICHENHOLTZ

 2    Mediation Service arbitrator in

 3    determining an appeal of a religious

 4    exemption for a DOE employee?

 5        A. Yes.  It's my understanding

 6    -- is that documents like this were

 7    issued by the arbitrators.  Whether it

 8    was Scheinman or there were others, I

 9    couldn't tell you.

10        Q. Is it your understanding that

11    the arbitrator would be examining an

12    appeal of a denial of an exemption?

13            MS. LINNANE:  Objection.

14            You can answer.

15        A. Yeah.  As I've said previously,

16    I do not recall or understand the

17    particular mechanics of how this

18    worked.  My recollection was that there

19    was a desire for a labor arbitration --

20    a labor arbitrator to make the decision

21    on reasonable accommodations.

22    BY MR. GRAFF:

23        Q. What is the basis of your

24    understanding of that?

25        A. I -- as I sit here, I could not
```

```
1                    E. J. EICHENHOLTZ

2      tell you.  At some point, I understood

3      that's, you know, that's how this

4      process worked.  It is -- it was not

5      typical for a reasonable accommodation

6      to be decided by a labor arbitrator,

7      and this award provided for that.

8          Q. Was it your understanding that

9      the DOE was relying upon the

10     arbitrators to grant or deny

11     exemptions?

12             MS. LINNANE:  Objection.

13             You can answer.

14         A. Again, I do not have knowledge

15     of the particular mechanics of how it

16     got to the arbitrator.  Whether or not

17     there was an opportunity pre-

18     arbitration to grant it or how that

19     worked, you would have to ask the DOE.

20     BY MR. GRAFF:

21         Q. And if the DOE said that all

22     religious exemptions were denied

23     initially by the DOE, would that --

24     could that be true?

25             MS. LINNANE:  Objection.
```

```
 1               E. J. EICHENHOLTZ

 2       A. I'd be speculating.  It's why I

 3  say you should ask the DOE.  I

 4  certainly would not know how that

 5  process worked.

 6          MR. GRAFF:  Okay.  I have no

 7  other questions.  I appreciate your

 8  time, Mr. Eichenholtz.

 9             THE WITNESS:  Thank you.

10             MS. LINNANE:  So we're all

11     set.

12

13       (Time noted: 11:36 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25
```

1          E. J. EICHENHOLTZ

2        INSTRUCTIONS TO WITNESS

3

4          Please read your deposition over

5    carefully and make any necessary

6    corrections.  You should state the

7    reason in the appropriate space on the

8    errata sheet for any corrections that

9    are made.

10          After doing so, please sign the

11    errata sheet and date it.

12          You are signing same subject to

13    the changes you have noted on the errata

14    sheet, which will be attached to your

15    deposition.

16          It is imperative that you return

17    the original errata sheet to the

18    deposing attorney within thirty (30)

19    days of receipt of the deposition

20    transcript by you.  If you fail to do

21    so, the deposition transcript may be

22    deemed to be accurate and may be used in

23    court.

24

25

```
 1              E. J. EICHENHOLTZ

 2         A C K N O W L E D G E M E N T

 3    STATE OF NEW YORK)

 4                    :SS

 5    COUNTY OF _____)

 6      I, ERIC J. EICHENHOLTZ, hereby certify

 7    that I have read the transcript of my

 8    testimony taken under oath on

 9    April 4, 2025, that the transcript is a

10    true, complete and correct record of

11    what was asked, answered and said during

12    my testimony under oath, and that the

13    answers on the record as given by me are

14    true and correct, except for the

15    corrections or changes in form or

16    substance, if any, noted in the attached

17    Errata Sheet.

18        _____

19              ERIC J. EICHENHOLTZ

20

21    Signed and subscribed to

22    before me, this _____ day

23    of _____, _____.

24    _____

25        Notary Public
```

```
 1              E. J. EICHENHOLTZ

 2              I   N   D   E   X

 3

 4

 5   EXAMINATION                     6

 6   BY MR. GRAFF

 7

 8

 9   (Plaintiff's Exhibit A,         10

10   Notice of Deposition, was

11   marked for identification.)

12

13   (Plaintiff's Exhibit B,         25

14   Declaration of Impasse, was

15   marked for identification.)

16

17   (Plaintiff's Exhibit C,         38

18   Appeal to Appeals Panel, was

19   marked for identification.)

20

21   (Plaintiff's Exhibit D,         45

22   Reasonable Accommodation Appeal

23   Determination, was marked for

24   identification.)

25
```

1              E. J. EICHENHOLTZ

2    (Plaintiff's Exhibit E,          66

3    New York City DOE Position

4    Statement, was marked for

5    identification.)

6

7    (Plaintiff's Exhibit F,          81

8    COVID-19 Religious Exemption

9    Application Determination, was

10   marked for identification.)

11

12   (Plaintiff's Exhibit G,          82

13   Torrey Arbitration Award, was

14   marked for identification.)

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, CEITA LAZAR, a stenographic

reporter and Notary Public within and

for the State of New York, do hereby

certify:

That the witness(es) whose testimony

is hereinbefore set forth was duly sworn

by me, and the foregoing transcript is a

true record of the testimony given by

such witness(es).

I further certify that I am not

related to any of the parties to this

action by blood or marriage, and that I

am in no way interested in the outcome

of this matter.

_____

CEITA LAZAR
Dated:  April 23, 2025

```
 1   Errata Sheet

 2

 3   NAME OF CASE: x LORRAINE MASCIARELLI -against- NEW YORK CITY DEPARTMENT OF EDUCATION

 4   DATE OF DEPOSITION: 04/04/2025

 5   NAME OF WITNESS: ERIC J. EICHENHOLTZ

 6   Reason Codes:

 7        1. To clarify the record.

 8        2. To conform to the facts.

 9        3. To correct transcription errors.

10   Page _____ Line _____ Reason _____

11   From _____ to _____

12   Page _____ Line _____ Reason _____

13   From _____ to _____

14   Page _____ Line _____ Reason _____

15   From _____ to _____

16   Page _____ Line _____ Reason _____

17   From _____ to _____

18   Page _____ Line _____ Reason _____

19   From _____ to _____

20   Page _____ Line _____ Reason _____

21   From _____ to _____

22   Page _____ Line _____ Reason _____

23   From _____ to _____

24

25                        _____
```

**Exhibits**

**Ex A -**
 **Eichenholtz de**
 **position notice**
 **_marked** 10:2,4
 89:9

**Ex B -**
 **Declaration of**
 **Impasse_**
 **marked** 25:2,4
 89:13

**Ex C -**
 **Appeal to App**
 **eal Panel_**
 **marked** 38:3,5
 89:17

**Ex D -**
 **Appeal Panel**
 **denial_marked**
 45:19,21 89:21

**Ex E -**
 **NYC DOE Posi**
 **tion Statement**
 **-- 553-555_**
 **marked** 65:25
 66:7 90:2

**Ex F - 9-21-**
 **21 Denial of Ac**
 **commodation_**
 **marked** 81:11,
 13 90:7

**Ex G -**
 **Torrey Arb aw**
 **ard_marked**
 82:17,19 90:12

**(**

**(30)** 87:18

**0**

**0005532000555**
 66:13

**1**

**1-4** 47:2 81:18

**1-7** 38:11

**100** 6:20 8:9

**10007** 6:21

**11:22** 80:25

**11:30** 80:25

**11:36** 86:13

**145** 62:21

**2**

**2** 72:14

**2000** 74:7

**2002** 11:9,17

**2003** 15:21

**2013** 13:18

**2020** 74:7

**2021** 8:24 13:10,
 20 71:23 72:8

**2022** 8:25 12:23,
 25 71:23

**2025** 88:9

**22-** 16:5

**22-2** 25:16

**3**

**3,300** 70:20
 71:13,19

**3,396** 33:11
 62:21

**4**

**4** 88:9

**455** 62:8

**5**

**500** 29:25

**550** 47:22,24

**7**

**7** 15:23 16:12,18

**58:3**

**8**

**8-107** 17:7 19:3
 35:4

**8107** 9:6

**9**

**9** 26:16

**A**

**A** 81:5

**a.m.** 86:13

**ability** 70:7

**absent** 77:25

**Absolutely**
 30:22 32:3

**accommodatio**
 **n** 8:20 17:14,22
 18:10,14 20:24
 21:5 22:3,4
 36:25 38:21,23
 45:22 49:5,22
 50:6 53:7 54:23,
 24 56:9,17
 62:15,18 64:12
 77:3,5,12 78:2
 83:11 85:5

**accommodatio**
 **ns** 16:13,19
 17:18 19:5
 20:19 21:25
 26:18 32:16
 37:9 41:22
 42:12 48:13
 53:19 54:11
 84:21

**accordance**
 75:3

**accurate** 87:22

**acting** 12:22

**action** 7:5 8:22

**actions** 80:10

**actually** 25:14
 58:4

**add** 21:23

**addition** 14:5
 16:13 30:3

**address** 6:20

**addresses**
 26:17

**addressing**
 38:21

**adjudicated**
 34:18

**adjustments**
 37:10

**administration**
 12:13

**Administrative**
 9:6 41:24

**administrator**
 52:4,5

**admitted** 15:19

**advice** 13:23
 65:20

**advise** 10:23
 12:7 54:22
 65:17,20,21

**affirmative** 14:5

**affirmatively**
 45:15 49:3

**affirmed** 29:22
 76:24

**after** 28:22
 29:15 47:11
 61:6 87:10

**again** 32:14
 33:15 42:21
 59:10 61:3
 62:24 65:18
 73:19 85:14

**agencies** 13:25
 41:13,16,22
 42:4,6 60:14
 73:3

**agency** 11:10
 42:9,16 49:2,25
 53:3,14,23 59:5
 61:21 63:11

**ago** 76:22

**agree** 80:16

**agreed** 29:6

**agreement**
 78:20 80:5

**agreements**
 70:5

**ahead** 14:25
 59:23

**all** 10:16,17
 12:4,10 16:20
 25:24 29:17
 42:6 47:11
 52:12 58:11,23
 59:12 61:3
 62:17 63:9 67:4,
 13 71:13,19
 85:21 86:10

**allotment** 15:4

**allow** 71:9

**allowable** 22:2

**allowance**
 75:14

**allowed** 18:7
 63:6,10 75:17

**allowing** 72:15

**along** 55:4

**already** 27:2
 30:4 55:19

**also** 5:24 8:23
 9:2,3 14:5 32:13
 40:8 43:4,10
 55:4,21 63:18
 78:17

**alternative**
 75:6,16

**although** 24:10
 83:12

**always** 21:5
 22:5 67:18

**am** 7:3 13:22
 15:18 17:3
 45:16

**amendment**
 21:21

**amongst** 42:7
 73:15

**an** 11:25 12:9,22 14:3 17:13 19:12 21:5 26:8 29:23 31:11 32:24 34:8 35:24 36:14 40:3,4 46:23 47:22 48:9 49:4, 23 50:2,7,12,19 51:12 52:25 53:4,17 54:22 56:9,19 60:3 61:5 62:14,18 64:16 65:11 72:18 73:13 75:6,14 77:12, 25 78:9,10,11 79:19,24 80:2,4 81:21 82:9,11 84:3,11,12 85:17

**analysis** 18:12

**analyze** 18:3

**Andrea** 6:13

**answer** 7:17 10:16 17:24 19:8,21 20:7 21:13 22:13 24:22 28:20 30:13,21 31:5 32:2 33:4,14 34:2,10 35:17 36:3,17 41:9,19 44:2,11 46:13, 20 47:7,20 48:3, 11 50:15 51:7 52:23 53:21 54:13 56:14 57:9 59:20 60:24 62:4,11 64:25 66:25 67:7,15 68:22 70:15 71:17,25 72:25 77:20 78:14 79:18 81:25 84:14 85:13

**answered** 88:11

**answers** 88:13

**antidiscriminat ion** 16:11

**any** 7:13 8:2,3 15:22 19:16

22:16,23 27:23 31:20 32:21 37:10 40:12 42:18 43:12 44:6,8 49:6,7,8 58:7 59:18,23 60:6 63:22 64:4, 25 65:19 68:18 71:21 74:9,22 75:8 76:14 77:10,15 78:17 79:14 87:5,8 88:16

**anyone** 8:11 77:9

**anything** 7:25 8:3 10:23 14:13 32:20 78:4

**apart** 63:24 64:19

**appeal** 8:18 31:3 33:2 38:6 40:4,23 41:6,12 42:20 45:15,23 46:6,11,18 47:10,12 52:16 53:2 63:25 65:11 78:6 84:3, 12

**appeal's** 46:11, 15 52:20

**appealing** 39:25

**appeals** 28:23 29:11,12,21,22 30:2 35:13 37:2, 23 38:6 39:14 40:2,13 42:6,11 43:24 47:16 48:7 51:11 54:15 57:7 58:8, 11 60:20 61:4,9 63:20 64:17,22 65:15 66:5,20 72:9 76:23 83:11

**appearing** 9:7 10:10

**appears** 26:15 38:17 39:3 66:3

**appellate** 60:3 61:19

**applicable** 70:4,9

**applicant's** 50:3 51:12,13

**application** 59:18,25 81:15

**applications** 58:9

**applied** 33:11 50:11 62:9

**applies** 74:16

**appointed** 12:24 13:8,16, 20

**appreciate** 86:7

**appropriate** 10:24 29:23 55:25 77:18 78:11 87:7

**appropriately** 57:2

**approximation** 47:22

**April** 74:6 88:9

**arbitrate** 79:7

**arbitration** 23:7 29:4 31:2,18 32:17,25 33:19 34:13 35:11,14, 24 50:19 55:13, 20 75:4,13 78:7, 18 80:2 82:4,7, 9,11,20 83:19, 25 84:19 85:18

**arbitrations** 79:14

**arbitrator** 31:11 33:21 34:19 38:22 78:7,8 80:3,17 83:20 84:2,11,20 85:6, 16

**arbitrators** 84:7 85:10

**areas** 15:8

**argument** 63:7 78:8,11

**arose** 83:10

**ask** 5:21 7:6,21 20:12 40:18 45:7 57:11 64:9 67:16 70:17 85:19 86:3

**asked** 45:8 83:7 88:11

**asking** 7:19 39:19 44:14 55:17

**assigned** 75:22

**assignments** 75:6,16

**assistant** 13:5, 12,19 14:10,25 15:13

**assume** 7:18

**assuming** 40:17

**assurance** 43:9,11

**at** 7:12 8:8 9:5 11:25 12:7,9 14:4 16:16 23:9, 14,15 24:14 25:20 26:13,21 27:9 28:4,11 29:24,25 32:8, 13 33:23 35:24 43:9 48:17 49:18,24 50:2 51:11 52:14,15 58:16 67:5,18, 19 68:4 69:3,9 71:4 73:5 74:15 75:10 76:2 77:9, 15 78:3,16 79:3 80:25 85:2

**attached** 87:14 88:16

**attempted** 79:24

**attended** 23:22

**attention** 77:24

**attorney** 7:4 11:20,21,23 12:21 13:4 14:9, 20 15:14,16 35:24 36:14

65:3 87:18

**attorney-client** 14:15 20:11 23:2 64:7

**Austin** 6:6 7:3 9:18 25:13

**authored** 38:18

**authority** 63:13

**availability** 69:13

**available** 69:9

**award** 29:4 31:18 32:17 33:19 34:13 50:19 55:13 75:4,13 80:4 82:4,7,11,20 83:19 85:7

**aware** 26:7 30:7,16,24 31:20 33:8 35:11,18 36:18 43:15 45:18 46:5 51:8 61:24 62:7,20 68:18 69:20 70:10 74:9 79:14 81:19 82:2 83:23

**away** 69:2

**B**

**back** 7:23 56:3 61:10 80:25

**Banks** 24:9

**bargaining** 23:9,14,17 24:18 28:4 70:4 82:13

**based** 28:7 46:7 69:8,11 73:8 77:5 79:2

**baseline** 59:7

**basically** 54:20

**basis** 18:9 42:13 48:7 53:8 84:23

**Bates** 25:12

**because** 14:21
16:21 17:11
18:21 25:24
26:21 32:9
33:25 34:2 36:7
37:7 41:11
44:13,17 45:6
49:18 50:17
58:14 67:23
69:10 76:4
80:14

**been** 6:18 11:15
12:20,25 29:3,
13,16 30:7
58:25 59:25
66:19 69:23
77:17 78:11

**before** 13:3,11
23:17 26:5
45:10 64:22
65:6 78:6 82:25
83:21 88:22

**begins** 27:11

**behind** 72:21

**being** 16:14
17:3 18:18
19:23 21:19
56:21

**belief** 44:22
49:11,15,16

**beliefs** 44:24
45:4 48:19,20,
23 77:6,7,11,16

**believe** 38:19
44:12 45:8
51:14 55:24
69:20 74:6,13
82:12

**believed** 54:25

**believes** 10:24

**bell** 36:12

**benefits** 12:16

**benefitting**
75:24

**best** 5:23

**better** 64:10

**between** 14:8
23:16,17 29:4
54:8 56:4 70:7
79:8,14

**big** 9:23

**bigger** 9:18

**black** 9:14

**Board** 69:6,24

**body** 61:19

**bold** 25:20

**bolts** 55:12

**bona** 71:14

**bore** 73:22

**both** 16:15
21:19 24:13
29:2 43:2 50:24
75:20 83:11

**break** 7:12,15
80:21

**bringing** 40:3

**broader** 16:24
57:23

**brought** 59:12

**budget** 12:15

**bullet** 68:14
70:3,19

**bullets** 68:4

**burden** 49:5

**business** 79:3

**but** 7:19 15:6
20:11 23:4
24:11 31:12
32:12 33:25
36:18 37:18
40:7 42:22
44:21 46:9
51:24 54:4
55:14 57:25
59:6 65:17
67:16 69:21
71:13 72:5
73:20 80:23
82:10 83:14,17

**C**

**called** 30:8

**came** 47:17 59:6

**can** 5:23 7:14
9:20 17:24 19:8,

21 20:7 21:13
22:3,13 24:22
26:6 27:12,16,
24 28:11,20
30:13,21 31:5
32:2 33:4,14
34:10 35:17
36:3,17 41:9,19
42:24 44:2,11
46:13,20 47:7,
20 48:3,11
50:15 51:7
52:23 53:21
54:13 56:14
57:9 59:20
60:24 62:4,11,
20 65:17 66:25
67:7,15 68:22
70:15 71:17,25
72:25 77:20
78:14 79:18
80:25 81:25
84:14 85:13

**can't** 39:11
80:16

**cannot** 7:8 28:8
33:25 50:16
55:11 72:2

**capacity** 12:23
13:2 14:4

**capital** 25:20

**career** 16:6

**careful** 37:18

**carefully** 87:5

**carve** 74:17

**case** 8:2,4,14
17:12 22:5
28:10 29:14
39:20 41:2
42:23 48:21
49:8 56:16 58:3
59:24 77:14

**cases** 55:14
60:5,8 74:2

**Catholic** 44:9,
17,18 45:5,14,
16

**Catholics** 44:25
62:8,14

**caution** 14:12
22:22 64:3

**ceita** 5:14 6:19

**certain** 24:14
56:15 63:14
78:20

**certainly** 27:18
44:23 45:8
54:14 86:4

**certify** 88:6

**challenged**
77:17

**challenges**
71:7

**challenging**
63:6

**chance** 29:7

**changed** 51:4

**changes** 87:13
88:15

**characterize**
36:23

**chief** 13:5,11,
14,19 14:10
15:12

**children** 52:9,
12 69:4 72:11,
19 76:6

**chose** 55:25

**chosen** 53:14

**Christian** 44:19

**Church** 6:20 8:9

**Circuit** 28:24
29:22

**circulation**
73:25

**circumstances**
50:3,4 51:12,13
70:8

**city** 5:19 8:8 9:4
11:6,8,11,13,16
13:24 15:10
16:9,22,23 17:7,
16 18:17,19,22,
25 19:18 22:19
23:18 24:8,17
27:11,23 28:3,
12 29:5,10,17
30:4,10,19

**31:**21 32:6,23
33:9 34:24 35:3,
22 36:15,24
37:3,6,20 39:17
41:25 43:22
50:10 51:3
52:17,25 53:5,
10,16,22,24
54:9 57:17,19,
24 58:5 59:2,11
60:7 65:4,6 66:8
71:9 73:13
74:19 81:20

**city's** 18:12,15
26:17 59:3,9
69:7,23

**citywide** 29:10,
12,21 32:10
37:8,23 41:24
55:15 61:4 65:8
66:5

**clarification**
19:10 60:18

**classroom** 52:2
60:22

**clauses** 69:20

**CLE** 16:7

**clear** 21:19
38:24 83:13

**CLES** 16:15

**client** 26:23
27:2 65:20,22

**close** 5:22

**closed** 69:4

**Code** 9:6

**colleagues**
37:20

**collective** 70:4

**combination**
49:7

**come** 80:25

**comes** 37:24

**coming** 72:9

**Commission**
42:2 53:22 69:8

**committee** 30:8

**comparative** 74:23

**compel** 18:6

**compelling** 63:7 80:8

**Compensation** 14:7

**complaint** 8:21

**complete** 47:11 88:10

**completely** 47:13

**complied** 35:3

**comply** 19:2

**comprehensive** 58:15

**concern** 49:24 76:4

**concerns** 29:6 73:12

**conclude** 45:3

**confirmed** 56:24 75:5

**conflict** 48:24

**conflicts** 49:12

**considerations** 58:22 59:15

**considered** 14:14,20,23 22:24 64:5

**consistent** 42:6 56:5

**constitutional** 28:25

**consulted** 19:23 20:13 23:5

**context** 18:20 29:12 34:20 51:15 52:12,16 56:15 57:25 58:19 61:17 65:22

**contexts** 83:16

**contextualize** 40:9

**contours** 37:11

**control** 60:14

**cooperative** 54:3,5,7 56:7,24

**copies** 58:12

**copy** 5:9

**corporation** 6:11,14 13:6,12, 19 14:10,24,25 15:13

**correct** 9:9 20:20 21:7 22:11,15 61:14 64:17,18 66:20, 21 71:15 77:8 88:10,14

**corrections** 87:6,8 88:15

**could** 14:13 23:24 33:24 38:13 40:6 43:17 49:8 52:15 53:12 56:10,15 58:18 62:13,17 64:5 68:25 75:21 78:16 84:25 85:24

**couldn't** 84:9

**counsel** 6:2,11, 14 8:14 10:13, 22 13:6,12,20, 23 14:10,24 15:13 38:18,25 39:3 43:16,20

**counselor** 14:25

**counterparts** 16:25

**COUNTY** 88:5

**course** 14:17 69:18 79:3 83:15

**courses** 16:7

**court** 5:14 7:9, 22 28:23 29:22 81:19 87:23

**court's** 25:16 38:11

**courts** 56:23

**covered** 57:18

**covers** 57:16

**COVID** 17:21 58:21 73:25 82:14

**COVID-19** 8:25 48:22 58:14 65:13 81:14

**COVID-SPECIFIC** 59:15

**create** 70:12

**created** 29:3 66:16

**creating** 37:21 75:5

**crisis** 74:5

**criteria** 63:12

**critical** 51:21

**current** 11:19

**currently** 8:6 11:2

---

**D**

**data** 69:9 73:6, 21

**database** 42:24 47:9,12

**date** 87:11

**day** 88:22

**days** 87:19

**deal** 63:17

**dealing** 48:21

**death** 73:15

**deaths** 74:4

**December** 12:24

**decided** 30:8 85:6

**decision** 17:13 18:16 28:22 29:13 30:17

31:12 34:23 35:7 37:16,18 38:22 40:10 42:19 46:10 50:12 61:19,22 65:21 77:4 79:6 84:20

**Declaration** 25:5,22

**declared** 26:8

**deemed** 87:22

**DEF** 66:12

**DEF000554** 68:5

**defendant** 6:15 8:14 10:24

**defendants** 6:12

**defer** 43:16

**demonstrated** 76:25

**denial** 8:19 35:13 38:20 55:24 63:8 84:12

**denials** 29:8 40:3 63:17

**denied** 31:24 38:23 46:6 47:4 53:7,8,12 60:2 65:12 76:15 85:22

**deny** 18:3,8,13 28:16 30:9,17 34:8,25 46:10 48:9 50:12 52:19 77:4 85:10

**denying** 18:9

**DEO** 50:23

**department** 5:19 8:9,18 11:11,14,16 12:4 15:10 16:16 18:17,23, 25 19:18 20:4 22:20 23:10 24:3,10,17 29:5 30:11,19 31:21 32:6,23 33:9,20,

22 34:6,24 35:23 36:15 39:17,18 41:23, 24 43:22 47:17 50:10,22 51:3 54:9,21 55:9,16, 22 60:7 61:2,7, 11,13,25 63:4 65:4,6 69:23 72:4,5 73:19 75:9,25 76:20, 25 81:20

**department's** 12:10

**departments** 42:8

**depended** 42:15

**dependent** 49:13

**depending** 59:5

**deposing** 87:18

**deposition** 5:16 8:16 9:8 10:5,9 39:8 87:4,15,19, 21

**depth** 77:23

**describe** 54:3

**described** 50:24 57:3

**designated** 42:10

**desire** 84:19

**detail** 51:24

**details** 31:7 35:20 69:18

**determination** 34:7 35:12 45:23 52:21 73:6 81:15,21

**determinations** 19:4 57:7 65:11 69:22

**determine** 39:15 48:20

**determined** 31:22

**determining** 28:16 52:19 56:11 84:3

**devised** 62:17

**dialogue** 54:3, 5,8,19 56:7,25

**didn't** 52:6 78:21

**difference** 14:8, 18

**different** 15:5 42:8 50:20 74:18 78:22

**difficult** 26:2

**direct** 26:20 64:25

**directive** 57:22

**disagreement** 60:15

**disclose** 14:13 22:23 64:4

**discovery** 43:14

**discretion** 18:13

**discretions** 18:8

**discrimination** 15:24

**discuss** 10:25

**discussed** 17:5 18:15

**discussion** 23:15,17 37:5

**dispositive** 49:8

**dispute** 80:18

**district** 52:5 74:10,19,20,22

**districts** 74:17

**division** 12:3 13:14,15 14:3 15:4

**divisions** 12:12 15:7

**docket** 25:15, 16,25 38:12 47:2 81:19

**doctrine** 14:15 23:2 64:7

**document** 22:7 26:5,13,16,23, 24 27:2,4,11 28:8 38:10,11, 14 39:10,13 66:2,18 72:14 76:21 81:18 82:24 83:4

**documents** 8:3 25:12 39:7,9,14 43:13 46:8,22 84:6

**DOE** 21:17 29:15 30:3 34:15,16 35:2 38:19 40:6,10, 11,18,19 41:2 45:8 51:17,18, 20 52:13 63:4, 20 66:3,8,23 67:10 68:9,19, 24 70:10,17,20 71:9,13 73:7 78:12,16 79:4,9, 15,22 82:15 83:10,19 84:4 85:9,19,21,23 86:3

**DOE's** 50:25 70:6

**does** 18:16 27:3 53:16,25 54:5 57:18 81:2

**doesn't** 33:15 56:7

**doing** 30:4 50:18 51:23 87:10

**don't** 7:19 9:12 24:11 31:6,12 32:11,18,19 35:19 36:8,23 43:16,17,18 45:7 46:21 51:23 62:24 65:20 67:8 74:12 80:14 82:10

**done** 42:13 50:17 55:2,19 80:23

**down** 7:9 38:13

**dozens** 16:6 63:19

**due** 37:11

**duly** 6:18

**during** 71:23 77:15 78:6 88:11

**duties** 11:24 13:21

---

**E**

**e-discovery** 14:6

**each** 42:9 49:22 67:11

**early** 74:5

**EDA** 16:20

**Education** 5:20 18:17,23 19:2, 19 22:20 23:11 24:3,10 29:5 30:11,19 31:21 32:6,23 33:10, 20,22 34:6,25 35:23 39:18 43:22 47:18 50:11 54:9,21 55:9,17,22 60:7 61:2,7,11,14 62:2 63:5 72:5,6 74:15 75:25 76:20,25 81:21

**Education's** 8:19 24:18 50:22 51:4 75:9

**EEO** 8:25 50:25 51:4 58:24

**EEOC** 8:24 58:13

**effective** 69:16

**Eichenholtz** 5:1,17 6:1,17 7:1,2 8:1 9:1 10:1 11:1 12:1

13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1,4 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1,8 87:1 88:1,6,19

**either** 7:20 32:25 57:16 58:24

**elected** 13:25

**elephant** 65:25

**else** 5:5

**email** 47:2

**emergency** 37:12 58:20 63:3,12

**emerging** 58:17

**employed** 11:3, 12 73:3

**employee** 34:17 37:3 39:17,18,25 40:3 48:18,22 49:14 52:13 53:3 55:7,17 60:7,21 67:11 73:7 82:14 84:4

**employees** 16:10 21:18 29:16,17 30:3,5 31:22 32:6,22 34:16 35:2 42:7, 10 43:22 44:18

**employer** 11:5 18:8 49:4

**employment** 12:2,5 13:6,15, 24 14:3 15:6 16:8

**end** 43:9 79:7

**ending** 79:15

**engaging** 80:9

**enough** 9:24 36:12

**entirely** 78:25

**entirety** 27:6

**entitled** 54:25

**entity** 61:21

**equal** 57:16 59:10

**Eric** 5:16 6:17 88:6,19

**errata** 87:8,11, 13,17 88:17

**especially** 73:12

**essentially** 14:18,23 31:10 57:18 60:3 75:14,15,24 80:15

**evaluate** 68:25

**even** 59:11 72:16 73:24

**event** 60:15

**ever** 26:4 74:14 82:24

**every** 30:9,17 31:23 34:25 42:22 49:19 51:24 59:24,25 74:16

**everyone** 5:21 51:16,18,20 59:7

**everything** 35:7 40:2

**evident** 49:2

**exact** 32:11

**EXAMINATION** 6:24

**examine** 63:22 66:22

**examined** 6:21 68:19

**examining** 58:9 84:11

**except** 67:4 70:8 88:14

**exception** 30:18 68:10

**exceptions** 27:13,24 28:13 62:23

**executive** 11:25 12:9 14:4

**exemption** 30:9 31:23 32:24 34:8,25 39:16 43:23 48:9 50:13 52:20 56:19 60:20 61:5,10,12 62:9 63:23 64:20 76:16 78:10 81:14,23 84:4, 12

**exemptions** 28:17 30:25 32:7 33:11,12 35:13 47:5 53:18 61:25 64:16 68:20 70:21,23 71:3 75:3 85:11,22

**exhibit** 10:2,4 25:2,4 38:2,3,5 45:19,21 65:25 66:7 80:21 81:11,13 82:17, 19

**exist** 35:9

**expansive** 57:23 58:4 59:11

**expeditious** 37:18

**experience** 75:2,9 79:13

**experts** 73:4

**explain** 40:9 44:21 62:20

**explanation** 53:4

**explicit** 22:6,10

**explicitly** 21:24

**extensively** 58:25

**extent** 27:22

**extreme** 73:14

**F**

**fact** 33:8 36:19 73:21 75:25

**factors** 52:14

**fail** 87:20

**Failing** 79:25

**faith** 44:20

**fall** 72:8

**far** 57:21 58:4 59:4 70:21 74:2, 3

**fast** 38:16

**February** 13:18

**federal** 16:25 58:2 73:2

**felt** 37:15

**fide** 71:14

**file** 77:9

**finalized** 47:14

**find** 56:8

**finding** 77:9

**fine** 5:2 9:24

**Firm** 6:7

**first** 6:18 14:24 20:3,16 21:3 22:9 27:9 45:19

67:5 68:14

**fiscal** 12:15

**five** 80:24

**five-minute** 80:20

**flexibility** 70:12

**flow** 42:25

**focus** 15:8 16:25 77:13

**focused** 59:13

**follows** 6:22

**form** 83:18,20, 24 88:15

**formally** 12:24

**formulating** 24:16

**forth** 56:4

**foul** 71:11

**found** 28:24

**four** 67:5

**fourth** 27:10

**frequently** 52:9

**fresh** 17:15

**from** 6:7 15:3,12 19:22 23:5 24:7, 9 25:15,24 27:15 28:17 30:2 32:9,22,24 34:16 35:2 37:24 39:24 42:24 43:23 45:4 46:7 47:17 51:18,20 52:11 59:6 60:20 61:25 63:3,19, 24 64:19 66:23 69:2 72:3,6 76:20 79:13 80:9

**front** 7:25 8:4

**front-facing** 51:19

**functions** 51:18

**G**

**general** 18:18 30:8 67:12

**generally** 16:24 39:19,21,23 51:25 52:11 62:2 70:6 79:20

**generate** 42:24

**generated** 47:9

**gestures** 7:8

**get** 58:20 61:5 77:25

**getting** 65:19

**Giulia** 39:3

**give** 9:19 29:11 45:10 55:17 80:23

**given** 29:19 42:9 48:8 49:8 76:9 88:13

**giving** 29:7

**Go** 59:23

**going** 7:5 9:10, 17 14:11 22:22 24:25 25:2 26:25 27:7 28:12 31:23 33:19 35:6 36:7 37:25 38:3,15 44:14 45:19 64:3,9,24 65:24 68:3 77:21 80:20 81:10 82:16

**Good** 7:2

**got** 56:2 85:16

**governed** 18:11 78:21 79:23

**government** 37:20

**governs** 79:22

**Graff** 5:2,6,10, 12 6:6,25 7:3 9:20,25 10:8 19:15,25 20:9 21:2,9 23:8,20

24:15,24 25:14 26:3 27:8 28:14 30:6,15,23 31:19 32:4 33:7 34:4,22 35:10, 21 36:5,21 39:5 41:14 42:3 44:5, 15 45:17 46:16, 25 47:15,23 48:5 50:8 51:2,9 53:15 54:6,17 57:4,12 59:22 61:8,23 62:6,19 64:14 65:23 67:3,9 68:2 69:25 70:18 71:20 72:12 74:8 78:5 79:5, 12 80:19 81:6 82:5 83:22 84:22 85:20 86:6

**grant** 18:3,6,8,9, 13 28:16 34:7 39:15 48:8 50:12 52:19 53:2 59:18 60:12 61:9 78:10 85:10,18

**granted** 32:10 33:10,22 47:25 53:2 56:10,12 60:19 62:9,22 65:12 68:10 77:3

**granting** 49:5

**great** 63:16

**greater** 70:21

**ground** 63:8,17 76:24

**grounds** 53:13

**group** 31:20

**guess** 22:2

**guidance** 8:24 58:13,15

**guys** 81:2

**H**

**hadn't** 55:19

**Hand** 7:8

**handles** 12:4

**happen** 35:8
54:20

**happened** 61:6
69:13

**happening**
26:12

**happy** 10:18

**hardship** 49:24
50:7 51:15 53:9,
13 58:6 63:8,18
68:9 75:7 77:2,
13,25 78:9,16

**hardships**
70:24

**has** 14:21 16:23
27:2,11 30:7
42:23 49:4 75:4

**having** 6:18
26:23 69:16

**he** 27:3,5

**He's** 27:4

**head** 7:8 24:12

**health** 20:5,20
37:12 56:20
58:20 63:2,11,
13 65:14 69:7,
24 71:12 73:4,
16,19 74:5
75:18

**hearings** 35:25

**held** 23:16 44:25
45:2

**her** 8:18,19
24:11 36:7
38:20 46:7,11,
14,18 77:4,5,7,
9,10,12,13,16,
22 78:10

**here** 9:14,19
10:10 23:23
39:12 46:17,23
70:9 76:3 84:25

**hereby** 88:6

**Hey** 45:10

**high** 12:7 68:17

**higher** 14:20

**highly** 49:13

**his** 6:20 65:2,5

**holistically**
49:19

**hospitalization**
**s** 73:14 74:3

**how** 8:15 11:7
12:20 17:5,20
31:7,13 32:5,18
33:16,24 34:3,
14 36:8 37:5
42:14,15 43:21
47:16,24 49:15
54:18 61:24
62:12,13,16
82:3 84:17 85:3,
15,18 86:4

**human** 9:5
12:16 16:23
17:7,16 19:3
35:3 42:2 52:18,
25 53:6,10,16,
23,24 54:4 56:6
57:6,10,14,17,
19,22,24 58:5
59:2,11

**hundred** 63:20

**hybrid** 72:7

**I**

**I'D** 86:2

**I'LL** 5:10 7:17
9:25 44:13
65:24

**I'VE** 12:25 77:22
83:8,20 84:15

**idea** 66:17 75:8
76:14

**identification**
10:6 25:6 38:7
45:24 66:10
81:16 82:21

**identify** 44:19

**identities** 23:25

**imagine** 63:9
65:17

**impact** 17:20
82:12

**impasse** 25:5,
23 26:8 79:8,19,
24

**impasses** 79:16

**impede** 20:10

**imperative**
87:16

**implement** 37:5
80:3,5

**implementatio**
**n** 19:17 20:14,15
22:18 23:12
24:19 26:9
61:12,20 65:7
82:13

**implemented**
19:24 31:17
37:4 64:23
73:23

**implicit** 22:8

**important**
37:15 67:24

**in-person** 71:10
72:7

**include** 12:12
18:16

**including** 16:11
70:5

**inconsistent**
27:17

**independent**
26:11 31:11
45:12 46:24

**indicate** 26:15

**indication** 77:8

**individual**
32:22 48:18
49:23 67:12

**individuals**
24:2 75:22

**indoor** 76:6

**infirmities**
28:25 29:2

**information**
12:14 22:23

**55:5,18,23 64:4
67:21 69:9 73:5

**initial** 28:21
34:7 50:12
81:21

**initially** 85:23

**ins** 31:13

**insisting** 27:12,
24

**instead** 15:7

**Institute** 16:17

**instruction**
71:10

**INSTRUCTION**
**S** 87:2

**insufficient**
68:16

**insuring** 71:7

**interacting**
52:8

**interactive**
53:17,25

**internal** 12:11
37:6 43:5

**internally** 12:9
16:15 42:17

**interprets**
53:24

**interruptions**
5:25

**into** 65:19

**involve** 55:16

**involved** 24:7,
14,16 31:14
55:21

**involving** 17:12

**isn't** 43:19 71:14

**isolated** 52:11

**issue** 49:24 50:2
58:17

**issued** 20:4
21:17 27:19
34:14 69:6,10
80:4 82:7,10
84:7

**issues** 12:5,8
15:23 16:17,18,
19 20:20,25
21:6 76:12

**iteration** 20:3,
16,18,22 21:10

**its** 20:16 27:6

**itself** 15:11

**J**

**January** 15:21

**job** 13:4,13,21
51:17 64:10
80:10,11

**judge** 60:4

**just** 9:10,13,18,
21 12:19 14:11
17:14 20:11
22:14 25:18
28:11 29:11
33:25 39:25
76:21 80:21
81:7 83:7,9,14

**K**

**Karen** 24:13

**Kathleen** 6:10
8:13

**keep** 68:25
80:11

**kind** 55:10

**know** 7:13 9:22
10:18,22 16:22
23:21,25 24:6,
11 25:8 27:3
31:6,12 32:5,8,
9,12,17,18,19
35:7,19,22 36:4,
6,8,10,14,20
37:17 38:2,15
41:4 42:18
43:17,21 44:3,7,
8 46:2,17 47:14,
16,24 49:17,25
50:6,20,21,22
51:24 52:2,11
54:7 56:21,22,
23,25 59:24
60:25 61:2

62:24,25 63:3,
19 64:10 66:15
67:10,24 71:18,
21 72:7,20
74:12 75:15,20,
23 76:2,9,11
77:22 79:21
80:3 81:8 82:10
83:13,16 85:3
86:4

**knowing** 33:5
45:6

**knowledge**
10:20 27:22
28:5 32:21
59:13 85:14

———— L ————

**label** 44:20

**labeled** 66:12

**labor** 12:2,4
13:14 14:3
23:19 24:8,12
31:11 34:18,20
38:22 83:19
84:19,20 85:6

**laid** 63:13

**language** 22:6

**large** 51:23 71:2

**larger** 9:21

**last** 74:25

**late** 12:23

**later** 23:23

**law** 6:7 8:9 9:5
11:13,16 12:2,4,
8,10 13:15,24
14:3 15:6,10
16:8,15,17,21,
23 17:7,17,20
18:5 19:3 22:2
35:4 36:15
41:23 50:21,24
52:18,25 53:6,
11,16,24 54:4
56:6 57:6,15,17,
20,22,24 58:5
59:2,12 65:4,6
70:3 74:15
79:21,23 80:15

**laws** 9:2 16:11
17:2 63:10

**lawyer** 65:18

**layers** 56:3

**Lazar** 5:14 6:19

**learning** 71:22

**least** 32:8,13
33:23 67:18,20

**left** 61:13

**legal** 12:5 13:23
18:2 37:6 58:24
65:16,22 78:24,
25

**legislature**
80:12

**less** 57:16 58:4
73:25 74:2,3

**lesser** 69:14

**let** 7:13 9:21
25:8 38:2,15
46:2 81:7

**Let's** 39:21

**letter** 38:17

**letters** 25:20

**letting** 64:10

**level** 12:2,7,10
14:21 24:14

**licensed** 15:16

**like** 5:8 12:15,17
13:22 14:2
25:18 32:20
36:19 38:19
39:11 60:3
66:19 67:23
72:17 73:12
78:17,24 80:10
82:25 83:17
84:6

**likely** 36:20

**limit** 70:6

**limited** 70:8

**line** 14:23 27:10

**lines** 67:5

**Linnane** 5:7,11
6:10,11 8:13

9:13,17,23
14:11 17:23
19:7,11,20 20:6,
21 21:8,12
22:12,21 24:5,
21 25:11,17
26:19 28:6,19
30:12,20 31:4,
25 33:3,13 34:9
35:5,16 36:2,16
38:24 41:8,18
43:25 44:10
46:12,19 47:6,
19 48:2,10
50:14 51:6
52:22 53:20
54:12 56:13
57:8 59:19
60:23 61:16
62:3,10 64:2,24
66:24 67:6,14
68:21 70:14
71:16,24 72:24
77:19 78:13
79:10,17 81:3,
24 83:5 84:13
85:12,25 86:10

**list** 10:14

**litigation** 8:22
12:6,13 13:7
14:6

**local** 16:21 73:3
79:21

**located** 8:7,8
9:5

**location** 67:23

**lodged** 19:11

**long** 7:13 11:7
12:20

**look** 48:17 49:18
50:2 51:11
52:14,15 74:14

**looking** 26:13,
21 73:4,5

**looks** 38:19
39:10 66:18

**Lorraine** 5:18
6:9 7:4

**lot** 44:15,18

**low** 75:22

———— M ————

**M-I-L-L-E-R**
39:4

**made** 22:6 34:6
37:11 42:19
61:21 69:23
77:9 81:21 87:9

**magic** 48:14,16

**majority** 60:11,
13

**make** 7:7 9:18,
20 17:11,14
21:18 31:12
78:12 83:13
84:20 87:5

**makers** 37:14

**making** 19:4
26:22 37:19
59:14 65:10
73:6

**managed** 47:10

**management**
15:9 34:21

**managing**
11:20,21,23
12:21 13:3 14:9,
20 15:14 42:25
65:3

**mandate** 17:21
19:6,18,23 20:4,
15,23 21:4,11,
15 22:19 23:12
24:20 26:10
27:13,19,25
28:13,18 29:10,
15 32:25 34:16,
17 37:4 48:22,
25 49:13 51:5
52:13 54:11
56:20 64:21
69:5,10,21
71:12 73:8
74:11 82:14

**mandates**
73:23

**manner** 57:2

**many** 16:4 32:5,
19 43:21 44:24
47:16,25 60:5

61:24 62:13
64:12 70:24

**mark** 9:25 25:2
38:3 45:19
81:10

**marked** 10:6
25:6 38:7 45:24
65:25 66:9
81:16 82:17,21

**Martin** 6:13

**Marty** 82:7

**Masciarelli**
5:18 6:9 7:5
39:22 40:20,21,
24 41:17 46:10

**Masciarelli's**
8:17 38:18
39:20 40:22
41:2,6 42:20
46:6

**masking** 72:17

**matches** 63:18

**material** 40:5,8

**materials** 55:6,
8

**Matter** 5:17

**matters** 13:24

**may** 65:16 74:7,
23 87:21,22

**me** 7:13,20,21
9:10,19,22 15:2
25:8 26:14 38:2,
15 39:19 44:14
46:2 64:10
76:21 80:24
81:8 88:13,22

**mean** 56:8 72:4

**meant** 69:14

**measures**
68:15,19 69:15

**mechanics**
82:3 84:17
85:15

**mediation** 31:3
35:15 79:25
84:2

**medical** 20:25

21:6 27:13,25
70:22

**meet** 53:10

**meeting** 23:21

**member** 43:7
46:14 59:16
64:17 65:15

**members** 42:15
43:8 45:2 46:18
48:8 58:8,12,18,
23

**met** 31:22

**microphone**
5:22

**Miller** 39:4

**mind** 17:15

**minimal** 5:25
67:19

**minutes** 80:24

**mission** 51:21

**mitigate** 73:18

**mitigation**
68:15,18 69:15

**mixed** 25:25

**moments** 76:22

**more** 15:8 18:21
56:8 57:23 59:4,
10,13 70:19
78:24

**morning** 7:2

**moved** 76:10

**Mr** 5:2,6,10,12
6:6,25 7:2 9:20,
25 10:8 19:15,
25 20:9 21:2,9
23:8,20 24:15,
24 25:14 26:3,4
27:8 28:14 30:6,
15,23 31:19
32:4 33:7 34:4,
22 35:10,21
36:5,21 39:5
41:14 42:3 44:5,
15 45:17 46:16,
25 47:15,23
48:5 50:8 51:2,9
53:15 54:6,17
57:4,12 59:22

61:8,23 62:6,19
64:14 65:23
67:3,9 68:2
69:25 70:18
71:20 72:12
74:8 78:5 79:5,
12 80:19 81:6
82:5 83:22
84:22 85:20
86:6,8

**Ms** 5:7,11 6:10,
13 8:17 9:13,17,
23 14:11 17:23
19:7,11,20 20:6,
21 21:8,12
22:12,21 24:5,
21 25:11,17
26:19 28:6,19
30:12,20 31:4,
25 33:3,13 34:9
35:5,16 36:2,16
38:18,24 39:20,
22 40:20,21,22,
24 41:2,6,8,17,
18 42:20 43:25
44:10 46:6,10,
12,19 47:6,19
48:2,10 50:14
51:6 52:22
53:20 54:12
56:13 57:8
59:19 60:23
61:16 62:3,10
64:2,24 66:24
67:6,14 68:21
70:14 71:16,24
72:24 77:19
78:13 79:10,17
81:3,24 83:5
84:13 85:12,25
86:10

**much** 13:22
51:19

**multiple** 42:10,
21 56:3

**must** 51:11

**mutual** 33:21
34:18

**my** 5:13,25 7:3
9:21 10:12,20,
22 14:19 15:4,8
17:15 26:23
27:2,17,19,22
31:7 32:9,13
33:16,17,23

34:3,11 46:7
47:21 63:3
65:13,15 67:17
68:23 69:5,21
73:18,20 75:11
76:13 78:2,3
84:5,18 88:7,12

**myself** 16:14

_____

**N**

**name** 5:13 6:3
7:3 36:7,11,20
41:4 43:2

**names** 46:21

**necessarily**
18:23 44:20
68:24

**necessary** 71:8
87:5

**necessity**
54:22,23

**need** 7:12 43:16
51:23,25 67:16
77:24

**needed** 37:10
63:12,15 76:4

**needs** 27:5

**negotiate** 70:11

**negotiating**
22:17 23:6,11

**negotiation**
27:21 31:9
79:16

**negotiations**
24:3 26:8 79:8

**neutral** 80:17

**never** 27:4
31:15 45:3
60:17

**new** 5:18 6:20,
21 8:8,9,10 9:4
11:6,8,11,13
15:10,17 16:9,
22 17:6 18:16,
25 19:3,18
22:19 23:18
24:8,17 29:10
30:10,18 31:21

32:5,22 33:9
34:24 35:3,22
36:15,24 39:16
43:21 50:10
51:3 52:17 54:8
57:5,10,14
58:16 60:6 65:4,
5 66:8 71:9
73:13 74:10,15,
20 81:20 88:3

**next** 38:2

**nine** 62:8

**no** 7:14 8:5
20:19,22 21:14
23:24 24:23
25:16 26:11
27:12,24 28:9,
11,13,22 30:14
33:5 34:6 38:11
43:18 45:6,12
46:15 47:2 48:4,
15 49:17 57:20,
21 62:5 66:17
70:16 77:8 78:8,
15 79:11 86:6

**nods** 7:8

**Nor** 78:3

**not** 10:17,19,24
14:12 18:22
20:10,23 22:14,
23 23:14,24
24:23 26:6,11
27:3 28:10
30:22 31:14
32:3 33:23 34:2,
19 35:6,8 36:4,
10,18,19,20
38:25 40:7,11
44:3,17,20 45:7,
9,14 46:14,23
48:13 49:3 50:5
51:8,16,18,20
52:4 53:4,25
56:11,16 60:25
61:5 62:12,14,
16 63:20 64:4,
25 69:15 70:9,
16 71:13 73:19
74:4,12,22,24
75:24 77:11,21,
22 82:2 83:14,
17 84:16,25
85:4,14,16 86:4

**Notary** 6:19

88:25

**noted** 86:13
87:13 88:16

**notes** 43:5

**nothing** 77:6

**notice** 5:5,6 9:8
10:5,9

**November**
12:23

**now** 8:12 13:22
14:2 39:2 40:18
80:24

**number** 32:12
44:3 70:22 71:3
76:9

**nuts** 55:12

_____

**O**

**oath** 88:8,12

**objection** 17:23
19:7,12,20 20:6,
21 21:8,12
22:12,21 23:13
24:5,21 28:6,19
30:12,20 31:4,
25 33:3,13 34:9
35:5,16 36:2,16
41:8,18 43:25
44:10 46:12,19
47:6,19 48:2,10
50:14 51:6
52:22 53:20
54:12 56:13
57:8 59:19
60:23 61:16
62:3,10 64:2
66:24 67:6,14
68:21 70:14
71:16,24 72:24
77:19 78:13
79:10,17 81:24
83:5 84:13
85:12,25

**objections**
43:13 71:14

**obligations**
37:6,7

**obviously** 15:3
16:5 17:25
26:13 52:24

58:16 64:11
78:24

**occurred** 78:9

**October** 13:10,
20

**offhand** 44:4
82:10

**Office** 23:18
24:8

**office-wide**
14:22

**offices** 75:18

**officials** 13:25

**offsite** 75:15

**oh** 9:15 48:14
49:17

**Okay** 11:2 22:16
24:25 37:25
38:9 39:23 62:7
66:14 81:9,10
82:16 86:6

**on** 9:11,21 13:23
15:8 16:7,10,12,
17,25 17:13
21:19 25:8,12,
22 26:16 28:7
31:15 32:9 35:6
37:5,9 38:11
42:2,13,15
43:10,16,20
46:2,4 48:7
49:8,13 53:7,12,
22 55:15 58:15,
21 59:5,14 60:5
61:3 63:8,17,24
68:6 69:8,11
72:13 73:8
74:25 76:24
77:13,21 80:11
81:8,19 84:21
87:7,13 88:8,13

**one** 9:19 10:19
27:9 37:15 39:8
41:10 51:10
54:25 56:9
58:11 66:19
70:23 80:21

**ones** 66:22

**ongoing** 23:7

**only** 30:24,25

60:16 62:7,21
65:10 75:4

**open** 72:10

**operation** 70:5

**operational**
12:11

**operations**
12:11,14 15:9

**opportunity**
27:5 29:20
85:17

**opposed** 56:10

**option** 80:14

**order** 5:5 75:19

**orders** 65:14

**ordinary** 79:3

**organized**
42:16

**original** 21:15
87:17

**other** 8:21 15:7
16:7 17:25 18:4
37:17,20 45:2
66:23 68:13,14,
24 72:17 74:9,
22 78:4 86:7

**others** 59:4
72:20 84:8

**otherwise**
27:14 28:2
80:23

**our** 34:14 42:25
67:25 75:2

**out** 10:21 47:24
60:13 62:8,21
63:13 67:10
69:19 73:22
74:17 83:10

**outcome** 27:20

**outs** 31:13

**outside** 33:19
76:10

**over** 16:5 22:17
26:9 29:25
82:13 83:9,14
87:4

**overall** 15:9
50:4

**oversaw** 14:2,5

**oversee** 11:25
12:9

**overseeing**
15:7

**own** 43:5

___

**P**

**P-R-Z-Y-G-O-C-
K-I** 36:9

**page** 25:21
26:16 67:5 68:4
72:14 75:2

**pandemic**
58:14 65:14
69:12 74:6

**panel** 29:8,11,
12,21 32:10
33:2 36:25 37:2,
23 38:6 39:15
40:13,23 41:7,
12 42:12,15,23
43:8,10,24
46:11,15,18
48:8 51:11
52:21 55:15,18
57:7 58:8,12,18,
23 59:14,16
60:11,12,21
61:4,9 63:25
64:17,22 65:8,
16 66:5,20
72:10 76:23

**panel's** 47:10

**papers** 8:22

**paperwork** 8:2
45:16 77:23

**paragraph** 27:9
70:2 72:13
74:25 75:12

**parameters**
18:2

**paraprofession
als** 52:7

**part** 18:11 31:10
79:6

**participate** 46:9

**particular** 11:10
17:16 31:13
50:3 55:18 71:4,
5 73:9,11 75:12
84:17 85:15

**particularly**
49:9 58:6 59:5
63:5 68:16

**parties** 5:15
56:4 80:16

**parts** 18:5,7

**pedagogical**
30:2 75:17

**pedagogues**
79:22

**pending** 7:14

**people** 24:7
30:25 33:11
42:22 54:10
61:24 62:21,22
70:25 76:10
83:12

**perfect** 81:4

**performed**
54:8,19

**performing**
51:17

**perhaps** 29:2

**person** 41:5,10
45:13 49:19
60:19

**person's** 45:14
51:22

**personnel**
12:16 63:15

**phrase** 48:16

**physical** 22:7

**physically** 76:5

**place** 8:24 73:12
75:19

**plaintiff** 6:8 7:4
40:14 68:11
76:15 77:2
78:12

**plaintiff's** 10:4
25:4 38:5 45:21

66:7 81:13,22
82:19

**play** 19:16 20:2,
13 22:17 28:15

**played** 28:21

**please** 5:21 6:2
7:7,13,20 26:20
87:4,10

**plus** 16:6 30:2
63:20

**point** 7:13
10:18,21 29:24,
25 61:6 76:2
77:10,15 78:17
85:2

**policies** 59:3

**policy** 13:7 22:5
37:7,8,9,14
50:20,23,25
51:4 59:9 80:8

**policy-** 78:25

**population**
69:3 74:21

**populations**
73:11,15

**portfolio** 15:4,6

**portions** 8:23

**poses** 75:6

**position** 13:9,
17 14:9,21
15:12 24:18
26:17 28:4
40:16 41:3
51:20,21 63:6
66:4,8 67:11
76:22

**positive** 18:4

**possible** 5:24
28:3

**practice** 15:20
49:16

**Practicing**
16:17

**pre-** 85:17

**precise** 18:21
39:12 73:8 82:3

**precisely** 34:11

**preliminary** 23:16

**preparation** 39:7

**prepare** 8:15

**prepared** 10:15 17:6

**prescriptive** 18:6

**present** 5:15 50:6 72:18 76:5

**presented** 16:14 40:13 45:4 49:4 78:23

**presenting** 17:4 76:3

**presumably** 36:11

**previously** 35:18 58:25 60:2 84:15

**primarily** 69:19 79:22

**primary** 29:9

**prior** 29:13,14

**privilege** 14:16 20:11 23:3 64:8

**privileged** 14:14 22:25 64:6

**privileges** 43:12

**procedures** 59:3

**proceed** 56:25

**proceeding** 80:2

**proceeds** 57:2

**process** 23:6,7 28:21 29:3 31:3, 7,10,14,16 32:17 33:17 35:12,19,20 37:21 40:22 50:9 53:17 54:2 55:2,11,20 59:8

73:21 77:10,16 79:7 82:3 85:4 86:5

**processed** 34:15

**productivity** 75:21

**professed** 44:24

**professionals** 58:24

**prohibited** 80:9

**promotion** 15:14

**promulgated** 19:24 21:4 29:16

**pronounce** 36:8

**proscriptive** 18:5

**protection** 68:16

**provide** 5:10,23 20:24 40:6,8 53:4 55:3,7 62:18 63:14 68:15

**provided** 17:25 58:7,12 65:16 67:22 83:12 85:7

**provides** 50:23, 25 54:4

**providing** 13:23 50:5 52:7,10 55:22 75:3

**provisions** 9:3 17:16

**public** 6:19 37:12 56:20 58:20 63:2,11, 13 71:11 73:4, 16 74:5 75:18 80:7 88:25

**pull** 80:22

**purchase** 5:8

**pure** 28:9

**purely** 72:6 78:25

**purposes** 43:6

**pursuant** 5:4 9:8 10:10 14:14 22:25 33:18 50:18 64:6

**put** 47:12 67:10

**Q**

**qualify** 77:12

**quality** 43:9,11

**question** 7:14, 17,20 33:15 34:2 70:17 83:6

**questions** 7:6 49:6,7 65:2 86:7

**R**

**RA** 17:13 37:8 59:8

**raise** 78:16

**raised** 48:25 52:15

**raising** 49:25

**rates** 68:17

**reach** 10:18 16:24

**read** 7:22 26:24 46:21 77:22 87:4 88:7

**reading** 27:15

**ready** 47:13

**reason** 74:14 80:6 87:7

**reasonable** 8:20 16:12,19 17:13,18,21 18:10,14 20:24 32:16 36:25 37:9 38:21 41:21 42:11 45:22 48:12 53:6 56:17

64:12 77:3,5 83:10 84:21 85:5

**reasons** 55:23 76:19 80:9

**recall** 26:6 63:19 67:8 72:2 84:16

**receipt** 87:19

**receive** 39:24 45:9 62:14

**received** 29:24 30:25 32:7,15, 24 43:23 55:15 61:25 76:19

**recess** 81:5

**recognize** 38:10 66:2

**recollection** 26:12 40:12 43:6 46:24 47:21 84:18

**record** 25:18,19 49:2 88:10,13

**records** 83:9

**refer** 43:20 61:10

**referred** 78:19

**refused** 27:12, 23

**regard** 63:7

**regarding** 8:2, 25 15:23 16:18, 20 17:17 19:5 26:18 34:14 38:20 40:14,21 42:19 53:18 58:8,13 64:21 66:23 67:13 68:20 78:12 81:22

**regularly** 16:10 24:7

**related** 8:3 12:5 16:8

**relating** 24:19 79:15

**relations** 23:19 24:9,12 34:20

**releasing** 43:13

**relevant** 83:14

**religion** 45:11

**religions** 45:3

**religious** 8:19 15:23 17:17 19:5 20:20,25 21:6 22:4 27:14, 25 28:17 30:9, 17 31:23 32:7, 15 33:10,12 38:20 39:16 41:21 42:11 43:23 44:22 47:4 49:11 52:20 53:18,19 54:10 60:20 62:22 63:23 64:16,20 68:9 70:21 71:14 76:15 77:6,7,11, 16 81:14,23 84:3 85:22

**relying** 85:9

**remain** 72:15

**remained** 75:19

**remediate** 29:6, 23

**remember** 39:10,25 40:15, 24 60:6

**remote** 72:6

**remotely** 5:15 71:22

**repeat** 7:21

**rephrase** 7:21

**report** 42:23

**reporter** 5:4,7, 13,14 7:9,22 19:10 60:18

**represent** 6:3

**representative** 43:3,4

**representative's** 43:3

**representatives** 42:5

**represented** 24:2 35:23

**representing** 6:8

**request** 8:20 18:14 35:2 55:4,9 81:22

**requested** 19:10 60:18 70:20 71:3

**requesting** 54:24

**requests** 17:22 18:3 33:18 34:15 56:18 63:4,22,23 64:13,16,21 70:22,25 71:5 79:2

**require** 53:17 54:5

**required** 21:25 40:7 52:25 78:20

**requirements** 53:5 56:5

**requires** 16:9 50:21,24 80:15

**resolved** 82:12

**resolves** 80:17

**resources** 12:16

**respect** 20:13 29:17 41:16,21 49:10 55:12,14 65:2,13

**response** 47:3,8

**responses** 7:7

**responsibilities** 11:24 14:19

**responsibility** 14:22

**result** 51:5

**retaliation**

16:20

**return** 71:10 87:16

**returning** 72:11

**reverse** 60:4

**reversing** 61:19

**review** 17:9 27:6 29:8 42:10 43:9,11 46:7 47:11 55:10 63:3 64:20 67:25

**reviewed** 8:17, 21,23 9:2,3 17:6 29:20 39:6,9 41:5 46:22 47:13 54:15 56:21 63:21 64:12,15 67:17

**reviewing** 61:3 71:5,19 83:16,17

**revision** 21:14, 22,23

**right** 8:12 18:21 39:2 51:16 57:20 61:15 80:24

**rights** 9:5 16:23 17:7,17 19:3 35:4 42:2 52:18, 25 53:6,10,16, 23,24 54:4 56:6 57:6,10,15,17, 20,22,24 58:5 59:2,12

**ring** 36:12

**risk** 72:19 73:16

**role** 19:16 20:2, 8,12 22:16 24:11 28:15,22 29:9 36:24 52:17 57:5 59:6 63:24 65:3,5,15 67:22

**room** 8:11

**rotate** 42:7

**rotation** 42:14

**rotational** 42:13

**roughly** 16:5 47:21

**rule** 74:16

**rules** 74:18

**running** 71:11

———

**S**

**safeguards** 72:17

**safely** 63:14

**said** 19:13 34:12 35:18 36:19,22 39:6 45:15 50:18 51:10 55:11 62:12 66:18 67:19 78:18 82:2 84:15 85:21 88:11

**same** 15:6 20:8 50:9 51:17 53:11 58:2,3 87:12

**SAMS** 78:7,18

**satisfy** 53:5

**saw** 15:3 40:2 59:25 73:23 83:8

**say** 9:3 11:21 18:19,20 22:3 23:4 28:8 33:21, 25 34:19 43:18 44:13,16 48:14, 17 50:16 52:5 65:9 74:13 77:24 80:12 86:3

**saying** 21:4 22:8,14 45:9,12 48:18 49:14,20 51:14 76:8

**says** 25:20 68:14 70:3,19

**Scheinman** 31:2 35:14 82:8 83:25 84:8

**Scher** 6:7

**school** 52:3,6

**roughly** 16:5 47:21

**rule** 74:16

71:23 72:11,16, 19 74:10,17,19, 22

**schools** 70:8 72:10 76:11,12

**science** 72:21, 23

**scope** 10:20 14:19 57:19 64:10

**scores** 73:3

**screen** 9:11 25:9,22 46:3,4 68:6 81:8

**scroll** 38:13

**second** 9:19 21:10 22:10 28:24 29:21 68:3 70:2 72:13 74:25

**section** 17:7,10 19:3 35:4

**see** 9:11,14 13:23 25:8 26:2 27:14,16 38:2,9, 14 46:2,4 49:20 62:12 68:5,11 77:8 79:2 81:8,9

**seeing** 25:22 48:23

**seeking** 49:21

**seems** 74:17

**seen** 26:5 27:4 73:13 82:24 83:3,8,20

**seniority** 70:6

**separate** 63:24 64:19

**September** 11:9,17

**series** 7:6

**Service** 31:3 35:15 84:2

**services** 41:25 63:14,16

**serving** 12:25 62:17

**set** 29:13 58:15 74:18 86:11

**setting** 29:9

**settings** 72:16

**several** 32:11

**severe** 74:2

**she** 77:25

**she's** 36:14

**sheet** 87:8,11, 14,17 88:17

**should** 9:2 18:20 40:18 50:11,16 52:5 56:11 61:5 65:12,21 86:3 87:6

**shouldn't** 50:17

**show** 24:25 37:25 43:2 65:24 68:3 80:22 81:7 82:17

**showed** 76:21

**showing** 26:14

**side** 9:21

**sign** 87:10

**Signed** 88:21

**significantly** 73:17

**signing** 87:12

**similar** 66:22 67:4

**Similarly** 49:9

**since** 11:9,16 12:22 13:2 56:23

**sincerely** 44:25

**sincerely-held** 49:11

**sit** 23:23 39:12 46:17,23 84:25

**situation** 63:10

**slightly** 15:5

**solicited** 55:6

**Solimando** 24:13

**solution** 56:9

**some** 8:21,23 10:16,17 29:25 32:8,12,15,18 37:19 39:24 40:4,5,25 55:10 58:21 59:3 67:18 74:23 83:11 85:2

**someone** 44:17 45:5 52:10

**something** 5:5 29:25 39:11

**sometimes** 40:10,11 59:10

**sorry** 9:4 59:23 64:15

**sort** 39:24 40:4, 25 74:4 78:21

**sought** 54:10 70:11,25

**space** 87:7

**spaces** 69:4 76:6

**speaking** 49:3 54:15

**specific** 17:9 24:11 31:6 51:24 56:18 58:21 67:20,21 72:2 78:19

**specifically** 41:20 42:14 44:21

**specifics** 31:16

**speculate** 35:6 77:21

**speculating** 86:2

**speculation** 28:9

**speed** 58:21

**spell** 36:7

**spelled** 69:19

**spike** 73:14

**square** 33:16

**SS** 88:4

**staff** 70:7,13,20 71:13 72:19 75:17 76:5

**staffing** 76:4,12

**stage** 78:3

**stamps** 25:12, 24

**standard** 47:3 53:10

**standards** 52:18 57:6

**started** 12:22

**state** 6:2 9:4 16:21 57:5,10, 14,22 70:3 73:2 74:10,15 79:4, 21,23 80:13 87:6 88:3

**stated** 21:24 27:3

**statement** 21:24 26:22 27:17 40:16 41:3 48:16 66:4, 9 67:11,13 75:12 76:22

**states** 28:23 76:3

**stating** 6:19 25:23

**statistic** 62:13, 16

**statistics** 62:25

**statutory** 28:25

**stay** 5:22

**Steven** 24:9

**still** 15:5

**stop** 7:20

**Street** 6:20 8:9

**strike** 48:6

**strikes** 80:10

**students** 71:21

**subject** 15:8 87:12

**subjects** 10:15

**submission** 39:24 40:4,25 45:11

**submitted** 30:10,18 40:16 41:2 66:4,19

**subscribed** 88:21

**subsequently** 29:15

**substance** 65:19 88:16

**such** 47:14 62:15 72:15 75:5

**sufficient** 53:9

**suggests** 35:8 36:20

**support** 12:13 52:8,10

**supporting** 55:6,8

**supposed** 48:14,15,17,19

**sure** 10:21,22 17:11,15 21:18 36:10 38:15 44:13 45:13 59:14

**swear** 6:4

**sworn** 6:18

**system** 44:22 49:15,16

**systems** 70:6

───────────

**T**

**table** 23:9,15 28:5

**take** 5:16 7:12, 15 60:11 80:20

**taken** 7:9 16:6 81:5 88:8

**talk** 26:25 27:7 39:21,22 68:8

**talking** 21:19 39:2 40:17,19 80:13 82:6

**talks** 68:13 72:14 75:2

**tasked** 37:21

**teacher** 52:3

**teachers** 28:17 29:7,18 71:8

**technology** 12:14

**tell** 9:10 23:24 27:16 28:11 39:11 43:7,10 55:11 84:9 85:2

**term** 53:25 54:2

**terms** 58:5

**testified** 6:22

**testimony** 10:15 88:8,12

**testing** 72:18

**than** 16:24 17:25 50:20 57:17,23 58:4 59:4,11 68:24 70:20,21 78:4

**Thank** 5:11 81:4 86:9

**that's** 9:24 12:18 17:18 26:14 27:21 34:2 37:23 47:2 53:13 56:20 62:15 76:7,13 81:3 85:3

**their** 6:3 40:9 43:5 44:20,22 45:15 48:19 49:15,16 50:20 55:23 59:6

**them** 5:3 44:8 67:16,17 78:19 80:11

**themselves** 42:16 77:11

**then** 6:4 22:9 23:4 39:21 49:18,22 53:11 55:7,10,21 61:11,20 82:16

**there** 8:11 9:15 10:14 11:10 18:22 20:19,22 21:5,10,14 25:11 27:12,24 30:16 31:8,9 32:14,18 34:23 37:4,13,16,17 40:15 41:10,12 42:18,22 43:7, 12,17,19 44:6, 18,23 49:10,17, 23 53:9 55:10 56:3 58:7,10 60:15,16 63:16 67:18,20,21 68:4,13 70:24 71:2,6 72:20 73:2,9,11,16,24, 25 74:14 75:14 76:11 78:8,15 79:19,24,25 80:12 82:9 84:8, 18 85:17

**there's** 7:14 57:20,21

**these** 25:12 42:4,5 56:17 58:9 63:10 68:8 71:5 72:8

**they** 6:3 24:13 34:17 40:5 45:9, 15 49:15,20,21 50:16,18 52:2,3, 7,8,9,15 53:22 54:2,24,25 55:16,19,24,25 59:6,12 61:5 67:4 68:25 69:20 74:13 76:2,4,10,11 80:14

**they're** 76:8

**thing** 53:11 56:19 58:2,3 73:8

**things** 12:15,17 37:13 51:10 58:11 67:23

78:20

**think** 43:15
56:22 69:19
76:7,19 80:23

**thinking** 64:11

**third** 14:23
70:19

**thirty** 87:18

**those** 17:2 29:6
33:18 35:24
43:13 48:20,23
49:6,7,13 52:12
55:8 62:25
63:15 65:14
69:18,22 75:22

**three** 27:10
41:11,13,15,22
42:4,5 60:14,16
68:4

**through** 31:2,17
32:16 35:14
43:14 73:20
75:13

**tie** 60:17

**tight** 58:19

**time** 14:4 19:22
21:3 23:5 27:23
28:11 54:14
56:2 58:16
65:10 69:3,10
71:4 75:10 83:9,
15 86:8,13

**timeframe**
58:19

**timeline** 28:8
72:3

**times** 18:22

**title** 11:19 12:21
13:4,13 15:23
16:12,18 58:3

**today** 7:6 9:7
10:11 17:6
39:12 46:23

**today's** 8:15
39:7

**too** 5:3 9:21
38:16 70:24

**took** 28:4

**top** 25:21 67:5,
19 68:5

**topics** 10:16,19
16:8

**Torrey** 82:20

**tough** 44:12,16

**trained** 16:10,
12,14 17:3
58:25

**training** 15:22
16:2,4 17:2,4
58:7 59:4,7

**transcript** 5:24
87:20,21 88:7,9

**transfer** 70:7,12

**transmission**
68:17

**true** 56:17 85:24
88:10,14

**try** 56:8

**trying** 20:10,12

**turn** 55:3

**two** 24:6 27:10
37:13 43:8 56:4
58:11 60:13
80:16

**type** 16:2 83:24

**types** 16:4

**typical** 85:5

---

**U**

**UFT** 22:17
23:10,18 24:4
26:7 29:4 79:9,
15

**Uh-hum** 17:8
82:23

**ultimate** 27:20

**ultimately**
29:18 31:17
37:14,22 41:5
60:10

**unacceptable**
72:18

**unanimous**

60:12

**unanimously**
76:23

**unaware** 27:22

**under** 22:3,4
63:12 78:19
79:20 82:4 88:8,
12

**understand**
7:10,15,19,23
28:12 29:19
49:21 51:22,25
55:5 56:22
57:15,21 62:16
65:18 76:8
78:17 79:20
80:7 83:18
84:16

**understanding**
10:12 27:18,20
31:8 32:14
33:16,17,23
34:3,5,11 59:8,9
67:17 69:5,11,
22 73:18,20
75:11 76:13
84:5,10,24 85:8

**understood**
7:18 17:12
34:13 59:14
71:6 83:15 85:2

**undue** 49:4,23
50:7 51:15 53:9,
13 58:6 63:8,17
68:8 70:23 75:6
77:2,13,25 78:9,
16

**unemployment**
12:8

**uniformity**
37:16

**unions** 70:11

**unique** 36:12
37:11 74:20,21

**United** 28:23

**universally**
56:16

**unless** 45:14

**unvaccinated**
72:16 73:15

**up** 25:25 29:9,13
58:20 61:6
80:22

**upon** 77:5 85:9

**use** 39:15 53:25
54:2 74:22

**used** 83:20,25
87:22

**usually** 55:16

---

**V**

**vaccinated**
69:16

**vaccine** 17:21
19:6,17 20:3,15,
23 21:3,11,15
22:18 23:12
24:20 26:9
28:18 29:10,14
32:24 37:4
48:22,24 49:12
51:5 52:13
54:11 64:21
73:7 74:11
82:14

**vaccines** 69:14
73:17,22

**various** 30:2
37:14 83:9,16

**verbal** 7:7

**Veronica** 36:6

**versa** 18:24

**version** 22:9,10

**versus** 5:18

**very** 23:16 25:25
26:2 44:12,16
56:18 58:16,18
67:20 80:8

**vice** 18:24

**view** 78:2,3

**virtually** 74:16

**visualize** 61:18

**vote** 41:23 42:23
43:4

**voted** 59:24

**votes** 60:16

**voting** 41:13,15
60:4

**vulnerability**
73:10

**vulnerable** 69:2

---

**W**

**want** 21:18
36:23 43:18
80:11,22 81:7
83:13

**wanted** 17:11,
14 40:6

**wasn't** 83:6

**way** 29:23 33:5
41:11 42:18
45:6,12 48:12
58:17 61:18
78:22

**we'll** 7:22 10:21
39:22

**we're** 21:18,19
25:21 26:25
27:7 38:25
45:18 48:21
86:10

**well** 10:20 12:15
16:16,21 17:2,3
24:6 36:22
37:19 41:3,25
43:6 50:4 58:10

**went** 42:12 72:3,
6

**were** 10:14 13:3,
8,11,16,21
15:19 20:13
21:25 22:2 23:9,
11 24:7,13,16
29:19 30:4,25
32:15,18 33:8,
19 34:15,17
36:22 37:13,15,
21 40:2 41:12,
15,23 42:4,5
43:8 44:6,8,18,
23,24,25 45:2
46:18 47:4,25
48:7 49:13,20,
21 50:18 52:2,3,

7,8,9,14,15
54:25 56:3,18
58:10,12,23
59:13,16 60:16
61:3,17,18 62:9,
22 63:2 67:4,20,
21 68:10,17,19
69:12,20 70:24
71:4,8,21,22
72:9,10,11 73:2,
4,11,23,24,25
75:17 76:3,11,
12,20 77:2,16
78:19 79:6 84:6,
8 85:22

**weren't** 45:9

**what** 7:18 11:19,
23 13:4,12,21
14:8 16:2 18:11
21:16,19,21
25:2 26:14,17,
19,20 27:3
28:15 30:7
32:19 34:12,19
36:23 39:14
40:13,21 41:15
44:22 48:6,7,18
49:14,20 50:16,
18,21,22,23,24,
25 51:12,22
52:17 53:13
54:3,20 56:20
57:5,17 58:15
61:3,6 63:18
65:20 72:23
75:8 76:8 77:22
84:23 88:11

**what's** 26:24
45:11 65:24
82:17

**whatever** 40:5

**when** 9:11 13:8,
16 15:19 17:2,3,
4,5 18:15,19
19:4 23:10,21
25:8 33:21 37:3
38:2 39:6 43:18,
19 46:2,22
48:21 66:15
67:17 68:17
69:12 72:3,5,8
73:22,24 78:22
80:12 81:8
83:15,16

**where** 8:6 10:19
18:22 20:18
27:15,23 32:20
37:23 52:8
63:10 69:12
75:16 83:3

**whether** 18:13
28:10,16 34:7
37:10 39:15
43:17 44:16
48:8,20,23 49:3,
10,12 50:5 52:2,
3,6,19 56:11
61:4 65:11
68:25 70:10
74:12 84:7
85:16

**which** 12:3,12
16:23 18:2 22:5
34:12 43:7
50:19 53:23
55:2 56:19 59:9
69:3 72:8 87:14

**while** 75:18

**who** 6:3 8:13
11:5 24:2,7,12
31:22 32:19,23
33:11 36:6,10
41:5 42:18,21
43:8,10 44:19
46:17 47:4 52:4,
10 54:10 58:24
62:8,18 70:25
82:10

**whole** 38:14

**why** 17:9,19
32:20 49:21
62:21 76:7,14,
18 86:2

**with** 5:2 8:11
19:2 20:13,14
22:17,19 24:4
27:17 29:17
33:16 35:3
36:24 37:21
40:8,22 41:16,
20 42:22 48:21,
24 49:9,12 52:9
55:12,14 56:5
63:7 65:2,5
70:11 72:16
75:3 76:3,6
77:7,23

**within** 10:19
11:11 16:15
57:19 87:18

**without** 26:23
28:5 32:25
62:17 65:18
71:11,18

**witness** 6:5
9:15 14:12,17
19:13 22:22
23:13 64:3,25
86:9 87:2

**won't** 23:4

**word** 48:15

**words** 18:4

**work** 30:3 32:9
42:25 48:13
52:4,6 60:21
75:17,21 81:2

**worked** 11:7
31:7 33:24
41:12 42:14
82:4 84:18 85:4,
19 86:5

**Workers'** 14:6

**workflow** 47:10

**workforce**
69:17

**working** 11:15
31:15 51:16
71:22

**workload** 42:9

**works** 31:14
33:17 34:3

**worth** 78:3

**would** 5:8 10:17
18:2,5,9 22:24
25:18 28:9 33:5
34:19 35:2
36:12 37:16,22
39:23 41:11
42:25 43:7,10,
20 44:19,20,21
45:3,6,12 46:23
50:6 52:14 53:4,
8,12 54:20,21
55:2,3,7 60:14
61:2,9,20 62:16
63:9,16 65:9
67:16 69:15

70:16 72:18
73:17 74:21
77:11,17,24,25
78:10 79:2
83:24 84:11
85:19,23 86:4

**would've** 66:19
78:9

**wouldn't** 41:10
68:23 71:18
78:2

**wrong** 33:24

---

Y

**yeah** 9:13 46:14
78:15 82:9
84:15

**year** 16:6 71:23

**years** 23:23

**yes** 7:11,16,24
8:13 10:12 11:4,
13,18,22 12:19
15:15,25 18:18
19:9,14 20:17
28:9 40:15
43:19 44:7 46:8
47:8 48:15
54:16 57:13
59:17,21 60:9
66:3 67:2 68:7,
12 71:2 72:22
76:17 77:24
83:2 84:5

**Yet** 27:11

**York** 5:19 6:21
8:8,10 9:4 11:6,
8,11,13 15:10,
17 16:9,22 17:6
18:17,25 19:3,
18 22:19 23:18
24:8,17 29:10
30:10,18 31:21
32:5,22 33:9
34:24 35:3,22
36:15,24 39:16
43:21 50:10
51:3 52:17 54:9
57:5,10,14 60:6
65:4,6 66:8 71:9
73:13 74:10,15,
20 81:20 88:3

**you'd** 70:17

**you're** 9:7
10:10,15 11:12
22:8 26:14,21
40:17 44:14
48:13,15,17,19,
23 64:11 82:6

**younger** 73:10

**your** 7:7 11:5,
19,24 13:4,13,
21 14:9 28:5
34:5 36:24
45:10,11 63:24
68:6 79:13 81:8
84:10,23 85:8
86:7 87:4,14

---

Z

**zero** 33:10