Index No. 22 CV 07553 (CBA)(VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LORRAINE MASCIARELLI,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

***STEVEN BANKS***
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street
New York, N.Y. 10007

Of Counsel: Andrea M. Martin
Tel: (212) 356-3549
andmarti@law.nyc.gov

Matter No. 2022-07472

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ II

PRELIMINARY STATEMENT ........ 1

STANDARD OF REVIEW ........ 1

ARGUMENT

POINT I

PLAINTIFF HAS NOT ESTABLISHED THAT SHE HELD A BONA FIDE RELIGIOUS BELIEF THAT CONFLICTED WITH THE VACCINE MANDATE ........ 2

POINT II

PLAINTIFF CANNOT ESTABLISH THAT DEFENDANT VIOLATED TITLE VII OR THE CHRL ........ 5

A. Defendant’s Undue Hardship Defense is Supported by the Record and Plaintiff Has Failed to Produce Any Evidence of Pretext ........ 5

B. Defendant Did Not Fail To Provide A Religious Accommodation Pursuant to Title VII ........ 15

C. Defendant’s Undue Burden Defense is Not Pretext for Religious Discrimination under the CHRL ........ 19

POINT III

PLAINTIFF’S CLAIM SEEKING DECLARATORY JUDGMENT STILL FAILS AS A MATTER OF LAW ........ 21

CONCLUSION ........ 23

CERTIFICATION ........ 24

## TABLE OF AUTHORITIES

**Cases** **Pages**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ........ 2, 7

Ansonia Bd. of Educ. v. Philbrook,
479 U.S. 60, 107 S. Ct. 367 (1986) ........ 18

Bachiller v. Turn On Prods., Inc.,
No. 00 Civ. 8701 (JSM), 2003 U.S. Dist. LEXIS 6164,
2003 WL 1878416 (S.D.N.Y. Apr. 14, 2003),
aff'd, 86 F. App'x 465 (2d Cir. 2004) ........ 23

Baker v. Home Depot,
445 F.3d 541 (2d Cir. 2006) ........ 9, 20

Bobnar v. AstraZeneca Pharmaceuticals LP,
672 F. Supp. 3d 475 (N.D. Ohio 2023) ........ 16, 17

Brown v. S. Shore Univ. Hosp.,
762 F. Supp. 3d 191 (E.D.N.Y. 2025) ........ 9, 12

Cosme v. Henderson,
287 F.3d 152 (2d Cir. 2002) ........ 9, 18, 20

DiStiso v. Cook,
691 F.3d 226 (2d Cir. 2012) ........ 7

Fabrikant v. French,
691 F.3d 193 (2d Cir. 2012) ........ 7

Federal Trade Comm'n v. Moses,
913 F.3d 297 (2d Cir. 2019) ........ 7

Figueroa v. MRM Worldwide,
2014 U.S. Dist. LEXIS 30012
(S.D.N.Y. Mar. 7, 2014) ........ 22

Gardner-Alfred v. FRB of N.Y.,
143 F.4th 51 (2d Cir. 2025) ........ 4

Groff v. DeJoy,
600 U.S. 447 (2023) ........ 9, 12, 13, 18

Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n,
655 F.3d 136 (2d Cir. 2011) ........ 21

**Cases** **Pages**

Kane v. De Blasio,
19 F.4th 152 (2d Cir. 2021) ........ 8

Kauffman v. N.Y. Presbyterian Hosp.,
762 F. Supp. 3d 309 (S.D.N.Y. 2024) ........ 9, 16

Kramer v. Vendome Grp. LLC,
2012 U.S. Dist. LEXIS 147375, 2012 WL 4841310
(S.D.N.Y. Oct. 4, 2012) ........ 22

LaRue v. N.Y. City Off-Track Betting Corp.,
No. 03-CV-783, 2004 U.S. Dist. LEXIS 24433
(S.D.N.Y. Dec. 6, 2004) ........ 23

Mazurkiewicz v. New York City Health & Hosps. Corp.,
585 F. Supp. 2d 491 (S.D.N.Y. 2008),
aff'd, 356 F. App'x 521 (2d Cir. 2009) ........ 21

Mumin v. City of N.Y.,
760 F. Supp. 3d 28 (S.D.N.Y. 2024) ........ 9, 12, 13, 16, 17

New Yorkers for Religious Liberty, Inc. v. City of N.Y.,
125 F.4th 319 (2d Cir. 2024) ........ 5, 6, 7, 8, 10, 12, 13, 15, 16, 17, 19

Nikci v. Quality Bldg. Servs.,
995 F. Supp. 2d 240 (S.D.N.Y. 2014) ........ 21

Pallonetti v. Liberty Mut.,
10 Civ. 4487, 2011 U.S. Dist. LEXIS 14529,
2011 WL 519407 (S.D.N.Y. Feb. 11, 2011) ........ 22

Payne v. MTA N.Y.C. Transit Auth.,
349 F. Supp. 2d 619 (E.D.N.Y. 2004) ........ 8, 11, 14, 19

Reeves v. Sanderson Plumbing Prods.,
530 U.S. 133, 120 S. Ct. 2097 (2000) ........ 15

Rizzo v. New York City Dep't of Sanitation,
2024 U.S. Dist. LEXIS 116666
(S.D.N.Y. July 2, 2024) ........ 3

Rodrique v. Hearst Communications, Inc.,
2024 U.S. Dist. LEXIS 30258
(D. Mass. Feb. 22, 2024) ........ 3

| Cases | Pages |
|---|---|
| Russo v. Patchogue-Medford Sch. Dist., 129 F.4th 182 (2d Cir. 2025) | 9, 16, 17 |
| Thomas v. Rockefeller University, Index No. 162135/2026 (Sup. Ct. New York Cnty. 2026) | 19 |
| Wilmington Tr., N.A. v. 1738 E 4th St. LLC, No. 23-CV-1270 (NGG)(RML), 2026 U.S. Dist. LEXIS 50594 (E.D.N.Y. Mar. 11, 2026) | 2 |
| **Statutes** | |
| Fed. R. Civ. P. 56(a) | 1 |

## PRELIMINARY STATEMENT

Plaintiff Lorraine Masciarelli ("Plaintiff") moves for summary judgment ("Plaintiff's Motion"), arguing that there are no material disputes of fact concerning her claim that the New York City Department of Education ("DOE") discriminated against her based upon her religious beliefs and allegedly failed to provide Plaintiff with any religious accommodation for her bona fide religious beliefs that conflicted with the COVID-19 Vaccine Mandate. Rather than addressing the controlling law or the undisputed facts, Plaintiff advances a series of unsupported conspiracy theories disguised as legal arguments, while simultaneously alleging that the DOE was required to provide her with a religious accommodation. As set forth below, that is an incorrect statement of the law. The DOE was not required to offer Plaintiff an accommodation if doing so would cause an undue hardship. Because allowing Plaintiff to remain unvaccinated while teaching children as young as three-years during an unprecedented public health crisis would have imposed an undue hardship on the DOE, the DOE was under no legal obligation to grant Plaintiff a religious exemption to the Vaccine Mandate.

Plaintiff further argues that she should be granted declaratory judgment voiding the Waiver and Release she executed based upon economic duress. However, the record demonstrates that Plaintiff knowingly and voluntarily executed the Waiver and Release, thereby releasing the DOE from all claims arising out of her employment, including the claims in this very action. Accordingly, fails to establish that she is entitled to summary judgment as a matter of law, and, thus, Plaintiff's Motion should be denied in its entirety.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment thus has the burden of demonstrating that there is

no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Wilmington Tr., N.A. v. 1738 E 4th St. LLC, No. 23-CV-1270 (NGG)(RML), 2026 U.S. Dist. LEXIS 50594, at *10 (E.D.N.Y. Mar. 11, 2026). Where the plaintiff moves for summary judgment, she "carries the additional 'burden of producing . . . evidence that would support a jury verdict' in [her] favor." Id. at *10 n. 9 (E.D.N.Y. Mar. 11, 2026) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Here, Plaintiff falls far short of her burden, and her motion must be denied.

## ARGUMENT

### POINT I

### PLAINTIFF HAS NOT ESTABLISHED THAT SHE HELD A BONA FIDE RELIGIOUS BELIEF THAT CONFLICTED WITH THE VACCINE MANDATE

As an initial matter, Plaintiff devotes a significant portion of her motion to arguing that she has established a prima facie case of religious discrimination because she is Roman Catholic, was qualified for her position as a teacher, suffered an adverse employment action, and purportedly held a bona fide religious objection to the Vaccine Mandate. See Pl. Mtn at 4-6. However, this Court has already narrowed this case to a single remaining issue: whether permitting Plaintiff to remain unvaccinated while and masking and testing would have imposed an undue hardship on the DOE. See Order and Decision, ECF Dkt No. 33 at 11. Accordingly, Plaintiff's renewed attempt to litigate her *prima facie* showing is largely irrelevant. Nevertheless, to the extent the Court considers this issue, the record does not establish that Plaintiff possessed a sincerely held religious belief that conflicted with the Vaccine Mandate.

Although Plaintiff self identifies as Roman Catholic, cites several Biblical passages, expresses a religious opposition to abortion, and asserts that receiving a COVID-19 vaccine would

violate her faith, nowhere in the record does she explain how she practiced those professed beliefs in a manner that consistently precluded vaccination. See Pl. Exh. A at 40:8-13 ("...one shouldn't ensure their blood. I believe this is like the mark of the beast, which is in the Book of Revelations. And that this was through the attenuation of aborted fetal cells."). Rather, Plaintiff testified that she had received vaccinations throughout her life and chose to vaccinate her own children. Id. at 40:14-25, 41:1-6. More significantly, Plaintiff admitted that she routinely took medications without determining whether they had been developed or tested using fetal cell lines, despite claiming that such research rendered the COVID-19 vaccine religiously objectionable. Id. at 69:9-24.

Courts have repeatedly recognized that such inconsistencies undermine a plaintiff's claim that a vaccination objection is rooted in a sincerely held religious belief. In Rodrique v. Hearst Communications, Inc., the court found no genuine dispute regarding the sincerity of the plaintiff's asserted religious beliefs where, despite broadly objecting to medications developed using fetal cell lines, he regularly took other medications and had previously received vaccinations without investigating whether fetal cell lines had been used in their development. See Rodrique v. Hearst Communications, Inc., 2024 U.S. Dist. LEXIS 30258, at *3 (D. Mass. Feb. 22, 2024). By contrast, in Rizzo v. New York City Department of Sanitation, the court found sufficient allegations of sincerity where the plaintiff alleged that he had consistently practiced his faith by declining comparable medical interventions before the COVID-19 pandemic. Rodrique v. Hearst Communications, Inc 2024 U.S. Dist. LEXIS 116666, at *3 (S.D.N.Y. July 2, 2024). Plaintiff's testimony here aligns with the former, not the latter.

Indeed, Plaintiff's own testimony demonstrates that her objection stemmed from her personal views about the COVID-19 vaccine rather than a sincerely held religious belief. When

asked why she objected to vaccination, Plaintiff testified: "Well, I -- I didn't know about the attenuation of the aborted fetal cells. And it didn't make sense to me that everybody was required to get this shot, especially -- it didn't make any sense. So when I looked into it, and saw that it changes your DNA, that violates God itself." Pl. Ex. A at 41:10-15. Notably, Plaintiff could not identify the source of this information, stating only that she had read "various journals" or "information." Id. at 41:17-18. She could not recall whether those materials were medical, religious, or otherwise. Id. at 41:22-24. Most tellingly, when directly asked whether she had any factual basis for her assertion that the vaccines utilized aborted fetal cells, Plaintiff answered, "off the top of my head, no." Id. at 60:11-14.

The record therefore demonstrates that Plaintiff's objection was based on her personal concerns and beliefs regarding the COVID-19 vaccine, not on a sincerely held religious practice that consistently prohibited vaccination. See Gardner-Alfred v. FRB of N.Y., 143 F.4th 51 (2d Cir. 2025)(affirming the district court's grant of summary judgment in favor of the employer because the plaintiff failed to present sufficient evidence that her objection to the COVID-19 vaccine mandate was rooted in a sincerely held religious belief.). Because Plaintiff has failed to establish that she held a bona fide religious belief that conflicted with the Vaccine Mandate, she cannot establish a *prima facie* case of religious discrimination. In any event, as discussed below and as this Court has already recognized, the dispositive issue remains whether permitting Plaintiff to remain unvaccinated while masking and testing would have imposed an undue hardship on DOE.

## POINT II

## PLAINTIFF CANNOT ESTABLISH THAT DEFENDANT VIOLATED TITLE VII OR THE CHRL

### A. Defendant's Undue Hardship Defense is Supported by the Record and Plaintiff Has Failed to Produce Any Evidence of Pretext

The remainder of Plaintiff's motion for summary judgment rests on the argument that Defendant's undue hardship defense is pretext for religious discrimination. Plaintiff, however, cannot point to any admissible evidence to support her claim that Defendant's articulated reasons for suffering numerous undue hardships were false or that religious animus was the true motivation. Instead, Plaintiff offers six arguments that amount to speculation, mischaracterization of deposition testimony and legal authority, and reliance on moot procedural challenges. Each argument fails.

Plaintiff first argues that Defendant's bargaining position at the negotiation table with Plaintiff's union, The United Federation of Teachers ("UFT"), reflected animus against those with bona fide religious objections to the COVID-19 vaccine. See Pl. Mtn at 8. This argument is pure speculation unsupported by the record and, furthermore, mischaracterizes the testimony of Defendant's 30(b)(6) witness, Eric Eichenholtz (hereinafter "Eichenholtz"). The Second Circuit has held that employers satisfy Title VII when they articulate a legitimate undue hardship rationale grounded in the nature of the employee's job functions and the risks posed to vulnerable populations. New Yorkers for Religious Liberty, Inc. v. City of N.Y., 125 F.4th 319 (2d Cir. 2024). In New Yorkers for Religious Liberty, Inc. v. City of New York, the Second Circuit affirmed dismissal of religious accommodation claims where the employer demonstrated that unvaccinated classroom teachers "cannot physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population." Id. The court

emphasized that plaintiffs "cannot make out a constitutional claim for religious discrimination without first making a more-than-conclusory allegation that the finding of undue hardship was erroneous or pretextual." New Yorkers for Religious Liberty, Inc. v. City of N.Y., 125 F.4th 319 (2d Cir. 2024).

Here, Defendant's position during collective bargaining discussions consistently focused on undue burden, not religious animus. See Pl.'s Exh J, Eichenholtz deposition at 77:12-14 ("the focus was on undue hardship in [Plaintiff's] case."). Indeed, in her Motion, Plaintiff intentionally and misleadingly omits this testimony that provides vital context. See Def. Counterstatement to Pltf 56.1 ¶ 16. Plaintiff further points to Defendant's 30(b)(6) witness, Katherine Rodi's (hereinafter "Rodi") testimony as evidence of discrimination and argues that it became the policy of the DOE through the general committee that no religious accommodations[1] would be granted to any DOE employee who applied for an accommodation from the Vaccine Mandate. See Pltf. Mtn at 8. However, these statements, read in context, reflect Defendant's legitimate concerns about the operational impact, student safety, staffing challenges, and other undue hardship factors. See Pl.'s Exh. M, Rodi deposition at 23:8-25, 24:2-10:

> Because we had a school system to run, and kids needed to be back in school. And kids were not vaccinated at the time, and we needed to protect those children that came back to school. And we – particularly on the lower level grades – [] needed teachers to be in the classroom, and we needed people to do their jobs. And we received applications from every title. We received it from teachers, from custodian, from school food workers, from principals, from assistant principals, from, you

[1] Plaintiff repeatedly conflates a request for a religious exemption with a request for a reasonable accommodation, despite the fact that they are legally distinct concepts. Plaintiff sought a religious exemption from the Vaccine Mandate: permission to remain unvaccinated based on her religious beliefs. She did not request any particular workplace accommodation that would enable her to perform the essential functions of her position while complying with the City's health and safety requirements. Plaintiff's failure to distinguish between these concepts undermines her argument throughout her motion.

> know, name the person, name the job. And the fact is we needed to run a school system, and we did not have the staffing resources to have people not in school buildings or not be able to go into school buildings, because, at that time, if you weren't vaccinated, you weren't permitted into school buildings….

Contrary to Plaintiff's arguments, Rodi's testimony is entirely consistent with Defendant's articulated undue hardship defense and provides no support for Plaintiff's speculation about religious animus.

Furthermore, collective bargaining discussions regarding accommodations for vaccine mandates necessarily involve consideration of operational constraints, staffing needs, and health and safety concerns. Such discussions do not evidence discriminatory intent merely because they address the practical challenges of implementing accommodations. Plaintiff has failed to identify any statement or action during collective bargaining that reveals religious animus or suggests that Defendant's stated concerns about undue hardship were pretextual. Moreover, the Second Circuit's decision in New Yorkers for Religious Liberty forecloses Plaintiff's argument. Just as the plaintiffs in that case could not survive a motion to dismiss by offering "only threadbare conclusions" about the employer's undue hardship findings, Plaintiff here cannot survive summary judgment by speculating about the motivations behind collective bargaining positions. Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. 2505); "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012); see also Federal Trade Comm'n v. Moses, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.") Plaintiff must produce evidence, not speculation, that Defendant's undue hardship rationale was false and that discrimination was the real reason. See New Yorkers for Religious Liberty, Inc. v. City of N.Y., 125 F.4th 319 (2d Cir. 2024); see

also Payne v. MTA N.Y.C. Transit Auth., 349 F. Supp. 2d 619 (E.D.N.Y. 2004). Plaintiff has not done so.

Plaintiff next argues that the original vaccine mandate failed to authorize an accommodation for religious objections as required under Title VII. See Pl. Mtn at 8-9. This argument is moot and provides no basis for finding pretext. The issue of whether the original vaccine mandate adequately provided for religious accommodations has already been litigated and decided in Kane v. de Blasio. See Kane v. De Blasio, 19 F.4th 152, 166 (2d Cir. 2021); see also New Yorkers for Religious Liberty, Inc. v. City of N.Y., 125 F.4th 319 (2d Cir. 2024). Following that decision, the City created an appeals panel, the Citywide Panel, to ensure a fair accommodation review process. Plaintiff herself availed herself of this appeals process. See Def.'s Rule 56.1 ¶¶ 40-43. The Second Circuit has held that where an employer implements a revised accommodation process following judicial intervention, plaintiffs who fail to utilize that process "could not challenge that process as unconstitutional." New Yorkers for Religious Liberty, Inc. v. City of N.Y., 125 F.4th 319, 326 (2d Cir. 2024). Conversely, the plaintiffs who did participate in the revised process had their accommodation requests evaluated under standards that "satisfied the requirements of Title VII." Id.

Here, Plaintiff participated in the very appeals process established to remedy any alleged deficiencies in the original mandate. Her accommodation request was reviewed by the Citywide Panel, which found that granting the requested accommodation would impose an undue hardship on DOE's operations. See Def.'s Rule 56.1 ¶ 43. This procedural history demonstrates that Plaintiff received the process she now claims was unlawfully denied. Thus, Plaintiff cannot bootstrap a moot procedural challenge into evidence of pretext. The fact that the original mandate may have lacked certain features later implemented does not suggest that the ultimate denial of Plaintiff's

exemption was motivated by religious animus. To the contrary, the creation of the Citywide Panel and Plaintiff's participation in that process undermines any inference of discriminatory intent.

Third, Plaintiff contends that granting a religious accommodation is required by Title VII. See Pl. Mtn at 9-10. This is not only incorrect but also reflects a fundamental misunderstanding of the law. Title VII requires employers to reasonably accommodate employees' religious practices "unless doing so would cause the employer to suffer an undue hardship." Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002). An employer satisfies Title VII when it demonstrates that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." Groff v. DeJoy, 600 U.S. 447, 470 (2023). The employer "need not offer the accommodation the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends." Cosme, 287 F.3d at 158. Critically, if no accommodation can be provided without undue hardship, the employer is not required to grant an accommodation at all. Baker v. Home Depot, 445 F.3d 541 (2d Cir. 2006), Brown v. S. Shore Univ. Hosp., 762 F. Supp. 3d 191 (E.D.N.Y. 2025).

Courts in this Circuit routinely hold that employers satisfy Title VII by demonstrating undue hardship, even when religious accommodations are denied. Mumin v. City of N.Y., 760 F. Supp. 3d 28 (S.D.N.Y. 2024), Kauffman v. N.Y. Presbyterian Hosp., 762 F. Supp. 3d 309 (S.D.N.Y. 2024). Indeed, courts have repeatedly held that employers lawfully denied religious exemptions where, as here, granting accommodations would have posed health and safety risks to vulnerable populations, created staffing shortages, or required violation of state law. Russo v. Patchogue-Medford Sch. Dist., 129 F.4th 182 (2d Cir. 2025), Mumin v. City of N.Y., 760 F. Supp. 3d 28 (S.D.N.Y. 2024), Kauffman v. N.Y. Presbyterian Hosp., 762 F. Supp. 3d 309 (S.D.N.Y. 2024).

Here, Defendant articulated specific, substantial burdens that would result from granting Plaintiff's requested accommodation: such an accommodation would have directly conflicted with the Department of Mental Health and Mental Hygiene ("DOHMH") Order requiring DOE employees to be vaccinated as a condition of entering DOE buildings. See Def.'s Rule 56.1 ¶ 14. Allowing Plaintiff, a physical education teacher who worked with children as young as three-years old, to remain unvaccinated while masking and testing would have undermined the City's efforts to protect the health and safety of students, staff, and the broader school community during an unprecedented public health emergency. See Def. Mem. at 3-6. Furthermore, considering the aggregate impact of such requests, permitting Plaintiff to remain unvaccinated while masking and testing would have imposed significant operational, administrative, and public health burdens on the DOE. This is supported by the evidentiary record and Plaintiff offers no evidence to refute these findings beyond her unsupported assertion that accommodation should have been granted. See Def. Rule 56.1 ¶ ¶21, 29, 30, 31, 43, 44.

Moreover, Plaintiff's undercuts her own pretext argument by admitting that 146 DOE employees received religious accommodations. See Pl. Mtn at 16 ("146 NYCDOE employees were granted religious exemptions through the denial of the accommodations appeals process.") This fact is fatal to Plaintiff's claim of religious animus. If Defendant harbored discriminatory intent against employees seeking religious accommodations for the vaccine mandate, it stands to reason that it would not have granted religious accommodations to over 100 employees. Indeed, the granting of numerous religious accommodations demonstrates that Defendant engaged in an individualized assessment of accommodation requests and granted accommodations where doing so would not impose undue hardship. New Yorkers for Religious Liberty, Inc. v. City of N.Y., 121 F.4th 448, 461 (2d Cir. 2024). The fact that Plaintiff's particular request was denied does not

suggest pretext; it suggests that Plaintiff's individual circumstances, a physical education teacher who teaches in-person in an auditorium setting to students as young as three- years, presented undue hardship concerns that precluded accommodation.

Fourth, Plaintiff attempts to manufacture a pretext issue by alleging that Defendant's undue burden argument arose in September 2021 rather than August 2021. See Pltf. Mtn at 10. Specifically, Plaintiff confusingly argues that the DOE had already decided in August 2021 that no DOE employee would receive a religious accommodation from the Vaccine Mandate and then, one month later, fabricated an "undue hardship" justification to support the denial of religious accommodations. See id. This argument is meritless and the record simply does not support that allegation. Most notably, Rodi's testimony on which Plaintiff relies is far from the "indisputable" evidence Plaintiff claims it to be. Ms. Rodi testified that she "does not remember exactly when… I think it was early September …" See Plaintiff's Exhibit M, 17:24-25, 18:2-8. Accordingly, Plaintiff's argument rests on speculation and an inaccurate characterization of the testimony.

Even assuming Plaintiff's characterization of the timeline is accurate (which Defendant disputes) a one-month difference in when an employer first articulated a particular rationale does not constitute evidence of pretext. Pretext requires a showing that the employer's stated reason was false and that discrimination was the real reason. Payne v. MTA N.Y.C. Transit Auth., 349 F. Supp. 2d 619 (E.D.N.Y. 2004). Plaintiff has not shown that Defendant's undue hardship rationale was false. Moreover, the original DOHMH order dated August 24, 2021 clearly demonstrates that Defendant's focus on operational concerns, health and safety, and undue burden considerations predated September 2021. See Defs. Rule 56.1 ¶¶ 9-18. Plaintiff has identified no evidence suggesting that Defendant's undue hardship rationale was fabricated, shifting, or inconsistent with

contemporaneous decision-making. A minor discrepancy in timing does not create a genuine dispute of material fact regarding pretext.

Plaintiff's fifth argument rests on a gross mischaracterization of the Supreme Court's decision in Groff v. DeJoy. Plaintiff insinuates that Groff requires courts to examine *only* the financial cost of the requested accommodation and that Defendant's failure to do so reveals pretext. See Pltf's Mtn at 5-6. This is incorrect. The Supreme Court in Groff explicitly rejected the "de minimis cost" standard that previously governed undue hardship analysis. Groff v. DeJoy, 600 U.S. 447, 143 S. Ct. 2279 (2023). The Court held that "showing 'more than a de minimis cost,' as that phrase is used in common parlance, does not suffice to establish 'undue hardship' under Title VII." Groff v. DeJoy, 600 U.S. 447, 143 S. Ct. 2279, 2294 (2023). Instead, "undue hardship is shown when a burden is substantial in the overall context of an employer's business." Groff v. DeJoy, 600 U.S. 447, 143 S. Ct. 2279 (2023).

Critically, the Court emphasized that the undue hardship inquiry is not limited to financial costs. The Court explained that "courts must take[] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." Brown v. S. Shore Univ. Hosp., 762 F. Supp. 3d 191 (E.D.N.Y. 2025). The Court further noted that "an accommodation's effect on co-workers may have ramifications for the conduct of the employer's business." Brown v. S. Shore Univ. Hosp., 762 F. Supp. 3d 191 (E.D.N.Y. 2025). Groff thus broadened, not narrowed, the range of burdens that employers may consider when assessing undue hardship. Employers may consider impacts on operations, staffing, health and safety, co-workers, and vulnerable populations served by the employer. Groff v. DeJoy, 600 U.S. 447, 143 S. Ct. 2279 (2023), Mumin v. City of N.Y., 760 F. Supp. 3d 28 (S.D.N.Y. 2024), New Yorkers for Religious Liberty, Inc. v. City of N.Y., 125

F.4th 319 (2d Cir. 2024). The inquiry is holistic and context-dependent, not a simple cost-benefit calculation.

Here, Defendant's undue hardship analysis fully complies with Groff. Defendant considered: impact on vulnerable student population, staffing constraints, operational disruptions, health and safety risks, compliance with state mandates, effect on co-workers and the larger school community. See Pl.'s Exh. M, Rodi deposition at 23:8-25, 24:2-10. These are precisely the types of substantial burdens in the overall context of Defendant's business that Groff contemplates. Groff v. DeJoy, 600 U.S. 447, 143 S. Ct. 2279 (2023).

Plaintiff's suggestion that Defendant was required to perform a narrow financial cost analysis contradicts Groff and Second Circuit precedent. In New Yorkers for Religious Liberty, the Second Circuit affirmed denial of accommodations based on the "risk to the vulnerable and still primarily unvaccinated student population"—a health and safety concern, not a financial one. New Yorkers for Religious Liberty, Inc. v. City of N.Y., 125 F.4th 319, 333 (2d Cir. 2024). Similarly, in Mumin v. City of New York, a district court upheld denial of a religious accommodation based on "the unique problems facing the DOC during the COVID-19 pandemic," including "easy transmission of COVID-19" in confined spaces and staffing shortages. Mumin v. City of N.Y., 760 F. Supp. 3d 28 (S.D.N.Y. 2024). Defendant's undue hardship analysis is consistent with the Supreme Court's directive in Groff and binding Second Circuit precedent and Plaintiff's mischaracterization of Groff does not create a genuine dispute of material fact.

Finally, Plaintiff alleges that Defendant attempted to wrongly influence arbitrators' decisions to deny Catholics like Plaintiff, citing an email thread as evidence. See Pltf Mtn at 12-13. This argument is entirely conclusory and unsupported. Plaintiff has not explained how the email thread she cites evidences religious discrimination. As an initial matter, Plaintiff incorrectly

asserts that the sender of the e-mail, Steven Banks, is the current head of the NYC Law Department. See Pltf Mtn at 12. Plaintiff is incorrect. The individual who authored that e-mail, Steven H. Banks, served as First Deputy Commissioner and General Counsel of the New York City Office of Labor Relations ("OLR"), and is a different person than the Steven Banks who currently serves as the 83rd Corporation Counsel. Compare https://www.proskauer.com/professionals/steven-banks (last visited July 9, 2026) with https://www.nyc.gov/site/law/about/corporation-counsels-message.page (last visited July 9, 2026). Plaintiff's misidentification of the sender serves only to highlight the speculative nature of her allegations.

Plaintiff's reliance on the substance of the email is equally misguided. The email merely notes that many religious accommodation requests cited the purported use of fetal tissue in the research or development of the COVID-19 vaccines and suggests consulting a City physician to address that scientifically inaccurate assertion. See Pltf Mtn at 13; see also Pltf's Exhibit O. Nothing in the email reflects animus towards religion, any discriminatory motive, any reference to Plaintiff's religion or her individual accommodation request, and it certainly does not contradict Defendant's undue hardship findings. If anything, this e-mail thread highlights the extraordinary volume of religious accommodation requests the DOE was required to process and the unprecedented administrative burden those requests imposed. Rather than evidencing discriminatory intent, the correspondence reflects the DOE's efforts to manage an overwhelming influx of religious exemption applications while implementing the Vaccine Mandate under rapidly evolving and unprecedented circumstances. Plaintiff bears the burden of producing evidence that would permit a reasonable jury to conclude that Defendant's stated reasons were pretext and that religious discrimination was the true motive. Payne v. MTA N.Y.C. Transit Auth., 349 F. Supp.

2d 619 (E.D.N.Y. 2004), Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 120 S. Ct. 2097 (2000). Vague references to email communications that do not mention Plaintiff, do not reveal discriminatory intent, and do not address Defendant's undue hardship rationale cannot carry that burden. The Second Circuit has repeatedly held that plaintiffs must offer more than "threadbare conclusions" to overcome an employer's articulated undue hardship defense. New Yorkers for Religious Liberty, Inc. v. City of N.Y., 125 F.4th 319 (2d Cir. 2024). Plaintiff's reliance on irrelevant email communications falls far short of this standard.

In sum, Plaintiff's six arguments fail individually and collectively. Plaintiff has not material, undisputed facts regarding whether Defendant's undue hardship defense was pretextual. Speculation about collective bargaining discussions, moot procedural challenges, mischaracterizations of Supreme Court precedent, and irrelevant email threads cannot substitute for evidence of discriminatory intent. Defendant's denial of Plaintiff's exemption request was based on substantial, well-documented undue hardship considerations consistent with Title VII and Second Circuit precedent, and thus, Plaintiff's motion for summary judgment must be denied.

**B. Defendant Did Not Fail To Provide A Religious Accommodation Pursuant to Title VII**

Plaintiff's argument that Defendant failed to provide a religious accommodation in violation of Title VII relies on three fundamental errors: (1) misapplication of out-of-circuit case law that is factually and legally distinguishable; (2) mischaracterization of Defendant's interactive process and good faith consideration of alternative accommodations; and (3) failure to recognize that the governing DOHMH order prohibited Defendant from implementing the very accommodations Plaintiff now claims were feasible.

Plaintiff's own cited authority undermines her position. The DOHMH order that Plaintiff herself cites clearly states that unvaccinated individuals are not permitted to enter DOE buildings.

See Pltf's Mtn, Exhibit L. This prohibition was not a matter of Defendant's policy preference or discretion, it was a binding legal mandate issued by the state health authority during an unprecedented public health crisis. The Second Circuit has unequivocally held that an employer is not required under Title VII to provide a religious accommodation that would impose an undue hardship—specifically, one that would require the employer to violate the law. Russo v. Patchogue-Medford Sch. Dist., 129 F.4th 182, 186 (2d Cir. 2025). In Russo, the Second Circuit affirmed summary judgment in favor of a school district that denied a religious exemption from a COVID-19 vaccination or testing mandate because granting such an accommodation would have required the district to violate New York's COVID-19 testing regulations. Russo v. Patchogue-Medford Sch. Dist., 129 F.4th 182 (2d Cir. 2025). The court held that accommodations compelling an employer to break the law constitute undue hardship under Title VII, regardless of whether the law is state or federal. See id. Here, the DOHMH order expressly prohibited unvaccinated employees from entering DOE buildings. Defendant could not lawfully grant Plaintiff an accommodation that permitted her to work in DOE facilities while unvaccinated without violating that order. This legal prohibition alone establishes undue hardship as a matter of law. Russo v. Patchogue-Medford Sch. Dist., 129 F.4th 182 (2d Cir. 2025), Kauffman v. N.Y. Presbyterian Hosp., 762 F. Supp. 3d 309, 313 (S.D.N.Y. 2024).

Plaintiff cites to Bobnar v. AstraZeneca Pharmaceuticals LP, a decision from the Northern District of Ohio, to support her argument that Defendant's undue hardship defense fails. This reliance is misplaced for multiple reasons. First, Bobnar is not binding on this Court. The case arises from the Northern District of Ohio and does not reflect Second Circuit law. The governing authorities in this Circuit including Russo, New Yorkers for Religious Liberty, and Mumin establish a clear framework for analyzing undue hardship in the COVID-19 vaccine

accommodation context, and those authorities compel the conclusion that the DOE has satisfied its burden. Russo v. Patchogue-Medford Sch. Dist., 129 F.4th 182 (2d Cir. 2025), Mumin v. City of N.Y., 760 F. Supp. 3d 28, 40 (S.D.N.Y. 2024), New Yorkers for Religious Liberty, Inc. v. City of New York, 125 F.4th 319 (2d Cir. 2024).

Second, and more importantly, Bobnar is factually distinguishable in ways that render it inapplicable to this case. Bobnar involved a pharmaceutical company's employment decisions in a private-sector workplace, not a government agency subject to binding state health orders like the DOHMH Order. In addition, Bobnar did not involve a vulnerable population of young children who were not yet eligible for vaccination at the relevant time. In contrast, Defendant operates public schools serving students who, during the relevant period in 2021, were largely unvaccinated because the vaccine had not yet been authorized for children under the age of twelve. The Second Circuit has repeatedly emphasized that the presence of vulnerable, unvaccinated populations is a critical factor in the undue hardship analysis. In New Yorkers for Religious Liberty, the Second Circuit affirmed the denial of religious accommodations to classroom teachers because the teachers "cannot physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population." New Yorkers for Religious Liberty, Inc. v. City of New York, 125 F.4th 319, 333 (2d Cir. 2024).

Here, allowing unvaccinated employees like Plaintiff to work in close proximity to unvaccinated students presented a substantial health and safety risk that Defendant was not required to tolerate under Title VII.  See id. Bobnar did not involve such a population and therefore provides no support for Plaintiff's position. Plaintiff's reliance on out-of-circuit cases that arise under different factual circumstances, involve different regulatory frameworks, and do not address

the specific legal constraints faced by Defendant provides no basis for overcoming Defendant's well-established undue hardship showing.

Plaintiff erroneously alleges that Defendant did not even consider testing and masking as alternative accommodations and that this omission reflects an intentional misinterpretation of the vaccine mandate. First, Plaintiff's characterization of Defendant's consideration process consists of nothing more than her unsupported opinion, which is irrelevant to the undue hardship analysis. Title VII does not require employers to adopt the accommodation the employee prefers. Cosme v. Henderson, 287 F.3d 152 (2d Cir. 2002), Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 62, 107 S. Ct. 367, 369 (1986). Instead, the employer need only show that granting the requested accommodation would result in substantial increased costs in relation to the conduct of its particular business. Groff v. DeJoy, 600 U.S. 447, 143 S. Ct. 2279 (2023). The Supreme Court in Groff clarified that "courts must take[] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." Groff v. DeJoy, 600 U.S. 447, 451, 143 S. Ct. 2279, 2286 (2023). Here, Defendant's undue hardship findings reflect consideration of all relevant factors, including the operational challenges of implementing testing and masking protocols, the heightened risk to vulnerable students, and the legal constraints imposed by the DOHMH order. Defendant did not "ignore" testing and masking—it determined, consistent with the governing legal framework and the practical realities of operating public schools during a public health emergency, that such accommodations were not safe or feasible options.

Plaintiff's own admission that Defendant granted over 100 religious accommodation requests completely undermines her arguments for religious discrimination and failure to accommodate under Title VII and the New York City Human Rights Law (CHRL). If Defendant

harbored discriminatory animus against employees seeking religious accommodations for the vaccine mandate, Defendant would not have granted religious accommodations to more than 100 such employees. The granting of numerous religious accommodations demonstrates that Defendant engaged in an individualized assessment of accommodation requests and granted accommodations where doing so would not impose undue hardship. New Yorkers for Religious Liberty, Inc. v. City of New York, 125 F.4th 319 (2d Cir. 2024). Moreover, Plaintiff has not identified any comparator employee whose accommodation request was granted despite presenting identical undue hardship concerns. Without such evidence, Plaintiff cannot establish that Defendant's undue hardship rationale was pretextual or that religious discrimination was the real reason for the denial. Payne v. MTA N.Y. City Transit Auth., 349 F. Supp. 2d 619 (E.D.N.Y. 2004).

### C. Defendant's Undue Burden Defense is Not Pretext for Religious Discrimination under the CHRL

Plaintiff's claims under the New York City Human Rights Law ("CHRL") fare no better than her Title VII claims. Plaintiff barely argues this point, instead citing Thomas v. Rockefeller University (N.Y. County 2026), a case that actually supports Defendant's position rather than undermining it. Plaintiff also attempts to rely on language in the DOHMH order stating that "nothing in this order shall be construed to prohibit any reasonable accommodations as required by law" as evidence that Defendant's undue burden defense is pretext for discrimination. This argument misconstrues both the DOHMH order and the legal framework governing religious accommodations under the CHRL.

The CHRL, like Title VII, does not require employers to grant religious accommodations that would impose undue hardship. The savings clause in the DOHMH order simply recognizes that employers remain obligated to consider reasonable accommodations as required by applicable

employment discrimination laws; it does not mandate that all requested accommodations be granted, nor does it override an employer's ability to deny accommodations that would impose undue hardship. The phrase "as required by law" is critical. Under both Title VII and the CHRL, the law requires reasonable accommodation unless doing so would cause undue hardship. Cosme v. Henderson, 287 F.3d 152 (2d Cir. 2002), Baker v. Home Depot, 445 F.3d 541 (2d Cir. 2006). When undue hardship exists, the law does not require accommodation. The DOHMH order's savings clause does not alter this fundamental principle or create an independent obligation to grant accommodations that would otherwise impose undue hardship. Thus, Plaintiff's reliance on this language as evidence of pretext is meritless.

For the same reasons that Plaintiff's arguments under Title VII fail, her arguments under the CHRL likewise fail. The CHRL does not impose a more stringent accommodation requirement than Title VII in this context. Both statutes require reasonable accommodation unless undue hardship exists. Defendant has established undue hardship as a matter of law based on the legal prohibition in the DOHMH order, the health and safety risks to vulnerable students, and the operational burdens of implementing alternative accommodations during an unprecedented public health crisis. Plaintiff has produced no evidence that Defendant's undue hardship defense is pretextual. Plaintiff has not shown that Defendant's articulated reasons were false or that religious discrimination was the real motivation. Instead, Plaintiff offers speculation, mischaracterizations of legal authority, and reliance on language in the DOHMH order that does not support her position. Her motion for summary judgment on the CHRL claim must be denied.

## POINT III

## PLAINTIFF'S CLAIM SEEKING DECLARATORY JUDGMENT STILL FAILS AS A MATTER OF LAW

Plaintiff's requests an Order declaring that a Waiver and Release (hereinafter the "Waiver") she knowingly and voluntarily signed releasing the DOE of all claims is void and unenforceable as it was allegedly obtained through economic duress. This claim fails as a matter of law for the reasons set forth in Defendant's Motion for Summary Judgment. To avoid unnecessary repetition, Defendant respectfully refers the Court to those arguments, which are fully incorporated herein by reference. Additionally, in Plaintiff's Motion, she makes the false contention that she can establish economic duress because if she did not execute the Waiver and Release, she would have lost her pension and been terminated from her employment. See Pl. Mtn at 22. This allegation simply does not constitute economic duress as a matter of law.

"To void a contract on the ground of economic duress, the complaining party must show that its agreement was procured by means of (1) a wrongful threat that (2) precluded the exercise of its free will." Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n, 655 F.3d 136 (2d Cir. 2011). Plaintiff must also allege that DOE engaged in "threatening conduct that is 'wrongful,' i.e., outside of [Defendants'] legal rights." Id. Moreover, "a mere demonstration of financial pressure or unequal bargaining power will not, by itself, establish economic duress." Id.

Plaintiff has not alleged that she was subjected to a "wrongful economic threat" that deprived her of her free will when she executed the agreement. Mazurkiewicz v. New York City Health & Hosps. Corp., 585 F. Supp. 2d 491, 500 (S.D.N.Y. 2008), aff'd, 356 F. App'x 521 (2d Cir. 2009); cf. Nikci v. Quality Bldg. Servs., 995 F. Supp. 2d 240, 249 (S.D.N.Y. 2014) (holding that even a threat of termination prior to signing a settlement agreement did not support an economic duress claim because the threat could not be deemed to have precluded the employee's

free will). Nor has Plaintiff alleged any facts suggesting DOE employed any "high pressure or deceptive tactics" in an effort to force her to sign the Agreement. See Pallonetti v. Liberty Mut., 10 Civ. 4487, 2011 U.S. Dist. LEXIS 14529, 2011 WL 519407, at *5 (S.D.N.Y. Feb. 11, 2011) ("[C]ourts look for evidence of high pressure or deceptive tactics," to determine "whether a party lacked 'meaningful choice"). That Plaintiff may have felt internal pressure to sign the Waiver given her personal financial constraints is understandable. However, that pressure; when not caused by Defendant, is insufficient to prove duress. See Kramer v. Vendome Grp. LLC, 2012 U.S. Dist. LEXIS 147375, 2012 WL 4841310, at *6 (S.D.N.Y. Oct. 4, 2012). Ultimately, the "case law is clear that 'difficult choices do not constitute duress." See Figueroa v. MRM Worldwide, 2014 U.S. Dist. LEXIS 30012 (S.D.N.Y. Mar. 7, 2014).

Thus, the Court should find that Plaintiff's allegations regarding economic difficulties do not alter the ultimate conclusion that she signed the Waiver knowingly and voluntarily, and that the Agreement is not voidable on grounds of economic duress. See Kramer v. Vendome Grp. LLC, 2012 U.S. Dist. LEXIS 147375 (S.D.N.Y. Oct. 4, 2012) (holding that plaintiff had failed to adequately allege that it signed release of employment discrimination claims under economic duress and accordingly granting motion to dismiss plaintiff's employment discrimination claims with prejudice).

Despite Plaintiff's allegations to the contrary, she was also given ample time between receiving the Waiver and signing it. The Waiver explicitly notes that Plaintiff was advised by the DOE to consult with an attorney, provided a 21-day period to review and consider the Waiver, and even provided a 7-day revocation period. See Pl. Exh. U. While Plaintiff, arguably, may not have consulted an attorney prior to signing the Waiver, that does not defeat the Waiver or automatically render the Waiver invalid, as courts have found waivers to be valid when a plaintiff was advised

to did not consult an attorney prior to signing, but chose not to. LaRue v. N. Y. City Off-Track Betting Corp., No. 03-CV-783, 2004 U.S. Dist. LEXIS 24433, (S.D.N.Y. Dec. 6, 2004); Bachiller v. Turn On Prods., Inc., No. 00-CV-8701, 2003 U.S. Dist. LEXIS 6164 (S.D.N.Y. Apr. 14, 2003).

Accordingly, Plaintiff's third cause of action for declaratory judgment is without merit, and the Waiver independently bars her from pursuing all of her claims in this very action.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Motion for Summary Judgment be denied, that the relief requested therein be denied in all respects, that judgment be entered for Defendant, and that Defendant be granted such other and further relief as the Court may deem just and proper.

Dated: New York, New York
July 10, 2026

**STEVEN BANKS**
Corporation Counsel of the City of New York
*Attorney for Defendant*
100 Church Street
New York, New York 10007
(212) 356-3549

By: /s/
Andrea Martin
*Assistant Corporation Counsel*

## CERTIFICATION

In accordance with Local Civil Rule 7.1 (c) of the Local Rules Of The United States District Courts For the Southern and Eastern Districts Of New York, the undersigned certifies that the word count in this memorandum of law (excluding the caption, table of contents, table of authorities, signature block, and this certification), as established using the word count on the word-processing system used to prepare it, is 6,562 words.

Dated: New York, New York
July 10, 2026

Respectfully submitted,

By: /s/
Andrea M. Martin
*Assistant Corporation Counsel*