UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

LORRAINE MASCIARELLI,

Plaintiff,

**INDEX NO. 22-cv-7553**

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THE SCHER LAW FIRM, LLP
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040

## TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

PLAINTIFF'S RESPONSE TO THE NYCDOE'S ARGUMENTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ..... 5

A. The NYCDOE's Silence Is An Acknowledgement That The Plaintiff Has Met Her Burden With Respect To Her Prima Facie Case of Religious Discrimination Pursuant to Title VII (First Cause Of Action) And Failure To Accommodate Pursuant to Title VII (Second Cause Of Action) ..... 5

B. The NYCDOE's Undue Hardship Analysis Fails As A Matter Of Law Because The Vaccine Mandate And The NYCDOE's Conduct Reveals That The Undue Hardship Shield Is Pretext For Religious Discrimination ..... 6

1. The Vaccine Mandate Permitted, Authorized, And Approved The Granting Of Reasonable Accommodations As Required By Law ..... 6

2. The NYCDOE's Undue Hardship Defense Is Pretext For Discrimination ..... 9

a. The NYCDOE's Bargaining Position At the Negotiation Table With the UFT ..... 9

b. The Original Vaccine Mandate Failed To Authorize An Accommodation For Religious Objections As Required By Federal Law ..... 9

c. The Undue Burden Argument Was Adopted In September 2021 After The NYCDOE's Bargaining Position Was No Accommodations For Religious Objections ..... 10

d. The Undue Burden Argument Fails To Meet The Standard Set Forth In Groff ..... 11

e. The NYCDOE Called The Plaintiff's Beliefs "BS" ..... 13

C. Allowing The Plaintiff To Teach In Person Would Not Have Been An Undue Hardship Because It Was The Policy Of New York State That Schools Test And Mask And Allow Unvaccinated Teachers To Teach ........ 15

D. NYCDOE's Argument About Cumulative Impact Of Granting Thousands Of Accommodation Requests Must Be Rejected ........ 19

E. The Plaintiff's NYC Human Rights Law Claim Is Timely And The Court Should Deny The NYCDOE's Motion For Summary Judgment ........ 20

1. The NYCDOE's Undue Burden Argument Is Defeated By The Plain Words In The Vaccine Mandate ........ 20

2. The Plaintiff's Filing With The EEOC Constituted The Plaintiff's Notice Of Claim Pursuant to N.Y. Education Law § 3813 ........ 21

F. The Plaintiff Was Under Economic Duress When She Executed The Release To Extend Her Suspension Without Pay ........ 22

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Cases**

*Bagarozzi v. N.Y.C. Dep't of Educ.*, 2019 U.S. Dist. LEXIS 56533, at *10 (S.D.N.Y. 2019) .......... 21

*Bart v. Golub Corp.*, 96 F.4th 566, 569-70 (2d Cir. 2024) .......... 5

*Bobnar v. AstraZeneca Pharms. LP*, 758 F. Supp. 3d 690, 727 (N.D. Ohio 2024) .......... 18

*Chavez v. City of N.Y.*, 2026 LX 44697, at *18 (E.D.N.Y. 2026) .......... 18

*D'Cunha v. Northwell Health Sys.*, 2023 U.S. App. LEXIS 30612 (2d Cir. 2023) .......... 15

*Doe v. Hochul*, 2026 U.S. LEXIS 2876, *2-3 (2026) .......... 14

*Does v. Hochul*, 2024 LX 37970, at *10 (2d Cir. Dec. 20, 2024) .......... 8

*Dr. A. v. Hochul*, 142 S. Ct. 552, 553 (2021) .......... 14

*Groff v. DeJoy*, 600 U.S. 447, 468 (2023) .......... 12

*Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136, 142 (2d Cir 2011) .......... 22

*Knight v. State Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001) .......... 6

*Lovallo v. N.Y.C. Dep't of Educ.*, 2024 U.S. Dist. LEXIS 59758, at *19-20 (S.D.N.Y. 2024) .......... 21

*Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 164 (2d Cir. 2013) .......... 8

*Matter of LaBarbera v. N.Y.C. Dep't of Educ.*, 241 A.D.3d 547, 550 (2d Dept 2025) .......... passim

*Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) .......... 6

*Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir. 1995) .......... 15

*Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 186 (2d Cir. 2025) .......... 17

*Weisel v. Dept. of Educ.*, 2025 N.Y. Slip Op 32485[U] (Sup Ct, Kings County 2025) .......... 24

*Williams v. Gen. Foods Corp.*, 492 F.2d 399, 404 (7th Cir. 1974) .......... 16

*Wright v. Brooklyn Hosp. Ctr.*, 2026 LX 270243, at *4 (2d Cir. 2026) .......... 15

**Statutes**

42 U.S.C. § 2000e(j) .......... 2

42 U.S.C. § 2000e-7. .......... 8

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Plaintiff LORRAINE MASCIARELLI ("Plaintiff") in opposition to the Motion for Summary Judgment filed by the Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE").

The NYCDOE's whole defense of why it did not provide the Plaintiff with a religious accommodation for her sincere religious beliefs was that, to do so, would create an undue burden (argued as undue hardship by the NYCDOE).

The NYCDOE argues that granting the Plaintiff a religious accommodation would cause an undue hardship for two reasons: (1) "granting Plaintiff's exemption requests would have created an undue hardship because Plaintiff was legally prohibited from entering DOE buildings under the DOHMH order" (NYCDOE's Memorandum of Law, at page 6); and (2) "permitting such an exemption would have compounded the operational burden of having to hire another person to do Plaintiff's job given the aggregate impact of the thousands of similar requests for exemptions to the DOHMH Order". NYCDOE's Memorandum of Law, at page 6.

Both reasons are contradicted by the DOHMH order ("Vaccine Mandate") relied upon by the NYCDOE and the reality of what occurred within the NYCDOE at the time the Plaintiff was denied a religious accommodation. The NYCDOE's arguments in support of its Motion for Summary Judgment are not supported by the documentary evidence and the discovery obtained in this Action.

First, while the Vaccine Mandate did not permit unvaccinated NYCDOE employees within a NYCDOE school building (**Exhibit C**, a copy of the Vaccine Mandate[1]), it "did not preclude reasonable accommodations." *Matter of LaBarbera v. N.Y.C. Dep't of Educ.*, 241 A.D.3d 547, 550 (2d Dept 2025).

---

[1] References to letter exhibits are to the exhibits submitted by the NYCDOE in support of its Motion for Summary Judgment. References to numbered exhibits are additional exhibits submitted by the Plaintiff in opposition to the NYCDOE's Motion.

The Vaccine Mandate states: "[n]othing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law." **Exhibit C**, at § 6.

Granting religious accommodation is required by Title VII. *See,* 42 U.S.C. § 2000e(j) (stating "The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.").

As a result, granting the Plaintiff a religious accommodation would have been consistent with both Title VII and the Vaccine Mandate.

The NYCDOE's undue hardship argument is defeated by the plain, unambiguous, and clear language in the Vaccine Mandate it improperly and wrongfully relies upon as being the cause for an undue hardship. The NYCDOE completely ignores the holding in *Matter of LaBarbera* and the language in the Vaccine Mandate that authorized religious accommodations, like the one sought by the Plaintiff.

The NYCDOE's reliance on the Vaccine Mandate's ban on permitting unvaccinated people into NYCDOE's buildings while ignoring the Vaccine Mandate's authorization and permission to grant accommodations (**Exhibit C**, at § 6) establishes that the NYCDOE's reason for denying the Plaintiff a reasonable religious accommodation, undue hardship, was really pretext for religious discrimination.

The NYCDOE's other argument that it would suffer an undue hardship if it granted the Plaintiff a reasonable religious accommodation from the Vaccine Mandate, namely "permitting such an exemption would have compounded the operational burden of having to hire another person to do Plaintiff's job given the aggregate impact of the thousands of similar requests for exemptions to the DOHMH Order" (NYCDOE's Memorandum of Law, at page 6) is contradicted by the evidence obtained through discovery in this Action.

To begin with, the NYCDOE did not deny all requests for accommodations.

The NYCDOE did deny every single request for a religious accommodation. *See,* **Exhibit 1**, a copy of the deposition transcript of Katherine G. Rodi, at page 22, lines 10-15.

However, the NYCDOE granted some accommodations and exemptions for medical conditions to NYCDOE employees. *See,* **Exhibit 1**, at page 34, line 7 through page 36, line 17.

If granting an accommodation to the Plaintiff, on religious grounds "would have compounded the operational burden of having to hire another person to do Plaintiff's job given the aggregate impact of the thousands of similar requests for exemptions to the DOHMH Order" why was it not an undue hardship to grant the same accommodation to those NYCDOE employees who sought an accommodation based upon medical conditions. *See,* **Exhibit 1**, at page 34, line 7 through page 36, line 17.

The NYCDOE's favoring of those with medical conditions that impacted the NYCDOE employee's compliance with the Vaccine Mandate over those with bona fide religious objections who had religious reasons that impacted the NYCDOE's employee's compliance with the Vaccine Mandate means that the undue hardship defense is just pretext for discrimination against the Plaintiff based upon her religious beliefs. This disparate impact of the implementation of the Vaccine Mandate and the NYCDOE's granting/denying of accommodations was discrimination against the Plaintiff based upon her bona fide religious beliefs.

The NYCDOE focuses its undue hardship analysis on the misperception (whether purposeful or not) on the Plaintiff being "a physical education teacher who worked with children as young as three years old" and as a result, allowing her to teach the young students, the NYCDOE argues, placed those students at risk of contracting COVID-19. NYCDOE's Memorandum of Law In Opposition, at page 13.

However, the NYCDOE could have placed her in any one of numerous roles within the NYCDOE school system, including with High School students. The Plaintiff held/holds "New

York State certified, permanent certification, special education. New York State permanent certification, elementary education Pre-K through grade six. New York State -- I think it's provisional certification in physical education, I believe K through 12." **Exhibit A**, a copy of the Plaintiff's deposition testimony, at page 15, line 23 through page 16, line 3.

The Plaintiff testified that:

> I would have done any job -- any job – any job, any. I am certified to teach Pre-K, kindergarten, first grade, second grade, third grade, fourth grade, fifth grade, sixth grade elementary education. I am certified to teach Pre-K, kindergarten, first grade, second grade, third grade, fourth grade, fifth grade, sixth grade, seventh grade, eighth grade, ninth grade, tenth grade, eleventh grade, and twelfth grade special education, especially New York City has a big deficit in that, right. I am also certified to teach Pre-K, kindergarten, first grade, second grade, third grade, fourth grade, fifth grade, sixth grade, seventh grade, eighth grade, ninth grade, tenth grade, eleventh grade, and twelfth grade physical education. I would have went anywhere and done anything to keep my job.

**Exhibit A**, at page 48, lines 10-25.

For the NYCDOE to focus on the younger students that the Plaintiff could have taught, instead of the Plaintiff's testimony that she was willing to accept any assignment in her certifications and qualifications shows that it did not matter to the NYCDOE that they had options for her placement.

The NYCDOE had no intention of granting any religious accommodation to anyone with bona fide religious beliefs, including the Plaintiff. *See,* **Exhibit 2**, a copy of the Declaration of Impasse, at page 6.

As Katherine G. Rodi ("Rodi"), the NYCDOE's FRCP Rule 30(b)(6) witness testified that regardless of what religious belief the NYCDOE employee had, the NYCDOE denied the person's reasonable accommodation. *See,* **Exhibit 1**, at page 22, lines 10-15.

The NYCDOE did not want to accommodate the Plaintiff because of its religious animus.

The NYCDOE's undue burden/undue hardship defense falls apart when examined with the benefit of discovery, deposition testimony, and the actual language of the Vaccine Mandate.

For the reasons argued in this Memorandum Of Law In Opposition, the NYCDOE's Motion for Summary Judgment must be denied.

## PLAINTIFF'S RESPONSE TO THE NYCDOE'S ARGUMENTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### A. The NYCDOE's Silence Is An Acknowledgement That The Plaintiff Has Met Her Burden With Respect To Her *Prima Facie* Case of Religious Discrimination Pursuant to Title VII (First Cause Of Action) And Failure To Accommodate Pursuant to Title VII (Second Cause Of Action)

Nowhere in support of the NYCDOE's Motion for Summary Judgment does the NYCDOE argue that the Plaintiff cannot meet her *prima facie* burden of establishing the elements of her first two causes of action.

With respect to the Plaintiff's First Cause of Action for religious discrimination in violation of Title VII (**Exhibit 3**, a copy of the Second Amended Complaint, at ¶¶ 22-28), the NYCDOE has failed to argue in support of its Motion that the Plaintiff has not established: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination". *Bart v. Golub Corp.*, 96 F.4th 566, 569-70 (2d Cir. 2024).

With respect to the Plaintiff's Second Cause of Action for failing to accommodate in violation of Title VII (**Exhibit 3**, a copy of the Second Amended Complaint, at ¶¶ 29-39), the NYCDOE has failed to argue in support of its Motion that the Plaintiff has not established: "(1) [she] held a bona fide religious belief conflicting with an employment requirement; (2) [she] informed [her] employer[ ] of this belief; and (3) [she] [was] disciplined for failure to comply with

the conflicting employment requirement." *Knight v. State Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001).

As a result, the NYCDOE has conceded that the Plaintiff has met her *prima facie* burden on her first two causes of action. *See, Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (holding failing to raise an argument in opposition to summary judgment is a waiver of the argument).

**B. The NYCDOE's Undue Hardship Analysis Fails As A Matter Of Law Because The Vaccine Mandate And The NYCDOE's Conduct Reveals That The Undue Hardship Shield Is Pretext For Religious Discrimination**

The NYCDOE argues that

> DOE determined that allowing Plaintiff, and the thousands of other pedagogues who requested religious exemptions from the vaccine, to enter school buildings to be an undue hardship because: (1) the DOHMH Mandate would not, legally, allow Plaintiff to enter into school buildings unvaccinated; and (2) Plaintiff's presence as an unvaccinated individual posed a danger to the safety and health of Plaintiff's coworkers, students, and students' families.

NYCDOE's Memorandum Of Law, at page 7.

Both of these purported bases for why it would have been an undue burden to grant the Plaintiff a religious accommodation fail as a matter of fact and law.

1. <u>The Vaccine Mandate Permitted, Authorized, And Approved The Granting Of Reasonable Accommodations As Required By Law</u>

One of, if not the primary argument asserted by the NYCDOE with respect to why granting a religious accommodation to the Plaintiff would have been an undue hardship is the language of the Vaccine Mandate. *See,* NYCDOE's Memorandum of Law, at page 6 (arguing "granting Plaintiff's exemption requests would have created an undue hardship because Plaintiff was legally prohibited from entering DOE buildings under the DOHMH order.").

However, the NYCDOE ignores the plain, clear, and unambiguous language in the Vaccine Mandate that authorized, permitted, and approved of reasonable accommodations as required by law.

The Vaccine Mandate states: "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law." **Exhibit C**, at § 6.

In *Matter of LaBarbera v. N.Y.C. Dep't of Educ.*, 241 A.D.3d at 550, the Court held: "the vaccine mandate did not preclude reasonable accommodations."

As the Court in *Matter of LaBarbera* explained: "In August 2021, the New York City Commissioner of Health and Mental Hygiene issued a mandate requiring all DOE employees to provide proof of COVID-19 vaccination (hereinafter the vaccine mandate). In September 2021, the vaccine mandate was amended to add that "[n]othing in this [mandate] shall be construed to prohibit any reasonable accommodations otherwise required by law." *Matter of LaBarbera v. N.Y.C. Dep't of Educ.*, 241 A.D.3d at 548.

The amended Vaccine Mandate was the result of litigation *In the Matter of the Application of the New York City Municipal Labor Committee, et al. v. The City of New York, et al.* under Index Number 158268/2021 ("Original Vaccine Illegal Proceeding") in which the New York State Supreme Court, New York County, issued a Temporary Restraining Order restraining the NYCDOE from implementing the August 23, 2021 Vaccine Mandate because it did not provide for, amongst other reasons, religious accommodations. *See,* **Exhibit 4**, a copy of the Temporary Restraining Order. *See,* **Exhibit 5**, a copy of the Declaration of Alan M. Klinger, executed on March 17, 2025, at ¶ 8.

The NYCDOE cannot rely upon the portions of the Vaccine Mandate that barred unvaccinated people from entering NYCDOE buildings as a basis for its undue hardship because the Vaccine Mandate itself does not allow it. *See,* **Exhibit C,** at § 6 (stating "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."). The

Commissioner of Health recognized, authorized, and permitted the NYCDOE to grant religious accommodations.

Despite the plain language of the Vaccine Mandate that states: "[n]othing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law" the NYCDOE is, in violation of the Vaccine Mandate, actually using the Order as a basis for denying the Plaintiff a reasonable religious accommodation. **Exhibit C**, at § 6. *See also,* NYCDOE's Memorandum of Law, at page 6.[2]

Unlike the vaccine mandate issued by New York State regarding healthcare workers that did not contain an exemption for those with sincere religious objections the Vaccine Mandate at issue in this Action permitted religious accommodations. *See, Does v. Hochul*, 2024 LX 37970, at *10 (2d Cir. Dec. 20, 2024) (holding "Plaintiffs were all covered personnel under Section 2.61, which meant that granting their sole request for a religious exemption would have required the Private Defendants to violate the state regulation. This, in turn, would have subjected the Private Defendants to financial penalties or a suspension or revocation of their operating licenses.").

The NYCDOE does not identify any financial penalties or any disciplinary consequences that the City of New York would have or could have imposed upon the NYCDOE by granting the Plaintiff a reasonable religious accommodation to the Vaccine Mandate.

In fact, the Vaccine Mandate at issue in this Action, permitted, authorized, and recognized that religious accommodations would be granted to NYCDOE employees, like the Plaintiff, who have bona fide religious beliefs.

---

[2] In fact, Title VII "exempt[s] or relieve[s] any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title [42 USCS §§ 2000e et seq.]." 42 U.S.C. § 2000e-7. So even if the Vaccine Mandate barred religious accommodations (which it does not, *see,* **Exhibit C**, at § 6), Title VII would exempt and relieve the NYCDOE from complying with the illegal Vaccine Mandate. *See, Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 164 (2d Cir. 2013) (holding, with respect to the Americans With Disabilities Act "we observe that the proposition that the ADA preempts inconsistent state law when appropriate and necessary to effectuate a reasonable accommodation under Title II is also consistent with decisions from our sister Circuits.").

The NYCDOE's reliance upon the Vaccine Mandate as a basis for denying the Plaintiff a religious accommodation must be rejected by this Court.

2. The NYCDOE's Undue Hardship Defense Is Pretext For Discrimination

a. *The NYCDOE's Bargaining Position At the Negotiation Table With the UFT*

In August 2021, during negotiations over the implementation of the Vaccine Mandate, the NYCDOE told the Plaintiff's union, the UFT: "Educators who have a legitimate religious exemption will also not be accommodated and will not even be permitted to use accrued sick time. They will be limited to other accrued time (according to the BOE, because they are not sick) and then also stripped of pay and benefits." **Exhibit 2**, at page 6. *See also,* **Exhibit 5**, at ¶ 6.

The NYCDOE's bargaining position, reflects an animus against those who have bona fide religious objections to the COVID-19 vaccine, like the Plaintiff.

As it turns out, when the NYCDOE implemented the Vaccine Mandate, it became the policy of the NYCDOE through the "general committee" that no religious accommodations were to be granted to any NYCDOE employee who applied for an accommodation from the Vaccine Mandate, no matter what the individual employee's religious beliefs were or how bona fide the employee held his/her religious beliefs. *See,* **Exhibit 1**, at page 22, lines 10-15.

b. *The Original Vaccine Mandate Failed To Authorize An Accommodation For Religious Objections As Required By Federal Law*

The original Vaccine Mandate imposed by the New York City Commissioner of Health and Mental Hygiene did not provide for religious accommodations for those employees who objected to the Vaccine Mandate. *See,* **Exhibit 6.**

As a result, the Plaintiff's union, along with other New York City municipal unions commenced the Original Vaccine Illegal Proceeding and sought and obtained an injunction which

prohibited its enforcement. *See,* **Exhibit 4**; **Exhibit 5**, at ¶ 8. After the unions were successful in preventing the enforcement of the original Vaccine Mandate, New York City Commissioner of Health and Mental Hygiene revised the Vaccine Mandate authorizing accommodations as required by law. *See,* **Exhibit C,** at § 6. *See, Matter of LaBarbera v. N.Y.C. Dep't of Educ.*, 241 A.D.3d at 550.

The fact that the original incarnation of the Vaccine Mandate did not authorize, permit, or recognize religious accommodations reflects an animus toward religious objections to the Vaccine Mandate. It took the New York City's unions to file a lawsuit to obtain religious accommodations to the Vaccine Mandate.

c. *The Undue Burden Argument Was Adopted In September 2021 After The NYCDOE's Bargaining Position Was No Accommodations For Religious Objections*

The NYCDOE was at the bargaining table in August 2021 (**Exhibit 2**, at Schedule A) negotiating the implementation of the Vaccine Mandate, when on September 1, 2021, the UFT wrote the New York State Public Employment Relations Board ("PERB") that the UFT and the NYCDOE had reached an impasse in negotiations. *See,* **Exhibit 2**.

When asked when the NYCDOE determined that granting religious accommodations was an undue burden on the NYCDOE, Rodi, the NYCDOE's FRCP Rule 30(b)(6) witness, testified that it was "sometime in September" 2021. **Exhibit 1**, at page 18, lines 19-25.

In other words, in August 2021 when the NYCDOE took a position that no NYCDOE employee would be granted religious accommodations from the Vaccine Mandate (**Exhibit 2,** at page 6), undue burden was not the reason, during negotiations with the UFT, the NYCDOE rejected religious accommodations from the Vaccine Mandate. But, a month later, in September 2021 (**Exhibit 1**, at page 18, lines 19-25) the NYCDOE invented the excuse that it would be an "undue burden" to grant religious accommodations to the Vaccine Mandate.

This indisputable timeline reflects the pretextual nature of the "undue burden" explanation for the Plaintiff's termination.

The fact that it was a month after the NYCDOE's bargaining position in August 2021 that the NYCDOE determined accommodating the Vaccine Mandate was an undue burden, but still maintained the bargaining position that no religious accommodations were going to be granted (**Exhibit 2**, at page 6), reflects an animus towards NYCDOE employees, like the Plaintiff, who objected to the COVID-19 vaccine based upon bona fide religious beliefs.

The "undue burden" non-discriminatory explanation is pretext for religious discrimination.

d. *The Undue Burden Argument Fails To Meet The Standard Set Forth In Groff*

When the NYCDOE denied the Plaintiff's request for a religious accommodation from the Vaccine Mandate, the NYCDOE stated that her "application has failed to meet the criteria for a religious based accommodation." **Exhibit I**.

The NYCDOE stated that it would be an "undue hardship (i.e. more than a minimal burden) on the DOE and its operations" to grant the Plaintiff an accommodation to work at another worksite. *See,* **Exhibit I**.

Despite this statement in September 2021 to the Plaintiff, the NYCDOE's FRCP Rule 30(b)(6) witness was asked what the undue burden was barring the NYCDOE from granting the Plaintiff a religious accommodation from the Vaccine Mandate, Rodi testified:

> we had a school system to run, and kids needed to be back in school. And kids were not vaccinated at the time, and we needed to protect those children that came back to school. And we -- particularly on the lower level grades we needed teachers to be in the classroom, and we needed people to do their jobs .... And the fact is that we needed to run a school system, and we did not have the staffing resources to have people not in school buildings or not be able to go into school buildings, because, at that time, if you weren't

> vaccinated, you weren't permitted into school buildings. So we didn't have the ability to put people in remote places, because we had kids physically in buildings. You can't -- you can't do online learning with little kids. You can't do plumbing remotely. You can't do school food remotely. So it was absolutely necessary for us to return kids to school, to return to education, to have people in person. And to have three thousand people or - - or that not working would've been an undue burden to the agency.

**Exhibit 1**, at page 23, line 8 through page 24, line 23.

The NYCDOE's explanation changed. It was no longer that the Plaintiff's "application failed to meet the criteria for a religious based accommodation" (**Exhibit I**), but it was about the kids and their safety.

Rodi's description of the undue hardship faced by the NYCDOE does not reflect what the United States Supreme Court in *Groff v. DeJoy*, 600 U.S. 447, 468 (2023) held was an "undue hardship" which "is shown when a burden is substantial in the overall context of an employer's business."

The Court in *Groff* stated that to show an undue burden "it is enough to say that an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. at 470.

In discovery, when asked what the financial cost of granting the Plaintiff an accommodation from the Vaccine Mandate of working from home (**Exhibit 7**, a copy of the Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories, at Interrogatory No. 26), the NYCDOE objected to the Interrogatory and stated the Interrogatory "assumes the only factor to consider in evaluating an accommodation request is the financial cost to the DOE. Responding further, the DOE notes that Plaintiff was a physical education teacher to elementary level students, who were generally too young to be eligible for COVID-19 vaccinations in 2021, and that this information had to be considered in evaluating Plaintiff's request, which was for an exemption from the Vaccine Mandate." **Exhibit 7**, at Response to Interrogatory No. 26.

However, *Groff* examines the financial cost of the requested accommodation, which, the NYCDOE ignores in its undue burden analysis, suggesting that the undue burden non-discriminatory explanation for the Plaintiff's termination is really pretext for discrimination.

The NYCDOE used "undue burden" as a shield to terminate the employment of the Plaintiff, a person with a bona fide religious objection to the COVID-19 vaccine without complying with the *Groff* standard. *See,* **Exhibit P**, at page 77, lines 4-14. The undue burden explanation is really pretext for discrimination.

e. *The NYCDOE Called The Plaintiff's Beliefs "BS"*

On September 20, 2021, Steven Banks ("Banks"), the then-First Deputy Commissioner and General Counsel, NYC Office of Labor Relations (and now the New York City Corporation Counsel) wrote an email reflecting the NYCDOE's extreme animus for the Plaintiff's belief that the COVID-19 vaccines conflicted with her religious beliefs because the vaccine "contained fetal cells from the unborn." **Exhibit A**, at page 61, lines 13-21.

Banks wrote:

> Now that the UFT exemption requests have been coming in for several days and the cases have been reviewed at the DOE, it turns out that upwards of 2/3 of the exemption requests are religious not medical. But there is a medical aspect to the religious requests that I could use some help on. **Many of the religious claims cite that fetal tissue and/or certain animal products were used in the research, development, and/or actual formula for the COVID vaccines.** Since many of these cases are going to labor arbitrators, there is a need for factual information for the arbitrators to reference. It would be very very helpful if we could get a document signed off on by a City Doctor that essentially makes the argument as to why **this is BS.** The purpose of the document would be for the arbitrators to reference, and I would vet it with the UFT first. So I'm looking for basically a point by point analysis of why the potential claims that taking this would violate the rights of someone who religiously opposes abortion and/or consumption of certain animals is not consistent with the science of the virus. In some areas, there may be

> a distinction between the 3 brands of vaccine and I think as long as one is available the claim should also be denied….

**Exhibit 8**, a copy of the September 20, 2021 email chain, at pages 7-8 (emphasis added).

The document referenced by Banks, in its final form, was part of the NYCDOE's submission in the Plaintiff's appeal of the NYCDOE's denial of her accommodation request. *See,* **Exhibit 9**, a copy of the September 21, 2021 letter (DEF000442).

The fact that the NYCDOE called the Plaintiff's belief that the COVID-19 vaccine violated her religious beliefs because it was produced using fetal cells (**Exhibit A**, at page 61, lines 13-21), "BS" (**Exhibit 8**, at page 8) reveals the extreme animus within the NYCDOE towards the Plaintiff's religious beliefs, which the NYCDOE testified to was bona fide and sufficient to be entitled to a religious accommodation, but-for the purported undue burden. *See,* **Exhibit P**, at page 77, lines 4-14.

Even the United States Supreme Court in the dissent to an application for an injunction stated vaccine objectors, like the Plaintiff "cannot receive a COVID-19 vaccine because their religion teaches them to oppose abortion in any form, and because each of the currently available vaccines has depended upon abortion-derived fetal cell lines in its production or testing." *Dr. A. v. Hochul*, 142 S. Ct. 552, 553 (2021). *See also, Doe v. Hochul*, 2026 U.S. LEXIS 2876, *2-3 (2026).

Plaintiff's religious beliefs were not/are not "BS". Banks' email reflects that the NYCDOE's non-discriminatory explanations for the Plaintiff's termination was just pretext for religious discrimination.

### C. Allowing The Plaintiff To Teach In Person Would Not Have Been An Undue Hardship Because It Was The Policy Of New York State That Schools Test And Mask And Allow Unvaccinated Teachers To Teach

The NYCDOE argues that "granting an accommodation to remain unvaccinated while masking and testing would have likewise imposed an undue hardship." NYCDOE's Memorandum of Law, at page 7.

The NYCDOE relies upon two reasons for its position: (1) the Vaccine Mandate did not permit the Plaintiff, an unvaccinated individual to enter into school buildings; and (2) "Plaintiff's presence as an unvaccinated individual posed a danger to the safety and health of Plaintiff's coworkers, students, and students' families." NYCDOE's Memorandum of Law, at page 7.

The Plaintiff cites to *D'Cunha v. Northwell Health Sys.*, 2023 U.S. App. LEXIS 30612 (2d Cir. 2023) and *Wright v. Brooklyn Hosp. Ctr.*, 2026 LX 270243, at *4 (2d Cir. 2026) in which the Second Circuit held that the hospitals did not have to provide religious exemptions to the State's vaccine mandate on health care workers because to do so would violate the State mandate.

But for the NYCDOE, the same reasoning does not apply. The Vaccine Mandate permitted, authorized, and approved "any reasonable accommodations otherwise required by law." **Exhibit C**, at § 6. *See, Matter of LaBarbera v. N.Y.C. Dep't of Educ.*, 241 A.D.3d at 550.

If, as the NYCDOE argues that the Vaccine Mandate did in fact bar the NYCDOE from granting the Plaintiff a reasonable religious accommodation, the "discriminatory state law is not a defense to liability under federal law; it is a source of liability under federal law." *Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir. 1995).

> It would have been incongruous for Congress to have intended a defense resulting in the perpetuation of discriminatory employment practices (even if based on state law) in a federal law designed to achieve equality of occupational opportunity. *Id.* at 429. Further, the scheme of Title VII provides that employers are exempted from liability under state laws which require the doing of acts which constitute unlawful employment practices, 42 U.S.C. § 2000e-7,

> Jones Metal Products Co. v. Walker, 29 Ohio St.2d 173, 281 N.E.2d 1 (1972), not that reliance on state statutes resulting in discriminatory practices bars Title VII liability, as the Corporation asserts.

*Williams v. Gen. Foods Corp.*, 492 F.2d 399, 404 (7th Cir. 1974).

The NYCDOE's argument also falls apart with respect to medical accommodations and medical exemptions from the Vaccine Mandate, which were granted to NYCDOE employees (**Exhibit 1**, at page 34, line 7 through page 36, line 17), while every single religious accommodation request and religious exemption request was denied. *See,* **Exhibit 1**, at page 25, line 13 through page 26, line 5.

Second, there is no medical evidence that the Plaintiff, as an unvaccinated individual posed a danger to the safety and health of Plaintiff's coworkers, students, and students' families.

The NYCDOE argues that the NYCDOE had a duty to maintain a safe workplace. *See,* NYCDOE's Memorandum of Law, at pages 8-9. The NYCDOE argues that being an unvaccinated employee risked the transmission of COVID-19 to the Plaintiff's co-workers and the Plaintiff's students. *See,* NYCDOE's Memorandum of Law, at pages 10-13.

But this argument fails on the facts.

The New York State Department of Health, on September 2, 2021 issued guidance for classroom instruction in P-12 schools during the 2021-2022 academic year, the school year at issue in this case. *See,* **Exhibit 10**, a copy of the guidance.

The New York State Commissioner of Health "[r]equire[d] unvaccinated teachers and staff working in a P-12 school setting, as defined in the determination, to get tested once per week when a school is operating in a geographic area identified by the Centers for Disease Control and Prevention (CDC) has having low, moderate, substantial or high transmission rates." **Exhibit 10,** at Appendix A, at III.B.

In addition, the New York State Commissioner of Health made a determination about COVID-19 testing on December 8, 2021. At that time, the New York State Commissioner stated:

> P-12 schools are required to ensure teachers and staff, as outlined above, have testing performed for COVID-19 at least once per week when a school is in a geographic area identified by the CDC as having low, moderate, substantial, or high transmission rates. Teachers and staff may be permitted to opt-out of mandatory weekly screening testing if they provide documentation of being fully vaccinated against COVID-19, as set forth in 10 NYCRR 2.62. Teachers and staff who work at multiple schools do not need to receive multiple tests; they may use one weekly test result to demonstrate to any number of schools where they work that they have fulfilled this requirement.

**Exhibit 11**, a copy of the December 8, 2021 Determination.

While the NYCDOE alleges that there was risk to the Plaintiff's co-workers and students if the Plaintiff was permitted to work inside an NYCDOE building as an unvaccinated individual, it was the policy of New York State, as evidenced by the determinations of the New York State Commissioner of Health, that testing and masking was an effective way to mitigate the risk of the spread of COVID-19.

In fact, the Second Circuit held that granting an "exemption from in-person work without vaccination or testing would have placed the District in violation of 10 NYCRR § 2.62 .... Russo's requested exemption would have caused an undue hardship because, if granted, the District would have violated New York law." *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 186 (2d Cir. 2025).

The Court in *Russo* recognized that under New York law, the school district could not permit the plaintiff an exemption from taking the vaccine <u>*and*</u> testing, meaning testing was an option under New York State law for unvaccinated school employees. Testing and masking was not an option considered by the NYCDOE, even though authorized, permitted, approved, and accepted by the New York State Commissioner of Health and a policy of New York State. *See,* **Exhibit 10**; **Exhibit 11**.

Despite the clear policy of the State that testing was an option for those who could not take the vaccine, like the Plaintiff, the NYCDOE did not even consider testing and masking as an option for those who had religious objections.

Rodi testified: "It wasn't an option, because they -- the -- there was a mandate from the Department of Health that if you were not vaccinated, you were not permitted in buildings. So it didn't matter if you masked and tested. You still weren't allowed in the buildings." **Exhibit 1**, at page 24, line 24 through page 25, line 12.

The NYCDOE's interpretation of the Vaccine Mandate that prevented it from considering testing and masking (the policy of the State) was in contravention of the clear language of the Vaccine Mandate itself, which explicitly said that "[n]othing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law." **Exhibit C**, at § 6. Testing and masking could have been considered under the Vaccine Mandate.

While the NYCDOE argues that permitting the Plaintiff to work as an unvaccinated individual inside the schools posed a health and safety risk to the Plaintiff's co-workers and students, the NYCDOE does not produce any medical or scientific evidence to support such an argument.

In *Bobnar v. AstraZeneca Pharms. LP*, 758 F. Supp. 3d 690, 727 (N.D. Ohio 2024), the Court rejected the defendant-employer's argument that health and safety risks to third parties could create an undue hardship. The Court rejected the argument because the defendant-employer "has not pointed to any evidence that would show increased health risks that an unvaccinated biologic sales representative would pose to its healthcare provider customers or their patients."

In *Chavez v. City of N.Y.*, 2026 LX 44697, at *18 (E.D.N.Y. 2026), the Court stated that, in support of summary judgment, when the defendant was relying upon health and safety issues as a basis for an undue burden defense, the "defendant is required to provide evidence of the health and safety costs it would incur by accommodating plaintiff."

The NYCDOE has just made arguments of a potential threat to the health and safety of the Plaintiff's co-workers and students, but that threat is not supported by scientific evidence. On the contrary, it was the policy of New York that testing was an option to prevent the spread of COVID-19. *See,* **Exhibit 10**; **Exhibit 11**.

Accordingly, the NYCDOE's argument about the health and safety of the Plaintiff's co-workers and students is not supported by the New York State Health Commissioner's policy and any scientific or medical evidence to support the concern. The Court should deny the Plaintiff's Motion.

### D. NYCDOE's Argument About Cumulative Impact Of Granting Thousands Of Accommodation Requests Must Be Rejected

The NYCDOE argues: "Considering the aggregate impact of such requests, permitting Plaintiff to remain unvaccinated while masking and testing would have imposed significant operational, administrative, and public health burdens on the DOE." NYCDOE Memorandum of Law, at pages 13-14.

The NYCDOE does not identify what "significant operational, administrative, and public health burdens" would have been placed on the NYCDOE to grant the Plaintiff, no other NYCDOE employee, a reasonable religious accommodation, like the one authorized by the Vaccine Mandate. *See,* **Exhibit C**, at § 6.

In addition, the NYCDOE fails to disclose to the Court that 146 NYCDOE employees were ultimately granted reasonable religious accommodations of exemption from the Vaccine Mandate through the appellate process of denial of accommodations. *See,* **Exhibit 7**, at Response No. 17.

The NYCDOE does not allege, argue, or suggest that granting those 146 exemptions caused significant operational, administrative, and public health burdens on the NYCDOE.

If the 146 NYCDOE employees were granted religious accommodations, how would have one additional NYCDOE employee (Plaintiff) being granted a religious accommodation increased

operational, administrative, and public health burdens on the NYCDOE? The NYCDOE does not answer this question.

The Court must reject the NYCDOE's vague and unsubstantiated undue burden argument that granting the Plaintiff an accommodation would have caused significant operational, administrative, and public health burdens on the NYCDOE because there is no factual support for such an argument.

The NYCDOE's Motion for Summary Judgment should be denied.

## E. The Plaintiff's NYC Human Rights Law Claim Is Timely And The Court Should Deny The NYCDOE's Motion For Summary Judgment

### 1. The NYCDOE's Undue Burden Argument Is Defeated By The Plain Words In The Vaccine Mandate

In support of the NYCDOE's Motion for Summary Judgment, the NYCDOE does not challenge the Plaintiff's *prima facie* case. Instead, the NYCDOE focuses upon the NYCDOE's defense of undue burden and an argument about cooperative dialogue.

First, as discussed throughout this Memorandum of Law In Opposition, the NYCDOE's undue burden/undue hardship argument fails because the Vaccine Mandate authorized, permitted, and approved reasonable accommodations. *See,* **Exhibit C**, at § 6; *see also, Matter of LaBarbera v. N.Y.C. Dep't of Educ.*, 241 A.D.3d at 550. In addition, the policy of New York State was that testing and masking for teachers, like the Plaintiff, was authorized, permitted, and required for unvaccinated school employees. *See,* **Exhibit 10**; **Exhibit 11**. Accordingly, the NYCDOE's undue burden analysis fails and undue burden is just pretext for religious discrimination.

Second, the Plaintiff argues that the NYCDOE cannot establish that there was any reason why it could not accommodate the Plaintiff's bona fide religious beliefs considering that the NYCDOE had many different options where to assign the Plaintiff, from elementary school through high school based upon her qualifications and certifications. *See,* **Exhibit A**, at page 15,

line 23 through page 16, line 3; page 48, lines 10-25. As a result, the NYCDOE's Motion for Summary Judgment should be denied.

### 2. The Plaintiff's Filing With The EEOC Constituted The Plaintiff's Notice Of Claim Pursuant to N.Y. Education Law § 3813

The NYCDOE argues that the Plaintiff failed to comply with N.Y. Education Law § 3813 when she failed to timely file a Notice of Claim alleging a violation of the New York City Human Rights Law.

The NYCDOE is wrong.

The NYCDOE argues that "the deadline for Plaintiff to serve a notice of claim challenging her termination was December 4, 2022 (three months after her termination on September 5, 2022)." NYCDOE's Memorandum of Law, at page 18.

On or about June 25, 2022, the Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). *See,* **Exhibit 12**, a copy of the Plaintiff's EEOC Charge of Discrimination. On September 25, 2022 (20 days after the Plaintiff's termination), the Plaintiff was issued her Right to Sue letter from the EEOC. *See,* **Exhibit 13**, a copy of the Right to Sue letter.

In *Bagarozzi v. N.Y.C. Dep't of Educ.*, 2019 U.S. Dist. LEXIS 56533, at *10 (S.D.N.Y. 2019) (internal citation omitted), the Court held:

> Although some courts have held that filing an EEOC or SDHR complaint may satisfy the notice of claim requirement, the plaintiff must still plausibly allege that the administrative complaint met § 3813's requirements.

*See also, Lovallo v. N.Y.C. Dep't of Educ.*, 2024 U.S. Dist. LEXIS 59758, at *19-20 (S.D.N.Y. 2024).

The Plaintiff's Charge of Discrimination with the EEOC addresses the same set of facts and circumstances alleged in her Fourth Cause of Action asserting a violation of the New York City Human Rights Law. *See,* **Exhibit 12**. *See also,* **Exhibit 3**, at ¶¶ 67-84.

As a result, the Court should reject the NYCDOE's argument that the Plaintiff failed to timely file a Notice of Claim pursuant to N.Y. Education Law § 3813.

The Plaintiff's Motion for Summary Judgment should be denied.

### F. The Plaintiff Was Under Economic Duress When She Executed The Release To Extend Her Suspension Without Pay

The NYCDOE argues that the Plaintiff executed a release knowingly and voluntarily. But does not cite a single document or any deposition testimony to suggest that the Plaintiff's execution of the release was in fact knowing and voluntary.

Instead, the contemporaneous documentary evidence establishes that: (1) immediately after executing the general release, on the document that is her Waiver and Release, the Plaintiff communicated with the NYCDOE and stated that she is "continuing my leave under duress. I am 51 years old and need my pension that I worked for my whole life." **Exhibit 14**; (2) the Plaintiff emailed Beth Norton, Esq. ("Norton") an attorney for the UFT that "[t]oday I notified the revokevaccinationprovision@schools.nyc.edu to extend my forced unpaid leave **UNDER DURESS**! I am notifying you as well." **Exhibit 15**, a copy of the email to Norton (emphasis in original); and (3) the Plaintiff emailed her Principal that she "[u]nder duress, I have extended my forced Leave Without Pay for Vaccine Reasons until September 5, 2022." **Exhibit 16**, a copy of the Plaintiff's email to her Principal.

In *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136, 142 (2d Cir 2011), the Court held "[t]o void a contract on the ground of economic duress, the complaining party must show that its agreement was procured by means of (1) a wrongful threat that (2) precluded the exercise of its free will."

The NYCDOE made a wrongful threat. The NYCDOE told the Plaintiff that if she did not execute the document that contained a general release, she could not participate in the UFT Arbitration Award provision that extended her suspension without pay until September 2022. However, the UFT Arbitration Award **never** required members of the UFT to waive or release their rights in order be suspended without pay until September 2022.

In fact, the UFT Arbitration Award states: "[e]xcept for the express provisions contained, herein, all parties retain all legal rights at all times relevant, herein." **Exhibit D**, at pages 17-18. Nowhere in the UFT Arbitration Award did the Arbitrator permit the NYCDOE to seek a release and waiver of rights of the members of the UFT as a prerequisite to the benefits contained in the UFT Arbitration Award. *See generally*, **Exhibit D**.

If the waiver or release of rights was not contained in the UFT Arbitration Award, then it was a wrongful threat for the NYCDOE to require a general release to be executed in return for extending the Plaintiff's suspension without pay, a benefit granted to the Plaintiff in the UFT Arbitration Award.

The wrongful threat by the NYCDOE emanates from the improper demand for a general release in return for the benefits the Plaintiff was entitled to receive pursuant to the UFT Arbitration Award.

The Plaintiff executed the purported Release and Waiver at a time when she was suspended without pay, just lost her final appeal of her religious accommodation request, and, if she did not sign the document created by the NYCDOE, she would lose her job and her pension. The NYCDOE used economic pressure to obtain a general release from the Plaintiff that was unconscionable.

The Plaintiff was deprived of her free will and had no choice but to sign the purported Waiver and Release. The NYCDOE made her choose -- either sign the general release or lose her valuable pension. This was an impossible situation for her to choose. Her choice to protect her pension was made under economic duress.

The Appellate Division, Second Department in New York in *Matter of LaBarbera* examined the same release executed by the Plaintiff and held:

> The clear terms of the waiver, as premised on the arbitration award, permitted the petitioner to comply with the vaccine mandate and return to work by September 6, 2022. One way to comply with the vaccine mandate was for the petitioner to get vaccinated. Another was to successfully obtain a religious exemption and reasonable accommodation. As noted, the vaccine mandate did not preclude reasonable accommodations. If the petitioner had successfully obtained an exemption and concomitant accommodation during the applicable time period, she would have been in compliance with the vaccine mandate and been able to return to work. Therefore, contrary to DOE's position, the waiver did not preclude this proceeding to challenge DOE's denial of the petitioner's request for a religious exemption.

*Matter of LaBarbera v. N.Y.C. Dep't of Educ.*, 241 A.D.3d at 550.

Since in this case, the Plaintiff is "challeng[ing] ... the DOE's denial of the [Plaintiff's] request for a religious exemption", the waiver/release does not bar this proceeding.

Additionally, in *Weisel v. Dept. of Educ.*, 2025 N.Y. Slip Op 32485[U] (Sup Ct, Kings County 2025), the Court rejected the NYCDOE's defense that the same release executed by the Plaintiff precluded the plaintiff's claims. In *Weisel*, the plaintiff argued that she did not have ample time to review the release and she was unable to have the release reviewed by her union before signing it and, based upon these arguments determined that "there are numerous issues regarding whether the release was signed under duress." *Weisel v. Dept. of Educ.*, 2025 N.Y. Slip Op 32485[U], at * 14.

Similarly in this Action, not only was the Plaintiff under extreme economic duress (**Exhibits 14, 15, 16**), but the Plaintiff was presented with the release without any time to review it (*see,* **Exhibit 17,** a copy of the Affidavit of Lorraine Masciarelli, sworn to on the 9th day of June 2026, at ¶ 3) and the Plaintiff was not given time for her union to review it before signing. *See,* **Exhibit 17**, at ¶ 4.

With the evidence of economic duress, the holdings in *Matter of LaBarbera*, and *Weisel*, along with the fact that the NYCDOE's release was beyond the scope of the UFT Arbitration Award makes the release void.

Finally, the NYCDOE argues that collateral estoppel bars the Plaintiff from challenging the Vaccine Mandate and/or the UFT Arbitration Award.

The Plaintiff is not making any argument regarding the constitutionality or enforceability of the Vaccine Mandate or challenging the UFT Arbitration Award.

Instead, the Plaintiff is showing that what the NYCDOE did when it required the Plaintiff to execute a general release under economic duress to extend her suspension with pay, contradicted the clear and unambiguous mandate of the UFT Arbitration Award that entitled the NYCDOE to a limited release from the Plaintiff to extend her suspension with pay. *Compare,* **Exhibit 14** *with* **Exhibit D**, at page 16.

Accordingly, the NYCDOE's Motion for Summary Judgment should be denied.

## CONCLUSION

For the reasons argued in this Memorandum of Law, and the Plaintiff's Local 56.1 Counter-Statement, the Court should deny the NYCDOE's Motion for Summary Judgment.

Dated: Garden City, New York
July 7, 2026

Respectfully submitted,

THE SCHER LAW FIRM, LLP
*Attorneys for the Plaintiff*

Austin Graff
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040